Tim Cook
Attorney for the Plaintiff
3901 Taiga Drive,
Anchorage, Alaska 99516
(907) 336-5291
(907 336-5292 fax

**FILED**

DEC 0 5 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

Eric Lutz, as assignee of rights of ) 
Dean Bruington, dba DB Enterprises, ) No. A04 0229 CV (JKS)
 )
Plaintiff, )
 )
vs. )
 )
First Financial Insurance Company, )
 )
Defendants. )
_____ )

### PLAINTIFF'S OPPOSITION
### TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff asks the court to deny defendant's motion for summary judgment.

Plaintiff has previously filed a request for continuance pursuant to Federal

Rule of Civil Procedure 56f on the basis that further discovery would allow Plaintiff

to gather additional evidence of disputed material facts. However the continuance

motion has not yet been decided. Therefore Plaintiff submits this opposition within

the deadline stipulated to by counsel and approved by the Court.

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

3|

## A. Introduction

Plaintiff Eric Lutz is plaintiff. First Financial Insurance Company, Inc. is defendant. On September 7, 2004, plaintiff, as assignee of their insured, sued defendant insurer for Breach of the Duty of Good Faith, Breach of the Duty to Defend, Breach of the Duty to Indemnify, and Misrepresentation in the Superior Court for the State of Alaska.

After removing to Federal District Court defendant filed its Answer on November 24, 2004. In addition to contesting all causes of action, the Answer raised lack of coverage under the policy as an affirmative defense.

On November 2, 2005, defendant filed a motion for summary judgment on plaintiff's cause of action. The motion seeks judgment in defendant's favor on the affirmative defense of no coverage for the claim under the policy. Summary judgment is improper in this case because there are genuine issues of fact with respect to whether defendant is estopped from raising coverage defenses. In addition there are genuine issues of fact with respect to defendant's affirmative defense of lack of coverage.

## B. Statement of Facts

First Financial Insurance Company (First Financial) issued a building contractor's third party liability insurance policy to Dean Bruington. The policy provided general liability coverage for constructing residential buildings, and included additional coverage for "completed operations" for which an additional

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)   fax (907) 336-5292

Lutz v. First Financial Insurance Co., Inc.                                    Page 2 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

premium was charged. The policy period was December 8, 1998 to December 8, 1999. [1]

In the spring of 1999, Dean Bruington (DB Enterprises) began constructing a residence for Eric and Marsha Lutz near Glennallen, Alaska. The completed house was occupied by the end of October 1999.

Soon after completion, Eric Lutz and then wife Marsha Lutz began to notice that drywall was cracking and doors were sticking in the living area of the house. By spring, Eric Lutz contacted the contractor Bruington to report these problems.

Over succeeding months, it became apparent that the house was not only "settling in", as Bruington had suggested, but that it was twisting and deforming so that doors were unusable and other damage was occurring. By 2002, gaps of more than 18 inches had opened between parts of the sinking foundation and the floor structure. Bruington, in an attempt to stabilize the structure, placed a series of screw jacks in the crawl space.

In July 2002 Dean Bruington recognized that a solution was beyond him and filed a claim for the Lutz house with his insurer, First Financial. First Financial contracted with Northern Adjusters Inc. to investigate the Bruington claim. Adjuster David Buness conducted the investigation and filed two reports with First Financial. [2]

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

---

[1] Commercial General Liability Policy No. F0117G412046, attached as Exhibit A (CGL Policy). The Affidavit of Counsel, attached hereto as Exhibit Q, attest to the authenticity of Exhibit A.
[2] Northern Adjusters Report to First Financial, dated July 30, 1999, attached as Exhibit B (Northern Adjusters July 30, Report), admitted to be a true copy in Defendant's Response to Plaintiff's First Discovery Requests, Request for Admissions #23; and Northern Adjusters Report to First Financial, dated August 30, 1999, attached as Exhibit C (Northern Adjusters August 30 Report), admitted to be a true copy in Defendant's Response to Plaintiff's First Discovery Requests, Request for Admissions #22.

Lutz v. First Financial Insurance Co., Inc.                                    Page 3 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

On September 11, 2002, Robert LaFrance, special claims manager for First

Financial Insurance, sent Bruington a letter categorically denying both

indemnification and a defense[3]. This notice of denial contains no facts concerning the

Lutz house or any discernible reason for either the denial of coverage or the denial of

the duty to defend. It consists of several pages of cut-and-paste exclusion language

from the policy and one sentence in reference to inapplicable law. No attempt was

made to apply the exclusions listed or the law cited to the facts of the claim. No facts

of the claim were mentioned.

Eight months later, on May 5, 2003, Lutz filed a complaint[4] against Bruington

in Alaska Superior Court for damages on claims that included defective construction

and breaches of the warranty of habitability.

Bruington tendered his defense to the insurer by faxing the jury demand to

First Financial's claims department on or about May 14, 2003.[5]

First Financial Insurance did not respond. There was no phone call, no letter,

and no defense was provided by defendant. As a result, Dean Bruington appeared *pro

se* to file a late and "non-conforming" answer.[6]

Bruington and Lutz began negotiating in an attempt to resolve the matter.

Ultimately, they reached accord and executed two documents: Agreement and

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

---

[3] First Financial's denial letter of September 11, 2002, attached as Exhibit D (Letter of September 11), verified in Defendant's Response to Plaintiff's First Discovery Requests, Request for Admissions #11. The Affidavit of Counsel, attached hereto as Exhibit Q, attests to the authenticity of Exhibit D.

[4] COMPLAINT, Lutz v. Bruington, #3AN 03-7096 attached as Exhibit E (Complaint). The Affidavit of Counsel, attached hereto as Exhibit Q, attests to the authenticity of Exhibit E.

[5] Due to a delay of the Alaska State Troopers' service of the complaint in Lutz v. Bruington, Bruington did not receive service of the complaint until some time after he received a mailed copy of the jury demand.

[6] ANSWER, *Lutz v. Bruington*, attached as Exhibit F (Bruington Answer). The Affidavit of Counsel, attached hereto as Exhibit Q, attest to the authenticity of Exhibit F.

Lutz v. First Financial Insurance Co., Inc.                                    Page 4 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Release[7]; and <u>Assignment of Claim and Right</u>[8]. Among the valuable considerations, Bruington agreed to perform extensive repairs to the failing structure and assigned all his rights and causes of action against his insurer to Eric Lutz. In return, Lutz agreed to not hold Bruington personally liable for any judgment rendered in the pending action.

Bruington contracted with an engineering firm and a specialty contractor to design and install a helical foundation system for the home. Bruington also personally performed extensive interior and exterior repairs to bring the home back to a habitable condition.

Lutz filed for partial summary judgment. The court granted the motion and held Bruington liable for damages arising from the occurrences at the Lutz residence.[9] Following a damages hearing, the Superior Court issued a final judgment, ordering Bruington to pay damages to Lutz in the amount of $5,601,128.00.[10] No appeal was made from that final judgment.

Eric Lutz, as assignee of the rights of the insured Bruington, filed a complaint for damages against First Financial in Alaska Superior Court on September 7, 2004. Defendant First Financial, the insurer, subsequently removed the action to U.S. District Court.

*Tim Cook*
*Attorney at Law*
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

---

[7] Agreement and Release attached as Exhibit G (Agreement and Release). The Affidavit of Counsel, attached hereto as Exhibit Q, attests to the authenticity of Exhibit G.

[8] Assignment of Claim and Right attached as Exhibit H (Assignment of Claim). The Affidavit of Counsel, attached hereto as Exhibit Q, attests to the authenticity of Exhibit H.

[9] Summary Judgment Order, *Lutz v. Bruington,* attached as Exhibit I, (Summary Judgment Order) . The Affidavit of Counsel, attached hereto as Exhibit Q, attests to the authenticity of Exhibit I.

[10] Final Judgment, *Lutz v. Bruington* attached as Exhibit J, (Final Judgment). The Affidavit of Counsel, attached hereto as Exhibit Q, attests to the authenticity of Exhibit J.

Lutz v. First Financial Insurance Co., Inc.                                                     Page 5 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment



## C. Standard of Review

Although summary judgment is proper in any case where there is no genuine issue of material fact, this is not a case in which the court should grant such a motion.[11]

When a defendant moves for summary judgment on its affirmative defense, it must show the absence of a genuine issue of material fact and establish each element of its defense as a matter of law.[12] Unless the defendant produces evidence establishing its defense as a matter of law, it is not entitled to summary judgment. [13] A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact either by (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim.[14] Defendant cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of his claim. Rather, defendant must demonstrate an absence of genuine factual dispute. [15]

[11] Fed.R.Civ.P.56(c); *Celetex Corp. v. Catrett,* 477 U.S. 317. 322, 106 S.Ct. 2548, 2552 (1986)
[12] See *Buttrey v. General Signal Corp.,* 68 F. 3d 1488, 1492 (2d Cir. 1995) (affirmative defense of statute of limitations)' see also *Irby v. Bittic,* 44 F.3d 949, 953 (11th Cir.1995) (affirmative defense to suit under Equal Pay Act); *Crescent Towing & Salvage Co. v. N/V Anax,* 40 F.3d 741, 744 (5th Cri.1994) (affirmative defense of judicial sale); *Fox v. Citicorp Credit Serv. Inc.* 15 F.3d 1507, 1514 (9th Cir.1994) (affirmative defense of bona fide error).
[13] Fox, 15 F.3d at 1514
[14] *Celetex Corp.,* 477 U.S. at 322-25, 106 S.Ct. at 2552-54; *J. Gelils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1251 (1ST Cir. 1996).
[15] *See Celetex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555.

Lutz v. First Financial Insurance Co., Inc.                                    Page 6 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)    fax (907) 336-5292

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)   fax (907) 336-5292

In determining whether there is a disputed issue of material fact that precludes summary judgment, the court must consider all evidence in the light most favorable to plaintiff as the non-movant. [16]

### D. Argument

Synopsis

First Financial's Motion for Summary Judgment is not appropriate and should not be granted because: 1) First Financial materially breached its duties to its insured and should be estopped from denying coverage; 2) the arguments on which First Financial base their Summary Judgment are invalid, and; 3) there are material facts in issue.

First Financial materially breached its duties to its insured by:

1) Performing an inadequate claims investigate of the loss, in which it failed, among other things, to adequately, a) investigate the time of occurrence / date of loss, and; b) investigate the status of subcontractors to determine whether they were "independent contractors";

2) Failing to provide an adequate Notice of Denial that provided a reasonable explanation of the basis for the denial;

3) Failing to provide a Notice of Denial after Tender of defense; and

4) Failing to provide a defense when allegations in the complaint could give rise to coverage under the policy.

---

[16] *Hom v. Squire,* 81 F.3d 969, 973 (10th Cir. 1996)

Lutz v. First Financial Insurance Co., Inc.                                    Page 7 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

The three arguments made by First Financial are invalid. To begin First Financial asserts that the "Independent Contractor" exclusion bars coverage under the policy. There is ambiguity over the meaning of the terms "subcontractor" vis-à-vis "independent contractor" as First Financial now is interpreting its policy. One section of the policy provides coverage for acts by "subcontractors" another excludes coverage for "Independent Contractors". Neither term is defined in the policy. Because an insurance policy is a contract of adhesion, ambiguities are interpreted in a manner that most favors the insured.

First Financial's second argument is that the "your work" exclusion bars coverage. It is not Bruington's work that is in issue, it is his subcontractor's work. Specifically, it is the site preparation work performed by subcontractor Mike Shelton. Alaska courts have held that "damages caused by the operations of a subcontractor were not excluded from coverage under the broad form policy." First Financial's "your work" argument is therefore misplaced, because the damage is not the work of Bruington, it is the result of his subcontractor Shelton.

First Financial's final argument is that the date of loss was outside the policy period. This fails on a number of levels, not the least of which is that their own field investigation report stated that the date of loss was October 30, 1999. October 30, 1999 is within the policy period. Moreover, First Financial brings forward no credible evidence to suggest any other date for the onset of damage.

There are clearly material facts in controversy that bar Defendant's Motion for Summary Judgment such as: what was the time of occurrence; what was the cause of the loss; whose work caused the loss.

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

Lutz v. First Financial Insurance Co., Inc.                                  Page 8 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

These issues are further discussed below. The Defendant's Motion for

Summary Judgment because Defendant's is likely to be estopped from denying

coverage due to their material breaches; because their legal theories in support of the

Summary Judgment are lacking, and; because there are material facts in controversy.

Based these issues the Defendant's Motion for Summary Judgment should be denied.

## Substantial Breaches of its Obligations Estops Insurer's
### Coverage Defenses

1.      In his complaint against First Financial, plaintiff Lutz presented four separate

causes of action; Breach of the Duty of Good Faith, Breach of the Duty to Defend,

Breach of the Duty to Indemnify, and Misrepresentation. However, defendant's

current motion for summary judgment does not directly address these causes of

action, but argues as an affirmative defense, lack of coverage under the policy.

Alaska courts have consistently held that a substantial breach by an insurer of

its obligations under the policy precludes it from later arguing that coverage does not

exist.[17] First Financial breached its obligations to its insured, Bruington, in virtually

every phase of its dealings with him regarding coverage and defense. First Financial

performed a negligent investigation, provided an inadequate and misleading notice of

denial letter, failed to respond to Bruington's tender of notice that he was being sued,

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

---

[17] *Lloyd's & Inst. Of London Underwriting Co v. Fulton,* 2P.3d 1199, 1204 (2000 Alaska)

Lutz v. First Financial Insurance Co., Inc.                                    Page 9 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

and failed to provide him with a defense. These breaches are substantial.[18] Therefore

defendant is not entitled to summary judgment on any question of coverage.

<u>Negligent Claims Investigation Estops Insurer's Coverage Defense</u>

2.      On July 17, 2002 First Financial instructed Northern Adjusters in Anchorage

to investigate Bruington's claim regarding damages to the Lutz house in Glennallen,

Alaska. Based on Rule 26 disclosures provided plaintiff, the full scope of this

investigation is encompassed in two reports (dated July 30, 2002[19] and August 30,

2002[20]), with enclosures, that were sent to First Financial. These reports, prepared by

adjuster David Buness, reveal inadequacies of the investigation that ultimately led to

a faulty decision to deny coverage and defense.

Buness examined the Lutz home and interviewed homeowner Eric Lutz.

Contact was made with Dean Bruington's bookkeeper who provided a list of

subcontractors, and with Geode Engineering who provided the construction site soils

report. No effort appears to have been made to contact Marsha Henderson (previously

Lutz) who was the other resident of the Lutz home during the policy period, or the

excavation subcontractor Mike Shelton. Nor, does it appear that any attempt was

made to determine WHEN the failure of the house's foundation began.

<u>Time of Occurrence</u>

The time of the occurrence seems to have been completely unexplored in the

insurer's investigation of the claim, the only relevant bit of information discovered

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)    fax (907) 336-5292

---

[18] Plaintiff is filing a cross motion for summary judgment as to the breaches that Plaintiff contends can
be established at this time as a matter of law.

[19] Exhibit B Northern Adjusters July 30, Report.

[20] Exhibit C  Northern Adjusters August 30, Report.

Lutz v. First Financial Insurance Co., Inc.                                    Page 10 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

being that 'damage' in the living area of the house was noticed "(a)t an unknown date following the occupancy"[21].

Adjuster Buness notes in his July 30, 2002 report to defendant, "All of the interior damage. . . .appears to be a result of the concrete footers of this dwelling sinking for an unknown reason causing the entire dwelling structure to subside."[22] Yet he made no further investigation to try to determine WHEN or WHY the sinking or the subsiding began.

In his very recent affidavit, adjuster David Buness states that he "utilized the October 30, 1999 as the date of loss applicable to Mr. Lutz's claim…"[23] October 30, 1999 is <u>within</u> the policy period. Buness also states in the affidavit that he chose this date because it was the date that Lutz told him construction was completed. And later, "in the absence of any other specific date to assign this loss" . . (he). . ."arbitrarily adopted"[24] October 30, 1999 as the date of loss. In other words, the investigator found no information to cause him to put the date of loss outside of the coverage period. Nor did he seek any such information. If the time of occurrence was a legitimate basis for denying coverage, as First Financial now proposes, it seems unfathomable that the adjuster would 'arbitrarily' choose a date of loss within the policy period and never examine this point again.

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

---

[21] Exhibit B Northern Adjuster July 30 Report,  page 2.

[22] Exhibit B Northern Adjusters July 30 Report, page 3.

[23]  Affidavit of David Buness, attached as Exhibit K,(Buness Affidavit). The Affidavit of Counsel, attached hereto as Exhibit K, attests to the authenticity of Exhibit J.

[24] Exhibit  K, Buness Affidavit.

Lutz v. First Financial Insurance Co., Inc.                                             Page 11 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

The investigation performed by Buness was the only field investigation conducted by First Financial.[25]

Defendant has now adopted the "thawing of the perma-frost the following spring"[26] theory as a reason that the occurrence was outside the coverage period. There was no mention of permafrost in Northern Adjuster's reports and no evidence presented that points to permafrost. Nevertheless, this now serves defendant as a reason for their earlier denial, albeit one not previously mentioned or investigated.

This appears to be clear case of denying coverage now and fishing for reasons 'why' later.

### No Investigation of Subcontractors

First Financial's inadequate investigation was not limited to the time of occurrence. Defendant now asserts it denied coverage because the subcontractor, Shelton, who performed the defective foundation work, was an independent contractor and therefore excluded by an endorsement to the policy. And yet no investigation of Shelton was made.

A great deal of information appears in defendant's motion for summary judgment about the subcontractor, Shelton (which defendant uses synonymously for the person Mike Shelton and the corporation M. Shelton Services, Inc.)[27]. Defendant tells us that Shelton "is an independent excavation contractor and certified septic system installer", that "(i)t is a corporation in good standing", that work performed for Bruington "represented less than 1% of Shelton's business." All of this

---

[25] DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS AND DISCOVERY REQUEST, Exhibit L, (Answers to Admissions) Admission #20. The Affidavit of Counsel, attached hereto as Exhibit K, attests to the authenticity of Exhibit L.
[26] Defendant's Motion for Summary Judgment, page 12

Lutz v. First Financial Insurance Co., Inc.                                    Page 12 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

information, pages of it, is put forward to convince the court that Shelton is an independent contractor whose work is not covered by Bruington's policy with First Financial. And all of it was gathered more than 3 years after First Financial denied Bruington coverage.

Not one piece of this information about Shelton appears to have been in First Financial's files at the time that the decision was made to deny Bruington coverage. Whether Shelton was incorporated, insured, bonded, whether he worked exclusively for Bruington, whether he did the work as he saw fit or did it as Bruington directed; none of this was known or asked. No one from either First Financial or from Northern Adjusters spoke with Shelton. There was no investigation of Shelton as a person or as a business, not even a phone call to the State Corporations Division to find out if the business was incorporated.

The only information known to First Financial about Shelton at the time of coverage denial was that his name on a list of subcontractors obtained from Bruington's bookkeeper, and the mention by David Buness in Northern Adjusters' August 30, 2002 report to First Financial that "(a)dditional contact and documentation supplied by D.. B. Enterprises indicates that the excavation and gravel work of the pad and septic system was completed by: M. Shelton Services"[28]. There was a lack of interest in Shelton and scant information provided by the field investigation regarding him or any other subcontractor. Furthermore, First Financial's denial letter made absolutely no mention of Shelton being an independent contractor as a reason for denying Bruington's claim for coverage.

---

[27] Defendant's Motion for Summary Judgment, pages 2 - 4

Lutz v. First Financial Insurance Co., Inc.                                    Page 13 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

Only after First Financial became the defendant did it follow up with Shelton. (Shelton's affidavit's dated October 2005.)[29] More than three years after it denied Bruington coverage, it obtained the information about Shelton that it is now using to support its denial.

If Shelton's status was a reason for Bruington's denial of coverage, <u>at the time the denial was made,</u> it was not indicated as such by the meager investigation that was conducted. First Financial had "an obligation, deemed to be imposed by law. . .(to) act fairly and in good faith"[30] with their insured, Dean Bruington. They did not.

Every contract contains an implied covenant of good faith and fair dealing which holds that neither party will do anything to injure the rights of the other party to receive the benefits of the agreement.[31] In particular, it is recognized that insurers have a special fiduciary relationship with their clients which make the insured parties particularly vulnerable and "particularly reliant on the insurer's good conduct".[32] First Financial made obvious its disregard for Bruington in every phase of its handling of his case, beginning with its breach of duty to investigate.

When it was Bruington who was at risk for problems with the Lutz house, First Financial did not bother to investigate thoroughly. Conversely, when it was First Financial on the line, suddenly a flurry of effort was made to gather information, and to search for a rational basis to support the denial. However, at the time of the denial

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

---

[28] Exhibit C, Northern Adjusters August 30 Report, page 3.

[29] Affidavit of Mike Shelton, Exhibit M (Shelton Affidavit). The Affidavit of Counsel, attached hereto as Exhibit K, attests to the authenticity of Exhibit M.

[30] *Gruenberg v. AETNA Ins. Co.,* 510 P.2d 1032, 1037 (Cal. 1973)

[31] *Communale v. Traders & General Ins. Co* 328 P2d 198, 200 (Cal. 1958)

[32] *State Farm Fire & Cas. Co. v. Nicholson,* 777 P.2d 1152, 1157 (Alaska 1989); *Lloyd's & Inst. of London Underwriting Co. v. Fulton,* 2 P.3d 1207, 1209

---

Lutz v. First Financial Insurance Co., Inc.                                    Page 14 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

First Financial did not have the information necessary to make the decision fairly and in good faith.

Having breached its duty to investigate (before it denied coverage), it is too late for defendant to now argue the issue of coverage using information gleaned from its later investigation. "If an insurance company could deny a claim without thoroughly investigating it and then defend a subsequent lawsuit on grounds which it develops during discovery for trial, the company's incentive to fulfill its duty to investigate would be significantly diminished."[33] Therefore, plaintiff asks the court to deny the defendant's Motion for Summary Judgment, because there are material issues of fact that may estop the defendant from denying coverage.

Insurer's Failure to Provide Reasonable Explanation for Denial Estops Coverage Defense

3.    Alaska Statute 21.36.125(a)(4) of 'Unfair Claim Settlement Practices' states "A person may not . . . refuse to pay a claim without a reasonable investigation of the available information and an explanation of the basis for denial of the claim. . ." (Emphasis added.)

First Financial's dealings with Bruington's claim have, if nothing else, been consistent. They began 'without a reasonable investigation of the available information' and proceeded to refuse to pay the claim or provide a defense without an explanation of the basis for denial of the claim. First Financial's explanation of the basis for denial of the claim completely fails to explain in the basis of law and in

---

[33] *McLaughlin v. Connecticut General Life Ins. Co.*, 565 F. Supp. 434 (N.D.Cal. 1983)

Lutz v. First Financial Insurance Co., Inc.                                Page 15 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

relation to the facts why the claim was denied. Not a single fact is presented in the September 11, 2002 letter denying the claim. The letter consists of a two-page "cut-and-paste" recitation from the policy, and one sentence about what "(s)everal courts have interpreted." The exclusion section of the denial letter lists every exclusion from J to N, which includes "premises you sell, give away or abandon" and "product, work, or property. . . recalled from the market" (neither of which have been suggested as a reason for denial of coverage or defense). There is no distinction made between the listed exclusions, which ones First Financial was relying on (if any) for its denial and which were just thrown in for filler. Nothing is distinguished, nothing explained. None of the exclusions are pointed out as to how they apply to the Lutz house situation or the work done there. There is not a clue as to which of these constitutes the reason for the claim being denied.

The only vaguely directed statement in the denial letter is a single sentence under the heading '" NEW HOUSE AS THE 'PRODUCT OR 'WORK' OF AN INSURED UNDER GENERAL LIABILITY POLICY". It states "Several courts have interpreted newly-constructed homes to constitute the insured's product or "work" under the general exclusion for claims arising from damage to an insured's product." The sentence is followed by a list of citations of cases from other states.

If this is intended to be an explanation of the denial, it means that First Financial was denying Bruington's claim based on an interpretation of the law that is in direct conflict with Alaska law. To the reader, it gives the impression that this is the state of the law without informing him that the Supreme Court of the state in

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)   fax (907) 336-5292

Lutz v. First Financial Insurance Co., Inc.                                    Page 16 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

which he lives and under whose law his policy will be interpreted, has explicitly rejected this interpretation.

In 1999 the Alaska Supreme Court addressed this very question and concluded:

> We are of the view that a "product" under the policy does not include a completed building. Interpreting the term to include a completed building would negate the intended coverage of the broad form endorsement, which is meant to provide protection to completed work when damage arises from the work of a subcontractor.[34]

In accepting this view, the Alaska court explicitly rejected three of the six cases that First Financial cited as support for this contention.

Whether defendant's 'several courts' statement was a purposeful misrepresentation or whether the writer of the letter was ignorant of the Alaska law is unknown. Nevertheless, the Supreme Court of Alaska has made clear that the notice of denial "must provide a reasonable explanation of the basis in the insurance policy in relation to the facts or <u>applicable law</u> for denial of a claim." (emphasis added)[35] First Financial had a duty to Bruington, a policy holder in Alaska, to give him a truthful, accurate representation of the law as it applies to him in Alaska. What it gave him, instead, was so wrong as to be misleading. It breached the "obligation, deemed to be imposed by law. . .(to) act fairly and in good faith"[36] and so violated the Unfair Claim Settlement Practices Act.

Equally significant in regard to the 'several courts' statement, is the definition (<u>not</u> included in the denial letter) of 'your product' in Section V-Definitions of

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

---

[34] *Fejes v. Alaska Insurance Com Inc.,* 984 P.2d 519,526 (Alaska 1999)

[35] *Sauer v. The Home Indemnity Co.,* 841 P.2d 176, 182 (1992)

[36] *Gruenberg v. AETNA Ins. Co.,* 510 P.2d 1032, 1037 (Cal. 1973)

Lutz v. First Financial Insurance Co., Inc.                                                    Page 17 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Bruington's policy; "'Your product' means: a. Any goods or products, *other than real property. . ."* (Emphasis added). The Insurance Service Organization (ISO) added this clarifying language to the standard CGL policy as part of the 1986 revision specifically to avoid future confusion about by clairifing the "your Product" exclusion does not include a completed building.

Before 1986, there may have been a legitimate question about whether the Lutz house fell under the 'your product' exclusion. (It appears that the court decisions in the denial letter were considering the pre-1986 policy language.) But with the policy definition clearly excluding 'real property', there can be no uncertainty. <u>The Lutz house is real property and therefore is not included in the 'your product' exclusion</u>.

It is unlikely that First Financial was unfamiliar with its own policy language. And so it would appear that the attempt to mislead Bruington did not stop with the misrepresentation of the state of the applicable law, but went on to misrepresent the language of the policy itself, implying that his product—the Lutz house—was excluded from coverage. In doing so, defendant violated the first provision of the Unfair Claim Settlement Practices act, which states "A person may not . . . misrepresent facts or policy provisions relating to coverage of an insurance policy".[37] This is a substantial breach of their duties under their policy.

Denial of coverage based on "the general exclusion for claims arising from damage to an insured's product"-- seems now to have been abandoned. In defendant's motion for summary judgement, the Lutz house being excluded from coverage

---

[37] AS 21.36.125(a)(1)

Lutz v. First Financial Insurance Co., Inc.                                    Page 18 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

because it arose "from damage to an insured's product" is never argued, nor even mentioned. However, this does not release First Financial from its attempt to mislead its insured by offering only inapplicable law in its denial letter.[38]

Exactly why Bruington's claim was being denied is not made clear in the denial letter. Neither the exclusion list nor the 'several courts' sentence provides "a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of [Bruington's] claim"[39]. There is <u>no explanation</u> of the basis in the insurance policy, reasonable or unreasonable; there is <u>not one mention of the facts</u> of this particular claim; and the only law given is <u>inapplicable law.</u>

From the letter Bruington could not tell if he was being denied because of a recalled product (if that was <u>not</u> the reason, then why was this exclusion listed in the denial letter?); or because of an independent contractor, (but what contractor?; none was named). And he certainly could not tell that he was being denied because First Financial had decided that it was permafrost melting in the spring that caused the damages and therefore the time of the occurrence was wrong (none of the words-- 'time', 'occurrence', or 'permafrost'-- ever appears in the letter).

The denial letter left the insured without any explanation of the basis in law or fact for his denial of coverage and defense.

Defendant's failure to provide Bruington with a reasonable explanation of the basis for the denial of his claim constitutes a breach of its duties under the policy. Alaska courts[40], as well as the U. S. District Court applying Alaska law[41], have

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291) fax (907) 336-5292

---

[38] *Fejes v. Alaska Insurance Com Inc.,* 984 P.2d 519 (Alaska 1999)
[39] AS 21.36.125(a)(15) Unfair Claim Settlement Practices
[40] *Lloyd v. Fulton,* 2 P.3d 1199; *Sauer v. The Home Indemnity Co.,* 841 P.2d 176 (1992)
[41] *Bellefonte Insurance Co. v Wayson,* 489 F. Supp. 58(D. Alaska 1980)

Lutz v. First Financial Insurance Co., Inc.                                        Page 19 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

applied the remedy of coverage by estoppel where the insurer's breaches were substantially similar to First Financial's breaches. As *Sauer*[42] has determined, "(w)here the insurer does not ...explain the basis for its decision but simply denies coverage, it should be precluded from later arguing that coverage under the policy did not exist."

Therefore, plaintiff asks that defendant's motion for summary judgment be denied.

### Insurer's Lack of Response To Insured's Tender of Defense Estops Coverage Defenses

4.      When Bruington made the request for coverage, First Financial replied with a letter that denied both coverage and defense with a single statement ". . .First Financial Insurance Company has no duty to defend Dean Bruington. . . and will not indemnify it for any settlement or judgment. . ."[43] This letter was dated September 11, 2002. With no possible way of knowing what a future complaint against Bruington may allege, First Financial made the brash and premature decision that it would never owe him a defense. Having once decided to deny coverage, it washed its hands of Bruington and abandoned him forever to his own resources.

Eight months later, Bruington received notice that Lutz had filed a complaint against him. Although he had previously been told that First Financial would not

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)   fax (907) 336-5292

---

[42] *Sauer v. The Home Indemnity Co.,* 841 P.2d 176, 183 (1992)
[43] Exhibit D, Letter of September 11.

Lutz v. First Financial Insurance Co., Inc.                                    Page 20 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

provide him a defense, he performed what seemed, and ultimately was, a futile act. He tendered notice to First Financial.[44] In response, he received NOTHING. [45]

First Financial did not respond to Bruington's tender even though it had obtained a copy of the complaint containing allegations that potentially fell within the policy, and even though its insured was now in immediate need of a defense. The abandonment of Bruington, which it began a year before, was now absolute.

After receiving no response or explanation, Bruington subsequently took up his own defense. He filed a late and 'nonconforming' *pro se* Answer to the Lutz complaint.[46]

First Financial's overall rejection letter, sent eight months BEFORE any complaint was filed, does not, and could not, meet the standards that Alaska law requires. "In determining when the duty to defend arises, '(i)t is the allegation in the complaint that controls.'"[47] A decision to defend or not to defend MUST be based on the allegations in a complaint. Absent the gift of prophecy, First Financial could not have known what a future complaint might allege. Even if it would ultimately have been justified in denying Bruington a defense, it could not have known at the time the September 11, 2002 denial letter was sent. A reasoned decision based on 'the allegation in the complaint' could not possibly have been made before a complaint

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)   fax (907) 336-5292

---

[44] Exhibit L, Admissions, Admitted that jury demand was faxed to FFIC on May 14, 2003 in Defendant's Response to Plaintiff's First Discovery Requests, Request for Admissions #143
[45] Affidavit of Dean Bruington, attached hereto as Exhibit N (Bruington Affidavit) , paragraph #20. The Affidavit of Counsel, attached hereto as Exhibit K, attests to the authenticity of Exhibit N.
[46] *Lutz v. Bruington* Answer attached hereto as Exhibit F. (Bruington's Answer) The Affidavit of Counsel, attached hereto as Exhibit Q, attests to the authenticity of Exhibit F.
[47] *Bellefonte Ins. Co. v. Wayson*, 489 F. Supp. 58 (D. Alaska 1980), quoting *Theodore v. Zurich General Accident and Liability Insurance Co.*, 364 P.2d 51, 55 (Alaska 1961)

Lutz v. First Financial Insurance Co., Inc.                                    Page 21 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

existed. Defendant could not, and did not, provide Bruington sufficient notice of the reasons why defense was being denied.

The denial letter, sent eight months before the complaint against Bruington was filed, can in no way meet the requirements of a response based on the allegations in the complaint. Therefore, defendant neglected to provide Bruington with a reasoned and timely response to his tender of a defense and so breached its duty. Plaintiff asks that defendant's Motion for Summary Judgment be denied because there are genuine issues of material fact that are in dispute regarding coverage by estoppel.

### Insurer's Breach of Duty to Defend Estops Coverage Defenses

5.    Alaska courts have consistently held that "an insurer's obligation to defend and the obligation to indemnify are separate and distinct elements" and that an "insurer may have an obligation to defend although it has no ultimate liability under the policy"[48] If there is any doubt as to whether a claim for relief falls within coverage, that doubt must be resolved in favor of the insured and the insurer must provide a defense.[49]

"In determining when the duty to defend arises, '(i)t is the allegation in the complaint that controls. If it comprehends an injury that may be within the policy, then the promise to defend includes it.'"[50] Since it is 'the allegation in the complaint'

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

---

[48] *Lloyd's & Inst. Of London Underwriting Co. v. Fulton,* 2P.3d 1207; (2000 Alaska) quoting *CHI of Alaska, Inc. v. Employers Reinsurance Corp.,* 844 P.2d 1113, 1117-19 (Alaska 1993); Also see *Afcan v. Mutual Fire, Marine & Inland Ins. Co.,* 595 P.2d 638, 645 (Alaska 1979)
[49] *Starry v. Horace Man Ins. Co.,* 649 P.2d 937, 939 (Alaska 1982)
[50] *Bellefonte Ins. Co. v. Wayson,* 489 F. supp. 58, 60  (1980) quoting  *Theodore v. Zurich General Accident and Liability Insurance Co.,* 364 P.2d 51, 55 (Alaska 1961)

Lutz v. First Financial Insurance Co., Inc.                                    Page 22 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

that triggers the duty to defend (and the Lutz complaint did , in fact, make allegations

that would fall within the First Financial policy coverage), it was impossible for

defendant to have made a reasoned decision regarding its duty to defend when it sent

the denial letter. At the time First Financial denied Bruington a defense, there were no

allegations to defend against, nor would there be for eight more months.

Defendant clearly decided to deny before it could know why it was denying.

Only the allegations in the complaint could have triggered the duty to defend and so

the reason not to defend. When the complaint did in fact contain allegations which

could potentially fall within coverage, defendant did nothing to Bruington's tender.

Allegations in the complaint that did "potentially" fall within policy coverage

include:

> *9. During the excavation of the building footprint and preparation of the gravel pad, excavation subcontractor Mike Shelton was given certain specifications for excavation and fill from Bruington. The subcontractor's work was not performed according to contractor's instructions and specifications.*
>
> *10. The dwelling was completed... by November of 1999....*
>
> *25. ...Bruington failed to design and construct in such a manner that it would be compatible with permafrost and other unstable subsurface conditions...*
>
> *26. Bruington failed in his duty to warn Lutz that...the failure to ascertain subsurface conditions prior to building posed a significant risk of damages and structural failure....*
>
> *27. These failures, and other acts and omissions, have resulted in a structure whose foundation has fallen away from beneath the floors. Gaps of up to 20 inches have developed at some locations...*
>
> *32. Egress doors and windows are nonfunctional...*
>
> *33 Garage floor is slumped...*
>
> *34. Collapse of part or the whole of the two-story structure is a real and present danger...*
>
> *39.c. From the completion of the dwelling through at least the fall of 2001, Bruington continually and repeatedly reassured Luz that gaps, cracks, and other occurrences were normal and expected...* [51]

---

[51] *Lutz v. Bruington* Complaint, paragraphs 9, 10, 25, 26, 27, 32, 33, 34, 39c.

Lutz v. First Financial Insurance Co., Inc.                    Page 23 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax: (907) 336-5292*

First Financial breached its duty when it denied Bruington a defense offhandedly before a complaint was filed, and again when it did NOTHING in response to the complaint that included allegations within or potentially within the policy coverage. Alaska courts have consistently ruled that once that step of abandonment is taken and the obligations under the policy are breached, there is no going back and arguing the coverage issue.[52] By these reckless acts of disregard for its insured, First Financial became "liable for the judgment which ensues even though the facts may ultimately demonstrate that no indemnity is due"[53], as well as costs and attorney's fees.[54]

Plaintiff requests, therefore, that defendant be estopped from now arguing the coverage issue and deny First Financial's motion for summary judgment.

## E.  Insured Bruington Was Prejudiced by Insurer's Breaches

In Lloyd's & Institute of London Underwriting Companies v. Fulton, the Alaska Supreme Court addressed the question of the degree of prejudice that an insured will be required to show so as to trigger the remedy of coverage by estoppel. The court rejected Lloyd's argument that the "draconian rule of presumed prejudice" should not be applied where the insured received an independent defense and where the absence of coverage had clearly been established. Instead, the court held that "in

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

---

[52] *Sauer v The Home Indemnity Company;* 841 P.2d at 182-184 (Alaska 1992); *Bellefonte Ins. Co. v Wayson,* 489 F. Supp. 58(D. Alaska 1980); *Theodore v. Zurich Gen. Accident & Liab. Ins. Co.,* 364 P.2d 51 (Alaska 1961)
[53] *Sauer v. The Home Indemnity Company;* 841 P.2d at 182-184; *Bellefonte Ins. Co. V. Wayson,*489 F. Supp. 58 (D. Alaska 1980)
[54] Id

Lutz v. First Financial Insurance Co., Inc.                                             Page 24 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

order to establish prejudice, Fulton was required to show only that PacMar's conduct caused some harm to the (insureds), not that it changed the outcome of the case."[55]

Under Alaska law, there is a presumption that the insured is prejudiced when the insurer commits substantial breaches of its duties under the policy.[56] The Alaska Supreme Court has made clear that the test for whether an insured suffered prejudice from material breaches is a <u>bright-line</u> as to whether the insured suffered any harm.[57]

Unlike the insureds in *Lloyd's*, Bruington was not provided with a defense. There are no extenuating circumstances that open the door to any argument that Bruington did not suffer "some" prejudice. Therefore estoppel is an appropriate remedy for the breaches of the defendant.

Having been given no explanation of why coverage was being denied and no explanation why a defense was being denied, Bruington had none of the information necessary to protect himself. He could not gather evidence to contest First Financial's decision without knowing what the decision was based on. If he had been told (as defendant now claims) that the damage occurring outside the policy period was a reason for denial, he would have contacted the insurance company with which he held policies after First Financial[58] and perhaps have obtained coverage and/or a defense through them. He also could have made an effort, at the time the foundation was replaced, to search for evidence to prove more clearly the cause and the timing of the

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

---

[55] 2 P.3d 1199,1207,1208 (Alaska 2000)

[56] *Reinsurance Corp CHI of Alaska v. Employers, 844 P.2d 1113(Alaska 1993)*; *Sauer v. Home Indemnity, 841 P.2d 176 (Alaska 1992)* ; *Continental Insurance Co. v. Bayless & Roberts*, 608 P.2d 281, 291 (Alaska 1980)

[57] *Lloyd's v. Fulton*, 2 P.3d 1199, 1208

[58] Exhibit N , Bruington Affidavit, paragraph 13, 14.

Lutz v. First Financial Insurance Co., Inc.                                      Page 25 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

failure.[59] If he had been told that coverage was denied because of the 'your work'
exclusion (as defendant now claims), or because the policy did not cover the work of
subcontractors (as defendant now claims), or if he had been told that the law stated in
the denial letter was NOT the law as interpreted by the Alaska courts, he could have
sought advice from an attorney and perhaps have obtained coverage and a defense.

Instead, Bruington was given nothing but the impression that not only his
insurance company, but the law itself, was against him. His insurer, the party he had
paid to assume that fiduciary duty, had abandoned him.

That abandonment extended to a total black-out of communication in response
to the tender of defense. Bruington did not know if he was being denied a defense
because of some coverage issue or because the allegations in the complaint did not
potentially fall within coverage. Had he known that the reason for not providing a
defense was because First Financial did not believe that there were allegations in the
complaint that fell potentially within coverage (if that is the case), he could have
pointed to those allegations that did, in fact, fall within coverage. Or he could have
sought the help of an attorney. But the total and complete abandonment, to the point
of utter silence in response to his tender and the critical need of defense, left
Bruington uncertain as to how to proceed. When no answer arrived to his tender,
Bruington was left to file a *pro se* Answer to Lutz's complaint that was both late and
nonconforming".[60]

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

---

[59] Once that work had been done, any evidence that may have countered First Financial's claim may
have been loss. This leaves Bruington vulnerable to facing a "spoilation of evidence" jury instruction
from First Financial.
[60] Exhibit F, Bruington Answer.

Lutz v. First Financial Insurance Co., Inc.                                          Page 26 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

E. Notwithstanding Estoppel, Both Law and Material Facts Do Support Coverage

1.    In its motion for summary judgment, Defendant argues three points as to why First Financial policy provides no coverage. They are as follows:

(a)    the defective work to the house was performed by an 'independent contractor' which is not covered by the policy;

(b)    the defective work to the house was performed by Bruington and so fell within the policy exclusion of 'damage to your work'; and

(c)    damage to the house did not occur until after the expiration of the insurance policy.

Insurer's Use of "Subcontractor" and "Independent Contractor" in the Policy Creates Ambiguities

2.    Whether "Bruington's Subcontractor, Shelton"[61], who performed the foundation work, was a contractor or an employee is thoroughly argued by defendant in its motion. However, defendant fails to address the heart of the conflict—the ambiguity arising from mixed uses of the terms subcontractor and independent contractor in the policy.

According to the plain language of Bruington's policy, a subcontractor's work is covered under the completed operations option which the insured purchased for an additional premium of $639[62]. However, an independent contractor's work is not

---

[61] Defendant's Motion for Summary Judgment, page 12

[62] "Damage to Your Work "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged

Lutz v. First Financial Insurance Co., Inc.                                    Page 27 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

covered.[63] No where in the policy are the terms "subcontractor" or "independent contractor" defined. Defendant's argument in its motion for summary judgment does not address the policy's use of these two terms. Defendant does, in fact, refer to Shelton as "Bruington's subcontractor"[64], and then goes on to say that because Shelton is an independent contractor, his work is not covered under the policy.

This implies that defendant considers these two terms—subcontractor and independent contractor—to be synonymous. (Unaccountably, in response to Plaintiff's Request for Admissions, defendant has refused either to admit that this is or is not the case.)[65] But the term subcontractor is used not only under the exception to exclusion L which grants coverage to subcontractor's work. It is also used in Exclusion J where it appears in the same line as the word 'contractors', as if the writer of the policy viewed these two as being different, each needing to be listed separately. Exclusion J Damage to Property states that:

"*Property damage" to:....*

*(5) That particular part of real property on which you or <u>any contractors or subcontractors</u> working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of these operations*; (emphasis added)

From this, it is apparent that First Financial did, in fact, consider subcontractors and contractors to be two different things; it is also apparent that defendant had the ability to list both "contractors" and "subcontractors" when it

---

work or the work out of which the damage arises was performed on your behalf by a subcontractor."
Exhibit A , CGL Policy page 3, exclusion l.
[63] Exhibit A , CGL Policy endorsement BG-G-070 492.
[64] Defendant's Motion for Summary Judgment, page 12.

Lutz v. First Financial Insurance Co., Inc.                                    Page 28 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

intended a particular exclusion from coverage to be all inclusive and free of ambiguity. If First Financial had intended to exclude "subcontractors" in the Endorsement Exclusion for "Independent Contractors" they could have easily have added the explicit term "subcontractors".

In 2000, the insurance industry produced an endorsement which does remove coverage for damages arising from the work of subcontractors.[66] ISO endorsement CG 22 94 EXCLUSION—DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF states :

> *Exclusion 1. of Section 1- Coverage A- Bodily Injury and Property Damage Liability is replaced by the following.*
> *2. Exclusions This insurance does not apply to:*
> *1. Damage to Your Work "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard.*
> Source: ISO Properties, Inc., Copyright 2000

If First Financial had wanted to remove subcontractor coverage from the completed operations policy, it could have done so. As the ISO did in 2000, defendant could have simply excised the language from the policy that granted coverage for subcontractors. Or it could have drafted an endorsement to exclude subcontractor coverage. But it did neither. Instead, defendant now asks this court to presume that is what it really wanted to do. In effect, First Financial is asking the court to interpret the ambiguity of the contract, which it wrote, in defendant's favor.

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAWI (5291)   fax (907) 336-5292

---

[65] Exhibit L, Admissions, Admission # 128 and 129.

[66] However this language was not a part of the policy that Bruington purchased.

Lutz v. First Financial Insurance Co., Inc.                                        Page 29 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Alaska courts have determined, however, that where a clause in a policy is ambiguous in the sense that it is reasonably susceptible to more than one interpretation, the court will accept the interpretation which most favors the insured.[67]

Probably the most-cited rule of interpretation is that an insurance policy is to be construed to provide the insurance coverage that a layperson would reasonably expect from a lay interpretation of policy terms.[68]The insurance policy is to be interpreted in light of the purpose of the policy.[69] The court will not give effect to a policy provision which denies coverage that the insured has contracted for.[70]

First Financial seems to be conflicted about the terms subcontractor and independent contractor. But for Bruington, a hands-on residential contractor, there was no ambiguity about Shelton's status as a subcontractor on the Lutz project.

Lutz hired Bruington as the contractor to build a house, from the site work to the finish on the drywall. Bruington, in turn, hired Shelton and other subcontractors to perform certain aspects of the construction for which <u>Bruington was responsible</u> and had oversight. Bruington was the contractor who was answerable to Lutz; those he hired were the subcontractors who were answerable to him. Bruington was responsible to Lutz not only for his work, but for his subcontractors' work as well.

On the Lutz job, Shelton was a subcontractor hired by the principal contractor to perform a part of the work; he worked under the oversight of the contractor and

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)   fax (907) 336-5292

---

[67] *Bering Strait Sch. Dist. V. RLI, 873* P2d. 1292 (1994); *Fejes v. Alaska Ins. Co.,* 984 P.2d 519 (Alaska 1999); *Burgess Constr. Co. v. State,* 614 P.2d 1380, 1384 (Alaska 1980); *Tush v. Pharr,* 68 P.3d 1239 (Alaska 2003)

[68] *West v. Umialik Ins. Co.,* 3 P.3d 1135, 1138 (Alaska 2000); *Stordahl v. Government Employees Ins. Co.,* 564 P.2d 63. 66 (Alaska 1977); *INA Life Ins. Co. v Bruindin,* 533 P.2d 236, 241 (Alaska 1975); accord *Serradell v. Harford Accident & Indem. Co.,* 843 P.2d 639, 641 (Alaska 1982).

[69] Tenopir V. State Farm Mut. Co., 403 F.2d 533, 536 (9th cir. 1968)

[70] State of Alaska v. Houston Cas. Co., 797 P.2d 1200, 1204 (Alaska 1990)

Lutz v. First Financial Insurance Co., Inc.                                                                    Page 30 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

was answerable to him for the way the job was done. If something went wrong with the way Shelton did the job, it was Bruington who Lutz held accountable. (The *Lutz v. Bruington* litigation proves the point.) Regardless of Shelton's status in any other situation, for the duration of the Lutz job, he was a subcontractor to Bruington.

For the person in the construction industry, who would buy a CGL policy, it is the chain of responsibility that determines the common understanding of the terms 'subcontractor' and 'independent contractor'.

Black's Law Dictionary defines it similarly; a 'subcontractor' is "one who takes portion of a contract from principal contractor or another subcontractor". This is precisely what Shelton did on the Lutz project. He took a portion of the contract from Bruington, the principal contractor. Shelton was not (as defendant quotes Black's Law Dictionary definition of 'independent contractor') "left free" to do the work any way he liked. He was, instead, subject to the oversight of Bruington, the contractor, and answerable to him to do the job as Bruington directed and found acceptable.

Bruington kept a list of local subcontractors, a copy of which his bookkeeper provided Northern Adjusters. When he needed a subcontractor for the Lutz house, he hired one whose name was on the subcontractor list. There is no question that, to Bruington, Shelton was a subcontractor on the Lutz job.[71]

In its motion for summary judgment, defendant has provided the court with four cases[72], based on the applicable law of Pennsylvania, New York and Mississippi, as support for its claim that the language in First Financial's policy excluding work

---

[71] Exhibit N , Bruington Affidavit, paragraph 8.
[72] Federal Kemper Ins. Co. v. Jones, (M.D.Pa. 1991) 777 F. Supp. 405; Mount Vernon FireIns. Co. v. Future Tech Const. Corp., 1997 U.S. Dist LEXIS 10799; U.S. Underwriters Ins. Co. v. Congregation

Lutz v. First Financial Insurance Co., Inc.                                    Page 31 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

performed by "independent contractors" is clear and unambiguous (as excluding work for subcontractors). However, none of these cases are on point. It appears that none of the policies interpreted in these cases includes 'products/completed operations' coverage, which contains the subcontractor coverage, and for which Bruington paid an additional $639. Therefore subcontractor coverage was not explicitly granted in the policies that these other courts reviewed, as it was in Bruington's policy. As a result, these courts never addressed the issue of use of an "independent contractor" exclusion in the context of a policy where an insured has purchased subcontractor coverage for an additional premium.[73]

Bruington expected the words of the insurance contract to mean what they said—subcontractor meant subcontractor. And when he paid an additional $639 for the 'Products—Completed Operations' (broad form coverage), he reasonably expected to be getting for his money what his policy said he was getting, coverage for the work of subcontractors[74].

Alaska's law on the reasonable expectations doctrine is more protective than that of most other jurisdictions. The courts have concluded that "Insurance contracts are contracts of adhesion, and as such will be construed accordingly to principle of reasonable expectations."[75] "An unusual or unexpected term in an adhesion contract

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

---

Kollel Tisereth, 2004 U.S. Dist. LEXIS 19608; Canal Indem. Co. v. Lee's Used Car Sales, (S.D. Miss. 1994) 841 F. Supp. 775

[73] 777 F. Supp. 405, 412 (policy excludes coverage for completed operations); 1997 U.S. Dist LEXIS 10799 (issue involves personal injuries while work was ongoing, not completed operations); 2004 U.S. Dist. LEXIS 19608 (policy's classification code was limited to coverage for "Vacant Building-Not Factory-OTNFP", completed operations coverage is not an issue); 841 F. Supp. 775 (policy is for basic garage liability, issue is injuries suffered in course of performing repossession, completed operations are not at issue)

[74] Exhibit N , Bruington Affidavit, paragraph 6.

[75] *Bering Strait Sch. Dist. V. RLI, 873* P2d. 1292, 1295 (1994); *Fejes v. Alaska Ins. Co.,* 984 P.2d 519 (Alaska 1999)

Lutz v. First Financial Insurance Co., Inc.                                    Page 32 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

which falls outside the weaker party's 'reasonable expectations' will be denied effect against him, unless it has been brought to his attention by express notice, as by clear, plain and conspicuous language on the face of the contract. . ."[76] "The objectively reasonable expectations of (the insured). . . will be honored even though painstaking study of the policy provisions would have negated those expectations."[77]

One of the most obvious advantages for buying the broad form of the CGL policy and paying the extra $639 was coverage for subcontractors' work. Under section L "Damage to Your Product" of the exclusions to Bruington's policy is the statement "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." This exception to the exclusion for 'your work' expressly granted coverage for work performed by a subcontractor.

First Financial's approach seems to be that the completed operations coverage offered no coverage for the insured's work, but only for subcontractors' work, BUT (Catch-22) because First Financial has now decided that subcontractors are the same as independent contractors who are not covered, then there was no coverage for subcontractors either, even though the policy says there is. Therefore, there is no coverage under completed work for either the work of the insured or for anyone else he may have hired to do work.

What then does the 'Products—Completed Operation' cover?

It would seem, in First Financial's view, very little. If anything.

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)   fax (907) 336-5292

---

[76] *Burgess Constr. Co. v. State,* 614 P.2d 1380, 1384 (Alaska 1980)
[77] *Bering Strait,* 873 P.2d at 1295 (Alaska 1994) (quoting Robert Keeton, *Basic Text on Insurance Law* 6.3(a), at 351 (1977)) Accord Fulton v. Lloyds & Institute of London Underwriting Cos., 903 P.2d

Lutz v. First Financial Insurance Co., Inc.                          Page 33 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

*Fejes* disagrees. Unequivocally, the court concludes damages caused by the

operations of a subcontractor were not excluded.[78]

*Fireguard* goes on to explain why, using an excerpt from a National

Underwriters Association publication,

> The usual Completed Operations coverage (no Broad Form
> Property Damage endorsement attached) flatly excludes property
> damage to work performed by *or on behalf of* the named insured
> arising out of the work. Under the usual coverage, then, the insured
> has no insurance whatsoever for damage to a subcontractor's work or
> for damage to his own work resulting from a subcontractor's work.
> Therein lie the advantages of Broad Form Property Damage coverage
> including Completed Operation. Consequently, if an insured does not
> anticipate using subcontractors, the value of purchasing Broad Form
> Property Damage coverage *with Completed Operations* is
> questionable; in view of the additional premium required for it.
> (emphasis added) [79]

Bruington paid an extra premium of $639 for the completed operations/broad

form policy that said that subcontractor's work was covered. Defendant's only avenue

of denying that fact is to say that there is no such thing as a subcontractor, as separate

from independent contractor which is excluded from coverage. But nowhere is this

clear in the policy. Clearly, Alaska courts have ruled that a subcontractor's work is, in

fact, covered by the broad form policy for which Bruington paid an additional $639.[80]

Therefore, the work of subcontractor Shelton was, in fact, covered and could not have

been reasonable justification for denial of coverage.

## 'Your Work' Exclusion Does Not Deny Coverage for Damage to the Lutz House

---

1062, 1068 (Alaska 1995); *Alaska Rural Elec. Co-op Ass'n. Inc. v Insco, Ltd.,* 785 P.2d 1193, 1194
(Alaska 1990).
[78] *Fejes v. Alaska Insurance Com Inc.,* 984 P.2d 519, 525 (Alaska 1999)
[79] *Fireguard Sprinkler Systems v. Scottsdale Inc.,* 864 F.2d 648, 652 (9th Cir. 1988)
[80] *Fejes v. Alaska Insurance Com Inc.,* 984 P.2d 519, 525 (Alaska 1999)

Lutz v. First Financial Insurance Co., Inc.                                    Page 34 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

3.      In its motion for summary judgment, defendant argues that the exclusion of coverage to 'Damage to Your Work' makes any damage to the Lutz house exempt from coverage if it arose from the work of Bruington. Defendant has clearly missed the point. It was not Bruington's work that caused the loss. It was the work of Bruington's subcontractor, Mike Shelton, that caused the loss.

Defendant cites several cases to explain that the work of the insured is not covered, i.e. "but if it was not performed by him [the insured]. .then the exclusion would not apply. *ALPAC*, 794 P.2d at 943"[81], and "the exclusion 'remove[d] coverage as to property damage or work performed by the named insured,' but properly held that <u>damages caused by the operations of a subcontractor were not excluded</u>".(emphasis added)[82] This argument is offered as if to counter a claim that Bruington's work should have been covered (a claim which has never been made by plaintiff), while ignoring the fact that it is the subcontractor Shelton who performed the defective work, and therefore, by the cases cited, the work would not be excluded.

At this point in its argument—the 'Your Work' section of defendant's motion—defendant seems to be tunnel-visioned on the issue of 'your work' (Bruington's work) being excluded, and therefore all coverage being excluded. Defendant's thoughts on the work of the subcontractor Shelton being covered are absent from the section where *Fejes* is quoted, a case which unequivocally decided that damages caused by the operations of a subcontractor were not excluded from coverage under the broad form policy.

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)   fax (907) 336-5292

---

[81] Defendant's Motion for Summary Judgment, page 14
[82] Id.

Lutz v. First Financial Insurance Co., Inc.                                    Page 35 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Since plaintiff has never made the claim that it was Bruington's work that caused the damage to the Lutz house, the defendant's argument on the issue seems to be a moot point and offers nothing toward the resolution of the case at hand.

Property Damage is the Result of Continuous Exposure to Harmful Conditions

4.        Defendant's motion for summary judgment argues that because Eric Lutz did not take notice of cracks in the drywall inside the house until spring of 2000, and Bruington's policy with First Financial's ended on December 8, 1999, damage to the house was not covered by the policy. (Defendant here misrepresents Lutz' words, taken from the original complaint against Bruington, in which he stated that he saw drywall cracking BY the spring, meaning some time before spring; he did not state that he did not see cracking UNTIL spring, as defendant alleges.)

But cracks in the drywall are not the damage that caused Bruington to request coverage from First Financial, nor are they the originating cause of the damage, as Northern Adjuster's investigation verifies. In his July 30, 2002 report, Buness writes "All of the *interior damage. . . .appears to be a result of the concrete footers of this dwelling sinking* for an unknown reason causing the entire dwelling structure to subside." (emphasis added)[83]

Cracks in the drywall are merely a manifestation of the failure of the foundation of the house that occurred some time BEFORE the cracks became noticeable to the homeowner. The drywall cracks constitute one small, but easily

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

---

[83] Exhibit B, Northern Adjusters July 30 Report.

Lutz v. First Financial Insurance Co., Inc.                                      Page 36 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

recognizable, part of the myriad damages that occurred at the Lutz house due to continuous exposure to harmful conditions.

Before cracks appeared in the drywall, the studs of the walls would have had to tilt or twist. Before the studs twisted, the plates of the walls would have moved. Before the plates moved, the floor joists would have shifted. The walls of the foundation would have had to drop before the joists were affected, the footers would have gone askew, and the fill material and the underlying ground beneath the house would have sunk or heaved or altered in some way. This series of events—from the time the footers changed position under the house until there were cracks in the drywall significant enough for Eric Lutz to take notice of—did not take place in a day or a week. It certainly began well before it was noticeable in the living area.[84] By the time the strain on the framing members was so extreme as to tear drywall apart, the change of position of the supporting members beneath the house would have been significant.

This change of position of the underlying support system of the house was not, however, something that a young couple in their first home would be likely to notice. What they would see first would be only the most obvious manifestations of the problem—cracks in the drywall of the living area. Defendant speculates in its motion for summary judgment that it was apparently "the thawing of the perma-frost the following spring that caused the house to shift and crack"[85]. Defendant offers no support for this theory but states only that it "makes scientific sense".[86]

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

---

[84] Exhibit N , Bruington affidavit, paragraph 18.
[85] Defendant's Motion for Summary Judgment, page 12
[86] Id.

Lutz v. First Financial Insurance Co., Inc.                                    Page 37 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Contrary to that theory is what Marsha Henderson (then Lutz) remembers about that first winter in the house. By late winter, early spring, there were not only cracks in the drywall, but doors that would not close properly.[87] Plaintiff would also point out that there is no science to verify defendant's argument, but to the contrary, perma-frost does not melt in the spring (and so the name perma-frost). A more plausible scenario would be that the permafrost began to melt in the fall when heat from the house was transmitted downward, a condition that was begun in October 1999 when the Lutz' moved in.

Was melting permafrost the originating cause of the foundation failure? Probably not. When Bowen Engineering (in the course of replacing the failed footers of the Lutz house in 2003 with a new foundation system) drilled multiple holes to depths ranging from 14 to 28 feet around and beneath the house to insert the system of helical piers, no permafrost was found.

What Bowen Engineering found instead was described in an October 2003 Foundation Repair Closure Report, prepared for Dean Bruington,

> This site appears to have been saturated with water. It is a silt that is relatively impermeable. Over a period of years it looks like the building weight plus (possibly) drying caused the moisture to be forced out leading to a loss of pore pressure and surface settlement.[88]

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

---

[87] Affidavit of Marsha Henderson attached hereto as Exhibit O (Henderson affidavit). The Affidavit of Counsel, attached hereto as Exhibit Q, attests to the authenticity of Exhibit O.
[88] Bowen Engineering's "A Foundation Repair Closure Report" attached hereto as Exhibit P, (Bowen Report) and verified by the affidavit of G.L. Bowen, The Affidavit of Counsel, attached hereto as Exhibit Q, attests to the authenticity of Exhibit P.

Lutz v. First Financial Insurance Co., Inc.                                    Page 38 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Therefore, it is more likely than not that the occurrence of property damage at the Lutz house was that point when the full weight of the completed and occupied[89] house came to bear on its foundation—on the footer balanced on this water- engorged silt sponge. As that weight pressed water out of the pores in the silt soils under the footer, the house's foundation subsided and the house tilted. (It also seems probable that maintaining heat in the crawl space of the newly occupied structure played a contributing role as it evaporated the water.)

Northern Adjuster's report[90] stating that the damage in the living area was a "result of the concrete footers of this dwelling sinking" supports this as a probable cause of the foundation's failure. As does the affidavit[91] of Marsha Henderson which states that damage inside the house was noticeable in the winter of 1999/2000.

Continuous exposure to harmful conditions (i.e. progressive subsidence of the earth beneath the footer due to inadequately prepared excavation and fill) was the occurrence at the Lutz residence, just as in Fejes the "curtain" drain failed by becoming infused with silt caused by "repeated and continuous exposure to conditions."[92]

Therefore defendant's reliance on Makarka v. Great American Insurance Co.,[93] is misplaced. In Makarka the injuries were initiated by an auto accident months

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

---

[89] It was at the point of occupancy by the Lutz's in late October of 1999 that the full weight of all the necessary trappings of a modern, rural Alaska family was added to that of the bare house. These items included household furnishings, appliances, and household goods. It was also at this point that the family vehicles were parked in the attached garage and several hundred gallons of water were pumped into the garage's household water tank and hot water heater.
[90] Exhibit B, Northern Adjusters July 30 Report, page 3.
[91] Exhibit O, Henderson affidavit.
[92] *Fejes v. Alaska Insurance Co*, 984 P.2d 519, 523 (Alaska 1999)
[93] 14 P.3d 964

Lutz v. First Financial Insurance Co., Inc.                                Page 39 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

after the policy expired, unlike the instant case where damage to the structure was progressive from the time of completion.

All evidence points to the damage to the Lutz house being similar in occurrence to the damage in *Gruol Construction Co. v. Insurance co. of North America*[94], as reviewed by *Montrose*[95]. In a similar situation of progressive property damage, "the court held that the injury was a continuous process which began at the time of the negligent construction and continued through the manifestation of the dry rot damage. . . .Thus, the holding of *Gruol* was that, *"when warranted by the facts, property damage should be deemed to occur over the entire process of the continuing injury. An insurer would become liable at any point in the process for the entire loss up to the policy limits. . ."*[96]

As the California Supreme Court stated in the *Montrose Chemical* decision addressing "trigger of coverage" issues,

> third party CGL policies do not impose, as a condition of coverage, a requirement that the damage or injury be discovered at any particular point in time. Instead, they provide coverage for injuries and damages caused by an "occurrence," and typically define "occurrence" as an accident ... including a "continuous or repeated exposure to conditions," that result in bodily injury or property damage during the policy period.... (N)othing about this (standardized CGL policy) language suggests a manifestation or discovery requirement as a prerequisite for triggering coverage. ....
> We therefore conclude that the continuous injury trigger of coverage should be applied to the underlying third party claims of continuous or progressively deteriorating damage or injury alleged to have occurred .... Where, as here, successive CGL policy periods are implicated, bodily injury and property damage which is continuous or progressively deteriorating throughout successive policy periods is

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

---

[94] 11 Wn. App. 632 (524 P.2d 427) (1974)

[95] *Montrose Chemical Corp. v. Admiral Ins. Co.*, 897 P.2d 1, 42 Cal. 4th 645, 677 (1995)

[96] *Montrose* at 678

---

Lutz v. First Financial Insurance Co., Inc.                                    Page 40 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

potentially covered by all policies in effect during those periods.
(internal cite omitted) [97]

All available evidence supports plaintiff's contention that the damage to the
Lutz house was continuous from the time the full weight of the house, with all the
trappings of occupancy including furnishings, vehicles, and filled water tanks, came
to rest upon the improperly prepared excavation and fill prepared by the subcontractor
Shelton.

Dean Bruington, the builder who watched the progression of damages, offers
an affidavit[98] which gives an expert opinion as to when damage began. Defendant's
investigator, Buness, agrees in his report that the damage seen inside the house was
the result of sinking footers[99]. Moreover, Buness pegs the date of loss as October 30,
1999 (though he now asserts that he chose that date arbitrarily). According to the two
people who lived in the house that first winter, damage became noticeable soon after
they took up residence; in late winter, by Marsha Lutz' remembrance[100]; by spring, as
Eric Lutz remembers[101]. (Northern Adjusters report states that Eric Lutz remembered
that drywall cracking began "at an unknown date following occupancy[102]) Plaintiff
also offers an affidavit from Gary Bowen of Bowen Engineering[103]  providing that
firm's expert judgment as to the causes of the damages and detailing the condition of
the underlying soil structure. Bowen's conclusion is supported by Northern
Adjusters' August 30, 2002 report that verifies the presence of "poor soils ... located

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

---

[97] *Montrose* at 645, 664, 689
[98] Exhibit F, Bruington affidavit at paragraph 18.
[99] Exhibit B, Northern Adjuster's July 30 letter
[100] Exhibit O, Henderson affidavit
[101] Exhibit E, Lutz v. Bruington Complaint.
[102] Exhibit B, Northern Adjuster's July 30 Report, page 2.

Lutz v. First Financial Insurance Co., Inc.                                    Page 41 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

to approximately 9' in depth, which would necessitate excavation and installation of the appropriate drainage and compacting type fill".

In contrast to this line-up of factual support for plaintiff's theory that damage did in all probability begin before the expiration of the policy period, defendant offers not a single fact, nothing but its misguided 'scientific sense', in support of its "thawing of the perma-frost the following spring" theory.[104]

The question of when property damage occurred is a genuine issue of material fact; thus, it cannot be decided by the finder of law, but must instead be relegated to the jury. Therefore, it is not an appropriate matter for summary judgment.

### F.   Summary Judgment Evidence

5.      In support of its response, plaintiff includes the following evidence in the attached appendix:

   a.      Affidavits.  The affidavits of:

      i.      Dean Bruington

      ii.     Marsha Henderson

      iii.    Gary Bowen

      iv.     David Buness

      v.      Mike Shelton

      vi.     Tim Cook

   b.      Admissions

      Defendant's Response to Plaintiff's First Combined Discovery

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAWI (5291)   fax (907) 336-5292

---

[103] Exhibit P, Bowen Report.

---

Lutz v. First Financial Insurance Co., Inc.                                    Page 42 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

c.    Documentary Evidence

    i.    Bowen Engineering Report —"A Foundation Repair Closure Report"

    ii.    Commercial General Liability Policy No. F0117G412046

    iii.    First Financial denial letter dated September 11, 2002

    iv.    COMPLAINT, Lutz v. Bruington 3 AN 03 7096 CI

    v.    ANSWER, Lutz v. Bruington 3 AN 03 7096 CI

    vi.    Agreement and Release

    vii.    Assignment of Claim and Right

    viii.    Lutz v. Bruington Summary Judgment Order

    ix.    Lutz v. Bruington Final Judgment

    x.    Northern Adjusters' letter of July 30, 1999

    xi.    Northern Adjusters' letter of August 30, 1999

## G. Conclusion

Motion for Summary Judgment Should be Denied Because Genuine Issues Exist Regarding Coverage by Estoppel.

6.    First Financial breached its duty 1) to provide an adequate investigation, 2) to provide a denial letter reasonably stating the basis of denial, 3) to provide any response to plaintiff's tender of the suit filed against him, and 4) to provide a defense. In these ways defendant has run asunder of every promise to act fairly and in good faith contemplated by Alaska law as regards an insurer to its insured. Now with its

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292

---

[104] Defendant's Motion for Summary Judgment, page 12

Lutz v. First Financial Insurance Co., Inc.    Page 43 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

motion for summary judgment, defendant would have the court allow it to start over again, at the beginning, gathering new evidence to support reasons for denial and, this time, stating what those reasons are.

But Alaska courts have made clear that once the insurer's duties have been breached, it is too late to begin anew. The harm to the insured has been done and no amount of justification on the part of defendant can undo that, or justify it. Once these breaches have been committed, the insurer is estopped from going back and arguing the issue of coverage. And the insurer becomes liable for the damages to the insured caused by those breaches.

Motion for Summary Judgment Should be Denied Because Genuine Issues Exist Regarding Coverage Under the Policy

In support of its argument for lack of coverage under the policy, defendant offers the proposition that its independent contractor endorsement excluded subcontractors work without explicitly saying that it did. Therefore a genuine issue exists as to as to whether excavation subcontractor Shelton is an "independent" contractor. Defendant also offers a permafrost-melting-in-the-spring theory to prove its point that damage occurred outside the policy period; this is both unscientific and unsupported by a single factual piece of evidence. In contrast, plaintiff here proffers an engineering report prepared upon the repair and replacement of the failing foundation, as well as numerous affidavits, to support the proposition that it was the weight of the completed residence bearing on unstable soils that led to progressive deterioration of the dwelling.

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LAW1 (5291)   fax (907) 336-5292

Lutz v. First Financial Insurance Co., Inc.                          Page 44 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Disputed Facts Bar Summary Judgment in Defendant's Favor

Genuine issues of fact exist, both as to whether First Financial is estopped

from arguing coverage, and whether coverage existed under the policy.

For these reasons, plaintiff asks the court to deny defendant's motion for summary

judgment.


Respectfully submitted on December 1, 2005, by


Tim Cook, Attorney for Plaintiff Eric Lutz
Alaska Bar Card # 9007048


**CERTIFICATE OF SERVICE**

I hereby certify that on _12.1.05_____, a true and correct copy of the Plaintiff's
Opposition to Defendant's Motion for Summary Judgment  was mailed to the following on December
1, 2005:

Andrew Guidi
Delaney, Wiles, Hayes, Gerety, Ellis, & Young, Inc.
1007 West 3rd Ave, Suite 400
Anchorage, Alaska


Tim Cook

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

Lutz v. First Financial Insurance Co., Inc.                                    Page 45 of 46
Case No. A04-229-CV (JKS)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment