Andrew Guidi
DELANEY WILES HAYES GERETY
ELLIS & YOUNG, INC.
1007 West Third Avenue, Suite 400
Anchorage, AK 99501
    (907) 279-3581
    (907) 277-1331 fax

Attorneys for Defendant
FIRST FINANCIAL INSURANCE COMPANY, INC.

FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC 19 PM 3: 53

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

ERIC LUTZ, as assignee of
rights of Dean Bruington d/b/a
DB Enterprises,

    Plaintiffs,

v.

FIRST FINANCIAL INSURANCE
COMPANY, INC.

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

No. A04-229 CV (JKS)

**FIRST FINANCIAL INSURANCE COMPANY'S REPLY BRIEF IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

38

## PRELIMINARY STATEMENT

In its Motion for Summary Judgment, First Financial Insurance Company, Inc. ("FFIC") argued that it is entitled to summary judgment as to no coverage for the underlying judgment Eric Lutz obtained through his collusion with FFIC's insured, Dean Bruington, because no "property damage" occurred during the policy period. FFIC met its Rule 56 burden to show, with admissible evidence, that there was no evidence of any physical damage to property during the FFIC policy period. As the party holding the ultimate burden of proof at trial on this issue, Lutz had the burden to show in his opposition, with specific facts, a genuine issue for trial on this issue. But Lutz's Opposition offers no admissible evidence that shows that any physical injury to his house occurred during the policy period. Such evidence should lie within his control. During the final month of the policy period, Lutz lived in that house. But he already has sworn, under oath, that he never observed any physical injury until long after the policy period expired. His former wife's declaration also evidences no damage during the policy period. Lutz' inability meet his burden on this motion compels the conclusion that there is no coverage under the FFIC insurance contract for damage to his house.

FFIC further moved for summary judgment on the grounds that it owed no duty to defend or indemnify Bruington for damages to Lutz' house because all damages were caused either by the work of the insured-contractor (Bruington) who built that house, or by an independent contractor, and such damage caused by either is excluded. Although Lutz sued Bruington (and only Bruington) for damage caused by his work and alleged misrepresentations, Lutz' Opposition now admits that Bruington's work is not at issue here. Plainly it is not, as there is no potential

DELANEY. WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

1

coverage for damages to his work caused by his work, the classic "business risk" excluded under CGL insurance contracts.

But Lutz argues that there could be coverage for damages caused by the work of an independent contractor, M. Shelton Services, Inc. There is no dispute of any material fact as to whether M. Shelton Services, Inc. was an independent contractor. It was. And under the plain language of the insurance contract, there is no potential coverage for damages it caused. The language of the "independent contractor" exclusion plainly states that coverage "does not apply to 'bodily injury,' [or] 'property damage,' . . . arising out of the actions of independent contractors for or on behalf of any insured."

So Lutz argues that the phrases "independent contractor" and "sub-contractor" are ambiguous. Not only are the meanings of these phrases clear, but four courts have held that the "independent contractor" exclusion also is unambiguous. And further, even if Lutz could show a material issue as to whether the meanings are ambiguous, a court only enforces objectively reasonable expectations of intended beneficiaries regarding the meaning of a policy's terms. And Lutz has suggested no reasonable meaning as an alternative to the plain meaning set forth by FFIC, and upheld by four court decisions.

Thus, the Lutz Opposition tries to manufacture coverage by attempting to paint FFIC's fact investigation as wrongful, and then arguing that even if FFIC never covered Bruington for the Lutz suit against him, that FFIC now should be estopped from denying coverage. But the Lutz complaint against Bruington sought nothing potentially covered. It plainly alleged that damages were to the work product of Bruington and were caused by Bruington and Shelton. And it made no allegation of tangible damage to property during the policy period. The creation of

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

2

coverage by estoppel is reserved for horrible offenses by an insurer, far different that FFIC's conduct here. Unlike the facts in the cases on which Lutz relies, FFIC hired an adjuster as soon as it was notified of a claim and did not hire coverage counsel. FFIC investigated the facts, and when it reached a coverage position, promptly told Bruington that there was no coverage and told him why. FFIC issued a prompt, written letter declining coverage for the loss. It did not covertly investigate facts to build a case against Bruington without telling him of FFIC's coverage position. Nor did it violate any attorney-client relationship. Nor did it keep its position secret from him for years. Coverage by estoppel cannot be imposed on FFIC because it owed no duty to defend Bruington and because it conducted a reasonable investigation and promptly, indeed correctly, denied coverage for this loss.

## ARGUMENT

### I.    The FFIC Insurance Contract Does Not Cover Lutz' Judgment Because No Property Damage Sued Upon Occurred During The FFIC Policy Period

As set forth in FFIC's opening memorandum, for there to be any possible coverage under the FFIC Insurance Contract, the property damage to the Lutz house must have occurred during the policy period. The contract defines "property damage" as "physical injury to tangible property" and the insuring agreement flatly states that the insurance applies to "property damage" <u>only if</u> that property damage "occurs during the policy period."[1] Thus, what is relevant is when physical injury to the house occurred, not when allegedly faulty work took place.

In his Opposition, Lutz offers no evidence to show that property damage occurred during the policy period. And under Rule 56(e), as the party holding the ultimate burden of proof at trial on this issue, Lutz "must set forth specific facts showing that there is a genuine issue for trial."

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

3

Otherwise, "summary judgment, if appropriate, shall be entered against the adverse party." Under settled standards, this means that Lutz needed to come forward with sufficient <u>evidence</u> that a reasonable trier of fact could find in his favor at trial.[2] He did not.

It was plainly Lutz' burden to show that his claimed loss falls within the coverage of the FFIC Insurance Contract. Indeed, that principle is so well established that it could be described "as hornbook law."[3] The insured's burden includes every element of a prima facie case of coverage.[4] In particular, "the insured must prove that the policy at issue in the case at hand <u>was in force at the time of the loss</u> by a preponderance of the evidence."[5]

FFIC need not prove the negative – that physical damages did not occur during the policy period. Proof of a negative is impossible and the law does not require it.[6] The burden on FFIC, as the moving party, "may be discharged by 'showing' – that is, by pointing out to the district court – that there is an absence of evidence to support the non-moving party's case."[7] FFIC has

---

[1] Opening Memo at Exh. E, p. 13.

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986).

[3] *Couch on Insurance 3d*, § 254:11 (attached hereto as Exh. O).

[4] *Id.*

[5] *Id.* at § 254:37 (emphasis added). *See e.g., Evergrow Indus. Co. v. Travelers Ins. Co.*, 37 Fed. Appx. 300, 301 (9th Cir. 2002) (insured has the "burden of establishing that the underlying suit raises claims that are potentially covered by the insurance policy"); *Collin v. American Empire Ins. Co.*, 21 Cal. App. 4th 787, 802-803 (Cal. App. 1994) ("the burden is on the insured to bring the claim within the basic scope of coverage").

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (rejecting notion that the moving party must "support its motion with affidavits or other similar materials *negating* the opponent's claim").

[7] *Id.* at 325.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

4

done just that. Lutz cannot offer any evidence that physical injury to his house occurred within the policy period because all of the evidence, including his own admissions, show otherwise.

Lutz's home was completed in November 1999. The FFIC contract expired on December 8, 1999. And, in Lutz's own words, the house first started cracking in "late spring of 2000." Lutz complains that FFIC's evidence purportedly misrepresents his words. (Opp. at p. 36.) But if his sworn statements and court pleadings somehow were "misrepresented," Lutz' chance to explain them was in his Opposition. His silence speaks volumes.

Lutz did submit an affidavit of his former wife who states that she first observed property damage by "late winter." But the FFIC Contract expired before winter even began. FFIC has met its Rule 56 burden to show, with admissible evidence, that there was no evidence of any physical damage to property during the FFIC policy period.

In his Opposition, to try to show a factual dispute, Lutz quotes an engineering report which states that the Lutz site appeared to be saturated with water and has "a silt that is relatively impermeable. Over the years, it looks like the building weight caused the moisture to be forced out leading to a loss of pore pressure and surface settlement." (Opp. at p. 38.) Lutz then speculates that occupation of the house began gradual damage to the house. (*Id*. at p. 39.) But even under Lutz' theory, that just shows a potential for future damage. The FFIC contract only covers actual "physical injury to tangible property" that occurs during the policy period. Lutz' own engineering report makes clear that the damage occurred "over the years," after construction was completed and long after the policy's coverage period had expired.

Lutz has presented no evidence to meet his burden to show that physical injury to the house occurred before December 9, 1999. And he is not aided by the products-completed

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

5

operations hazard.  As the Ninth Circuit explained in *Merritt*,[8] the policy covers property damage "which occurs during the policy period."  And, although the completed operations provision "did extend coverage after construction had been completed," it was "not a promise by [the insurer] to insure the property for an indefinite time after the construction was complete."  Rather, it applies only to property damage that occurs during its policy period.[9]

Bruington got exactly what it paid for.  As the Ninth Circuit explained, the "completed operations hazard" does not extend coverage in perpetuity.  For there to be any coverage under the policy, the property damage or bodily injuries must occur during the policy period.  Here, there is no such evidence.

Lutz argues that the property damage may have been continuous and cites to Washington and California state cases.  (Opp. at p. 40.)  But those cases only dealt with ongoing property damage that occurred during the policy period.  There is no such evidence here.  Here, the contract defines "property damage" as "physical injury to tangible property" and only covers "property damage" if it "occurs during the policy period."[10]  And there is no evidence of any physical injury to Lutz' house during the policy period.  The duty to defend cannot be based on speculation about potential facts.[11]  FFIC is entitled to summary judgment on that basis.

---

[8]  *Aetna Casualty and Surety Company v. Merritt*, 974 F.2d 1196 (9th Cir. 1992).

[9]  *Id.* at 1199.

[10]  Opening Memo at Exh. E, p. 13, emphasis added.

[11]  *Cooper Eng'g, Inc. v. Westchester Fire Ins. Co.*, 126 Fed. Appx. 808, 808 (9th Cir. 2005); *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (Ct. App. 1995).

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

6

## II.    There Is No Actual or Potential Coverage Because All Damages Caused by the Work of Bruington And Shelton Are Excluded

Lutz admits that the "Your Work" exclusion bars any coverage for damages to his house that was caused by the work of Bruington, but argues that damage caused by independent contractor Shelton either is not excluded or is disputed. To do so, Lutz argues that there should be coverage because the meaning of "independent contractor," "subcontractor," or both, is ambiguous. Lutz is wrong because the "independent contractor" exclusion is unambiguous, has been so found by several courts, and the evidence showing that Shelton is an independent contractor is undisputed.

Initially, there is no dispute of any material fact as to whether M. Shelton Services, Inc. is an independent contractor. FFIC's moving papers include an affidavit of its principal, Michael Shelton, which sets forth evidence that makes clear that Shelton was an independent contractor.[12] Lutz offers no contrary evidence. Under the law, M. Shelton Services, Inc. is an independent contractor and Lutz never argues otherwise.[13]  And this court can apply the undisputed language of the exclusion to that undisputed evidence.

Lutz complains that the FFIC contract does not contain express definitions for "independent contractor" or "subcontractor." Lutz would have courts find every word in an contract ambiguous unless it was defined. But that is not the law. Terms in an insurance contract are deemed ambiguous only "if they are reasonably subject to differing

---

[12]  Opening Memo at Exh. A, ¶¶ 2-7.

[13]  *See e.g., Odsather v. Richardson*, 96 P.3d 521, 523 (Alaska 2004).

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

7

interpretations."[14]    And the mere fact that the parties have two different interpretations of the contract does not make it ambiguous.[15]    Rather, ambiguity exists only when the contract, taken as a whole, is reasonably subject to differing interpretations.[16]    Indeed, if a reasonable interpretation favors the insurer and the insured's interpretation would be strained, there is no compulsion to twist the language of the policy to create coverage.[17]

If policy provisions are ambiguous, the court only enforces "the <u>objectively reasonable expectations</u> of intended beneficiaries regarding the [policy's] terms."[18]    Those "objectively reasonable" expectations must be demonstrated by the insured through extrinsic evidence showing that its expectation of coverage "was based on specific facts which make these expectations reasonable."[19]    The court determines the reasonable expectations by looking to (1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions.[20]

---

[14] *CNA Ins. Co. v. Lightle*, 364 F. Supp. 2d 1068, 1069 (D. Alaska 2005), quoting *U.S. Fire Ins. Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979); *Allstate Ins. Co. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir. 1985).

[15] *Jarvis v. Aetna Casualty & Sur. Co.*, 633 P.2d 1359 (Alaska 1981).

[16] *Colver*, 600 P.2d at 3.

[17] *Ellison*, 757 F.2d 1042 at 1044.

[18] *CNA Ins. Co. v. Lightle*, 364 F. Supp. 2d 1068, 1069 (D. Alaska 2005), quoting *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004) (emphasis added); *Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360, 1364 (Alaska 1997).

[19] *Allstate Ins. Co. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir. 1985).

[20] *Lightle*, 364 F. Supp. 2d at 1073, quoting *Teel*, 100 P.3d at 4; *Jones*, 937 P.2d at 1364-1365.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

8

Lutz argues that the "your work" exclusion "grants coverage" to sub-contractors, then the "independent contractor" exclusion then takes it away, so there must be an ambiguity. Lutz is merely shuffling different concepts to try to create an illusion of confusion.

First, the language of the "independent contractor" exclusion itself is clear. It plainly states that coverage "does not apply to 'bodily injury,' [or] 'property damage,' . . . arising out of the actions of independent contractors for or on behalf of any insured."[21] The meaning is straightforward: If any damage arose out of the work of an independent contractor "for or on behalf of" Bruington, then it is not covered.

Second, a comparison of the exclusion to other provisions in the policy shows that the policy is clear. The "your work" and the "independent contractor" exclusions are independent and exclude different things. The "your work" exclusion (Exclusion L), along with the related definition of "your work," unambiguously excludes any "property damage" to Bruington's work that arose out of the work of Bruington. The "independent contractor" exclusion excludes any damage that arose out of the work of any independent contractor. Simply because the work of an independent contractor, hired as a sub-contractor, is not excluded two times does not make either exclusion ambiguous.

Indeed, Lutz' argument (that the "your work" exclusion grants coverage) violates a fundamental principle of contract interpretation. With insurance contracts, coverage comes from the grant of coverage. Exclusions only restrict coverage otherwise granted. Exceptions to exclusions only minimize the exclusion – they do not create coverage.[22] Indeed, under a policy

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

---

[21]  Opening Memo at Exh. E, p. 33.

[22]  *See e.g., Twin City Fire Ins. Co. v. Ennen*, 64 Fed. Appx. 47, 49 (9th Cir. 2003) (exceptions to exclusions do not create coverage); *Stanford Ranch v. Maryland Cas. Co.*, 89 F.3d 618, 626 (9th

9

with an identical "your work" exclusion and definitions identical to the FFIC policy, the insured in *CGU*,[23] made the exact same argument as Lutz – that because the "your work" exclusion did not apply to the faulty work of a subcontractor, then damages arising from a subcontractor's work were covered. The Fifth Circuit flatly rejected this argument, holding that this would convert the liability policy into a surety bond, and that "exclusionary language in the contract cannot be used to create coverage where none exists."[24]

Moreover, it is well-established that "when a rider or endorsement modifies, qualifies, or restricts the terms of the original policy, the rider or endorsement controls.[25] In fact, the reason an endorsement is used in any policy is to override part or all of an included form. And that is why the endorsement adding the "Independent Contractors Exclusion" states at the top of the page, in all capital letters: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE

---

Cir, 1996) (an exclusion cannot act as an additional grant or extension of coverage); *Lamar Homes, Inc. v. Mid Continent Cas. Co.*, 428 F.3d 193 (5th Cir 2005) ("an exclusionary clause can never be said to create coverage where none existed before"); *P. W. Stephens Contractors, Inc. v. Mid Amer. Indem. Ins. Co.*, 805 F. Supp. 854 (D. Haw. 1992) (an exclusion cannot create coverage, but may only serve to restrict and shape the coverage otherwise afforded); *Kim v. National Indem. Co.*, 6 P.3d 264 , 269 (Alaska 2000), overruled in part on other grounds in *Shaw v. State Farm Mut. Auto. Ins. Cos.*, 19 P.3d 588 (Alaska 2001) (exclusion does not create coverage where coverage otherwise does not exist or where the policy specifically excludes it).

[23] *ACS Constr. Co. v. CGU*, 332 F.3d 885, 892 (5th Cir. 2003).

[24] *Id.*

[25] *Couch on Insurance 3d*, § 22:22 (attached hereto as Exh. O). *See e.g., Illinois Farmers Ins. Co., v. Adams*, 144 F.3d 1129, 1131 (7th Cir. 1998); *Burak v. Great American life Ins. Co.*, 836 F.2d 1287, 1290 (10th Cir. 1988), *cert. denied*, 488 U.S. 828 (1988), *St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981).

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3rd AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

10

READ IT CAREFULLY."[26] This endorsement eliminates (and is broader than) the subcontractor exception in the "your work" exclusion.

It is well established that "an insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Bear Fritz Land Co. v. Kachemak Bay Title Agency*, 920 P.2d 759, 761 (Alaska 1996). FFIC exercised its right to eliminate any possible coverage for the work of any independent contractor. In so doing, it chose to undertake no responsibility for damages caused by independent contractors it had not underwritten.

Lutz' argument rests on the third factor, the requirement that Bruington bring forth specific extrinsic facts that show that his subjective understanding was reasonable. Bruington claims that because the "your work" exclusion did not exclude coverage for damages caused by the work of subcontractors, then the independent contractor exclusion must mean less than it says. But it is not objectively reasonable to expect that two different policy exclusions must each exclude the same item. And, for the reasons discussed above, it is not objectively reasonable to expect an exclusion in a policy to grant coverage. The subcontractor exception to the "your work" exclusion just limits that exclusion. It does not grant coverage. Nor is it objectively reasonable to expect an specific endorsement to be modified or limited by an already-included form provision.

Further, Bruington's interpretation, standing alone, is unreasonable. He submits that he "expected" that the independent contractor exclusion only would exclude damages caused by the

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

---

[26] Opening Memo at Exh. E, p. 33.

work of independent contractors who were not his subcontractors. Not only is the policy language clear, but Bruington knew better.

Bruington was only licensed as a specialty contractor (rough and finish carpentry), and not as a general contractor.[27] Alaska Statute 08.18.171 (7) defines "general contractor" to mean "a contractor whose business operations require the use of more than three trades or the use of mechanical or specialty contractors and subcontractors who are under the supervision of the contractor." Alaska Statute 08.18.024 defines "specialty contractors." This statute allows specialty contractors to perform the work of not more than three different trades. It does not permit them to subcontract any work. Thus, Bruington legally could not "sub-contract" with anyone. Not only is the evidence clear and undisputed that Shelton was an independent contractor, but as a matter of law, Shelton could not even be a sub-contractor of Bruington's. Thus, Bruington's "interpretation" of the meaning of the two exclusions is objectively unreasonable.

Fourth, as to "case law interpreting similar provisions," as discussed in FFIC's Opening memo, four cases have found the exclusion to be clear and unambiguous and no cases have held otherwise.[28]

Lutz argues that FFIC should have used a nationally-used exclusion form that would have excluded all damages caused by "subcontractors." But FFIC was under no obligation to select

---

[27] *See* Exhibit P, attached hereto.

[28] *See e.g., Mount Vernon Fire Ins. Co. v. Future Tech Const. Corp.*, 1997 U.S. Dist. LEXIS 10799 (S.D.N.Y.) (Attached to Opening Memo as Exhibit M); *Federal Kemper Ins. Co. v. Jones*, 777 F. Supp. 405, 409-11 (M.D. Pa. 1991); *Canal Indem. Co. v. Lee's Used Car Sales, Inc.*, 841 F. Supp. 775, 779-780 (S.D. Miss. 1994); *U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth*, 2004 U.S. Dist. LEXIS 19608, **18-24 (E.D.N. Y. 2004) (attached to Opening Memo as Exh. N).

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

that form for its proposed contract for Bruington – nor were the insurers in the four cases where the courts found the identical, or nearly-identical exclusion FFIC used to be unambiguous. Indeed, FFIC used an exclusion that was broader than the national form to avoid the very arguments that Lutz now raises. Lutz suggests an interpretation that damages caused by the work of independent contractors <u>who were not</u> "subcontractors" would be excluded, but damages caused by the work of independent contractors <u>who were</u> subcontractors would not be excluded. FFIC closed this very loophole with a broader, tighter exclusion than the other form to make clear that the work of <u>all</u> independent contractors is excluded.

Lutz then argues that if each exclusion means what it says, then coverage is illusory. Numerous courts have looked at the coverage excluded by the business risk exclusions and found otherwise. As explained in the seminal case of *Weedo*,[29] the provisions intend to convey, through the business risk exclusions, that the risk of replacement or repair of faulty goods and works is a non-covered business expense to be borne by the insured-contractor. "The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property <u>other than to the product or completed work itself.</u>"[30] Here, Bruington was covered (among other things) for damage caused to third parties (for instance, damage his work caused to one of Lutz' neighbors). But Bruington was not covered for damages to his own work product.[31]

---

[29]  *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788 (N.J. 1979).

[30]  *Id.* at 791 (emphasis added, internal quotes omitted).

[31]  The *Weedo* court provided the following hypothetical to explain what is and what is not covered. "When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

13

So Lutz argues that coverage exists under the "endorsement for products-completed operations hazard." (Opp. at pp. 27-28.) Although that provision expands some coverage, it does so only by other exclusions limiting themselves based on its definition. For example, under the business risk exclusions, property damage at the location where the insured's operations are on-going are excluded from coverage once those operations are completed. But with the completed operations definition, covered property damage may take place later, all of the way to the end of the policy period.

Finally, in his attempt to argue for additional coverage based on the products-completed operations hazard definition, Lutz argues under cases that were decided under older policies with different language.[32] Not only was the language of the policies different in those cases, but those policies did not include the independent contractor exclusion that is in the FFIC contract. Interpretation of different contractual language does not change the meaning of the language in the contract before the court here.

As the Seventh Circuit has explained, the products-completed operations hazard is a defined term, not a separate grant of coverage. Thus, it "does not operate to provide coverage

---

and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case. The happenstance and extent of the latter liability is entirely unpredictable – the neighbor could suffer a scratched arm or a fatal blow to the skull from the peeling stonework. Whether the liability of the businessman is predicated upon warranty theory or, preferably and more accurately, upon tort concepts, injury to persons and damage to other property constitute the risks intended to be covered under the CGL." *Weedo*, 405 A.2d at 791-792.

[32] *Fireguard Sprinkler Systems, Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648 (9th Cir. 1988); *Fejes v. Alaska Ins. Co., Inc.*, 984 P.2d 519 (Alaska 1999).

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

14

that is not otherwise extended by the policy."[33]   Rather, its effect is to extend the policy's already-existing coverage, by restricting the scope of certain exclusions that would otherwise apply to certain completed work.   In accord, the Tenth Circuit properly recognized that it is "not a coverage provision" and could not create additional coverage beyond that provided for in the coverage provisions.[34]   Similarly, the Second Circuit set forth that the effect of the provision is that "once work is completed by an insured, damage that thereafter occurs to the work itself is not covered by the policy, . . . [but] consequential damages to property outside the work product arising from completed operations are not excluded."[35]

In the end, Lutz' argument falls just as the insured's argument fell in *Jones*[36] – because the purported expectation of coverage of the insured is objectively unreasonable.  In *Jones*, the issue was whether a homeowner's policy, which covered bodily injury and property damage flowing from the use of motor vehicles on the insured premises or on any adjacent premise used by the insureds in connection with their property, covered injuries that happened four-tenths of a mile from the insured's residence on an access way that immediately adjoined the residence.  The insureds insisted that they "expected" that the site was covered because the road immediately adjoined their property, and was "immediately adjacent" to land they used in connection with

---

[33] *Sokol & Co. v. Atl. Mut. Ins. Co.*, 2005 U.S. App. LEXIS 25672, *16 (7th Cir., Nov. 25, 2005) (Attached hereto as Exh. Q).

[34] *VBF, Inc. v. Chubb Group of Ins. Cos.*, 263 F.3d 1226, 1232 (10th Cir. 2001).
[35] *Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 308 (2nd Cir. 2005), quoting *Gulf Fleet Marine Operations, Inc. v. Wartsila Power, Inc.*, 797 F.2d 257, 260 (5th Cir. 1986).

[36] *Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360, 1364 (Alaska 1997).

DELANEY, WILES, HAYES, GERETY, ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

15

their home.[37] But the Alaska Supreme Court found that the insured <u>could not have reasonably expected</u> that damages at that location were covered. Even though the insurance policy contained "no express geographical limit on the expansive definition of the insured premises," the court held that an insured's "reasonable expectations would have included such a limit."[38]

Here, the reasonable expectations of the insured would not include coverage for damage caused by independent contractors, no matter who retained them. The policy language flatly excludes it. And the entire premise of the business risk exclusions was to exclude coverage for anything within the scope of the insured's contracts. Otherwise, the insurance contract would be turned into a performance bond – a product Bruington could have purchased instead on the open market, but did not.

## III.  Imposition of Coverage By Estoppel Is Unfounded Under the Facts and the Law

The Lutz Opposition tries to manufacture coverage by attempting to paint FFIC's fact investigation as wrongful, then claiming that even if there were no coverage, FFIC should be estopped from denying it. Lutz is wrong for numerous reasons. FFIC's fact investigation was proper and its denial letter was timely. It correctly told Bruington that there was no coverage and the reasons why. Bruington could not have believed that FFIC thought otherwise, or wondered what FFIC's conclusion was.

Nor does the law support a finding of estoppel. For estoppel to apply, four necessary elements must be met: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to

---

[37] _Id_. at 1362-1363.

[38] _Id_. at 1363-1364.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

16

believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."[39]   Generally, absent exceptional misconduct of an insurer, those courts that extend insurance coverage where none exists based on estoppel require that "the insurer, with knowledge of the facts and without reservation of rights, assumes an obligation to defend and later disclaims it.  But this result depends on a showing by the insured that it relied to its detriment on the insurer's acceptance of an obligation to defend.[40]

Lutz relies heavily on the decisions in *Sauer*[41] and *Lloyd's*[42] to try to create coverage where none exists through estoppel.  But the facts here are nothing like the facts in those cases.  In *Sauer*, the insurer hired an independent adjuster to investigate a claim, as did FFIC here.  But that's where any similarity ends.  In *Sauer*, a lawsuit against the insured was pending at the time of the coverage investigation.   The insurer hired coverage counsel and reached a coverage position.  But it had its investigator close its file, and it did so as well, without ever telling the insured its coverage position.  In fact, it <u>never</u> told the insured of its position <u>for five years</u>.  Here, by contrast, FFIC hired an adjuster as soon as it was notified of a claim and long before any lawsuit had been filed.  It did not hire coverage counsel.  FFIC investigated the facts, and when it reached a coverage position, promptly told Bruington that there was no coverage and told him why.  FFIC sent a letter conveying that declination.  It did not keep its position secret.

---

[39] *O'Neill Investigations, Inc. v. Illinois Employers Ins.*, 636 P.2d 1170, 1177-78 (Alaska 1981), quoting *Bequette v. National Insurance Underwriters, Inc.,* 429 F.2d 896, 900 (9th Cir. 1970).

[40] *O'Neill Investigations*, 636 P.2d at 1178 (citations omitted).

[41] *Sauer v. Home Indem. Co.*, 841 P.2d 176 (Alaska 1992).

[42] *Lloyd's & Inst. Of London Underwriting Cos. v. Fulton*, 2 P.3d 1199 (Alaska 2000).

DELANEY. WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

17

Nor is this case anything like *Lloyd's*. In *Lloyd's*, the insured tendered a claim to the insurer. An obvious coverage issue was recognized immediately – whether the incident on the high seas had occurred within the coverage area. The insurer investigated the facts and decided there was probably no coverage. But rather than informing the insured (as FFIC did), it hired a coverage attorney and had a draft reservation of right letter prepared, but <u>did not send it to the insured.</u> The injured party then sued the insured and the insured was represented by counsel. The insurer continued its coverage investigation through a private investigator hired by its own coverage counsel. That investigator then questioned the insureds about the facts to build a case against the insured – even though the insured was represented by counsel – all without letting the insured even know that a coverage decision had been made or letting his counsel know that his clients were being interviewed. As the trial court put it, the insurance company "continued to investigate, covertly building a case against the insured, without the presence of counsel." Finally, more than a month after drafting the reservation of rights letter, the insured was informed of the insurer's coverage position.

On these extreme facts, the Alaska Supreme Court held that estoppel could be applied due to multiple flagrant violations of the insurer's duties. The Court specifically found that once an insurer has reason to believe that there are coverage issues, it cannot keep getting information from the insured without first notifying it of those issues. Further, because the insurer in *Lloyd's* "continued to investigate, covertly building a case against the insured, without the presence of counsel," it found that the insurer "had impaired the [insureds'] right to a conflict-free defense at an earlier stage of the process by precluding [the insureds'] attorney from participating during

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

18

[the investigator's] interview [of the insureds] about coverage."[43]   Based on these two serious violations of contract and trust, the Court found that an insurer's breach of the duty to defend was a material breach that estopped a denial of coverage unless the breach had "no adverse impact on the relationship between the insurer and the insured."[44]

These cases do not stand for the extreme proposition that a breach of the duty to defend estops the insurer from denying coverage. Estoppel was founded on highly egregious conduct far worse than a breach of the duty to defend. Alaska law has long recognized that the duties to defend and indemnify are separate contractual duties and that an insurer's breach of the duty to defend does not mandate a finding of a duty to indemnify.[45]  In fact, three years after *Lloyd's* was decided, the Alaska Supreme Court reiterated this very principal in *Great Divide.*[46]   There, insurers had denied any duty to defend or indemnify and, as here, the insured settled with the underlying plaintiff. That plaintiff then sued the insurer as an assignee. The court found that the "insurers are not precluded from litigating the defenses they relied on in denying coverage, or reserving their rights to disclaim coverage, or other issues pertaining to whether they have breached their obligations."[47]

FFIC did not breach any duty to Bruington. And even if the Court were to find otherwise, the breach would have had "no adverse impact on the relationship between the insurer and the

---

[43]  *Id.* at 1207-1208.

[44]  *Id.* at 1209.

[45]  *See e. g., Afcan v. The Mutual Fire, Marine and Inland Ins. Co.*, 595 P.2d 638, 647 (Alaska 1979).

[46]  *Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 606 (Alaska 2003).

[47]  *Id.* at 609.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

19

insured." When Bruington first told FFIC of Lutz' claim, there was no pending suit. FFIC's adjuster investigated the facts. FFIC did not even hire coverage counsel. When FFIC learned the facts, it promptly told Bruington that there was no coverage, and why.

Unlike in *Lloyd's*, FFIC did not covertly investigate facts to build a case against Bruington without telling him of FFIC's coverage position. Nor did it violate any attorney-client relationship. And once it saw that there was no potential coverage, it did not keep its position secret. It told Bruington there was no coverage and stated the basis. It did not hire coverage counsel, secretly decide on a lack of coverage, and then interview Bruington outside the presence of his counsel in order to build its coverage case.

After FFIC denied the claim, Bruington never asked any questions. He never complained. He never provided FFIC with any new evidence. And he never gave FFIC any reason to think that its position was wrong. In fact, it was correct.

Lutz complains that FFIC's denial letter failed to meet some strict standard and argues that Bruington could not tell why FFIC denied coverage from its denial letter. (Opp. at p. 19.) Lutz seems to think that a denial letter needs a dissertation of facts, the law, and an analysis of the insurance contract. But that is not the law. Rather, the "insurer must give the insured such notice of its intention to deny liability and of its refusal to defend as will give the insured a reasonable time to protect himself. This notice must also provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim."[48] The reason for the notice is "to avoid prejudice to the insured which may result from delays in the insured undertaking its own defense or from delays in gathering evidence essential to

DELANEY, WILES, HAYES, GERETY, ELLIS & YOUNG, INC. SUITE 400 1007 WEST 3RD AVENUE ANCHORAGE, ALASKA (907) 279-3581

---

[48] *Jones v. Horace Mann Ins. Co.,* 937 P.2d 1360, 1360 (Alaska 1997) (citations omitted).

successfully challenge the denial of coverage or a defense."[49]  In *Jones*, because the denial letter "put plaintiffs on notice of the grounds for denial and did not hinder them in gathering evidence to challenge the denial of coverage," it passed scrutiny.[50]  As the *Jones* court recognized, this was far different than in *Sauer*, where the insured was not told of the denial of coverage for five years.  FFIC's denial letter did just as it was supposed to do – it told Bruington FFIC had denied the claim, told him why, and told him long before he could incur any prejudice from any litigation delay.

Lutz also complains that FFIC did not "investigate" if Shelton was an independent contractor.  But damage caused by the work of Bruington or work by <u>any independent contractor</u> was excluded.  Lutz also complains that FFIC's denial letter did not re-state the facts.  But this was not a situation where the facts were obscure.  Bruington knew who did the construction and when the damages were first noticed and reported.  And he knew all about the reported extent of his construction defects.  In fact, long before FFIC was ever notified, Lutz reported the problems to Bruington, who even made repairs.  And if Bruington had ever had even a remote concern about coverage, he had every opportunity to contact FFIC.  But he never did.

Months later, Bruington sent FFIC a notice of jury demand (regarding the underlying suit) and promised to send FFIC "any further information we receive," as required under the insurance contract.[51]  He never did.  But even if he had, because the Lutz complaint raised no potential of coverage and introduced no new facts, there was no duty to defend.  That duty arises only when

---

[49]  *Id.*

[50]  *Id.* at 1365.

[51]  Bruington's fax to FFIC (attached hereto as Exh. R); Opening Memo at Exh. E, p. 20-21.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

21

the face of the underlying complaint "alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy," or facts showing policy coverage "are known or reasonably ascertainable by the insurer."[52]

The Lutz complaint sought nothing potentially covered. It alleges no facts that give rise to potential coverage. Quite the reverse. Lutz' complaint plainly alleges that damages were to the work product of Bruington and caused by Bruington and Shelton. And it plainly makes no allegation of tangible damage to property during the policy period. Rather, it alleges that it was not until "the late spring of 2000, [that] some minor hairline cracks had appeared in the interior plaster finish."[53] Further, Lutz' claimed causes of action were for breach of warranties (founded on Bruington's work) and for alleged misrepresentations that defects in the work would be cured. None is potentially covered. And by the time Lutz filed suit against Bruington in 2003, FFIC already had told Bruington that there was no coverage for Lutz' claims under the policy. None of the facts concerning the potential for coverage had changed. How could they? That the damage to Lutz' house was caused by the work of the insured and independent contractors was well-understood. And nothing could change when the tangible property damage occurred. There is no duty to investigate claims that present no possibility of coverage.[54] And the allegations of the complaint, as well as the known facts, raised no duty to defend.[55]

---

[52] *Fejes v. Alaska Ins. Co., Inc.*, 984 P.2d 519, 522 (Alaska 1999)

[53] Opening Memo at Exh. B, ¶ 11.

[54] *Continental Cas. Co. v. Richmond*, 763 F.2d 1076, 1083-84 (9th Cir. 1985) (noting that any other result would penalize the insurer for its correct judgment in denying coverage).

[55] *Fejes v. Alaska Ins. Co., Inc.*, 984 P.2d 519, 522 (Alaska 1999).

Because FFIC did not breach any duty to defend Bruington, it cannot be estopped to deny coverage. That is the law. But even if this Court holds that there was a duty to defend, no purported breach had an "adverse impact on the relationship between the insurer and the insured." FFIC did not undermine an attorney-client relationship. Nor did it delay sending its coverage position to exploit Bruington and obtain facts Bruington was not required to provide.

Further, other elements of estoppel are absent. Bruington was not "ignorant of the true facts." He knew all of the facts before FFIC. Nor could he have relied on FFIC's denial "to his injury."[56] Bruington cannot show any actual injury from FFIC's purported breach of duty. How could he be harmed? There was no coverage and no duty to defend. So Lutz now claims that FFIC's decision stopped Bruington from giving notice of the Lutz claim to Bruington's other insurers. Under those insurance contracts, Bruington must have had a legal duty to notify his insurers of any claim or suit promptly. There is no evidence on this motion as to the terms of other insurance policies. They may well have covered damages caused by independent contractors. Or not. But it is unreasonable as a matter of law for Bruington to "rely" on the lack of coverage under FFIC's policy to justify the breach of duties he contractually owed to different companies. If Bruington owed a contractual obligation of notice to other insurers, he was at all times free to honor those by tendering the loss.

The creation of coverage, when there otherwise is none, is rightly reserved for horrible offenses and the most extreme misconduct, as in *Sauer* and *Lloyd's*. Imposition of coverage by estoppel here would encourage plaintiffs and defendants to collude to generate a judgment without a controversy, with a goal of gaining riches through a game of "gotcha" with the

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

23

defendant's insurer, claiming that anything done, or not done, was a critical violation of a duty. Indeed, that is exactly what Lutz is attempting to do here. It is wrong under the facts and wrong under the law. There is no basis for estoppel. FFIC's motion for summary judgment should be granted.

## **CONCLUSION**

For each of the foregoing reasons, the Court should grant First Financial's motion for summary judgment.

DATED at Anchorage, Alaska this 19ᵗʰ day of December, 2005.

DELANEY, WILES, HAYES,
GERETY, ELLIS & YOUNG, INC.
Attorneys for Defendant

Andrew Guidi  837217/1

**CERTIFICATE OF SERVICE:**
This certifies that I am an authorized agent of Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc., for service of papers pursuant to Civil Rule 5, and that on the 19th day of **December, 2005**, I caused a true and correct copy of the foregoing to be ☐-**FAXED**; ☐-**HAND-DELIVERED**; ☑-**MAILED F/C MAIL** to the following:

**Plaintiffs**
Tim Cook
Attorney at Law
3901 Taiga Drive
Anchorage, Alaska   99516

Donna K. Daniels/111828

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

---

[56] *O'Neill Investigations, Inc. v. Illinois Employers Ins.*, 636 P.2d 1170, 1177-78 (Alaska 1981); *Lloyd's & Inst. Of London Underwriting Cos. v. Fulton*, 2 P.3d 1199, 1207-1208 (Alaska 2000).