2000 U.S. Dist. LEXIS 15799, *

LEXSEE

JAY D. GORDON and SHEILA GORDON, Plaintiffs, v. NORTH AMERICAN COMPANY FOR LIFE AND HEALTH, et al., Defendants.

Civil No. 99-1964-E(NLS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

2000 U.S. Dist. LEXIS 15799

September 13, 2000, Decided
September 14, 2000, Filed, Entered

**DISPOSITION:** [*1] Defendant's motion for summary judgment [# 11] granted. Plaintiffs' motion for leave to amend the complaint [# 15] denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] A party is entitled to summary judgment if the pleadings and other documents show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). The opposing party must set forth specific facts showing there is a genuine issue for trial.

*Contracts Law > Types of Contracts > Implied-in-Law Contracts*
[HN2] A contract may include an implied in law provision based on the parties' longstanding and well established course of conduct.

*Insurance Law > Claims & Contracts > Unfair Business Practices*
[HN3] A tort may arise when an insurer unreasonably delays or withholds payment of benefits.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress*
[HN4] To state a claim for emotional distress, a plaintiff must show the elements of outrageous conduct by defendant, plaintiffs' suffering severe or extreme emotional distress, or any proximate cause between the two.

*Torts > Damages > Punitive Damages*
[HN5] Punitive damages are available when the defendant has been guilty of oppression, fraud, or malice. Cal. Civ. Code § 3294(a).

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN6] The liberal standard of Fed. R. Civ. P. 15(a) states that the court may grant leave at any stage of the proceedings when justice so requires. The United States Court of Appeals for the Ninth Circuit does not allow a district court to deny a motion for leave to amend on the ground of the parties' delay by itself.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN7] Fed. R. Civ. P. 15(a) governs the part of a leave to amend based on existing facts; while Fed. R. Civ. P. 15(d) governs the facts that have occurred since the complaint was filed. A district court may deny leave to amend where there is any apparent or declared reason for doing so, including undue delay, undue prejudice to the opposing party or futility of the amendment.

EXHIBIT A
Page 1 of 6

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN8] In the exercise of its discretion, a district court may properly consider the delay in raising the desired amendment to the pleadings, whether there is a pending summary judgment motion, and the futility of the proposed claims. A motion for leave to amend brought after the parties have conducted discovery and after a pending summary judgment motion has been fully briefed weighs heavily against allowing leave. A motion for leave to amend is not a vehicle to circumvent summary judgment.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN9] A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint. Although delay alone provides an insufficient ground for denying leave to amend or supplement, it remains relevant.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN10] Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN11] A motion to amend should not be granted if the amendment could be defeated on a motion for summary judgment.

**COUNSEL:** For JAY D GORDON, SHEILA GORDON, plaintiffs: Kyle M Van Dyke, Hurst and Hurst, San Diego, CA.

For NORTH AMERICAN COMPANY FOR LIFE AND HEALTH, defendant: Robert D Phillips, JR, Fleming and Phillips, Walnut Creek, CA.

**JUDGES:** WILLIAM B. ENRIGHT, Judge, United States District Court.

**OPINIONBY:** WILLIAM B. ENRIGHT

**OPINION:**

### MEMORANDUM DECISION AND ORDER

### BACKGROUND

Plaintiffs Jay and Sheila Gordon are both licensed insurance agents and Jay Gordon is an attorney. In 1987, they each purchased a life insurance policy from defendant. The death benefit was adjustable. The insurance contract permitted the policyholder to surrender the policy for its cash value. The surrender could be full (which would terminate the life insurance policy) or partial.

Over the years, Gordon called customer service to request information about the value of the policies based on a number of hypothetical scenarios. n1 Ex. E to Helms Decl. There is no evidence as to number of requests or the precise nature of all but two of them. Jay Gordon Depo 45-46. A letter from the insurance company [*2] characterizes them as "numerous extraordinary requests" and refers to the Gordons' "history of making unique, time consuming requests regarding their policies." Ex. E to Helms Decl. The insurance company would attempt to comply with the requests for information, though at times they would be unsuccessful. The policies do not contain a contract term requiring the company to provide policy illustrations of projections, though it attempted to provide them in the spirit of customer service. Helms Decl. P 4.

n1 Jay Gordon contacted the company. Sheila Gordon had no actual contact with them, except to review the letters sent to her husband. Therefore, the court uses "Gordon" to refer to the husband.

The complaint is based on a customer service request in January 1999. As part of his annual financial review, Gordon considered surrendering all or some of the cash value in the two life insurance policies (by then, the combined value was approximately $ 500,000), so that he could earn a higher rate of return in another [*3] investment. In particular, he had decided to buy a standard annuity contract that was based on the Standard & Poor

EXHIBIT A
Page 2 of 6

Index. Gordon Decl.; Gordon Depo. 59. In preparing for that decision, Gordon called customer service and requested "illustrations that involved specific scenarios as opposed to simply a cash withdrawal" of the cash value. Gordon Depo. 59. He asked for illustrations regarding the premiums required to maintain the insurance coverage if they were to withdraw all or part of the accumulated cash value from the policy (to place in another investment), and then subsequently reinvest those sums back into the policy. Complaint P 9.

Between January and April 1999, Gordon telephoned the insurance company several times to inquire about his request. The company provided Gordon with partial information, but cautioned that it may take some time to find the ultimate answer. When the customer service agent was unable to complete the project, the request was referred to a supervisor. Gordon Depo. 65. At all times, the employees were polite and professional with Gordon. Gordon Depo 71-74. The insurance company gave a variety of reasons for its inability to satisfy the request completely. [*4] For example, they stated their computer software would not operate to provide the type of information requested, or that they were waiting for computer upgrades.

The parties dispute whether Gordon informed the company that time was of the essence. Compare Gordon Depo. 65 ("I told him that I had other plans for the money and that there was no reason for this to be delayed as long as it had been.") with Ex. E to Helm Decl. ("Mr. Gordon never lead Midland's representatives to believe that time was of the essence and it was not until April 29, 1999 that Mr. Gordon expressed his concerns about Midland's inability to respond to his request.").

In April 2000, the insurance company determined that it would not, after sincere effort, be able to provide the requested information, and the company informed Gordon that it could not provide accurate information. Gordon complained that the insurance company's delay and internal problems had "deprived him of reasonable use of his funds" since January, and he requested compensation. The company offered to waive the cost of insurance for those four months (about $ 4,000), but Gordon "demanded $ 10,000 plus the right to move to other insurance [*5] products not authorized by their policies." Ex. E to Helm Decl. In an effort to settle the matter, the insurance company offered to waive the premiums on both insurance policies for a full year. Id. Plaintiffs were not satisfied with the offer and instead filed this lawsuit.

In the complaint, the Gordons allege the insurance company breached its promise to provide the illustrations. The complaint includes claims for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, and intentional infliction of emotional distress. They seek punitive damages. The insurance company moves for summary judgment on each of the counts.

Discovery closed in August, and the pretrial conference is set for November 6, 2000. The time to seek leave to amend expired in April 2000, but plaintiffs move for leave to amend the complaint to add two counts.

**DISCUSSION**

**I. SUMMARY JUDGMENT**

[HN1] A party is entitled to summary judgment if the pleadings and other documents show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). The opposing party must set forth specific facts showing there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). [*6]

**A. Breach of Contract Claim**

Defendant seeks summary judgment on the breach of contract claim because there is no term in the policy that requires the company to provide policy illustrations of projections upon request. The employees attempted to comply with Gordon's "frequent and demanding policy service requests [but] they found they could not provide accurate detailed answers to his hypothetical questions." Defendant's Brief at 8. The company admits that it was unable to provide the "complicated projections and illustrations requested" but it did not have the software, its own software failed to generate accurate projections based on the variety of factors (e.g., tax laws) involved in Gordon's hypothetical.

The insurance company emphasizes that, at all times, the Gordons had the unimpeded right to withdraw any or all of the accumulated cash value from the life insurance policy. No one at the

company took any action to prevent the Gordons from exercising that right, nor did they try to persuade them not to exercise it. It was solely a decision for the Gordons to make. As such, the alleged breach of contract is not actionable.

In opposition, the Gordons argue that [*7] the insurance contract includes [HN2] an implied in law provision based on the parties' longstanding and well established course of conduct regarding the policy illustrations. Turner v. Donovan, 3 Cal. App. 2d 485, 487-88, 39 P.2d 858 (1935). The implied contract term developed because of the uniform practice over nine years in which Gordon would request policy illustrations, and the insurance company would provide them. Varni Bros. Corp. v. Wine World, Inc., 35 Cal. App. 4th 880, 887, 888 (1995). The insurance company admits that it maintains and updates its computer software expressly for the purpose of creating policy illustrations when requested by insureds. Helms Decl. P 6, 7. The facts show that defendant failed in that obligation, thus, a breach of contract claim exists.

The court is fully persuaded by defendant's position. Plaintiffs have not presented sufficient evidence to support their theory that the insurance company had a contractual obligation to provide policy illustrations. Plaintiffs attempt to convert a courtesy into an enforceable contract. That the insurance company had once been able to provide plaintiffs with detailed, additional [*8] information concerning their financial implications of their life insurance policies does not create a contractual obligation to do so.

### B. Covenant of Good Faith and Bad Faith Claims

[HN3] The second and third claims are for torts that arise when an insurer unreasonably delays or withholds payment of benefits. Silberg v. California Life Ins. Co., 11 Cal. 3d 452, 461-62, 113 Cal. Rptr. 711, 521 P.2d 1103 (1974). The court agrees with defendant that these tort claims fail because no policy benefits are due, and the company has not unreasonably delayed the payment of any such benefits. Moreover, the record is devoid of any indication of bad faith conduct by the insurance company. Plaintiffs complain about customer service requests -- despite the evidence that the insurance company devoted substantial resources and good faith in attempting to satisfy the plaintiffs' particular demands.

### C. Emotional Distress

Defendant moves for summary judgment on this claim because plaintiffs have no evidence to support [HN4] the elements of outrageous conduct by defendant, plaintiffs' suffering severe or extreme emotional distress, or any proximate cause between the two. [*9] Fletcher v. Western Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 394, 89 Cal. Rptr. 78 (1970). The court agrees. There is no evidence that the insurance company's conduct was "so extreme as to exceed all the bounds that are usually tolerated in a civilized community." By contrast, the record shows that the insurance company acted professionally in all regards. Gordon testified that the employees were courteous. Gordon Depo. 85-86. The record shows the company attempted to respond, kept Gordon up to date on its progress and problems in meeting the request, and ultimately waived his premiums for a full year when it was unable to satisfy the request. E.g., id. at 71-74. Second, there is no evidence of any "substantial or enduring" emotional distress. Id. Gordon testified merely that he felt "anxiety," and that he worried. Gordon Depo. 105-06. Third, there is no evidence of proximate cause. Jay Gordon his doctor began prescribing medication in 1998 -- before this encounter. Id. at 109. He stated that he had never been able to sleep well. Id. at 110. Sheila Gordon testified that she had been upset about the deaths of her parents. Sheila Gordon Depo. 11-15, 25-26. [*10]

### D. Punitive Damages

The complaint seeks punitive damages. [HN5] Punitive damages are available when the defendant has been guilty of "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Here, there is no evidence of a simple tort, let alone malicious conduct. The evidence shows a company that conscientiously tried to accommodate a demanding customer, and politely told him they were unable to provide the information he wanted. The court agrees with defendant that the plaintiffs cannot recover punitive damages.

### II. MOTION TO AMEND AND SUPPLEMENT COMPLAINT

Plaintiffs move to amend the complaint with a

Case 3:04-cv-00229-TMB    Document 41-2    Filed 01/09/2006    Page 5 of 6

2000 U.S. Dist. LEXIS 15799, *                                    Page 5

new legal theory. The torts of negligent and intentional interference with prospective advantage are largely supported by the existing facts, and thus would not require any new discovery. The torts are also supported by recent facts that have occurred when the insurance company allegedly retaliated against the Gordons' contract suit by interfering with a business relationship. Specifically, the proposed amended complaint would add allegations that the Gordons were negotiating with another agent to merge their insurance offices. A subsidiary of defendant allegedly [*11] terminated its agency relationship with the Gordons based on an accusation that they were improperly giving their clients discounts on the sales commission. Once the prospective business partner learned of the allegation of improper sales practices, he cut off negotiations with the Gordons.

Plaintiffs' counsel offered to stipulate to the amended complaint in exchange for dismissal of the four claims now involved in the summary judgment motion. When defendant refused, plaintiffs filed this motion. Plaintiffs argue they meet the [HN6] liberal standard of Rule 15(a) because the court may grant leave at any stage of the proceedings when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit does not allow a district court to deny a motion for leave to amend on the ground of the parties' delay by itself. Hurn v. Retirement Fund Trust, 648 F.2d 1252, 1254 (9th Cir. 1981). Plaintiffs also argue there is good cause to excuse the filing of the motion beyond the deadline set in the magistrate's scheduling order. First, plaintiffs were essentially self represented at the beginning of the case. Second, defendant will suffer no prejudice because the same facts are at issue and [*12] no additional discovery will be necessary. If additional discovery is necessary on the recent events, plaintiffs will extend the dates and cooperate. Third, judicial economy and common sense support the inclusion of the interrelated claims in a single action. The witnesses and evidence will be the same. If the court denies the motion, the Gordons will file a new complaint, and that process will unnecessarily burden the courts and the parties.

The court denies plaintiffs' motion. As noted by defendant, the motion implicates both Rule 15(a) and Rule 15(d). [HN7] Rule 15(a) governs that part based on existing facts; while Rule 15(d) governs the facts that have occurred since the complaint was filed. "[A] district court may deny leave to amend 'where there is "any apparent or declared reason" for doing so, including undue delay, undue prejudice to the opposing party or futility of the amendment." Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 772 (9th Cir.1991) (quoting Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)).

The court denies plaintiffs' motion. This case is similar to Schlacter-Jones, where the Ninth [*13] Circuit held:

> [HN8]
> In the exercise of its discretion, the district court properly considered the delay in the desired amendment, the fact that there was a pending summary judgment motion, and the futility of most of the proposed claims. The timing of the motion, after the parties had conducted discovery and a pending summary judgment motion had been fully briefed, weighs heavily against allowing leave. A motion for leave to amend is not a vehicle to circumvent summary judgment.

Schlacter-Jones v. General Telephone of California, 936 F.2d 435, 443 (9th Cir. 1990) (citing M/V American Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1492 (9th Cir. 1983). All three of those factors are present in this case. First, the motion was filed in response to the defendant's summary judgment motion. Glesenkamp v. Nationwide Mut. Ins. Co., 71 F.R.D. 1, 3 (N.D. Cal.1974), aff'd, 540 F.2d 458 (9th Cir. 1976) (per curiam)); Planned Parenthood of Southern Arizona v. Neely, 130 F.3d 400, 402 (9th Cir. 1997); Roberts v. Arizona Board of Regents, 661 F.2d 796, 798 (9th Cir. 1981); [*14] accord Cowen v. Bank United of Texas, 70 F.3d 937, 944 (7th Cir. 1995) ("A plaintiff who proposes to amend his complaint after the defendant has moved for summary judgment may be maneuvering desperately to stave off the immediate dismissal of the case. With this a possibility, district judges are not content with an allegation sufficient in law; they want to see some evidence to back it up. The district judge here was not persuaded that the plaintiffs had come up with solid enough evidence

to warrant keeping the case going after the completion of discovery.").

Second, the supplemental claim would disrupt the scheduling of this action. The time to amend expired in February 2000. The time for conducting discovery has closed, and the pretrial conference is set for November 6. [HN9] "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999) (citation omitted). The court concludes it would be inappropriate to reopen the discovery process when the pretrial conference is scheduled [*15] within the next few weeks. "Although delay alone provides an insufficient ground for denying leave to amend or supplement, it remains relevant." Loehr v. Ventura County Community College District, 743 F.2d 1310, 1320 (9th Cir. 1984). Here, plaintiffs delayed until the case was nearly completed.

Third, the claims appear futile and could have been asserted earlier. Because Jay Gordon is lawyer, a lawyer worked on the case from the outset, and there is no reason for the delay. [HN10] "Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Acri v. International Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir.), cert. denied, 479 U.S. 816, 93 L. Ed. 2d 29, 107 S. Ct. 73 (1986). Plaintiffs' current counsel concedes that the new legal theory was readily apparent when he reviewed the case file. Thus, there is no reason that prior counsel could not have also asserted this tort theory. In addition, based on the existing factual record, the court discerns no merit in the plaintiffs' litigation. The [*16] proposed amendment would be futile. See Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 766 (9th Cir. 1986) [HN11] (motion to amend should not be granted if the amendment could be defeated on a summary judgment). If plaintiffs meet the Rule 11(b) standard of filing in good faith, then plaintiffs can pursue their recently-acquired claims in a new civil action. The statute of limitations has not run on the proposed new claim.

## CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby grants defendant's motion for summary judgment [# 11]. The clerk shall enter judgment in favor of defendant on all counts. The court denies plaintiffs' motion for leave to amend the complaint [# 15].

DATED: September 13, 2000.

WILLIAM B. ENRIGHT, Judge

United States District Court

EXHIBIT A
Page 6 of 6