2005 S.C. LEXIS 270, *

LEXSEE 2005 S.C. LEXIS 270

L-J, Inc. and Eagle Creek Construction Co., Inc., Transcontinental Insurance Company, The Home Indemnity Company and The Maryland Commercial Insurance Group, Plaintiffs, Of Whom Transcontinental Insurance Company, The Home Indemnity Company and The Maryland Commercial Insurance Group, are Respondents, v. Bituminous Fire and Marine Insurance Company, Petitioner.

Opinion No. 25854

SUPREME COURT OF SOUTH CAROLINA

2005 S.C. LEXIS 270

April 19, 2005, Reheard
September 26, 2005, Filed

NOTICE: [*1] THIS DECISION IS NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PRIOR HISTORY: Appeal from Charleston County Thomas J. Wills, Special Master, Circuit Court Judge. L-J, Inc. v. Bituminous Fire & Marine Ins. Co., 2004 S.C. LEXIS 190 (S.C., Aug. 9, 2004)

DISPOSITION: REVERSED.

LexisNexis(R) Headnotes

*Civil Procedure > Appeals > Standards of Review > Substantial Evidence*
[HN1] In an action at law, the findings of fact will not be disturbed unless there is no evidence to reasonably support the trial judge's conclusions.

*Insurance Law > General Liability Insurance > Occurrences*
[HN2] A commercial general liability policy is not intended to cover economic loss resulting from faulty workmanship. Any liability that is incurred because of faulty workmanship is part of the insured's contractual liability, not an insurable event under a said policy.

*Contracts Law > Types of Contracts > Guaranty Contracts*
*Contracts Law > Contract Conditions & Provisions*
*Contracts Law > Performance*
[HN3] A performance bond guarantees that the work will be performed according to the specifications of the contract by providing a surety to stand in the place of the contractor should the contractor be unable to perform as required under the contract.

COUNSEL: Charles E. Carpenter, Jr., Francis M. Mack, and S. Elizabeth Brosnan, all of Richardson, Plowden, Carpenter & Robinson, P.A., of Columbia; and John J. Piegore, of Sanchez & Daniels, of Chicago, for Petitioner.

G. Trenholm Walker and Amanda R. Maybank, both of Pratt-Thomas, Epting & Walker, of Charleston, for Respondents.

George E. Mullen and Allison Burke Thompson, both of Mullen, Wylie & Seekings, of Charleston, for Amicus Curiae SC Community Association Institute, CCM & Benchmark.

Daniel T. Brailsford, of Robinson, McFadden & Moore, of Columbia, for Amicus Curiae American Subcontractors & Mechanical Contractors.

Sean A. Scoopmire, of Clarkson, Walsh, Rheney & Turner, PA, of Greenville, for Amicus Curiae National Association of Mutual Insurance Companies.

Exhibit Q
Page 1 of 5

Carmen Tevis Mullen, of Charleston, for Amicus Curiae South Carolina Trial Lawyers Association.

Thomas C. Salane, R. Hawthorne Barrett and Shannon F. Bobertz, of Turner, Padget, Graham & Laney, PA, of [*2] Columbia, for Amicus Curiae American Insurance and Property Casualty, etc.

D. Reece Williams, III, of Callison, Tighe & Robinson, LLC, of Columbia, for Amicus Curiae Independent Insurance Agents and Brokers of South Carolina.

David S. Jaffee, of Washington, DC; and Benjamin E. Nicholson, V, of McNair Law Firm, PA, of Columbia, for Amicus Curiae National Association of Home Builders, et al.

L. Franklin Elmore, of Elmore & Wall, PA, of Greenville, for Amicus Curiae The Carolinas Associated General Contractors'.

**JUDGES:** CHIEF JUSTICE TOAL. MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

**OPINIONBY:** TOAL

**OPINION:**

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

**CHIEF JUSTICE TOAL:** Bituminous Fire and Marine Insurance Company (Bituminous) brought the underlying declaratory judgment action seeking a determination as to whether a commercial general liability (CGL) policy issued to L-J, Inc. (Contractor) covered damage caused by the faulty workmanship of Contractor and its subcontractors on a road construction project. We granted certiorari to review the court of appeals' decision, which held that damage to the roadway constituted an "occurrence" and policy exclusions did not apply. [*3] *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 350 S.C. 549, 567 S.E.2d 489 (Ct. App. 2002). We withdraw our prior opinion on this matter and substitute it with this opinion. We reverse.

FACTUAL / PROCEDURAL BACKGROUND

In 1989, Dunes West Joint Venture (Developer) hired Contractor to perform site-development work and build roads for the Dunes West subdivision. Contractor, in turn, hired subcontractors to perform most of the work. In 1990, the project was completed, and by 1994, the roads had deteriorated. Because of the deterioration of the roads, Developer brought the underlying action against Contractor for breach of contract, breach of warranty, and negligence.

In 1997, the underlying lawsuit settled for $750,000. After settlement, Contractor sought indemnification from Bituminous and the three other insurers (Respondents). n1 Respondents contributed $362,500 to the settlement amount, but Bituminous refused to indemnify Contractor. n2

n1 Other providers included Transcontinental Insurance Company, The Home Indemnity Company, and The Maryland Commercial Insurance Group.

[*4]

n2 From 1989 to 1996, Contractor was insured under various policies. Bituminous issued Contractor a CGL policy covering the period from 1990 to 1992.

Consequently, Respondents brought a declaratory judgment action against Bituminous seeking contribution and indemnification for all defense costs. The circuit court referred the action to a special master, who found that the damage to the roadway system was covered under the Bituminous CGL policy. More specifically, the special master found that the damage constituted an "occurrence," and the "expected or intended" and "your work" exclusions did not apply to work performed by subcontractors. Finally, the special master found that the CGL "policy years" ran from 1989 to 1996, and because Bituminous's policy covered the two-year period from 1990 to 1992, Bituminous owed the other carriers a two-year contribution valued at $103,571.42.

Bituminous appealed and the court of appeals affirmed, finding that the property damage constituted an "occurrence" and that the policy

Exhibit Q
Page 2 of 5

exclusions did not apply. *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 350 S.C. 549, 567 S.E.2d 489 (Ct. App. 2002). [*5] After granting certiorari, we reversed, holding that the CGL policy did not cover damage caused by faulty workmanship. *L-J, Inc. v. Bituminous Fire and Marine Ins. Co.*, 2004 S.C. LEXIS 190, Op. No. 25854 (S.C. Sup. Ct. filed August 9, 2004) (Shearouse Adv. Sh. No. 31 at 55).

On rehearing, we now consider the following issues for review:

I. Did the court of appeals err in finding that the road deterioration constituted an "occurrence" as defined by the CGL insurance policy?

II. Did the court of appeals err in finding that the road deterioration was, from the Contractor's perspective, neither expected nor intended?

III. Did the court of appeals err in finding that the "your work" exclusion restored coverage?

**STANDARD OF REVIEW**

Because this is [HN1] an action at law, the findings of fact will not be disturbed unless there is no evidence to reasonably support the trial judge's conclusions. *Townes Assoc. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

**LAW/ANALYSIS**

**I. "Occurrence"**

Bituminous asserts that the court of appeals erred in finding that the road deterioration constituted an "occurrence" under the CGL policy. We agree.

The issue [*6] of whether property damage to the work product alone, caused by faulty workmanship, constitutes an occurrence is a question of first impression in South Carolina. A majority of other jurisdictions deciding this issue have held that faulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy. *See, e.g., Pursell Constr., Inc. v. Hawkeye-Security Ins. Co.*, 596 N.W.2d 67, 71 (Iowa 1999); *Amerisure, Inc. v. Wurster Constr. Co., Inc.*, 818 N.E.2d 998, 1004 (Ind. Ct. App. 2004) (holding that faulty workmanship is not an accident and therefore not an occurrence); *Heile v. Herrmann*, 136 Ohio App. 3d 351, 736 N.E.2d 566, 568 (Ohio Ct. App. 1999) (holding that faulty workmanship does not constitute an occurrence when the damage is to the work product only); *Monticello Ins. Co. v. Wilfred's Constr.*, 277 Ill. App. 3d 697, 661 N.E.2d 451, 456, 214 Ill. Dec. 597 (Ill. App. Ct. 1996) (finding that improper construction by a contractor and its subcontractors does not constitute an occurrence when the improper construction leads to defects). n3

N3 In addition to the authority cited, Florida, Illinois, Louisiana, Maine, Maryland, Michigan, Missouri, New Jersey, and North Carolina have reported cases which hold that a CGL does not provide coverage for faulty workmanship where the property damage is to the work product only. Several different approaches are used in analyzing the issue, but a majority of the states reach the same conclusion - a CGL policy does not cover faulty workmanship. However, there are several jurisdictions, including Minnesota, New Hampshire, and Wisconsin, that have found CGL policies to be ambiguous and construed the ambiguity against the drafter. *See e.g., Wanzek Constr., Inc. v. Employers Ins. of Wausau*, 679 N.W.2d 322, 329 (Minn. 2004) (holding the term subcontractor to be ambiguous and construing the ambiguity in favor of coverage).

[*7]

Although our courts have not addressed the specific issue of whether faulty workmanship constitutes an occurrence, we have addressed the issue of whether CGL policies are intended to cover faulty workmanship. For example, this Court has held that [HN2] a CGL policy is not intended to cover economic loss resulting from faulty workmanship. *Century Indem. Co. v. Golden Hills Builders, Inc.*, 348 S.C. 559, 563-64, 561 S.E.2d 355, 357 (2002). Moreover, our court of appeals has held that any liability that is incurred because of faulty workmanship is part of the insured's contractual liability, not an insurable event under a

CGL policy. *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 16, 459 S.E.2d 318, 320 (Ct. App. 1995); *see also C.D. Walters Constr. Co., Inc. v. Fireman's Ins. Co. of Newark*, 281 S.C. 593, 596-97, 316 S.E.2d 709, 711 (Ct. App. 1984) (holding that faulty workmanship is a business risk that is not intended to be covered by a CGL policy).

In the present case, Bituminous's CGL policy, subject to certain exclusions, provides:

> We will pay those sums that the insured becomes legally obligated to pay [*8] as damages because of "bodily injury" or "property damage" to which this insurance applies...
>
> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Four years after Contractor completed construction of the Dunes West road system, the roads began to deteriorate, showing many signs of "alligator cracking," a form of cracking in asphalt that looks like alligator skin. Two expert witnesses testified in deposition as to the cause of the damage. The first deponent, Kenneth Humphries, testified that approximately 50% of the cracking was caused by insufficient road subgrade preparation, which was caused by Contractor's failure to properly (1) remove tree stumps from the subgrade and (2) compact the soft, wet clay in the subgrade. Humphries also opined that the cracking was caused by insufficiently thick road course, improper drainage, and excessive traffic. The second deponent, L.G. Lewis, testified [*9] that the primary cause of the cracking was improper drainage. Other causes, according to Lewis, included an inadequate "edge of curb detail and the increased frequency of heavy wheel loads on the pavement."

Although the alligator cracking may have constituted property damage, we find that an "occurrence," as defined under the CGL policy did not take place. According to the deposition testimony outlined above, the only "occurrences" were various negligent acts by Contractor during road design, preparation, and construction, which led to the premature deterioration of the roads. Those negligent acts included: (1) failure to prepare the subgrade by deciding not to remove the tree stumps and by failing to remove or compact the wet clay in the subgrade; (2) improperly designed drainage system; (3) ill-prepared, thin road course that could not handle heavy-wheel loads; and (4) improperly designed curb-edge detail.

We find these negligent acts constitute faulty workmanship, which damaged the roadway system only. And because faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions, we hold that the damage in this case [*10] did not constitute an occurrence. n4 We find the analysis used by the New Hampshire Supreme Court helpful in distinguishing between a claim for faulty workmanship versus a claim for damage to the work product caused by the negligence of a third party. *High Country Assocs. v. New Hampshire Ins. Co.*, 139 N.H. 39, 648 A.2d 474 (N.H. 1994). In *High Country Assocs.*, the court held that a CGL provided coverage for property damage caused by continuous exposure to moisture when the complaint alleged negligent construction that resulted in property damage and not merely negligent construction damaging only the work product itself. *Id.* at 477. The complaint in *High Country Assocs.* alleged:

> actual damage to the buildings caused by exposure to water seeping into the walls that resulted from the negligent construction methods of High Country Associates. The damages claimed are for the water-damaged walls, not the diminution in value or cost of repairing work of inferior quality. Therefore, the property damage described in the amended writ, caused by continuous exposure to moisture through leaky walls, is not simply a

claim for the contractor's defective work. [*11]

*Id.* As a result, the court held that the plaintiffs' alleged negligent construction was the result of an occurrence, rather than an allegation of faulty or defective work. *Id.* at 478.

> n4 The CGL policy may, however, provide coverage in cases where faulty workmanship causes a third party bodily injury or damage to other property, *not in cases where faulty workmanship damages the work product alone.*

In the present case, the complaint did not allege property damage beyond the improper performance of the task itself. The complaint alleged breach of contract, breach of warranty, and negligence. However, each of the claims repeated verbatim the same allegation - faulty workmanship in completing the project. As a result, the insurance policy will not stand to cover liability for the Contractor's contract liability for a claim that was for money damages to compensate for the defective work.

Accordingly, we hold that the damage in the present case did not constitute an "occurrence." If we were to [*12] hold otherwise, the CGL policy would be more like a performance bond, which guarantees the work, rather than like an insurance policy, which is intended to insure against accidents. *See State Farm Fire & Cas. Co. v. Tillerson*, 334 Ill. App. 3d 404, 777 N.E.2d 986, 991, 268 Ill. Dec. 63 (Ill. App. Ct. 2001) (holding that if courts were to find that CGL policies covered faulty workmanship, courts would effectively transforming CGL policies into performance bonds). [HN3] A performance bond guarantees that the work will be performed according to the specifications of the contract by providing a surety to stand in the place of the contractor should the contractor be unable to perform as required under the contract. Consequently, our holding today ensures that ultimate liability falls to the one who performed the negligent work - the subcontractor - instead of the insurance carrier. It will also encourage contractors to choose their subcontractors more carefully instead of having to seek indemnification from the subcontractors after their work fails to meet the requirements of the contract.

### CONCLUSION

Based on the reasoning set forth above, we reverse the court of appeals' [*13] decision, and hold that the damage to the Dunes West roadway system is not covered under Bituminous's CGL policy. Therefore, Bituminous is not required to indemnify Contractor. Because we find that the faulty workmanship does not constitute an "occurrence," we do not address Issues II and III to determine whether the policy exclusions apply.

**MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.**