2 of 100 DOCUMENTS

U.S. UNDERWRITERS INSURANCE COMPANY, Plaintiff, -against- CONGREGATION KOLLEL TISERETH, TZVI and DEMETRIO MENESES, Defendants.

Civil Action No. 99-CV-7398 (DGT)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2004 U.S. Dist. LEXIS 19608*

September 30, 2004, Decided

**DISPOSITION:** Plaintiff's motion for summary judgment granted. Defendant's cross-motion for summary judgment denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insurer brought a diversity action against defendants, a congregation and an individual, seeking a declaration that the insurer was not obligated to defend and indemnify the congregation with respect to a personal injury suit brought by an injured party in state court. The insurer and the congregation cross-moved for summary judgment.

**OVERVIEW:** The party was injured while doing demolition work on the congregation's property. The insurer contended it was not obligated to defend or indemnify the congregation because: (1) the policy excluded coverage for injuries "to employees, contractors and employees of contractors"; (2) the policy excluded coverage for injuries arising out of operations performed by an independent contractor; (3) the policy excluded coverage for work performed outside the "vacant building" classification in the policy; and (4) the congregation gave untimely notice of the underlying accident and thus violated its obligations under the policy. The congregation claimed that the policy exclusions applied to the injured party and that the congregation gave timely notice of the injured party's state court action. All the claims in the injured party's state court complaint fell within the employee injury exclusion and the independent contractors exclusion, and the insurer had no duty to defend or indemnify in the underlying action. The injured party incurred his alleged injuries in the course of his employment with a contractor of the congregation, the insured entity.

**OUTCOME:** The insurer's motion for summary judgment was granted, and the congregation's cross-motion for summary judgment was denied.

**CORE TERMS:** contractor, insured, demolition, classification, coverage, independent contractor, temporary worker, employee injury, insurer, timely notice, indemnify, summons, notice, obligated to defend, summary judgment, bodily injury, declaration, performing, verified, unambiguous, personal injury, occurrence, subcontractor, permanent employee, cross-motion, practicable, short-term, supervise, occupied, hired

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For U.S. Underwriters Insurance Company, Plaintiff: Michael E. Gorelick, Abrams, Gorelick, Friedman & Jacobson, P.C., New York, NY.

For Congregation Kollel Tisereth Tzvi, Defendant: Kirk Peter Tzanides, Coffinas & Coffinas LLP, New York, NY.

For Demetrio Meneses, Defendant: Evan Goldberg, Trolman, Glaser & Lichtman, P.C., New York, NY.

**JUDGES:** David G. Trager, United States District Judge.

**OPINIONBY:** David G. Trager

**OPINION:**

MEMORANDUM AND ORDER

TRAGER, J.

Exhibit T
Page 1 of 9

Case 3:04-cv-00229-TMB   Document 44-22   Filed 01/13/2006   Page 2 of 9

Page 2
2004 U.S. Dist. LEXIS 19608, *

Plaintiff U.S. Underwriters Insurance Company ("U.S. Underwriters" or "plaintiff") brought this diversity action against defendants Congregation Kollel Tisereth Tzvi ("the Congregation") and Demetrio Meneses ("Meneses") (collectively "defendants"), seeking a declaration that U.S. Underwriters is not obligated to defend and indemnify the Congregation with respect to a personal injury suit brought by Meneses in state court.

Pending before the court are cross-motions for summary judgment by U.S. Underwriters and the Congregation. n1 For the following reasons, U.S. Underwriters' motion is granted, and the Congregation's cross-motion is denied.

---

n1 Defendant Meneses also adopts and incorporates the arguments set forth by the Congregation in its opposition to plaintiff's cross-motion for summary judgment. See Letter from Evan Goldberg to Hon. David G. Trager, dated October 15, 2003.

---

[*2]

**Background**

**(1)**

The following facts are undisputed unless otherwise indicated. At all times relevant to this case, the Congregation was the owner of land and property located at 4706 14th Avenue, Brooklyn, New York. (See Declaration of Kirk A. Tzanides ("Tzanides Decl."), Ex. D, P 6.)

On May 7, 1998, Underwriters issued to the Congregation a commercial liability policy for that property covering the period May 7, 1998 through May 7, 1999. (See Tzanides Decl., Ex. B.) The policy contains four provisions which are of particular relevance to this case.

First, the policy contains an "Exclusion of Injury to Employees, Contractors and Employees of Contractors," which provides in pertinent part:

> This insurance does not apply to:
>
> (i) bodily injury to any employee of any insured, to any contractor hired or retained by or for any insured or to any employee of such contractor, if such claim for bodily injury arises out of and in the course of his employment or retention of such contractor by or for any insured, for which any insured may become liable in any capacity;

> (ii) any obligation of any insured to indemnify or contribute with another because of [*3] damages arising out of the bodily injury;
>
> . . . .
>
> This exclusion applies to all claims and suits by any person or organization for damages because of such bodily injury, including damages for care and loss of services.

(Id.)

Second, the policy contains an "Independent Contractors Exclusion" which provides:

> It is agreed that this policy shall not apply to Bodily Injury, Personal Injury or Property Damage arising out of operations performed for any insured by independent contractors or acts or omissions of any insured in connection with his general supervision of such operations.

(Id.) According to U.S. Underwriters, the difference between the first "employee exclusion" and the second "independent contractors" exclusion is that the employee exclusion disallows coverage for injuries sustained by contractors and their employees, and the independent contractors exclusion denies coverage for injuries or damage "arising out of operations performed for the insured by independent contractors, regardless of who is injured or damaged. (See Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment ("Pl.'s Mem.") at 14 n.3.)

Third, the [*4] policy also contains a provision which obligates the insured to notify U.S. Underwriters promptly in the event of an "occurrence, claim or suit." Specifically, the provision states:

> 2. Duties in the Event of Occurrence, Offense, Claim or Suit
>
> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place.

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the occurrence' or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) [*5] Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

(Tzanides Decl., Ex. B.)

Fourth, the policy provides that coverage under the policy is limited to the classification codes listed in the policy. Specifically, this Classification Limitation Endorsement provides, in relevant part:

Coverage under this contract is specifically limited to those classification codes listed in the policy. No coverage is provided for any classification code or operation performed by the Named Insured not specifically listed in the Declarations of this policy.

(Id.) The policy contains the sole classification: "Vacant Building -- Not Factory -- OTNFP." n2 On the Declarations page, "Vacant Building" is defined as "a building not occupied for its intended use." (Id.)

   n2 According to a Classifications table annexed to plaintiff's moving papers, "OTNFP" stands for "Other than Not-For-Profit." (See Declaration of Jordan M. Sklar ("Sklar Decl."), Ex. D.)

[*6]

(2)

On the Congregation's property at 4712 14th Avenue was a building that was also owned by the Congregation. The building had once been used for storage purposes but was no longer used for storage at the time of the accident. (Sklar Decl., Ex. E at 10-11.) Since pieces of the building were falling down, the Congregation convened an emergency meeting at an unspecified date and decided that it had to be demolished. (Id.)

The Congregation retained Empire Concrete & Construction ("Empire"), an independent contractor, to perform certain demolition work and/or renovation work at the premises. (Sklar Decl., Ex. E at 15, Ex. F at 11.) n3 On June 3, 1998, Empire issued a handwritten Contractor's Invoice which specified the work to be performed:

(1) remove old building at 4712 14th Avenue to ground level fill basement with bricks.

(2) close off sidewalk with plywood fence and backyard side yard plywood.

(3) New side wall 3,500 PSI with wire mesh concrete to be 6" inches thick with driveway opening 75 x 23 x 6"

(See Tzanides Decl. Ex. G.)

n3 Although plaintiff's complaint initially claimed that the Congregation contracted with a non-party, Mordechai Rubbish, Inc., see Compl. P 10, plaintiff's moving papers state that the Congregation actually contracted with Empire Concrete. (See Sklar Decl., P 7.)

[*7]

Empire retained an individual named Ramon Acosta ("Acosta") to do the demolition work for the premises. (Id., Ex. H at 21.) Although Acosta was self-employed, n4 he had a crew of approximately five or six men, including Meneses, who regularly worked under him for an average of three or four days a week during the year. (Sklar Decl., Ex. H at 6, 12-13, 18, 43.) Meneses was a member of the crew performing demolition work on the Congregation's property. (Id. at 25, 27-29)

n4 Acosta testified that for three or four years prior to Meneses' accident, he performed work for a company named Mordechai Rubbish as a foreman on other projects, but he and Mordechai Rubbish also understood that he could perform demolition work for others. (Sklar Decl., Ex. H at 7, 20-22.) Thus, in the instant case, Empire approached Acosta and asked him to perform the demolition work at the premises. (Id. at 25-27.) According to Acosta, this particular project had nothing to do with Mordechai Rubbish. (Id. at 28:)

On September 23, 1998, while [*8] Meneses working at the premises, a wall collapsed and injured him. Alexander Gross and Mendy Gluck, members of the Congregation, testified in their depositions that they were unaware of the accident at or around that time, as the Congregation did not supervise or generally direct the work that was being performed. At most, the Congregation alleges, their members noticed the progress of the work when they visited the synagogue next door to the site. (See Sklar Decl., Ex. E at 21, 23, 39 & Ex. F at 14.) Gluck himself guessed he was on the property only once or twice while the work was performed over a two-week period. (Id., Ex. F at 14, 20.)

On November 4, 1998, Meneses brought suit against the Congregation in the Supreme Court of the State of New York, Kings County, with the filing of a summons and verified complaint. (Id., Ex. B.) On January 6, 1999, Meneses again served the Congregation with a copy of an amended summons and an amended verified complaint. (Id.) Meneses' amended verified complaint alleged that, while he "was actually engaged in the course of his employment as a construction laborer by the defendant CONGREGATION KOLLEL'S contractor," a wall collapsed [*9] on the Congregation's property and injured him. (Tzanides Decl., Ex. C PP 9, 11). The complaint further alleged, inter alia, that the Congregation negligently failed to prevent the allegedly dangerous condition and to properly supervise the work done at the site. (Id. P 13.)

The certificate of service for the amended summons and amended verified complaint indicated that both filings were left personally with a "Rabbi Weiss (Managing Agent)" at 4712 14th Avenue, Brooklyn, NY 11219. (Sklar Decl., Ex. B.) Meneses' attorney also followed up with a letter to the Congregation dated January 20, 1999 informing it of the suit. (Id.) However, the Congregation failed to answer or otherwise respond to the complaint. Meneses then filed a motion for default judgment on February 25, 1999 which was granted on April 7, 1999. (Id.)

After the entry of judgment on July 14, 1999, the Congregation was served by mail with the judgment and bill of costs with notice of entry on July 21, 1999. (Id.) Alexander Gross, a member of the Congregation, testified at his deposition that on an unspecified date, he received an envelope containing "legal papers" -- purportedly the judgment and bill [*10] of costs -- and gave the papers to "the insurance broker." (Id., Ex. E at 29.) Following this notification, Underwriters issued a letter to the Congregation on October 27, 1999 stating that the independent contractors exclusion, the classification limitation, and the Congregation's alleged failure to notify the company of the underlying incident or the lawsuit "as quickly as practicable" precluded coverage for the incident. (Id., Ex. C.)

The Congregation, through defense counsel assigned by U.S. Underwriters, then filed an application to vacate default. In an affidavit submitted by Rabbi Simcha Waldman ("Rabbi Waldman"), a member of the Congre-

Exhibit I
Page 4 of 9

gation's board of directors, the Congregation asserted that no one knew of Meneses' accident, none of the Congregation's members was ever served with the summons and complaint and, in sum, the Congregation never knew about Meneses' suit prior to the entry of default. (Tzanides Decl., Ex. D PP 3-4.) Rabbi Waldman's affidavit further argued that service of the amended summons and amended verified complaint was likely to have been improper because the building delineated on the affidavit of service did not exist on the date of service, there [*11] was no "Rabbi Weiss" with the title of "managing agent" for the Congregation, and the individual who was allegedly served could have been any one of the male worshipers who attended the synagogue daily. (Id.) On an unspecified date, the state court vacated the default order, and on November 15, 1999, U.S. Underwriters commenced the instant suit in federal court.

**Discussion**

**(1)**

**Choice of Law**

This court's subject matter jurisdiction is predicated on diversity of citizenship between plaintiff U.S. Underwriters, a North Dakota corporation, and defendants the Congregation, a New York domestic religious corporation, and Meneses, a New York resident. A federal district court deciding a diversity case must apply the choice of law rules of the state in which the district court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941). Under New York law, "an action requesting the determination of an insurer's duties respecting events that took place in New York is governed by New York law." *U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel*, 900 F. Supp. 641, 644 (E.D.N.Y. 1995) (citing *Mount Vernon Fire Ins. Co. v. Creative Hous, Ltd.*, 797 F. Supp. 176, 179 (E.D.N.Y. 1992)); [*12] *Snyder v. Nat'l Union Fire Ins. Co.*, 688 F. Supp. 932, 934-35 (S.D.N.Y. 1988). Because the underlying incident took place in New York, New York law applies to this action.

**(2)**

**Policy Provisions and Timely Notice**

U.S. Underwriters contends it is not obligated to defend or indemnify the Congregation because: (1) the policy excludes coverage for injuries "to employees, contractors and employees of contractors"; (2) the policy excludes coverage for injuries arising out of operations performed by an independent contractor; (3) the policy excludes coverage for work performed outside the "Vacant Building" classification in the policy; and (4) the Congregation gave untimely notice of Meneses' accident and thus violated its obligations under the policy. The Congregation claims that the policy exclusions apply to Meneses and that they gave timely notice of his state court action. These arguments will be considered in turn.

A. Policy Exclusions

An insurer seeking a determination that it is not obligated to defend an insured based upon an exclusion has the heavy burden of demonstrating that "there is no reasonable possibility of coverage under the [*13] policy." *U.S. Underwriters Ins. Co. v. Beckford*, 1998 U.S. Dist. LEXIS 574, No. 93-CV-4272, 1998 WL 23754, at *2 (E.D.N.Y. Jan. 20, 1998) (quoting *State of New York v. Blank*, 27 F.3d 783, 789 (2d Cir. 1994)). "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Mount Vernon Fire Ins. Co. v. Future Tech Constr. Corp..*, 1997 U.S. Dist. LEXIS 10799, No. 94 Civ. 1362, 1997 WL 419997, at *2 (S.D.N.Y. July 28, 1997) (quoting *Continental Casualty Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 972, 609 N.E.2d 506, 512 (1993)); see also *Seaboard Surety Co. v. Gillette*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984)). Courts cannot permit terms to be "extended by interpretation or implication." *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 797 F. Supp. 176, 180 (E.D.N.Y. 1992) (quoting *Seaboard Surety*, 64 N.Y.2d at 311, 486 N.Y.S.2d at 876, 476 N.E.2d at 275)).

Courts in this circuit have interpreted the language [*14] of similar "employee injury" and "independent contractor" exclusions to be "clear and unambiguous," and the parties have not argued otherwise. *U.S. Underwriters Ins. Co. v. Roka LLC*, 2000 U.S. Dist. LEXIS 14401, No. 99 Civ. 10136, 2000 WL 1473607, at *4 (S.D.N.Y. Sept. 29, 2000) ("plaintiff has met its burden of demonstrating that the [employee injury] provision is clear and unambiguous."); *Mount Vernon Fire Ins.*, 1997 U.S. Dist. LEXIS 10799, 1997 WL 419997, at *2 ("The language of the independent contractors exclusion' contained in the insurance policy involved in this litigation has consistently been interpreted to be clear and unambiguous'. . . .) (citations omitted). Having determined that the language of these exclusions is clear and unambiguous, the next question is whether the exclusions apply to the facts of Meneses' complaint.

*1. Employee Injury Exclusion*

U.S. Underwriters contends that Meneses' claim unambiguously falls under the "Exclusion of Injury to Employees, Contractors and Employees of Contractors" because: the Congregation retained Empire Concrete to perform demolition work on their property, which was an operation performed for the Congregation's benefit; Em-

Case 3:04-cv-00229-TMB   Document 44-22   Filed 01/13/2006   Page 6 of 9

Page 6
2004 U.S. Dist. LEXIS 19608, *

pire Concrete hired [*15] Ramon Acosta to perform the actual demolition; and one of Acosta's employees, Meneses, who was hired for that project, injured himself and became the underlying claimant. (See Pl.'s Mem. at 11.) Thus, the argument goes, since Meneses was employed by Acosta to perform the work at the premises, was subject to orders by Acosta and was paid by Acosta, Meneses was an employee of a contractor performing services for the benefit of the Congregation. (Id. at 12-13.)

The Congregation, on the other hand, argues that Meneses was not an employee of a contractor at the time of the accident and as such, falls outside the employee injury exclusion. Specifically, the Congregation points out that the fifth paragraph of Section V, the definitions section of the policy, defines "employee" to include a "leased worker" but also states than the definition of an "employee" does not include a "temporary worker." (See Defendant's Memorandum of Law in Opposition to Motion and In Support of Cross-Motion For Summary Judgment ("Def.'s Mem.") at 7; Tzanides Decl., Ex. B.) A "temporary worker," in turn, is defined in Section V as "a person who is furnished to you to substitute for a permanent employee' [*16] on leave or to meet seasonal or short-term workload conditions." (Tzanides Decl., Ex. B.) Given that the project was short-term and that Meneses was not a permanent employee of the contractors who were retained to perform the demolition work, the Congregation argues that Meneses' employment status was that of a "temporary worker" on the day of the accident, thereby placing him outside the scope of that exclusion. (Def.'s Mem. at 7-8.)

The Congregation's argument that "temporary workers" are not "employees" and therefore remain outside the scope of the policy's exclusionary language is not persuasive for several reasons. First, the policy specifically provides that "words and phrases that appear in quotation marks have special meaning," and refers the reader to the Definitions Section ("Section V") for definitions of those words and phrases with "special meaning." (Tzanides Decl., Ex. B.) However, in the employee injury exclusion, the word -- employee -- is not enclosed in quotation marks, capitalized, or otherwise distinguished in a manner which directs the reader to Section V of the policy. (Id.) As such, the term "temporary worker" is not encompassed by the term employee as [*17] it appears in the exclusion. Furthermore, the term "temporary worker" appears nowhere in the exclusion itself. We are thus left with the task of applying to the present record "the plain, ordinary, and common meaning" of the word employee. See *S.E.C. v. Credit Bancorp Ltd., 147 F. Supp. 2d 238, 261 (S.D.N.Y. 2001)*. In doing so, we find that Meneses was clearly employed by Acosta in exchange for monetary compensation, and that Acosta was sub-contracted to perform demolition work by Empire, an independent contractor who was retained by the Congregation.

Second, even if the definitions of "employee" in Section V referring to "temporary worker" were imported into the employee injury exclusion, Meneses' incident would still be excluded from coverage. The definition of "temporary worker" states: "a person who is furnished to you to substitute for a permanent employee' on leave or to meet seasonal or short-term workload conditions." (Tzanides Decl., Ex. B) (emphasis added). The policy makes it clear from the outset that "the words you' and your' refer to the Named Insured shown in the Declarations. . . ." (Id.) The record shows that Meneses was not [*18] furnished to the Congregation to substitute for a permanent employee on leave or to meet the Congregation's seasonal or short-term workload conditions; rather, Meneses was employed by Acosta, who in turn was retained by Empire Concrete to perform the demolition work on the Congregation's property.

Meneses' claim for personal injury is therefore excluded from coverage under plaintiff's policy since he incurred his alleged injuries in the course of his employment with a contractor of the Congregation, the insured entity.

*2. Independent Contractors Exclusion*

Even if, somehow, the "temporary worker" definition does apply to the employee injury exclusion and Meneses can be deemed a temporary worker under the circumstances, coverage is still excluded under the second "independent contractors" exclusion. U.S. Underwriters argues that Meneses' accident "arose out of the Congregation's retention of an independent contractor, thereby precluding coverage for bodily or personal injuries he sustained from that accident. (Pl.'s Mem, at 14.) The Congregation responds that the exclusion is inapplicable because: (1) Meneses was not an independent contractor with the discretion to make decisions [*19] on the work to be performed; and (2) the Congregation did not supervise the work to be performed by the contractors, Empire Concrete and Acosta. (Def.'s Mem. at 8.)

Neither of the Congregation's arguments are persuasive or relevant. The independent contractors exclusion states: "It is agreed that this policy shall not apply to Bodily Injury, Personal Injury or Property Damage arising out of operations performed for any insured by independent contractors or acts or omissions of any insured in connection with his general supervision of such operations." (Tzanides Decl., Ex. B) (emphasis added). Although the record shows that the Congregation did not generally supervise the demolition work on the premises, thus rendering the second clause inapplicable, the first clause of the exclusion ("arising out of operations per-

formed for any insured by independent contractors") still applies. In a policy exclusion, the words "arising out of are "deemed to be broad, general, comprehensive terms ordinarily understood to mean originating from, incident to, or having connection with' the operations performed by an independent contractor for the insured." *U.S. Underwriters Ins. Co. v. Zeugma Corp., 1998 U.S. Dist. LEXIS 14448, No. 97 CIV. 8031, 1998 WL 633679, at *3 (S.D.N.Y. Sept. 15, 1998)* [*20] (quoting *New Hampshire Ins. Co. v. Jefferson Ins. Co. of New York, 213 A.D.2d 325, 330, 624 N.Y.S.2d 392, 395 (1st Dep't 1995)*). The Court of Appeals has also held that the "arising out of phrase must be "applied broadly in the form of a but-for' test in determining coverage." Id. (quoting *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd., 88 N.Y.2d 347, 350, 645 N.Y.S.2d 433, 434, 668 N.E.2d 404, 405 (1996)*). The provision thus "excludes a loss that is incurred but for' the operations performed by the independent contractor for the insured." *U.S. Underwriters Ins. Co. v. Falcon Constr. Corp., 2004 U.S. Dist. LEXIS 12445, No. 02 CV 4179, 2004 WL 1497563, at *5 (S.D.N.Y. July 1, 2004)* (quoting *U.S. Underwriters Ins. Co. v. 203-211 W. 145th St. Realty Corp. , 2001 U.S. Dist. LEXIS 7099, No. 99 CIV. 8880, 2001 WL 604060, at *6 (S.D.N.Y. May 31, 2001)*).

Here, Meneses' amended verified complaint alleges the following:

> On or about September 23, 1998, while [Meneses] was engaged in the course of his employment as a construction/demolition laborer, working in the course of his employment for the defendant's contractor . [*21] . . and was performing certain construction work, labor and services, involving and/or relating to the demolition, renovation, repair and/or alteration of all or part of that building located at 4712 14th Avenue . . . a wall thereat collapsed . . . causing him to sustain grievous personal injury and attendant damage."

(Tzanides Decl., Ex. C P 11.) Based on these allegations, Meneses' personal injury action would not have arisen "but for" certain on-site dangers related to operations performed by an independent contractor. Because Meneses alleges that he sustained bodily injuries while performing demolition work for a contractor retained by the Congregation, the independent contractors exclusion applies and U.S. Underwriters is not obligated to defend or indemnify the Congregation. See, e.g., *U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel, 900 F. Supp. 641, 645 (E.D.N.Y. 1995)* (holding that identical independent contractors exclusion precluded coverage for claims against an insured, where plaintiff's alleged injuries arose out of operations that a contractor performed on the insured's premises); *West 145th Street Realty Corp., 2001 U.S. Dist. LEXIS 7099, 2001 WL 604060, at *5* [*22] (holding that identical independent contractors exclusion precluded coverage for claims against insured, where plaintiff sustained bodily injuries while performing operations for an independent contractor retained by the insured).

The Congregation also advances the argument that Meneses and his supervisor Acosta may not qualify as independent contractors because they were temporary laborers performing freelance work, but this is also without merit. Although "independent contractor" is not defined by the policy, courts relying on the ordinary meaning of the term have defined it as: "one who contracts to do certain work according to his own methods, and without being subject to the control of his employer except as to the product or result of his work." *Future Tech Constr. Corp., 1997 U.S. Dist. LEXIS 10799, 1997 WL 419997, at *2*; *Mount Vernon Fire Ins. Co. v. William Monier Constr. Co., 1996 U.S. Dist. LEXIS 11297, No. 95 Civ. 645, 1996 WL 447447, at *4 (S.D.N.Y. Aug. 7, 1996)*; *G.D. Searle & Co. v. Medicore Communications, Inc., 843 F. Supp. 895, 904-05 (S.D.N.Y. 1994)*. Moreover, the ordinary meaning of the term "subcontractor" has been stated as: "one who takes [a] portion of a contract [*23] from the principal contractor or another subcontractor," or "one who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance." *U.S. Underwriters Ins. Co. v. Beckford, 1998 U.S. Dist. LEXIS 574, No. 93-CV-4272, 1998 WL 23754, at *4 (E.D.N.Y. Jan. 20, 1998)*. Applying these definitions to the facts, it is apparent that Empire Concrete was an independent contractor retained by the Congregation to perform work on the subject premises, and that Empire subcontracted the work to Acosta, who, in turn, employed Meneses. At his deposition, Acosta testified that Empire provided him and his crew with a "bobcat" (a machine that picked up garbage at the site), dumpsters and hand tools, and also directed the work at the subject premises. (See Sklar Decl., Ex. H at 39-42.) The fact that Acosta and Meneses were subcontractors of Empire does not preclude the application of the exclusion, as the term "contractor" has been held to be a "generic one, encompassing both general contractors and subcontractors." *Beckford, 1998 U.S. Dist. LEXIS 574, 1998 WL 23754, at *4*. As a result, without any authority or policy language to support the [*24] Congregation's contention that Acosta and Meneses are not independent contractors, the exclusion absolves U.S. Underwriters of any duty to defend the Congregation in the underlying suit.

B. Classification Limitation

U.S. Underwriters argues it does not have to defend or indemnify the Congregation policy limits coverage to the classification codes specified in the policy, namely, the "Vacant Building – Not Factory" classification. The "Vacant Building" classification is defined in the policy as "a building not occupied for its intended use." U.S. Underwriters further argues that the "Vacant Building" classification applies only to a building which is "wholly vacant," and not to a building "under demolition and/or repair." (See Plaintiff's Rule 56.1 Statement ("Pl.'s Rule 56.1 Stmt") P 35.) Under these circumstances, plaintiff argues, a different classification, "Real Estate Development Property" would have been used for that building. (See Sklar Reply Declaration ("Sklar Reply") PP 42-46.)

To determine whether U.S. Underwriters is obligated to defend the Congregation, the allegations in the complaint must be examined, for "if the complaint contains any facts or allegations [*25] which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." *United States Underwriters Ins. Co. v. Falcon Constr. Corp.,, 2003 U.S. Dist. LEXIS 14817, 2003 WL 22019429, at *7* (quoting *Incorporated Village of Cedarhurst v. Hanover Ins. Co., 89 N.Y.2d 293, 298, 653 N.Y.S.2d 68, 70, 675 N.E.2d 822, 824 (1996)*). In addition, the insurer has the burden of demonstrating that "the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." Id.

U.S. Underwriters has not shown that the Congregation's claim for defense and indemnification unambiguously falls outside the "Vacant Building" classification. The classification definition ("a building not occupied for its intended use") is not so clear and unambiguous as to exclude a building that had once been used for storage purposes, but was no longer being used for that purpose. Moreover, accepting U.S. Underwriters' unsubstantiated assertion that the "Vacant Building" classification applies only to a building which is "wholly vacant," and not to a building "under demolition and/or repair," U.S. Underwriters has failed to provide any evidence [*26] showing that the subject building was not "wholly vacant" and had not been occupied for its intended use when it was demolished in September 1998. Although U.S. Underwriters urges that a different classification would have been used had the company known that the Congregation would be undertaking demolition work at its premises, there is no evidence on the record as to what was understood between the parties at the time of contract. See *Mount Vernon Fire Ins. Co. v. Belize N.Y., Inc., 277 F.3d 232, 237 (2d Cir. 2002)* (dismissing insurance company's argument that there was an 'obvious meeting of the minds' as to the scope of risk undertaken by virtue of certain policy classifications, where there was no "substantial support in the evidentiary material submitted by the parties and, more importantly [were] contradicted by the absence of any limiting language in the insurance policy.") Since the court's review is limited to the language of the classification and its applicability to the facts alleged in the complaint, and a fair and reasonable interpretation of "Vacant Building" does, on its face, include the subject property on which Meneses was injured, U.S. Underwriters' [*27] motion for summary judgment on this ground fails.

C. Timely Notice of Suit

U.S. Underwriters also contends that it has no duty to defend or indemnify the Congregation because the Congregation failed to provide timely notice of the underlying incident. Specifically, U.S. Underwriters argues that numerous members of the Congregation were present at the synagogue adjacent to the demolition area and therefore should have been aware of the incident when it occurred, and that the Congregation never informed U.S. Underwriters of the suit until it received the default judgment. (pl's Mem. at 17-19.)

An insurer's duty to cover the losses of its insured is not triggered "unless the insured gives timely notice of loss in accordance with the terms of the insurance contract. A notice provision in an insurance policy is a condition precedent to coverage and, absent a valid excuse, the failure to satisfy the notice requirement vitiates the policy." *Falcon Constr. Corp., 2003 U.S. Dist. LEXIS 14817, 2003 WL 2201942, at *5* (quoting *Travelers Ins. Co. v. Volmar Constr. Co., 300 A.D.2d 40, 42, 752 N.Y.S.2d 286, 288 (1st Dep't 2002)*). This timely notice requirement gives the insurer the [*28] opportunity to "promptly investigate the occurrence so as to protect itself from fraud and to provide an adequate reserve fund." *U.S. Underwriters Ins. Co. v. A & D Maja Constr., Inc., 160 F. Supp. 2d 565, 568 (S.D.N.Y. 2001)* (citing *Power Authority of New York v. Westinghouse Electric Corp.., 117 A.D. 336, 339, 502 N.Y.S.2d 420, 422 (1st Dept. 1986)*).

New York courts have held that the question of whether notice was given within a reasonable time may be decided as a matter of law when (1) the facts bearing on the delay in providing notice are undisputed and (2) the insured has not offered a valid excuse for the delay. *State of New York v. Blank, 27 F.3d 783, 795 (2d Cir. 1994)*. See, e.g., *Gresham v. American Gen. Life. Ins. Co., 135 A.D.2d 1121, 1122, 523 N.Y.S.2d 282, 282 (4th Dept 1987)* ("While ordinarily it is a question of fact whether an insured gave timely notice of loss, summary judgment is warranted where the insured has not offered a credible excuse for the delay in notification and where the underlying facts are not in dispute."); *Jenkins v. Bur-*

2004 U.S. Dist. LEXIS 19608, *

gos, 99 A.D.2d 217, 220, 472 N.Y.S.2d 373, 375-76 (1st Dept.1984); [*29] *Hartford Fire Ins. Co. v. Masternak, 55 A.D.2d 472, 474, 390 N.Y.S.2d 949, 952 (4th Dept. 1977)* ("It is only when no excuse is offered for delay, or when no credible evidence supports the proffered excuse, that notice will be held untimely as a matter of law.").

In this case, the Congregation has proffered two excuses for the delay in notifying U.S. Underwriters. First, the Congregation claims it had no knowledge of the accident at the time it occurred, and second, the Congregation claims it never received the summons and complaint since service was improper. As to the Congregation's awareness of the incident at or around the time it occurred, U.S. Underwriters has pointed to deposition testimony suggesting that the Congregation was "keeping an eye" on the demolition area. n5 In response, however, the Congregation has also presented testimony from several members who contend that neither they nor anyone else had knowledge of the incident. As to the Congregation's knowledge of the underlying suit, U.S. Underwriters argues that service of the summons and complaint was properly executed and that Meneses' attorney had sent a letter informing the Congregation of the suit, [*30] but the Congregation's successful motion to vacate default judgment, at a minimum, suggests that the court credited its claims of ineffective service and lack of notice. These discrepancies raise questions of fact with respect to the Congregation's timely notice of suit, and U.S. Underwriters' motion on this ground is denied.

> n5 This phrase appeared in Mendy Gluck's deposition testimony, but it is not clear who in the Congregation was "keeping an eye" and whether the phrase was understood to mean direct supervision and management of the site:
>
> > Q: Was there anyone specifically assigned to [checking the progress of the work] or it was more the Congregation would keep an eye of what was going on or something else?
> >
> > A: *Everyone was keeping an eye.* We hired Anthony, Empire Concrete, and he was running the job.
>
> (Sklar Decl., Ex. F at 25-26)(emphasis added).

**Conclusion**

Accordingly, all the claims in Meneses' state court complaint fall within the employee injury exclusion and the independent [*31] contractors exclusion, and plaintiff U.S. Underwriters has no duty to defend or indemnify Meneses in the underlying action. For the aforementioned reasons, U.S. Underwriters' motion is granted, and the Congregation's cross-motion is denied. The Clerk of the Court is directed to close the case.

Dated: Brooklyn, New York

September 30, 2004

SO ORDERED:

David G. Trager

United States District Judge

Exhibit I
Page 9 of 9