RECEIVED

JAN 2 6 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE, ALASKA

Tim Cook
Attorney for the Plaintiff
3901 Taiga Drive,
Anchorage, Alaska 99516
(907) 336-5291
(907 336-5292 fax

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

Eric Lutz, as assignee of rights of      )
Dean Bruington, dba DB Enterprises,      )    No. A04 0229 CV (JKS)
                                         )
              Plaintiff,                 )
                                         )
       vs.                               )
                                         )
First Financial Insurance Company,       )
                                         )
              Defendants.                )
                                         )

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Lutz seeks Summary Judgment holding that plaintiff is entitled to the

remedy of coverage by estoppel due to certain substantial breaches by First

Financial Insurance Company, Inc. (FFIC) of the insurer's duties to their insured.

The specific breaches involve the insurer's duty, under Alaska law, to provide its

insured both a prompt notice of a denial and a "reasonable explanation of the

basis in the insurance policy in relation to the facts and applicable law for denial of the claim." [1]

Plaintiff Lutz's Motion for Summary Judgment asks for coverage by estoppel as the appropriate remedy under Alaska law for; (1) FFIC's legally insufficient denial letter, and (2) FFIC's lack of response to the insured's request for a defense. In its Opposition to the Plaintiff Eric Lutz' Motion for Summary Judgment, the defendant attempts to confound the issue by asserting coverage issues rather than making a cogent argument to the Court regarding FFIC's breach of its duties. There is a pending motion before the court regarding Coverage. Here however the issues are the substantial breaches by FFIC of its duties to its insured and whether those breaches are material and thus will preclude FFIC from denying coverage, i.e. Coverage by Estoppel.

## I.    FIRST FINANCIAL'S OPPOSITION DID NOT ADDRESS THE PRIMARY ISSUES OF THE MOTION: Insufficiency of the Denial Notice and Failure to Respond to the Tender

### A. Insufficiency of the Notice of Denial

In its Opposition, defendant addresses the sufficiency of the September 11, 2002 notice of denial in six sentences; four times with the phrase "told him why" or "told him the reasons why"; and twice stating that FFIC set forth "the policy

---

[1] *Sauer v. The Home Indemnity Co., 841 P.2d 176, 182 (quoting 7C John Appleman, Insurance Law and Practice § 4686 (1979); and AS 21.36.125; as referred to in Lloyd's v. Fulton, 2 P.3d 1199, 1204*

provisions that supported" denial. These six unsupported, conclusory statements are the full extent of defendant's discussion of the adequacy of the denial letter.

The September 11, 2002 denial letter clearly does not meet the standard set by the law which requires that a denial "provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim".[2] Nowhere in the Opposition does the defendant show where an "explanation of the basis" for denial appears in the letter. Nor does defendant's Opposition show where any facts regarding the claim are stated in the letter, or where the letter cites applicable law. Defendant does not point to the appropriate passages in the letter because the letter does not contain any language that fulfills these requisites.

The September 11, 2002 denial letter is so generic that a reading of it gives no clue as to what house is involved, what the damage to the structure might be, how the damage came about, when the damage began, or who caused the damage. The only vaguely discernible reason for denial, is that a house is a "product" and "products" are excluded from coverage under the policy—this rationale is in conflict with the policy's own definition of a "product"; is in conflict with Alaska law; and appears to have been abandoned by FFIC as a coverage defense.

In its Opposition defendant does not dispute that the September 11, 2002 notice of denial letter misstates the law. In fact, the Opposition never addresses

---

[2] Alaska Statute 21.36.125(a)(15) of 'Unfair Claim Settlement Practices'

the issue. A notice of denial is required to "provide a reasonable explanation of the basis in the insurance policy in relation to the facts or <u>applicable law</u>..."[3] (emphasis added). A notice of denial that not only misstates the law, but cites case law that has been explicitly rejected by this State's Supreme Court, can not meet the requirement of adequate notice.

In its previously-filed Motion for Summary Judgment asserting no coverage, and in its Opposition, FFIC has presented the court with the reasons that it has now conceived of to be why it is denying coverage. Defendant argues that time of occurrence is outside the policy period, and the work of subcontractor Shelton is not covered under the policy. These reasons, however, are nowhere mentioned in the denial letter. Timing of the loss is never mentioned. Shelton is never mentioned. The letter of September 11, 2002 does not meet the legal requirement for adequate notice of denial.

### B. Failure to Respond to the Tender

The Opposition is completely silent with regard to the defendant's failure to make any communication to Bruington after his tender of the defense. The defendant acknowledges that the Jury demand was received[4], and admits that this satisfied the notice requirement of the policy with regard to tender[5]. However, it

---

[3] *Lloyd's v. Fulton*, 2 P.3d 1199, 1204 quoting *Sauer*.
[4] FIRST FINANCIAL INSURANCE COMPANY, INC.'S OPPOSITION TO PLAINTIFF ERIC LUTZ' MOTION FOR SUMMARY JUDGMENT at p. 34
[5] FFIC has admitted that Bruington satisfied the Condition for Notification under the policy. See Exhibit P, DEFENDANT'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS AND COMBINED DISCOVERY REQUESTS TO DEFENDANT FIRST FINANCIAL INSURANCE COMPANY, INC. (First Financial Supplemental Responses) Admission No. 144.

offers no explanation why FFIC did not respond or communicate its position to its insured subsequent to tender. Instead, the Opposition makes coverage arguments as to why a defense was not owed.

The issue at bar is whether FFIC met its legal obligation to communicate subsequent to tender and explained to its insured the basis for denial. In defendant's Opposition, FFIC's lack of response to Bruington's tender of defense is not once discussed. Why FFIC chose not to discuss in its Opposition why it failed to respond to the tender is unclear. However the duty to defend, or explain the denial of defense is clear. Furthermore, that duty attaches based not just on the facts of the claim, but upon the allegations as well. Moreover, *Bellefonte* clarifies that, "In determining <u>when</u> the duty to defend arises, '(i)t is the allegation in the complaint that controls'"[6](emphasis added). Since FFIC made <u>no response</u> to the tender, there can be no question that FFIC breached its duty to give its insured a response based on the allegations in the complaint.

## II.    BRUINGTON'S HANDS ARE CLEAN

FFIC attempts to portray Bruington as having unclean hands and therefore not deserving protection under the doctrine of coverage by estoppel. FFIC has accused Lutz and Bruington of collusion, misrepresentation, and "manufacturing" coverage. This court has previously explained the realities of modern civil

---

[6] *Bellefonte Ins. Co. v. Wayson*, 489 F. Supp. 58 (D. Alaska 1980), quoting *Theodore v. Zurich General Accident and Liability Insurance Co.*, 364 P.2d 51, 55 (Alaska 1961)

litigation in Alaska in *National Chiropractic Mutual Insurance Co. v. Doe.* [7] In

reaching their own covenant settlement agreement, Eric Lutz and Dean Bruington

have merely traveled down the path that Alaska law provides for an insured who

is abandoned by his insurer. As the *Great Divide* court stated "(C)ovenant

settlement agreements are given effect because it is thought that an insured that

has been placed at economic risk by its insurer's breach should be allowed to

protect itself by shifting the risk to the breaching insurer without first subjecting

itself to potential financial ruin." [8]

      In addition, the defendant attempts to distract the court with red herring

issues, such as its assertion that Bruington was merely a specialty contractor and

therefore barred from utilizing subcontractors. Defendant cites to AS 08.16.0171,

which states that a "specialty contractor means a contractor, other than a

mechanical contractor, whose business operations are described in AS

08.18.024". AS 08.18.024 does not bar subcontractors, but anticipates their use.

The specific language of section (b) states: "Notwithstanding (a) of this section, a

specialty contractor may perform work that (1) requires the use of not more than

three trades". This language appears to anticipate the use of up to three trade

subcontractors. However, this Red Herring is irrelevant to the issue of whether

FFIC fulfilled its duties to Bruington.

      Defendant also attempts to disparage Bruington because of the

questionnaire that was provided with his application for insurance. FFIC does not

assert that there is any legal significance to the questionnaire or that it affects the

---

[7] 23 F. Supp.2d 1109, 1119, 1120 (Alaska 1988)

decision in this matter. The fact is that FFIC (after receiving the questionnaire) issued Bruington a contractor's CGL policy, and collected from him a base premium of $1,184 plus an additional premium of $639 for Products/Completed Operations coverage. As the *Fejes* court determined [9], based on the 9th Circuit decision in *Fireguard Sprinkler Systems, Inc. v. Scottsdale Insurance Co.,*[10] the insurance industry's own publications show there is little reason to pay the extra premium to obtain Products/Completed Operations coverage unless the insured will need coverage for subcontractors.

Most ironic of the assertions that FFIC levies against Bruington is that he did not communicate sufficiently with the company, i.e. did not complain, did not ask questions, did not provide more information, did not tell them that their decision was wrong. FFIC appears to fault their insured for failing to communicate, when in fact it is FFIC that did not respond to Bruington's tender of the jury demand. FFIC never acknowledged receipt, never replied, never called, and never wrote. There was absolutely no communication from FFIC to Bruington after September 11, 2002. Bruington met his obligations under the contract when he sent FFIC notice of the suit filed against him[11]. As the

---

[8] *Great Divide Insurance Co. v. Carpenter, 79 P.3d 599, 608, 609*
[9] 984 P.2d 519, 525
[10] 64 F.2d 648, 652 (9th Cir. 1988)

[11] Exhibit P, First Financial Supplemental Responses, Admission No. 144.

*Bellefonte* court determined, when an insurer fails to respond to a tender, the insured is relieved from further obligations regarding notice. [12]

FFIC had certain fiduciary duties to its insured under that insurance contract, such as providing an adequate denial of coverage and an adequate denial of defense, which in both cases it neglected or refused to do. Bruington met all his requirements as defined by the contract and by law.[13] FFIC did not.

FFIC was required to provide its insured 1) a denial of the original claim that was both a) prompt and b) adequate to avoid prejudice to the insured, and; 2) a denial of tender of defense that was a) prompt and b) adequate to avoid prejudice to the insured. It succeeded in meeting only a single prong of these four requirements. It provided a prompt denial of the original claim; but it failed to adequately explain the reasons or basis for the denial to avoid prejudice to its insured. As regards the tender, FFIC provided no response, and so failed to meet either the prompt or the adequate requirements.

## III.    FFIC'S BREACHES PREJUDICED BRUINGTON

FFIC states that "Bruington was not 'ignorant of the true facts'" and therefore could not have "relied on FFIC's denial 'to his injury'".[14] It is true that

---

[12] In *Bellefonte v. Wayson,* 489 F.Supp 58, 59, the U.S. District Court found that the insured was "fully justified in failing to perform (by tendering the second complaint to insurers) what reasonably appeared to be, in light of the insurers' prior rejection, a futile act."

[13] Exhibit P- First Financial Supplemental Responses, Admission No. 144

[14] FIRST FINANCIAL INSURANCE COMPANY, INC.'S OPPOSITION TO PLAINTIFF ERIC LUTZ' MOTION FOR SUMMARY JUDGMENT, page 36

Bruington, as the builder, knew many facts concerning the construction of the house. But he did not know (and from the September 11, 2002 denial letter could not know) that he was being denied because FFIC had decided the damage to the house occurred outside the policy period, or because one of his subcontractors, Mike Shelton, was being classed as an independent contractor rather than as a subcontractor. Time of occurrence or loss are never mentioned in the notice of denial letter. Mike Shelton is never mentioned. The independent contractor endorsement is quoted (along with a laundry list of other exclusions), but how that applies to Bruington's claim is not mentioned. There are no facts of Bruington's claim mentioned.

Bruington had no reason not to rely on October 30, 1999 as the date of loss. The Reservation of Rights letter he received from FFIC's claims adjuster stated that October 30, 1999 was the date of loss.[15] Neither FFIC nor anyone else ever suggested that October 30, 1999 was incorrect or that any other date of loss was being considered.[16] If he had known that timing of property damage might be a critical issue in obtaining coverage or a defense, he certainly would have contacted his other insurers and would have attempted to preserve evidence of the timing of the loss.[17]

---

[15] Exhibit Q, Reservation of Rights Letter sent by FFIC's claims adjuster David Buness to Dean Bruington, Reservation of Rights Letter)
[16] In fact both reports prepared by FFIC's claims adjuster listed 10/30/99 as the date of loss. See Exhibit C, Northern Adjusters July 30 Report; Exhibit D, Northern Adjusters August 30 Report; Exhibit Q, Reservation of Rights Letter.
[17] Exhibit N- Affidavit of Dean Bruington, (Bruington Affidavit), ¶ 13 & 15

FFIC contracted to be Bruington's advocate, his defender, exactly as Bruington's subsequent insurers were. He had no reason to believe that his claim would be treated differently by another insurer. Only if he had known that it was the timing of the loss that was in question would he think that he may be covered by another CGL policy that was in effect at a different time. But he did not know, and had no way of knowing from either the denial letter or any communication from his insurer that timing of the loss was an issue.

Bruington is not a lawyer. He did not know insurance law and did not realize that the case law cited in the notice of denial letter had been explicitly rejected in Alaska.[18] FFIC's misleading statements left him with the belief that he had no legal recourse because the courts' interpretation of the policy language would not support his claim. If FFIC had quoted applicable law, rather than inapplicable law, Bruington may have realized that hiring a private attorney to represent him was a realistic course of action after his insurer abandoned him.

Bruington was not only misled about the state of the law, but about the policy itself. The denial letter states that 'your product' is not covered by the denial letter. But the policy's own definition of 'your product' is: "Any goods or products, other than real property.. ."(emphasis added). The Lutz home was real property. As real property it is, by the policies own definition, not "your product", and therefore the "your product" exclusion would not apply. If Bruington had been aware that what FFIC was telling him about the policy was not accurate[19], he

---

[18] *Fejes v. Alaska Insurance Co., 984 P.2d 519, 526*
[19] As noted above, it appears that this reason for denial has been abandoned.

likely would have sought the advice of an attorney and prosecuted his claim more vigorously.

FFIC deceived Bruington and abandoned him. Nevertheless, Bruington continued to meet his obligations under the contract by providing FFIC with a timely notice of litigation filed against him[20]. FFIC made absolutely no communication to Bruington in response to his tender. Defendant breached every duty it owed its insured, from an inadequate investigation of his claim, to no reasonable explanation for denial of coverage, and finally to making no response at all to his request for a defense.

## IV.    MATERIAL BREACHES SUPPORT COVERAGE BY ESTOPPEL

### A. Estoppel is the Appropriate Remedy for an Insurer's Substantial Breaches

In its Opposition, defendant declares that estoppel is not appropriate here, as it was in *Sauer*[21], because this case is different. However *Sauer* is very much on-point. In *Sauer,* the insurer neither communicated its decision to withdraw nor explained the basis for its decision. In the instant case, FFIC did satisfy one prong of its duty to its insured by sending a relatively prompt[22] denial of the July 2002

---

[20] FFIC has admitted that Bruington satisfied the Condition for Notification under the policy. See Exhibit P- First Financial Supplemental Responses, Admission No. 144
[21] 841 P.2d 176, 183
[22] It appears that FFIC never provided Bruington with the required notification, pursuant to 03 AAC 26.050, that investigation of his original claim would exceed the 30 days allowed under Alaska's insurance regulations.

claim for coverage. However, it utterly failed to satisfy the second prong when it did not provide its insured the reasonable explanation as required under Alaska law. This is a breach of FFIC's duty to provide a reasonable explanation.

Latter, when the insured received, in May 2003, his first notice of the litigation filed against him, he promptly tendered this notice to FFIC. <u>FFIC did not respond</u>. There was no prompt denial of a defense nor was any explanation made to the insured regarding the reasons for the denial.[23] Neither prong was met. The breaches of duty by FFIC are virtually the same as the breaches in *Sauer*.

At page 31 -32 of the Opposition, First Financial states: "These cases (*Sauer* and *Lloyd's*) do not stand for the extreme proposition that a breach of the duty to defend estops the insurer from denying coverage." In support of that position FFIC quotes a passage from *Great Divide Insurance Co. v. Carpenter*[24]. However, <u>that passage does not address the judicially-imposed remedy of coverage by estoppel, but was instead a discussion of covenant settlement agreements.</u>[25]

FFIC also seeks to rely on *Jones v. Horace Mann Insurance* as support for its argument that the remedy of estoppel is inappropriate here. However, in *Jones* the insurer clearly informed their insureds in writing that the snowmobile being operated off the insured premises at the time of an accident was the reason for denial of the homeowner's policy claim. [26] This is in stark contrast with the instant case where the insurer did not explain that damage occurring outside the

---

[23] Exhibit N- Bruington Affidavit, ¶ 19 & 20
[24] 79 P.3d 599, 606, 609

[26] 937 P.2d 1360, 1361

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO SUMMARY JUDGMENT                                    PAGE 12 OF 29
NO. A04-229-CV (▓▓)

policy period or that Shelton being an independent contractor were reasons for denial. Unlike the insurer in Jones, FFIC breached its duty to provide a reasonable explanation for denial.

FFIC's attempt to rely on the holding in *Afcan* is similarly misplaced. As the *Sauer* court pointed out, "In Afcan, the insurance company clearly communicated its decision to withdraw from the defense of the case and explained to the insured the basis of its decision." [27] In the instant case, FFIC communicated nothing in response to the tender of defense.

FFIC also seeks to rely on *Makarka v. Great American Insurance Co.*[28]. However once again, FFIC did not even come close to providing the kind of response that the insurer in *Makarka* did. The denial letter (of the insurer in that case*)* "… assessed Markarka's claim for bodily injury and **accurately** explained that the injury occurred outside of the period covered under the Great American policy." (emphasis added). [29] Whereas FFIC's denial letter assessed nothing in relation to Bruington's claim and never mentioned that damage occurring outside the policy period or that Shelton being an independent contractor had anything to do with the denial.

FFIC is simply wrong in stating that "These (Alaska) cases do not stand for the extreme proposition that a breach of the duty to defend estops the insurer from denying coverage. Estoppel (in *Lloyd's*) was founded on highly egregious

---

[27] 841 P.2d 176, 183
[28] 14 P.3d 964
[29] 14 P.3d 964, 970

conduct far worse than a breach of the duty to defend."[30] This statement is incorrect an unsupported.

In *U.S. v. CNA Financial Corporation*[31] the U.S. District Court for the District of Alaska came to exactly the opposite conclusion stating that "(h)ere (in *CNA*) the <u>breach was of the duty to defend. That is a considerably more serious breach of an insurance contract than the breach in the *Lloyd's* case.</u>" (emphasis added). Alaska law does not require multiple egregious breaches to impose coverage by estoppel. An insurer that breaches the duty to defend has materially breached and coverage by estoppel is appropriate.[32]

FFIC implies that Bruington is not entitled to the remedy of coverage by estoppel since he was somehow remiss in not more vigorously contesting FFIC's denial of coverage and its failure to respond to the tender of notice of litigation. However, in *Bellefonte Insurance Co. v. Wayson,*[33] the United States District Court, District of Alaska, addressed a similar fact situation involving a far more sophisticated insured. In *Bellefonte,* the City of Fairbanks tendered the complaint within the appropriate notice period to its insurers. "The insurers did not respond, and their silence constituted a rejection of the City's claims."[34] Furthermore, when the original federal court action was dismissed in a stipulated agreement, the district court found that the city was "fully justified in failing to perform (by

---

[30] First Financial's Opposition, page 31
[31] 214 Fed. Supp. 2d 1044 (2002)
[32] *Great Divide Ins. Co. v. Carpenter,* 79 P.3d 599 (Alaska 2003) 610; *Lloyd's v. Fulton,* 2 P.3d 1199, 1209; *Sauer v. Home Indemnity Co.,* 841 P2d. 176, 183, 184
[33] 489 F. Supp. 58 (1980)
[34] 489 F. Supp. 58, 59 (1980)

tendering the second complaint to insurers) what reasonably appeared to be, in light of the insurers' prior rejection, a futile act."[35]

FFIC has admitted that Bruington's tender of the jury demand notice filed in *Lutz v. Bruington,* 3AN-03-0796 (by facsimile transmission on or about May 14, 2003 to the attention of the claims department at First Financial) satisfied the Condition for Notification as described in the CGL policy. [36] However, FFIC now argues in its Opposition that something more was required from Bruington to perfect his claim. What that is, is not explained.

It appears that FFIC is attempting to sidestep the fact that what it made absolutely no response to Bruington's tender. [37] As the court held in *Bellefonte,* silence constitutes a denial. In addition, the insured who receives no response has no obligation to continue to carry out one futile act after another in the face of abandonment by his insurer.

FFIC relies heavily on the 1981 Alaska Supreme Court decision in *O'Neill Investigations v. Illinois Employers Insurance* to support its arguments that the remedy of coverage by estoppel is extremely limited in Alaska law. However *O'Neill* was decided a quarter century ago and was not a case where public policy dictated protecting a "peculiarly vulnerable" insured. Rather that case involved a major debt collector's attempt to obtain coverage for its own attorney's defense costs as a result of the State's suit for unfair trade practices violations. The *O'Neill* court found there was communication between the insurer

---

[35] 489 F. Supp. 58, 59 (1980)

[36] Exhibit P, First Financial Supplemental Responses, Admission No. 144.

and insured and therefore no breach of duty to the insured. Furthermore, the remedy of coverage by estoppel for substantive breaches of an insurer's duties to an insured has been considerable developed since O'Neill. It is now well entrenched in Alaska law. See *Lloyd's v. Fulton.*

The fact is, that far from reserving the remedy of coverage by estoppel for only the most egregious breaches of the insurer's duties to their insured, the *Lloyd* court held that

> (w)hile some form of sanction more lenient that estoppel might be desirable for breaches involving equally situated parties engaged in arms-length business transactions, given the size and pervasiveness of the insurance industry, its economic strength, and the fiduciary duty of loyalty it owes to its clients, we conclude that an insurer's breach of the duty to defend must be considered a material breach that estops denial of coverage unless the breach clearly has no adverse impact on the relationship between the insurer and insured. [38]

FFIC is simply wrong in claiming that neither the failure to provide a reasonable explanation nor the failure to respond to the tender of notice of litigation could have prejudiced Bruington. Such a claim ignores the reality of his situation as well as the higher duties that the law imposes on insurers as fiduciaries.

Like FFIC, the insurer in *Lloyd's* attempted to argue that coverage by estoppel was inappropriate as a remedy for failure to provide notice. However unlike the situation in Lloyd's, Bruington <u>did not</u> receive a defense from his insurer. It is instructive that, despite the fact that the insured in *Lloyd's* did receive

---

[37] Exhibit N- Bruington Affidavit, ¶ 20
[38] 2 P.3d 1199, 1209

a defense, the *Lloyd's* court nevertheless found that the duty to give "prompt and adequate notice arises from, and is integrally related to, an insurer's duty to defend." That court also found that the prompt-notice duty is independently enforceable, even when a defense is provided.[39]

Defendant's failure to provide Bruington a reasonable explanation for denying his claim and the failure to even respond to his tender of notice of litigation prejudiced Bruington. It left him without a place to start in acting to protect himself or to meet his obligations to the clients for whom he constructed a home. As he had no idea that the timing of property damage would be at issue until long after the failed foundation was replaced, Bruington was hindered in gathering evidence. [40] With no notice that the timing of the date of loss was at issue, Bruington did not seek coverage from successive insurers. [41] He received nothing from FFIC following his tender of the litigation that he could carry to an attorney for advice of what to do next. Truly, all he could know from defendant's silence, was that he was abandoned.

An insurer's insufficient denial or an abandonment of their insured, carries a price under Alaska law. That price is the court's imposition of the remedy of coverage by estoppel.

## V.    Coverage Issues

---

[39] 2 P.3d 1199, 1204, 1205
[40] Exhibit N- Bruington Affidavit, ¶ 15
[41] Exhibit N- Bruington Affidavit ¶ 14, 15

Rather than address the issues brought forth in plaintiff's Motion for Summary Judgment, defendant has replayed its arguments from the previously filed Motion for Summary Judgment contesting coverage. Although the Plaintiff believes that coverage arguments are not relevant to the issues brought forward in this motion,[42] in an abundance of caution plaintiff will address the issues raised in the defendant's Opposition.

### A. Date of Loss and Independent Contractor Issues

In defendant's Opposition, more than three years after the original claim was denied, FFIC attempts to justify its denial based on after-the-denial rationales that (1) no property damage occurred during the policy period, and (2) the subcontractor Shelton is an independent contractor and excluded from coverage. In support of these contentions it offers not one single piece of evidence that was obtained before the denial was made. Nor does defendant make any attempt to point out WHERE in the denial letter these reasons for denial are explained.

Defendant now argues that "Buness (the adjuster) … found no evidence of the existence of any property damage before the spring of 2000" without noting that he did not discover WHEN property damage began at all, and seems to have made no attempt to do so. Buness' report states that Lutz began to notice damage

---

[42] The court in *Lloyd's v. Fulton,* 2 P.3d 1199, 1208, made clear that the remedy of "coverage by estoppel" should not be converted into a remedy of "coverage by proof of coverage." Alaska has adopted this rule due, in part, to an "insurer's peculiar ability to take advantage of its insured's trust and the typical insured's vulnerability to overreaching conduct."

"(a)t an unknown date following the occupancy"[43] (occupancy began October

1999). That unknown time may have been October 1999, and it would seem that

Buness believed this to be the case. In every report that he filed with FFIC, and in

the Reservation of Rights which he sent to Bruington, he notes the date of loss as

October 30, 1999. (In his 2005 affidavit, Buness stated that he "arbitrarily

adopted" the October 30, 1999.[44]) "Spring of 2000' was mentioned in Buness'

reports ONLY as the time that Lutz reported the damage to Bruington. It was

never mentioned as the time when damage occurred, nor was it mentioned as the

time that Lutz first noticed damage.

The time of occurrence being outside the policy period was not

investigated by Buness nor did FFIC employ an engineer to determine when

damage first occurred; it appears from all available information that it was not

questioned by either Buness or FFIC; and there is not one word in the denial letter

that even remotely raises this issue. From the remarkable absence of consideration

of time of occurrence in all of the pre-denial-decision documentation, it is clear

that this reason for denial was conceived at a later date, probably after litigation

was filed against FFIC, in an attempt to justify an indefensible decision made

years before.

Now that FFIC is the defendant, for the purpose of justifying its earlier

denial, defendant has adopted 'spring of 2000' as the time of occurrence.

Formerly, in it Motion for Summary Judgment, FFIC claimed that this was based

[43] Exhibit C-Northern Adjusters' July 30, 2002 letter to FFIC, page 2; FFIC 0087
[44] Exhibit R- Affidavit of David Buness, ¶ 5 (Previously submitted as Exhibit K, in PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT)

on a 'permafrost melting in the spring' theory[45], but that theory seems to have

been abandoned in the Opposition. In its place, defendant seems to have no theory

at all in regard to how, why, or when damage to the Lutz house began. Nor does

defendant present any evidence to dispute plaintiff's documentation that damage

began to occur at an earlier time.

Plaintiff has presented the court with evidence showing that damage did,

in fact, begin long before spring. Bowen Engineering's "Foundation Closure

Report" [46] indicates that damage most likely began when the full weight of the

completed and occupied house came to bear upon an inadequately prepared

foundation and fill in October or November of 1999. Property damage arising

from such continuous exposure to harmful conditions is clearly one of the hazards

provided coverage under a CGL policy.[47]

Nevertheless, defendant persists with the 'spring of 2000' time of

occurrence, without a single piece of evidence or any plausible theory to support

it. To try to promote this "spring" date of damage, defendant has relied entirely on

documents that did not exist until some time after the denial decision was made.

Eric Lutz' later statement that he noticed cracks in the drywall in the spring is

noted. Also noted is Marsha (now Henderson) Lutz' remembrance of damage in

the winter—not only drywall cracks but that "several of the doors did not operate

---

[45] Defendant's MOTION FOR SUMMARY JUDGMENT, page 12
[46] Exhibit S- Bowen Engineering "Foundation Closure Report" (Previously submitted as Exhibit Q, in PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT)
[47] *Montrose Chemical Corp. v Admiral Ins. Co.,* 10 Cal.4[th] 645, 664 (1995)

properly"[48]—but defendant does not address how this works with its 'no damage till spring' proposal.

Nor does defendant address the fact that the time of discovery of property damage has no bearing on coverage under a third party liability policy. Under Bruington's CGL policy, there is no contractual requirement that discovery of damage be made within the policy period, but only that damage occur within that period.

> CGL policies do not impose, as a condition of coverage, a requirement that the damage or injury be discovered at any particular point in time. Instead, they provide coverage for injuries and damage caused by an 'occurrence,' and typically define 'occurrence' as an accident (or sometimes a 'loss'), including a 'continuous or repeated exposure to conditions.[49] (Emphasis added.)

Unlike FFIC's 'time of damage' argument, for which it offers not a single fact to support damage occurring outside the policy period, defendant does offer data concerning the subcontractor Shelton. With this information—pages of it— defendant attempts to redefine Shelton as an independent contractor whose work was not covered, rather than a subcontractor whose work was covered, by the policy.

There are, however, two points that preclude this as justification for its earlier denial. First is the undeniable fact that none of this information was known by defendant at the time it denied either coverage or the duty to defend. ALL of

---

[48] Exhibit T-Affidavit of Marsha Lutz , (Previously submitted as Exhibit O, in PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT)

this information was gathered years later in response to the *Lutz v. First Financial* litigation. At the time of the denial letter, the only information FFIC had about Shelton was that he was a subcontractor who performed the excavation work. Therefore, Shelton's status as an independent contractor could have had no bearing on either the decision to provide coverage or the decision to deny a defense.

Here, defendant is attempting to do what the courts have refused to allow; it is trying to use information obtained in response to litigation against it as justification for its earlier decisions to deny.

> "If an insurance company could deny a claim without thoroughly investigating it and then defend a subsequent lawsuit on grounds which it develops during discovery for trial, the company's incentive to fulfill its duty to investigate would be significantly diminished."[50]

Second, even if this information had been obtained by defendant at the time it made these decisions, the insurance contract's use of different terms—granting coverage using one term (subcontractor) and taking it away using a different term (independent contractor), creates an ambiguity that must be interpreted in favor of the reasonable expectations of the insured.[51] Therefore the work of Bruington's subcontractor, Shelton, would be covered.

In its Opposition, defendant states that it had no duty to defend Bruington because the Lutz Complaint "sought nothing potentially covered". But the

---

[49] *Montrose Chemical Corp. v Admiral Ins. Co.,* 10 Cal.4th 645, 664 (1995)
[50] *McLaughlin v. Connecticut General Life Ins. Co.,* 565 F. Supp. 434 (N.D.Cal. 1983)

[51] Fejes *v. Alaska Insurance Co.,*984 P.2d 519, 522

allegations in Lutz' Complaint[52] against Bruington clearly establish the potential

for a judgment within the coverage of the policy and therefore defendant did have

a duty to offer a defense.

> An insurer is relieved of its duty to defend only where a
> third party complaint can by no conceivable theory raise a single
> issue which could bring it within the policy coverage. Any doubt
> as to whether the insurer has a duty to defend is resolved in the
> insured's favor. To prevail, the insured must prove the existence of
> a potential for coverage, while the insurer must establish the
> absence of any such potential. In other words, 'the insured need
> only show that the underlying claim may fall within policy
> coverage; the insurer must prove it cannot. Facts merely tending to
> show that the claim is not covered, or may not be covered, but are
> insufficient to eliminate the possibility that resultant damages will
> fall within the scope of coverage, therefore add no weight to the
> scales. . . Once a prima facie showing is made that the underlying
> action fell within coverage provisions, an insurer may defeat a
> motion for summary judgment only by producing undisputed
> extrinsic evidence *conclusively* eliminating the potential for
> coverage under the policy.[53] (Emphasis added)


Alaska law is even more protective of the insured in limiting the effect of

extrinsic facts on a duty to defend. As this court has stated, "Facts outside the

pleadings cannot defeat the duty to defend, but they may create it." [54]

Allegations in the original Complaint against Bruington do potentially fall

within the policy's coverage. However, even if the allegations were found to be

deficient, the facts developed by FFIC in the claims investigation--which led

---

[52] See PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, page 23
[53] *American Internat. Bank v Fidelity & Deposit Co.* (1996, 2nd Dist) 49 CA4th 1558, 57 Cal Rptr
2d 567
[54] *National Chiropractic Mutual Insurance Co. v. Doe*, 23 F.Supp.2d 1109, 1121

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO SUMMARY JUDGMENT                    PAGE 23 OF 29
NO. A04-229-CV (TMB)

FFIC's adjuster to "adopt" a "date of loss" within the policy period[55] and to list

Shelton as a "subcontractor" for Bruington[56]--supported liability and a duty to

defend. No extrinsic facts were developed at the time of the complaint to change

that. (All information concerning Shelton was obtained three years later.)

Therefore FFIC had a duty to defend based not only on the allegations of the

complaint but also on the extrinsic facts it had developed through the time of

Bruington's tender of the litigation.

  When Bruington tendered the defense to FFIC, it made NO RESPONSE.

Defendant states that nothing had changed from the time it sent the letter denying

both liability and a defense as if to mean that no response was needed. But Alaska

law does not see it that way. In *Continental Ins. Co. v United States,* the court

clarified the proper time to determine coverage and the time to determine whether

a defense was warranted.

> The proper time to determine whether an insurer is liable upon its
> policy of insurance is after all the relevant facts have been
> ascertained; however, where an insurance contract creates a duty in
> the insurer to defend against lawsuits which could fall within the
> coverage, the scope of *that* duty is established by the pleadings in
> the action and by the facts which are known or reasonably
> ascertainable at the time defense is tendered to the insurer.
> (emphasis added) [57]

  Defendant clearly breached its duty when it made no response to

Bruington's tender of defense. At the time it sent the denial letter, which denied

both coverage and defense, it could not have determined its duty as "established

---

[55] Exhibit R- Buness Affidavit, ¶ 6

by the pleadings in the action", because there were no pleadings and would not be

for seven months. Then, when FFIC did receive notice of pleadings, FFIC did

nothing, not even send a letter to its insured to explain that it was denying him a

defense.

Even now, in its Opposition, FFIC does not explain why it breached its

duty to respond to Bruington's notice that he needed a defense. There is an excuse

about why it did not believe it had a duty to defend, but no justification for simply

abandoning its insured with no explanation.

## VI. CONCLUSION

First Financial did not address the main points of Plaintiff's Motion For

Summary Judgment.

In the Motion, plaintiff demonstrated that defendant's September 11, 2002

denial letter was legally insufficient. Defendant's Opposition has not offered the

court anything to the contrary. There has been not even an attempt to show where

in the denial letter there was any explanation of the basis of the denial, facts about

the claim, or applicable law. Clearly, there were none. This constitutes a breach of

the insurer's duties to its insured.

The Opposition ignored the issue of First Financial's failure to respond

subsequent to the tender. It provided no rationale or justification for not

responding to the tender, other than the assertion that "nothing had changed" with

the tender of litigation notice. However such an assertion cannot be squared with

---

[56] Exhibit C & D- Northern Adjusters Claim Investigation Reports of July 30 and August 30.

the primary purpose of third-party liability insurance like the CGL policy at issue here. FFIC has not denied the fact that it made no response to Bruington's tender. This un-denied failure to respond to the tender of defense is clearly a material breach.

Finally, the Opposition did not address the September 11, 2002 letter of denial in which there were material misstatements of law and citations to cases that have been explicitly rejected by the Alaska Supreme Court. It is clearly a breach for an insurer to misstate the law in a manner that conveys that coverage is unavailable and to cite in support of that, case law that has been explicitly rejected.

Therefore we ask the court to find that defendant has breached its duties to its insured and grant plaintiff the appropriate remedy under Alaska law. That remedy is coverage by estoppel.

Respectfully submitted on January 25, 2006, by

Tim Cook, Attorney for Plaintiff Eric Lutz
Alaska Bar Card # 9007048

---

[57] *Continental Ins. Co. v United States F. & Guar.* 528 P.2d 430, 434 (Alaska 1974)

## LIST OF EXHIBITS

Exhibit A- Commercial General Liability Policy No. F0117G412046

Exhibit B- ANSWER TO COMPLAINT

   Lutz v. First Financial Insurance Co. Inc.,   A04-229-CV(JKS)

Exhibit C- Northern Adjusters Preliminary Report, dated July 30, 2002

Exhibit D- Northern Adjusters Closing Report, dated August 30, 2002

Exhibit E- First Financial Denial letter dated September 11, 2002

Exhibit F-  COMPLAINT FOR DAMAGES,  Lutz v. Bruington, 3AN 03-
   7096 CI

Exhibit G- DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST
   REQUESTS   FOR ADMISSIONS AND COMBINED DISCOVERY
   REQUESTS

Exhibit H- Non-Conforming ANSWER, Lutz v. Bruington, 3AN 03-7096 CI

Exhibit I-  Agreement and Release

Exhibit J-  Assignment of Claim and Right

Exhibit K- SUMMARY JUDGMENT ORDER, Lutz v. Bruington, 3AN 03-
   7096 CI

Exhibit L- FINAL JUDGMENT ORDER, Lutz v. Bruington, 3AN 03-7096
   CI

Exhibit M-          Fax Cover Page and Fax of Jury Demand to First Financial

Exhibit N- Affidavit of Dean Bruington

Exhibit O- Affidavit of Counsel

## SUPPLEMENTAL EXHIBITS

Exhibit P- DEFENDANT'S SUPPLEMENTAL RESPONSES TO

PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS AND

COMBINED DISCOVERY REQUESTS TO DEFENDANT FIRST

FINANCIAL INSURANCE, INC.

Exhibit Q- Reservation of Rights Letter to Dean Bruington

Exhibit R- Affidavit of David Buness, Claims Adjuster

Exhibit S- Bowen Engineering FOUNDATION CLOSURE REPORT and

Affidavit of G.L. Bowen

Exhibit T- Affidavit of Marsha Henderson (formerly Marsha Lutz)

Exhibit U- Affidavit of Counsel dated January 25, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on ___1·26·06___ , a true and correct copy of the <u>Plaintiff's</u> <u>Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment</u>  was mailed to the following on January 2006:

Andrew Guidi
Delaney, Wiles, Hayes, Gerety, Ellis, & Young, Inc.
1007 West 3rd Ave, Suite 400
Anchorage, Alaska

_____
Tim Cook