State of Alaska )
) ss
City of )

## AFFIDAVIT OF DEAN BRUINGTON

On this day, Dean Bruington appeared before me, the undersigned notary public. After I administered an oath to him, upon oath, he said:

"My name is Dean Bruington. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct."

1. My name is Dean Bruington and I reside and operate a contractor business in Gakona, Alaska.

2. I am the sole owner of DB Enterprises.

3. From 12/08/98 to 12/08/99 I had a CGL insurance policy, including the additional coverage of 'Products—Completed Operations' (Policy No. F 0117G412046) with First Financial Insurance Company. The policy was in the name of DB Enterprises.

4. When I bought the policy, I expected to be covered for claims against me for accidents to persons during construction and claims against me for catastrophic damages to houses both during and after completion. I also understood that the 'completed operations' coverage, for which I paid an additional premium of $631, would cover the completed house if the damages arose from the work of subcontractors I might employ.

5. I was aware of the endorsement in the policy stating that "independent contractors" were excluded from coverage. I understood this to apply to independent contractors that came onto the jobsite to perform work, such as

EXHIBIT N
1 of 4

installing power lines from the electric utility, that were not my subcontractors. If the policy was designed not to cover work done by my subcontractors, I expected it to say so.

6. If I had understood that First Financial intended to deny any coverage of subcontractor's work in completed buildings, I would have chosen not to pay an additional $631 premium for the completed operations coverage.

7. In 1999, my construction company, DB Enterprises, contracted to build a home in Glennallen for Eric and Marsha Lutz. The house was completed by late October of 1999.

8. I employed Mike Shelton as a subcontractor on the Lutz job. His work included preparation of the building site by excavating and providing fill for the foundation.

9. In the spring of 2000 Eric Lutz contacted me about problems that were appearing in the house. These included cracks in the drywall, as well as doors and windows not opening and closing properly.

10. In July of 2002, as damages became progressively more severe and beyond my ability to repair, I submitted a claim to First Financial.

11. I received in reply from First Financial a letter dated September 11, 2002, which completely and absolutely denied my claim for coverage and for a defense.

12. From the denial letter I could not determine the factual basis for the denial of coverage and a defense. The only thing I could determine was that First Financial was not going to provide me with any help for the claims against me.

EXHIBIT N
2 of 4

13. If it had been explained to me at that time that coverage for the Lutz claim was being denied because First Financial had determined that damages had not occurred until after the First Financial policy expired, I would have certainly contacted the insurance companies that I had CGL policies with after December 8, 1999.

14. I have attached to this affidavit my records of the insurers I have had coverage with since the expiration of the First Financial policy.

15. In addition, if I had been told that coverage for the Lutz claim was being denied because First Financial had suspected that damages had not occurred until after the First Financial policy expired, I would have actively sought whatever evidence might have been obtainable as to the timing of the failure of the footers and other components of the house during the replacement and repair of the foundation of the Lutz residence by Bowen Engineering in the summer of 2003.

16. I have attached a "Foundation Repair Closure Report", dated October 2003, that was prepared for me by Bowen Engineering of Juneau, Alaska. This is a report of the findings of the engineering firm that replaced and repaired the foundation of the Lutz residence.

17. Among the comments made by Bowen are that "*This site appears to have been saturated with water. It is a silt that is relatively impermeable. Over a period of years it looks like the building weight plus (possibly) drying caused the moisture to be forced out leading to a loss of pore pressure and surface settlement. There is an analogy with a situation where fill is being placed at a building site that is too*

EXHIBIT N
3 of 4

*wet. At the depth of 28 feet no frozen ground was encountered. If permanently frozen ground exists at this site, it must be at a very great depth."*

18. Based upon this engineering report and my own observations of the auger drilling that was done to repair and replace the house foundation in the summer of 2003, it is my belief that the damages to the Lutz house began as soon as the weight of the house and its furnishing were in place in late October of 1999. Also it seems likely that heating of the occupied dwelling contributed to the drying out of the water from the silt the house was built upon.

19. Upon receiving my first notice of the court suit filed against me by Eric Lutz, I faxed the jury demand to the claims department at First Financial. I recall that this was around the middle of May in 2003.

20. I received no response of any kind from First Financial after I faxed the notice of the court suit filed against me by Eric Lutz.

21. This lack of any response was disconcerting and left me uncertain as to what I should do in response to the litigation.

_____
Dean Bruington

Subscribed and sworn/affirmed before me at
GAKONA ALASKA this 14th
day of November 2005.

_____
Notary Public in and for the State of Alaska,
residing at _____
My Commission expires _____

JULIE SINE
POSTMASTER / NOTARY PUBLIC
PER USPS ASM 112.44
GAKONA AK 99586

[Seal: GAKONA AK NOV 14 2005 USPS - 99586]

EXHIBIT N
4 of 4