UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| ERIC LUTZ, as assignee of the rights of Dean Bruington d/b/a DB Enterprises,<br><br>            Plaintiff,<br><br>      vs.<br><br>FIRST FINANCIAL INSURANCE CO.,<br><br>            Defendant. | No. 3:04-cv-00229-TMB<br><br>MEMORANDUM DECISION<br>AND ORDER<br>[Re: Motions at Dockets 28 and 34] |

## I.  MOTIONS PRESENTED

At docket 28 defendant First Financial Insurance Co. ("FFIC") has moved for summary judgment in its favor.  At docket 34 plaintiff Eric Lutz ("Lutz") has cross-moved for summary judgment.  Both motions are opposed and the moving party in each has filed a reply.  Neither party has requested oral argument and the court having reviewed the moving papers and oppositions has determined that oral argument would not be helpful in deciding the motions at bar.

## II.  BACKGROUND/JURISDICTION

This action arises out of a Commercial General Liability Policy issued by FFIC to Dean Bruington d/b/a DB Enterprises ("Bruington") covering the period 12:01 a.m., December 8, 1998, to 12:01 a.m., December 8, 1999.  Bruington has assigned his rights under the policy to Lutz in settlement of a lawsuit brought against him by Lutz.

The allegations in the complaint against Bruington are summarized as follows.[1] In the spring of 1999, Bruington contracted with Lutz to construct a house near Glennallen, Alaska; the house was completed and Lutz took occupancy around October

---

[1] Docket 44, FFIC Opposition to Plaintiff's Motion for Summary Judgment, Exh. C., pp. 2–4.

– November 1999.  In late spring 2000 some minor hairline cracks appeared in the interior plaster finish.  By fall 2000 Lutz had noticed that cracks were occurring in the drywall itself.  During the period from late 2000 to the fall of 2001 Lutz noted evidence of stresses in the structure, including gaps appearing between the bottom plate under the floor and the studded stem wall that supported the structure on the concrete footer.  In addition, doors and windows began to stick.  In the fall of 2001, Bruington made some repairs including the installation of adjustable jacks to support the middle of the structure.  Over the winter of 2001 – 2002 the structure continued to deteriorate.  In the summer of 2002 Bruington inspected the premises at which time the egress doors and windows were sticking or nonfunctional; significant cracks, up to 1½" wide had opened in the drywall; and the concrete slab floor in the garage had slumped opening a gap of more than a foot between the bottom of the garage walls and the slab.

It was apparently at this point that Bruington threw in the towel, indicating to Lutz that he was either unable or unwilling to effect repair of the deteriorating residence.  A claim was made to FFIC in the summer 2002.  FFIC retained Northern Adjusters, Inc. to investigate the claim.  Northern Adjusters did an investigation and submitted its report to FFIC.[2]  In September 2002, after receiving the report, FFIC sent a letter to Bruington informing him that it had no duty to defend him nor would it indemnify him for any claim made.[3]

In May 2003 Lutz brought an action against Bruington in the Alaska Superior Court.  Bruington sent a facsimile to FFIC, which attached a copy of a jury demand and stated: "I received this NOTICE OF JURY DEMAND and was advised to forward it to you.  Will send any further information we receive."[4]  There is no evidence in the record that a copy of the summons and complaint were ever forwarded by Bruington to FFIC or

---

[2] Docket 47, Plaintiff's reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment, Exh. D.

[3] *Id.*, Exh. E; Docket 28, Defendant's Motion for Summary Judgment, Exh. F.

[4] Docket 38, FFIC's Reply Brief in Support of Its Motion for Summary Judgment, Exh. R.

its claims adjuster, Northern Adjusters.  It is undisputed that FFIC did not respond to the facsimile.

Bruington defended the lawsuit *pro se.*  In April 2004 Lutz and Bruington entered into a settlement agreement, under the terms of which Lutz released Bruington from all personal liability in exchange for Bruington's agreement to making certain specified repairs and the assignment to Lutz of Bruington's rights against FFIC.[5/]  Bruington executed the required assignment.[6/]  Lutz then brought an unopposed motion for summary judgment against Bruington, which the Alaska Superior Court granted, setting a hearing on the issue of damages.[7/]  After a hearing, the Alaska Superior Court entered a final judgment, including an enhancement under AS § 45.50.471 ("Unlawful Acts and Practices"),[8/] in the amount of $5,601,128, inclusive of attorney's fees in the amount of $188,000.[9/]

Lutz then commenced this action against FFIC in the Alaska Superior Court. FFIC removed the action to this court under 28 U.S.C. § 1441(a).[10/]  Lutz is a citizen of Alaska and FFIC is incorporated in Illinois with its principal place of business in North Carolina.[11/]  There is complete diversity between the parties and the amount in controversy exceeds $75,000.  This Court has jurisdiction under 28 U.S.C. § 1332.

### III.  ISSUES PRESENTED

FFIC's motion raises issues regarding exclusion from coverage damages occurring: (1) as a result of the insured's own work product; (2) as a result of the work of an independent contractor; or (3) outside the policy period.

---

[5/] Docket 34, Plaintiff's Motion for Summary Judgment, Exh. I.

[6/] *Id.*, Exh. J.

[7/] *Id.*, Exh. K.

[8/] The "enhancement" for a violation of AS § 45.50.471 is actually found in AS § 45.50.537, which provides for the award of costs and full reasonable attorney's fees at the prevailing reasonable rate.

[9/] *Id.*, Exh. L.

[10/] Docket 1.

[11/] *Id.*

Lutz's motion raises the issue of estoppel to deny coverage based on an alleged inadequacy of the notice declining coverage and defense given to Bruington by FFIC.

## IV.  APPLICABLE LAW

Generally, a federal court exercising its diversity jurisdiction applies the law of the forum state,[12] including its choice of law rules.[13]  When interpreting state law, this Court is bound by the decisions of the state's highest court.  In the absence of a decision by the highest state court, this Court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."[14]  In deciding choice of law questions, Alaska generally looks to the Restatement and for contract cases has adopted the "most significant contacts" test.[15]  In this case the insured is an Alaska resident, the policy insured activities or business operations expected by the parties to be conducted in Alaska, and the injury upon which the claim is based occurred in Alaska.  Alaska clearly has the most significant contacts in this case.  In addition, the Alaska Supreme Court has consistently applied Alaska law to cases involving foreign insurers in disputes where the insured is an Alaska resident.[16]  Consequently, the substantive law to be applied in this case is the law of Alaska.

Under Alaska law, the general rule regarding interpretation of insurance contracts is well-settled:[17]

---

[12] *Conestoga Servs. Corp. v. Executive Risk Indem., Inc.*, 312 F.3d 974 (9th Cir. 2002).

[13] *Fields v. Legacy Health Systems*, 413 F.3d 943, 950 (9th Cir. 2005).

[14] *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001); *Paulman v. Gateway Ventures Partners III L.P.* (*In re Filtercorp, Inc.*), 163 F.3d 570, 578 (9th Cir. 1998).

[15] *Palmer G. Lewis Co., Inc. v. ARCO Chemical Co.*, 904 P.2d 1221, 1227 (Alaska 1995) (adopting RESTATEMENT (SECOND) CONFLICT OF LAWS, § 188).

[16] *See, e.g., Dugan v. Atlanta Cas. Companies*, 113 P.3d 652, 655 (Alaska 2005) and the cases cited therein.

[17] *Great Divide Ins. Co. v. Carpenter ex rel. Reed*, 79 P.3d 599, 606 (Alaska 2003) (*per curium*), citing *Fejes v. Alaska Ins. Co.*, 984 P.2d 519, 522 (Alaska 1999).

> To the extent that there are no relevant unresolved or controversial facts, the construction of an insurance contract is a matter for the court. A policy's meaning is determined by examining the language of the disputed policy provisions, the language of other provisions in the policy, relevant extrinsic evidence, and case law interpreting similar provisions. An insurance policy may be considered a contract of adhesion and as such should be construed so as to provide the coverage which a layman would reasonably have expected, given his lay interpretation of the policy language. We therefore resolve ambiguities in the meaning of insurance contracts against the insurer.

"The terms should be interpreted in an ordinary and popular sense as would a man of average intelligence and experience."[18]

## V. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment in its favor as a matter of law.[19]  Support and opposition to a motion for summary judgment is made by affidavit made on personal knowledge of the affiant, depositions, answers to interrogatories, setting forth such facts as may be admissible in evidence.[20]  In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[21]  The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.  In order to show that a genuine issue of material fact exists a non-moving plaintiff must introduce probative evidence that establishes the

---

[18] *Whispering Creek Condo. Owner Ass'n v. Alaska Nat. Ins. Co.*, 774 P.2d 176, 178 (Alaska 1989).

[19] FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

[20] FED. R. CIV. P. 56(e)

[21] *Id.*; *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002).

elements of the complaint.[22]  Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[23]  There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[24]

## VI.  DISCUSSION

Lutz argues that FFIC failed to provide a legally sufficient notice of denial of coverage and defense to its insured, Bruington. As a result, Bruington was prejudiced. Therefore, Lutz argues, FFIC is estopped from denying coverage, even if there is no coverage.  The law in Alaska is clear; as the Alaska Supreme Court held in *Sauer:*[25]

> An insurer is required to give the insured such notice of its intention to deny liability and of its refusal to defend as will give the insured a reasonable time to protect himself. Such notice must not only be prompt, but it must provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim. Prompt notice of the basis for the denial of coverage or a defense is necessary to avoid prejudice to the insured which may result from delays in the insured undertaking its own defense or from delays in gathering evidence essential to successfully challenge the denial of coverage or a defense.

An insurer that fails to give prompt notice that it was denying coverage and defense is estopped from denying coverage.[26]  In addition, the Alaska Supreme Court has recognized that "[a]n insurer's obligation to defend and the obligation to indemnify are separate and distinct elements"[27] and that an "insurer may have an obligation to defend

---

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[23] *Id.* at 255.

[24] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[25] *Sauer v. Home Indem. Co.*, 841 P.2d 176, 182 (Alaska 1982) (citations and internal quotation marks omitted); *see also* AS § 21.36.125(a)(4) ( an insurer may not "refuse to pay a claim without a reasonable investigation of all of the available information and an explanation of the basis for denial of the claim or for an offer of compromise settlement") (cited in *Sauer*).

[26] *Id.*

[27] *Id.*

although it has no ultimate liability under the policy."[28/]  "A duty to defend arises whenever a complaint sufficiently alleges an issue of liability covered by the policy on its face, even if the allegations of the complaint are false or groundless."[29/]  "The insurer may therefore be obligated to defend even where it has no ultimate liability under the policy."[30/]  Moreover, even if the complaint alleges facts that fall within an exception, an insurer has a duty "to provide a defense if the known or reasonably ascertainable facts are within or potentially within the coverage of the policy."[31/]  The Court must apply these principles to the facts of this case.

Lutz first argues that notwithstanding the September 2002 declination of coverage and a defense, the failure of FFIC to respond to the May 2003 facsimile forwarding the Notice of Jury Demand is a *per se* violation of the Alaska law.  The Court disagrees.  Nothing in Alaska law requires an insurer to give a second notice of its declination of coverage and a defense arising out of the same claim.  Here a claim was made in the summer of 2002, FFIC investigated the claim at that time, and in September notified its insured (Bruington) that it declined coverage and a defense.  If this notice met the requirements of *Sauer*, it sufficed.

Alternatively, Lutz argues that the September 2002 notice was deficient as a matter of law.  Again the Court disagrees.  Lutz's basic argument is that the notice did nothing more than contain a "cut and paste" recitation of the policy exclusions without a detailed discussion of the facts and applicable law.  Lutz cites no controlling authority for his position and independent research by the Court has found none.  Alaska law only requires that the insurer give a "reasonable explanation" of the basis for the denial.  The September 11, 2002, letter declining coverage and defense referred to the Lutz claim, the details of which were presumably within the knowledge of Bruington.  It also made

---

[28/] *Afcan v. Mutual Fire, Marine & Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979).

[29/] *Tush v. Pharr*, 68 P.3d 1239, 1249 (Alaska 2003) (internal quotation marks and citations omitted).

[30/] *Id.*

[31/] *National Indem. Co. v. Flesher v. Sterneman*, 469 P.2d 360, 365–367 (Alaska 1970).

specific reference to the policy exclusions upon which its denial was based. In the absence of controlling law to the contrary, this Court is not inclined to adopt a rule that imposes a requirement that an insurer in denying coverage recite each fact upon which it relies as establishing an exception to coverage.[32] It is sufficient if the denial refers to the portion of the policy exclusions or other provision upon which it relies.[33]

The inquiry does not end there. As noted above, the obligation to defend is a separate and distinct obligation and may be triggered by the allegations of the complaint. Under Alaska law, an insurer has a duty to defend an action that may colorably be within the coverage, even if those allegations are later proven to be untrue or false. Thus, if the complaint filed by Lutz against Bruington alleged facts that fall within the coverage, a duty to defend arose. Consequently, Lutz argues that since the declination letter predates the filing of the complaint by some eight months it could not serve as a basis for declining the defense tender by Bruington in May 2003. The Court agrees—failure to respond is tantamount to a denial. However, under the facts of this case, that does not automatically or necessarily reach the result Lutz advocates.

In May 2003 Bruington sent only a copy of the Notice of Jury Demand. He also indicated in his facsimile that "[w]ill send any further information we receive." However nothing further was sent.[34] The duty of good faith and fair dealing implied in every contract, including insurance policies, requires *both* parties to do nothing that will injure

---

[32] That the denial was based upon facts uncovered by the investigation and unknown to the insured the duty to disclose such information is not at issue in this case. *See e.g., Lloyd's v. Fulton*, 2 P.3d 1199, 1204 (Alaska 2000). Lutz has made no argument and offered no evidence that the investigation uncovered any such facts.

[33] The Court also rejects the argument that if one of the grounds upon which the insurer relies is erroneous, the denial notice is insufficient as a matter of law. Lutz cites no authority for that position and the adoption of such a rule would tend to place an unwarranted burden on insurers. The Court would agree with Lutz if the erroneous reason given were the only reason or all reasons given were erroneous. Lutz makes no such argument in this case.

[34] Lutz's counsel explains that this is because Bruington received the jury demand notice before he was served with the summons and complaint. Statements by counsel in memoranda are not evidence. *Smith v. Mack Truck*, 505 F.2d 1248, 1249 (9th Cir. 1974 (*per curium*). Moreover, it does not explain why they were not sent later when received.

the other to receive the benefit of the agreement.[35]  Section IV – Commercial General Liability Conditions, ¶ 2 provides in relevant part:[36]

b.    If a claim is made or "suit" is brought against any insured, you must:

(1)    Immediately record the specifics of the claim or "suit" and the date received; and

(2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of any injury or damage to which this insurance may also apply.

FFIC acknowledges that Bruington's facsimile complied with the requirements of ¶ 2.b.(1).  However, the record does not show that FFIC was ever provided with the complaint or any other information concerning the Lutz *lawsuit* against Bruington.  Other than the fact that Bruington was being sued by Lutz, FFIC had no information other than the information that it had obtained in the summer of 2002.  Bruington not only had a pre-existing contractual obligation to send the summons and complaint to FFIC, in his May facsimile he assured FFIC he would provide them with any further information received.  This he did not do.

Moreover, even if FFIC had received a copy of the complaint against Bruington, there was nothing in it that was arguably within the coverage of the policy FFIC issued.

---

[35] *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979).

[36] Docket 34, Plaintiff's Motion for Summary Judgment, Exh. A, pp. 19–20.

The complaint, on its face, showed that the damage occurred in late spring 2000, after the policy had expired.  In addition, the complaint on its face reveals that the claims made by Lutz were based upon breaches of warranties and misrepresentation, which, as discussed further below, are specifically excluded by the express terms of the policy. By failing to provide FFIC with a copy of the summons and complaint, Bruington deprived FFIC of the opportunity to re-evaluate its position and either undertake a defense or supplement its September 2002 denial on that basis.[37/]

The elements of equitable estoppel are: (1) an assertion of a position by word or conduct, (2) reasonable reliance on the assertion, and (3) resulting prejudice.[38/]  The first element is clearly present in this case.  The second is questionable but may be, but the third is not.  In his affidavit, Bruington states relative to the denial by FFIC:[39/]

> 10.  In July of 2002, as damages became progressively more severe and beyond my ability to repair, I submitted a claim to First Financial.
>
> 11.  I received in reply from First Financial a letter dated September 11, 2002, which completely and absolutely denied my claim for coverage and a defense.
>
> 12.  From the denial letter I could not determine the factual basis for the denial of coverage and a defense.  The only thing I could determine was that First Financial was not going to provide me with any help for the claims against me.
>
> 13.  If it had been explained to me at that time that the coverage for the Lutz claim was being denied because First Financial had determined that the damages had not occurred until after the First Financial Policy had expired, I would have certainly contacted the insurance companies that I had CGL policies with after December 8, 1999.

---

[37/] Lutz does not argue that a denial on the basis that the injury occurred outside the policy period is an invalid basis for denial, only that either FFIC can not raise it as a basis because it was not asserted as such by FFIC or its not factually established.

[38/] *Jamison v. Consol. Util., Inc.*, 576 P.2d 97, 102 (Alaska 1978).

[39/] Docket 34, Plaintiff's Motion for Summary Judgment, Exh. N, pp. 2–3.

In ruling on a motion for summary judgment, a court does not weigh the evidence or judge the credibility of witness.[40]  Instead, it generally accepts as true statements made under oath.[41]  However, this rule does not apply to conclusory statements unsupported by underlying facts,[42] nor may the court draw unreasonable inferences from the evidence.[43]  All reasonable inferences are drawn in favor of FFIC.  Lutz, as the moving party, bears the burden of production and persuasion,[44] and has the burden of showing there is no genuine issue of material fact.[45]  Lutz offers as evidence in support of the prejudice element that because Bruington was not informed that the time the damages occurred was a basis for denial, Bruington could not explore the possibility of other coverage; he does not establish any other prejudice from the denial.  As the Alaska Supreme Court made clear in *Sauer*, a timely denial is required to permit the insured sufficient time to *investigate the reason for denial*.  In the case at bar, at most, what is shown is that Bruington could not determine the factual basis for the denial.  Presumably, Bruington was fully cognizant of the factual basis for the Lutz claim.  FFIC gave timely notice of the denial and did nothing to impede Bruington from investigating, requesting additional information,[46] or taking other action to challenge denial of the

---

[40] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[41] *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005); *See Williams v. Calderon,* 48 F.Supp.2d 979, 989 (C.D. Cal. 1998) (noting in the context of a habeas claim "[t]he Court is not to determine issues of credibility on a motion for summary judgment; instead, the truth of each party's affidavits is assumed"), *aff'd sub nom. Williams v. Woodford,* 384 F.3d 567 (9th Cir. 2004).

[42] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990).

[43] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *McLaughlin v. Liu*, 849 F.2d 1205, 1207–1209 (9th Cir. 1988).

[44] *Anderson*, 477 U.S. at 455.

[45] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).

[46] The denial letter in the closing paragraph states: "Should you have any questions or have an additional information that may impact our position in this matter, please forward such information to my attention."  Docket 34, Plaintiff's Motion for Summary Judgment, Exh. E, p. 4.

claim.  Bruington did nothing.[47/]  Under Alaska law, this does not establish estoppel.[48/]  If Bruington was harmed, it was as a result of his own inaction after he received notice his claim had been denied, not any perceived inadequacies in the denial notification.

Having failed to establish the necessary elements for estoppel, the outcome depends on whether, under the facts, coverage was excluded under the policy, even if based upon either a fact or policy exclusion not cited as a reason for the denial in the notice given by the insurer.[49/]

In its motion for summary judgment FFIC raises three factors as precluding coverage: (1) the property damage occurred outside the policy period; (2) the policy excluded work done by Bruington; and (3) the damage resulted from the work of an independent contractor, which was specifically excluded from coverage by a separate endorsement to the policy.  If the undisputed facts establish any one of these conditions exist, no coverage existed and FFIC is entitled to judgment as a matter of law.

*Damage Outside the Policy Period.*  It is undisputed that the policy period ended December 8, 1999.  It is also undisputed that Lutz first noticed minor hairline cracks in the interior plaster in late spring 2000.  The policy specifically provides that the insurance applies "only if * * * [t]he 'bodily injury' or 'property damages' occurs during the policy period."[50/]  As FFIC correctly argues, under Alaska law an "occurrence" insurance policy is interpreted to mean that the damage must have occurred during the

---

[47/] Lutz argues that if Bruington had been told coverage was denied because of "your work" or the work of a subcontractor, he could have sought the advice of an attorney.  The flaws in this argument are twofold: (1) it is unsupported by evidence; and (2) FFIC did nothing to prevent Bruington from seeking the advice of an attorney nor did it in any way mislead him about the necessity for seeking legal advice.  For whatever reason, Bruington simply did not consult an attorney, even when he was sued.

[48/] *Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360, 1365 (Alaska 1997).

[49/] *Id.*

[50/] Docket 31, Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Exh. A., p. 12, ¶ 1.b.(2).

policy period; the fact that the negligent act that caused the injury occurred during the policy period is not controlling.[51]

In opposition Lutz appears to argue that (1) somehow FFIC negligently investigated the claim with respect to the actual date of occurrence and (2) there is no evidence that the damages did not occur during the policy period.

As to the first point, Lutz fails to produce any evidence that an investigation by FFIC would have discovered any evidence that damages occurred prior to December 8, 1999. Lutz also fails to point to any evidence that would tend to support a finding this alleged failure prejudiced Bruington. Indeed, the policy specifically provides:[52]

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense that may result in a claim. To the extent possible, notice should include:

(1)    How, when and where the "occurrence" or offense took place;

(2)    The names and addresses of any injured persons and witnesses; and

(3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

Among the various problems concerning the negligence claim is the fact that Bruington did not notify FFIC of the potential claim until more than two years after he first knew of problems with the structure and two and a half years after the policy had expired. It was also incumbent upon Bruington to provide the information as to when the damage occurred and the record is devoid of any evidence that FFIC prevented Bruington from ascertaining this date himself or that he relied on FFIC's investigation. Nor, for that matter, does the fact that Northern Adjusters assigned an arbitrary October 30, 1999 as the date of loss help Lutz's position.[53]  Neither Lutz nor Bruington, his assignor, can

---

[51] *Makarta ex rel. Markarta v. Great American Ins. Co.*, 14 P.3d 964, 967 (Alaska 2000).

[52] Docket 34, Plaintiff's Motion for Summary Judgment, Exh. A, p. 19, ¶ 2.a.

[53] Indeed, there is no evidence that Bruington had knowledge of the Northern Adjusters report of its investigation.

now shift the onus to FFIC to provide through an investigation information that Bruington, as the insured, was contractually obligated to provide.

Lutz also claims that there is no evidence that the damage did not occur prior to late spring 2000. However, the only evidence in the record is that there is *no evidence* of any damage occurring prior to late spring 2000.  In his complaint against Bruington, Lutz alleged: (1) minor hairline cracks appeared in late spring 2000;[54] (2) cracks appeared in the drywall itself in the fall of 2000;[55] (3) gaps appeared between the bottom plate under the floor and studded wall that supported the structure and concrete footer in  late 2000 to fall of 2001;[56] (4) the structure continued to deteriorate over the winter 2001/2002;[57] and by the summer of 2002, doors and windows were sticking or nonfunctional, significant gaps appeared in the drywall, and the poured concrete slab had slumped opening a gap between the bottom of the garage walls and the poured slab.[58]  These statements contained in a document submitted by counsel for Lutz, may be deemed judicial admissions of those facts binding on Lutz and this Court.[59]  Not one of these show any damage to property occurring prior to December 9, 1999.

Lutz, the person who lived in the residence from sometime in November, would have direct, personal knowledge of when the damage occurred.  As FFIC notes, Lutz has not offered any testimony that any damage occurred prior to late spring 2000. Instead, Lutz attempts to rely on the affidavit of Bruington that it was his "belief that the damages to the Lutz house began as soon as the weight of the house and its furnishings were in place in late October 1999."[60]  Lutz offers this as "expert testimony."

---

[54] Docket 31, Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Exh. E, p. 3, ¶ 11.

[55] *Id.,* ¶ 12.

[56] *Id.*, pp. 3–4, ¶ 13.

[57] *Id.*, p. 4, ¶ 16.

[58] *Id.*, ¶ 17.

[59] *See American Title, Ins. Co. v. Lacelaw, Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

[60] Docket 31, Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Exh. N, p. 4, ¶ 18.

The problem is that Lutz has not qualified Bruington as an expert. Bruington is not an engineer and there is no evidence in the record that he has the requisite training or experience to render such an opinion.[61] The only evidence concerning Bruington's qualification in the construction field is that he is licensed as a framing contractor. But even if the court were to considered Bruington's testimony, the fact that the settling started in October 1999 is not probative of the fact of when the damage occurred. While this Court must construe the undisputed facts favorable to the nonmoving party, it may not draw unreasonable inferences from the evidence.[62] Lutz also points to the affidavit of Marsha Henderson, formerly Marsha Lutz, in which she stated:[63] "During my residence there, cracks appeared in the drywall, specifically one in the living room between the ceiling and the wall. In the late winter, early spring, several of the doors did not operate properly." In the absence of any evidence to the contrary, the only reasonable inference that can be drawn from the facts is that the damages first occurred after the policy had expired.

*Exclusion of Bruington's Work.* As relevant to the case at bar, the policy expressly excludes from coverage damages to property:[64]

> l. Damage to Your work.
>
>> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
>>
>> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

"Your work" is defined in the policy as:[65]

"Your work" means:

---

[61] FED. R. EVID. 702; *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147–148 (1999); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993).

[62] *See Sprewell v. Golden State Warriors, supra*; *McLaughlin v. Liu, supra.*

[63] Docket 31, Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Exh. N.

[64] Docket 34, Plaintiff's Motion for Summary Judgment, Exh. A, p. 15, ¶ 2.l.

[65] *Id.*, p. 24, ¶ 19.

a.    Work or operations performed by you or on your behalf; and

b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b.    The providing of or failure to provide warnings or instructions.

"Products-completed operations hazard" is defined as:[66/]

a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work," except:

(1)    Products that are still in your physical possession; or

(2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed to be completed at the earliest of the following times:

(a)    When all of the work called for in your contract has been completed;

(b)    When all of the work to be done at a job site has been completed if your contract calls for work at more than one site.

(c)    When that part of the work done at a job site has been put to the intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Lutz, apparently conceding that Bruington's own work is excluded, argues that this exclusion does not apply because the property damage involved in this case arose out of the work of a subcontractor, Mike Sheldon.  Lutz is correct, that to the extent that the property damage was caused by the work of a subcontractor, by its express terms, ¶ 2.I. excepts from the exclusion work "performed on [Bruington's] behalf by a

---

[66/] *Id.*, p. 23, ¶ 14.

subcontractor.  In the action brought by Lutz against Bruington, the Alaska Superior
Court specifically found:[67/]

> 1)      Lutz engaged Dean Bruington, DBA DB Enterprises
> (hereinafter Dean Bruington), to act as the General Contractor for
> the construction of a home located at 000 Memory Lane, Glenallen
> [*sic*], Alaska;
>
> 2)      During construction, Dean Bruington employed a
> subcontractor to excavate, fill and otherwise prepare the site for
> construction of the home;
>
> 3)      the subcontractor failed to follow the prescribed
> specifications, [*sic*] for preparing the site;
>
> 4)      as a result of the improper preparation of the construction
> site, the home suffered structural failure that rendered the home not
> habitable and not fit for its intended purpose, and; [*sic*]
>
> 5)      that Dean Bruington made false representations as to the
> quality of construction of the home, soundness, fitness of purpose,
> and habitability, and Eric Lutz relied on those representations to his
> detriment.
>
> Findings of law.
>
> The General Contractor on a building project is liable for defects in
> construction of a home that render it not habitable or not fit for its intended
> purpose. Regardless fo whether those defects are the result of the
> General Contractor's actions or the actions of his subcontractors, the
> liability for the lack of habitability and fitness attaches to the General
> Contractor.  A misrepresentation by a general contractor of the quality.
> soundness, fitness of purpose, or habitability is a violation of Alaska's
> Unfair Trade Practices Act, AS 45.50.471.
>
> As a result of the findings of fact, and applying the conclusions of
> law the Court determines that Dean Bruington is liable to Eric Lutz for the
> damages he has suffered as a result of the failed construction.  Further,
> the Court finds that Dean Bruington has violated AS 45.50.571 and is
> subject to damage enhancement.
>
> Except for finding number 5, which falls within the exclusion, the damage to the

Lutz home arose out of the work of a subcontractor and would not be excluded under ¶

---

[67/] Docket 31, Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Exh.
I.  The Court notes that the Order was prepared by counsel for Lutz.  The Court also notes that
the subcontractor was not a party to either the lawsuit or the settlement.

2.l.  However, a fair reading of the judgment entered by the Alaska Superior Court leads to the logical conclusion that liability was predicated upon the breach of the warranties of habitability and fitness and misrepresentations, which are excluded from coverage under the policy.

*Exclusion for Work of Subcontractor*.  FFIC argues that even if coverage is not excluded under ¶ 2.l, it is nevertheless excluded under the specific endorsement that excludes independent contractors.[68]  That exclusion reads:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

EXCLUSION –
INDEPENDENT CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

This insurance does not apply to "bodily injury,""property damage," "personal injury" arising out of the actions of independent contractors for or on behalf of any insured.

FFIC argues that Michael Shelton was an "independent contractor."  In his affidavit, Shelton states in relevant part:

5.      * * * * Mr. Bruington only provided general directions as to where he wanted the excavation work performed and the depth.  Mr. Bruington provided a foundation plan but to the best of my recollection there was no particular design for the excavation itself.

6.      At Mr. Lutz's property, among other things, Shelton Services excavated the building footprint, prepared and filled the gravel pad, and installed the septic system.  I performed the work myself.  I did not punch a time clock or have to maintain specific hours, other than what was necessary to coordinate work with Mr. Bruington.

7.      Shelton Services carries its own liability insurance for its work and equipment, files its own tax returns, and has its own employees.  While performing work at the Lutz property I was an employee of Shelton Services, and not Mr. Bruington.  Bruington was billed by Shelton Services

---

[68] In his motion for summary judgment before the Alaska Superior Court, Lutz also recited as "facts" that the "structural failure was the result of the subcontractor's failure to follow instructions for site preparation given to him by Bruington." Docket 28, Defendant's Motion for Summary Judgment, Exh. D, p. 4.

(see attached bill, for example) and was paid as an independent contractor with no W-2 and no deductions for social security, medicare or employment.

"An independent contractor is any person who does work for another under conditions which are not sufficient to make him a servant of the other."[69] To make that determination the Alaska Supreme Court employs the following test:[70]

(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

Shelton clearly falls within this definition.  Lutz does not dispute that Shelton was an "independent contractor," instead arguing that use of the terms "subcontractor" and

---

[69] *Powell v. Tanner*, 59 P.3d 246, 249 (Alaska 2003) (internal quotation marks and citations omitted).

[70] *Id.*

"independent contractor" created an ambiguity that must be resolved in favor of the insured, Bruington.  In his affidavit, Bruington states in relevant part:[71]

> 5.    I was aware of the endorsement in the policy stating that "independent contractors" were excluded from coverage. I understood this to apply to independent contractors that came to the job site to perform work, such as installing power lines, that were not my subcontractors.  If the policy was designed not to cover work done by my subcontractors, I expected it to say so.

If the exclusion was limited to those persons he describes, they would by necessity not be performing work or on behalf of Bruington and he would not have any liability in any event.  The Court is unconvinced by Bruington's construction of the independent contractor endorsement.

Lutz's argument also fails as a matter of Alaska law interpreting insurance contracts.  Under Alaska law, the language of an endorsement that expressly modifies the policy's printed terms prevails over general terms.[72]  In the case at bar, the independent contractor exclusion is contained in a separate endorsement that conspicuously and specifically modified the printed terms of the Commercial General Liability Coverage Form.  Therefore, the independent contractor endorsement "trumps" the subcontractor exception in ¶ 2.l.

Finally, the use of the two terms does not create an ambiguity.  It has long been recognized in Alaska that a subcontractor may or may not be an independent contractor.[73]  Where status as an independent contractor is at issue, the Alaska Supreme Court has consistently used the terms "subcontractor" and "independent contractor" somewhat interchangeably; using the test employed for determining whether

---

[71] Docket 31, Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Exh. N, p. 2.

[72] *Alaska Rural Elec. Co-Op Ass'n, Inc. v. INSCO Ltd.*, 785 P.2d 1193, 1195 (Alaska 1990); *State v. Oriental Fire & Marine Ins. Co.*, 776 P.2d 776, 779 (Alaska 1989).

[73] *See Continental Ins. Co. v. U.S. Fidelity & Guar. Co.*, 528 P.2d 430, 433–434 (Alaska 1974).

a "subcontractor" is an "independent contractor."[74]   Contrary to Lutz's argument, some work of a subcontractor would be covered, if that subcontractor were not an independent contractor.  However, that is not the case here.

## VI.  CONCLUSION

Based on the foregoing,

Defendant's Motion for Summary Judgment at docket 28 is **GRANTED**; and

Plaintiff's Motion for Summary Judgment at docket 34 is **DENIED**.

IT IS ORDERED THAT the complaint on file herein be, and it hereby is, **DISMISSED**, with prejudice.  Plaintiff to take nothing by way thereof and judgment to be entered thereon in favor of defendant.

The Clerk of the Court will please enter a final judgment accordingly.

Dated August 10, 2006

s/ Timothy M. Burgess
TIMOTHY M. BURGESS
United States District Judge

---

[74] *See, e.g., Aetna Cas. Sur. Co. v. Marion Equip. Co.*, 894 P.2d 664, 671 (Alaska 1995); Cuffe v. Sanders Const. Co., 748 P.2d 328, 331–332 (Alaska 1988); *Moloso v. State*, 693 P.2d 836, 841 (Alaska 1985); *Parker Drilling Co. v. O'Neill*, 674 P.2d 770, 775–776 (Alaska 1983); *cf. Moloso v. State*, 644 P.2d 205, 211 n. 4 (1982) ("[a]ny duty that flows from the state, however, is unaffected by the title "subcontractor's employee" as opposed to "independent contractor's employee").