Tim Cook

Attorney for the Plaintiff

3901 Taiga Drive,

Anchorage, Alaska 99516

(907) 336-5291

(907 336-5292 fax

tcook@acsalaska.net

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Eric Lutz, as assignee of rights of | ) |
| Dean Bruington, dba DB Enterprises, | ) D.C.No. A04 0229 CV (TMB) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| First Financial Insurance Company, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## FEE REQUEST

COMES NOW, Eric Lutz, by and through his attorney of record, Tim

Cook, and opposes the Defendants Motion for Attorney's Fees and costs.

Plaintiff Eric Lutz is a modestly paid teacher's aide and does part-time

trail repair for the National Park Service. He resides in Glennallen, Alaska.

He contracted with a local builder, Bruington, to construct a home in Glennallen. Bruington was licensed, bonded, and carried insurance. When construction defects rendered the home virtually a total loss, Lutz sought redress against Bruington. Bruington contacted his insurer, First Financial Insurance Company, Inc. (FFIC), who declined coverage. Ultimately Lutz and Bruington reached an agreement whereby Bruington performed certain repairs to the home and assigned to Lutz his rights against his insurer First Financial Insurance Company. Lutz subsequently brought a complaint against FFIC in State Court.

Neither Lutz nor Bruington have significant financial resources, nor are they sophisticated in the world of business or insurance. In contrast, FFIC has significant financial resources. It is a multi-state enterprise employing sophisticated experts in law and insurance.

In the defense of the case, FFIC has been less than fair. It has expended large amounts of time on what was a relatively simple case. It has utilized the services of at least 5 attorneys. There is evidence of fee padding and a clear misrepresentation that the fees requested were utilized "in defense of this lawsuit" (attorney billing prior to the filing of the law suit). FFIC has prolonged resolution by seeking extensions of time for virtually every filing. It has attempted to smear the integrity of Lutz, Bruington, and Plaintiff's counsel with unfounded and baseless allegations of fraud, collusion, and other wrongdoing.[1] FFIC has attempted to overwhelm Plaintiff's counsel by asserting multiple, broad "boiler-

plate" objections to virtually every interrogatory and every request for admission that was posed. [2]

FFIC has tried to deceive the court by asserting that Lutz was opposed to settlement when in fact FFIC never offered any concrete settlement proposal, as opposed to firm offers to settle proffered by plaintiff to the defendant. To be fair, FFIC suggested the parties consider mediation, but couched it in a manner that indicated that it would any settlement would be in a range that was more akin to nuisance value, than on the merits.[3]

In short, this was good faith litigation raising real questions of Defendant's lack of compliance with an insurer's duties in Alaska, brought by an unsophisticated, rural home-owner (whose home is rapidly deteriorating) against an over-bearing industry player with significant resources. Award of attorney's fees against such a plaintiff cannot help but have a chilling effect on similarly situated parties contemplating the chances of obtaining redress against an insurer that has abandoned them.

The US District Court for the District of Alaska has found (and been upheld on appeal) in a recent case, *Johnson v. Columbia Properties Anchorage,*

---

[1] See section on Vexatious Conduct.

[2] Plaintiff's counsel acknowledges propounding 171 requests for admission. However, most were made in the alternative, i.e. Please admit that Northern Adjusters determined the date of loss. Please admit that Northern Adjusters did NOT determine the date of loss. Moreover these requests for admission were made in an attempt to narrow the issues by forcing FFIC to take a position on the issues. Unfortunately FFIC filed improper boiler-plate objections to virtually every requested admission.

[3] "both sides are not in the same settlement ballpark" & " when a case settles is frequently as important, if

*LP*, *437 F.3d 894* (9th Cir. 2006) that each party may bear their own attorney's fees based on the considerations enumerated in Alaska Civil Rule 82.  As described below the rationale used in Johnson is at least as, if not more, compelling in the instant case.

In addition to the enunciated factors of Rule 82 that militate against an award of attorney's fees, FFIC failed to follow the statutory requirements for the filing of a motion for attorney's fees as provided by the rule. As a result, FFIC did not timely file its motion for attorney's fees and thus has waived any right to attorney's fees under the explicit provisions of Ak. R.Civ.P. 82(c). [4]

## I.     DEFENDANT FAILED TO TIMELY FILE MOTION

In a diversity action, the question of attorney's fees is governed by state law. [5] In addition, Local rule 54.3 (a) 2 of the US District Court of the District of Alaska requires that a motion for attorney's fees set forth the authority for such an award. Here, the defendant requests attorney's fees based on an Alaska Civil Rule of Procedure, i.e. Rule 82.

Alaska District Court local rule, at 54(b), specifically requires that the

---

not more so, than the amount it settles for." Letter dated May 6, 2005 from Andrew Guidi to Tim Cook.

[4] Failure to move for attorney's fees within 10 days, or such additional time as the court may allow, shall be construed as a waiver of the party's right to attorney fees. Ak. R.Civ.P. 82(c).

[5] *Schulz v. Lamb, 591 F.2d 1268 (C.A.9 1978); Interform Co. v. Mitchell, 575 F.2d 1270, 1280 (C.A.9 1978); Klopfenstein V. Pargeter,  597 F.2d 150 (9th Cir. 1979), at 152.*

court apply Rule 82 of the Alaska Rules of Civil Procedure in diversity cases.
Rule 82, by its own terms, requires that an attorney's fee "motion must be filed
within 10 days after the date shown in the clerk's certificate of distribution on the
judgment… Failure to move for attorney's fees within 10 days, or such additional
time as the court may allow, shall be construed as a waiver…"[6]

The Judgment of the Court was handed down on August 10th and entered
by the clerk on August 16th, 2006. Upon the clerk's entry of the judgment, it was
distributed on that same date via the electronic service, i.e. ECM. By the language
of the rule, the "motion **must** be filed within 10 days after the date shown in the
clerk's certificate of distribution" (emphasis added); this would mandate the last
day for filing for attorney's fees to be on or before August 26, 2006.  However,
Defendant neglected to file its motion for Attorney's fees until August 29, 2006,
19 days after the decision and 13 days after the distribution date of the entry of
judgment.

Adoption of Rule 82 Adopts the Time Requirements of Rule 82

Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure specifically
allows a District Court to alter the time allowed for a motion for attorneys fees:
"Unless otherwise provided by statute or order of the court, the motion must be
filed no later than 14 days after entry of judgment".[7]  (emphasis added) In
compliance with this rule, the U.S. District Court for the District of Alaska has, by

---

[6] Ak.R.Civ.P. 82

"order of the court", adopted Amended Local Rules, effective January 2006.

The U.S. District Court for the District of Alaska's Amended Local Rules includes amended Rule 54.3. Amended Rule 54.3 adopts Alaska Civil Rule 82 as a basis for an award for attorney's fees.[8]  Because the District Court has, by order, adopted Rule 82 as authority for an award of attorney's fees, it has also adopted Rule 82's mandate that a motion for attorney's fees "must" be made within 10 days of distribution of the order.

Here, by requesting that its filing for attorney's fees be based on an Alaska Civil Rule of Procedure, i.e. Rule 82, FFIC is bound by all aspects of Rule 82. Defendant does not get to pick and chose which aspects are favorable and which are not, but rather they get the whole enchilada.

The U.S. code provides that the federal rules promulgated by the U.S. Supreme Court "shall not abridge, enlarge or modify any substantive right."[9] When the Alaska District adopted Alaska Rule 82 as authority for Attorney's Fees, the Court was adopting a rule of procedure, and thus any defendant that

---

[7] FRCivP 54(d)(2)(B)

[8] Local (Civil) Rule 54.3(b) Diversity Cases. In a diversity case the court will apply Rule 82, Alaska Rules of Civil Procedure, existing at the time judgment is entered.

[9] **AUTHORITY FOR PROMULGATION OF RULES TITLE 28, UNITED STATES CODE § 2072. Rules of procedure and evidence; power to prescribe** (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrates thereof) and courts of appeals. (b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect. (c) Such rules may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title. (Added Pub. L. 100–702, title IV, § 401(a), Nov. 19, 1988, 102 Stat. 4648, eff. Dec. 1, 1988; amended Pub. L. 101–650, title III, § 315, Dec. 1, 1990, 104 Stat. 5115.) § 2073. Rules of Procedure.

relied solely on Alaska Rule 82 as authority for Attorney's fees was bound by the

deadlines that are an integral part of Alaska Rule 82.

<u>Court Should NOT Exercise It's Discretion To Allow Untimely Motion</u>

While the court has discretion to accept an untimely motion for attorney's fees, [10]

the circumstances of this case do not warrant such lenity. Indeed FFIC not only failed to

request an extension of time to file the motion for attorney fees, but failed to request that

the court exercise its discretion to accept the untimely motion in the body of the motion

itself. Given the dilatory filing of the motion and the failure to either excuse or explain

the late filing (or, in fact, to make any mention of the late filing at all), the motion itself

seems to be primarily a tactical tool to intimidate a modest-income plaintiff. [11]

However insignificant timely filing may be to the defendant, the requested award

is a matter of substantial concern for the moderate-income plaintiff. An award in the

range of the $32,000 requested by Defendant is a considerable burden to place on any

modest-income family's finances, particularly where a home-owner is struggling to pay

off a mortgage on a home that's real value (due to the construction defects that are the

source of this litigation) is less than the mortgage liens. [12]

---

[10] *Kaiser v Sakata*, 40 P.3d 800, 806.

[11] The Alaska Judicial Council's 1995 study*, Alaska's English Rule*, on the effects of Rule 82 states, at page 12 of its executive summary, that "The Rule Affected Parties of Moderate Means more Significantly than Others - The two factors that interact most decisively with Rule 82 to influence litigation strategy are the parties' financial resources and the strength of their cases. Generally, the rule affects parties of moderate means more than it does parties with more resources, and much more than parties with few financial resources ("judgment-proof" parties)."

[12] Lutz Affidavit of September 7, 2006 at line 13.

Certainly FFIC had the legal resources at its command to either file a timely motion or to file (and serve upon Plaintiff's counsel) a timely request for an extension of time. If Defendant's counsel had filed and served upon opposing counsel a timely request for extension of time, Plaintiff's counsel would have had the opportunity to weigh the rationale offered and respond as appropriate.

However, the prejudice to Eric Lutz also lies in the fact that FFIC's late filing adds to distress and anxiety by denying Plaintiff the certainty of the rule as written and published by Alaska's Supreme Court. That certainty, that the prevailing party (absent a court's extension of the deadline) has effectively waived its claim to attorney fees once the 10th day from the date of entry of judgment has expired, is of undeniable importance to a non-prevailing individual litigant who has only 30-days to perfect or abandon his right to appeal. In the present circumstance, the still pending, albeit late-filed, possible attorney fee award must be weighed into his chances and liabilities on appeal.

Defendant FFIC is a multi-million dollar corporation with two major law firms at its disposal on this case. The fact that it did not bother to file its request for attorney's fees in a timely manner, or even to ask the court for an extension of time for filing, is a clear indication that it is operating under the confidence that it does not have to follow the rules.

Plaintiff asks, however, that the Court reject Defendant's motion for attorney's fees as untimely, prejudicial to Plaintiff, and therefore waived.

II.    **FILING DEADLINE AND WAIVER PROVISIONS OF RULE 82
EFFECTIVELY ESTABLISH A STATUTE OF LIMITATIONS FOR
RULE 82 ATTORNEY FEE MOTIONS**

The requirement of  Alaska Rule 82 that a motion for attorney's fees "**must** be

filed within 10 days after the date shown in the clerk's certificate of distribution"

(emphasis added) is, in effect, a statute of limitation, and thus a substantive right that

must be enforced in the federal courts.

In Alaska, the legislature has under AS 09.60.010 authorized the Alaska Supreme

Court to set attorney's fees. The Supreme Court through this delegation of authority has

under a single rule, Rule 82, set both attorney's fees and the time under which those fees

must be petitioned for, i.e. "…within 10 days after the date shown in the clerk's

certificate of distribution.."

The 9th Circuit has previously held that Rule 82 " is authorized, though not

mandated, by statute. Furthermore, the Supreme Court has indicated that state law

regarding attorney's fees governs, whether its source is case law or statutory law." [13]

Therefore, it is clear that Rule 82 is a statutory enactment (delegated by the

legislature to the Alaska Supreme Court). And further, that it is "state law regarding

attorney's fees that governs"  how attorney's fees are to be awarded by federal courts

sitting in diversity.[14]

Since the Alaska Supreme Court can create a substantive right through Rule 82, it

---

[13] *Klopeinstien* at 152, citing *Alaska (sic- Alyeska) Pipeline Co. v. Wilderness Society*, 421 U.S. 240.

can also fashion limitations on that right. One such limitation that the Alaska Supreme

Court fashioned is the time period in which an attorney's fee petition can be made. This

time limitation, "…within 10 days after the date shown in the clerk's certificate of

distribution.." is effectively a statute of limitation.[15]

A statute of limitation prescribes the time in which an action may be brought upon

certain claims. It may have provisions for tolling the running of the period,[16] but it

generally defines the time in which an action must be brought. Once the period has run, a

party's right to bring the action or recover on a claim is waived.

In the case of Rule 82, unless the Court specifically grants additional time, a

party's right to attorney's fees is waived if a motion is not brought "within 10 days of the

clerk's certificate of distribution. ." Since Rule 82 is a substantive right, the time

limitation prescribed in that right must be adhered to.[17]

The 9th Circuit has affirmed "that *Ragan* and *Armco Steel* require the district court

to use the state rather than the federal computation of time statute."[18] Thus in the instant

case, Defendant was allowed 10 days from the date shown in the clerk's certificate of

---

[14] *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, (1975).

[15] "Because Alaska state courts would apply Alaska's statute of limitations… a federal district court sitting in Alaska is required to do the same." *Johnson v. Columbia, 437 F3d. 894, at 900, citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Sun Oil Co. v. Wortman, 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988)." Johnson v. Columbia at 900.*

[16] Alaska's 120-day speedy trial rule for criminal defendants is a situation where an effective SOL provision in Alaska's rules of court can be tolled by the party requesting an extension of time for filings.Ak.R.Cr.P.45d 45(d)

[17] *Walker v.  Armco Steel Corp.,* 446 U.S. 740, (1980).

[18] *Alonzo V. Acf Property Management, Inc., 643 F.2d 578* (9th Cir. 1981) at 581, citing  *Ragan* v.

distribution.

The judgment was distributed on August 16, 2006. The defendant filed its fee petition on August 29, 2006.  Under Rule 6(a) of the Alaska Rules of Civil Procedure, only if the period of time is less than 7 days are intermediate Saturdays and Sundays excluded in the computation. In the instant case, the period of time was greater than 7 days; therefore the last date for Defendant to file a motion for attorney's fees would have been August 26, 2006. Since the 26th fell on a Saturday, the deadline for filing would become August 28th. However, no filing was made until the following day August 29, 2006.

Having failed to file its motion within the period allowed under Rule 82, and having failed to toll the time allowed for filing by requesting an enlargement of time, the defendant has therefore waived its right to attorney's fees.


## III.  FACTORS MILITATING AGAINST AN AWARD OF ATTORNEY'S FEES

Complexity

Among the factors that the court can consider in deciding the appropriateness of awarding attorneys fees under Rule 82 is the complexity of the litigation.  This was a simple case that never had a single oral hearing. It was decided on cross-motions for Summary Judgment, and other motion work was minimal. Plaintiff filed only three substantive motions:  Motion to Amend Complaint and Remand,  a Motion to Compel, and a Motion for Summary Judgment. Defendant filed three substantive motions: to

---

*Merchants Transfer Co.*, 337 U.S. 530, and *Walker v.  Armco Steel Corp.*, 446 U.S. 740, (1980).

Remove to US District Court, a Motion for Protective Order, and a Motion for Summary Judgment.

Discovery was also relatively minimal. Plaintiff conducted only a single oral deposition. Plaintiff propounded interrogatories, requests for production, and requests for admissions to Defendant. Despite the hundreds of hours billed, Defendant's counsels did not conduct any oral depositions or propound any written discovery.

The issues that were briefed were straight forward:  Plaintiff asserted that as a matter of law, FFIC should be estopped from denying coverage because they failed to perform an adequate investigation, and failed to provide their insured with a reasonable explanation for the denial of coverage and a defense. FFIC asserted that coverage should not be had because the insured's work was not covered, that the Independent Contractor exclusion barred coverage for the insured's sub-contractor, and that the injury occurred outside the policy period.

As presented to the court in parties' briefing, this was a relatively simple case. When a simple case generates a claim for an award of 20% of $161,614.43 in attorney's fees, it creates a situation that is neither fair nor equitable to a plaintiff who brought a good faith claim and actively sought to resolve key issues through cross-motions for summary judgment.


Length of the Trial

Rule 82 allows the court to consider the length of trial in varying an award of attorney's fees. In the instant case there was no trial, in fact there was never a hearing. As

the Court is directed by Rule 82(b)(3)(B) to consider the length of the trial as a factor in varying an award of attorneys fees, when a matter is concluded without trial and without a single hearing, the court should significantly reduce or eliminate an award of attorney's fees.

Attorney's Efforts to Minimize Fees

It is almost axiomatic that the more time it takes to come to resolution in a legal matter the greater the attorney's fees. This case was brought in Alaska Superior Court on the 7th of September 2004. Since that date, the defendant has sought extensions of time for virtually every deadline.  This has had the net effect of unreasonably extending the matter and, as a consequence, increasing attorney's fees. Conversely, the plaintiff has sought one minor extension and two continuances to reply to the defendant's motion for Summary Judgment. The continuances were substantive in nature as they were predicated on the court's decision whether to compel FFIC to make a witness available for deposition.

What follows is a summary of Defendant's delays in filing documents:

1.    Complaint filed Alaska Superior Court, September 7, 2004

       Answer originally due September 27, 2004, filed November 24, 2004

       + 58 days

2.     Motion to Amend Complaint and Remand, April 29, 2005

       Defendant's Opposition originally due May 14, filed  May 23, 2005

       + 9 days

3.     Defendant's Motion for Summary Judgment, November 2, 2005, Plaintiff's Opposition filed on December 5, 2005. Defendant's Reply originally due December 10, 2005, filed on December 19, 2005.

     + 9 days

4.     Plaintiff's Motion for Summary Judgment, December 9, 2005

     Defendant's Opposition originally due December 24, filed on  January 13, 2006

     + 19 days

5.     First Requests for Admissions & Combined Discovery- filed July 25, 2005

     Defendant's Responses originally due August 24, 2005, filed on October 13, 2005

     + 50 days

6.     Joint Motion for an Order extending Pretrial Deadlines

     +  90 days


     Plaintiff acknowledges that it acceded to the above noted extensions. However, Plaintiff determined early into the litigation that FFIC was fighting a war of attrition. Plaintiff therefore sought to accommodate any quasi-reasonable request for extension in order to focus Plaintiff's limited resources on obtaining the most critical discovery and contesting the real merits. However, Defendant should not now be rewarded by the Court for needlessly extending deadlines and expending hour after hour on non-productive reschedulings.

Vexatious Conduct

      Defendant in its pleadings made certain assertions regarding the case that were not intended to enlighten the court, but rather to disparage the plaintiff and his counsel. Among the disparaging comments made, defendant asserted that counsel was "dilatory",[19] and that counsel attempted to "fraudulently join a non-diverse party" [20]. Defendant asserted that Lutz and Bruington "colluded"[21] to "manufacture"[22] coverage. FFIC claimed that Bruington and Lutz "colluded to… generate a judgment without controversy, with a goal of gaining riches through a game of 'gotcha'…"[23]  And finally that Bruington "'rolled over' and permitted a wildly bloated judgment to be entered against it."[24]

      Plaintiff's counsel has heretofore refused to acknowledge these scurrilous accusations. The fetid nature of these slurs casts a pall on the maker. However, it must be pointed out that these arrows were indeed launched, and their purpose was not to enlighten the court but rather to vex the plaintiff.

      Unfortunately the defendant did not confine its vexatious conduct to these lame attempts at derision. In an attempt to narrow the issues by forcing the defendant to take a position, Plaintiff served 171 Requests for Admission on the Defendant.  Of these 171

---

[19] Defendant's Opposition to Amendment of Complaint and Motion to Remand, at 13.

[20] First Financial Insurance Company's Motion for Award of Attorney's Fees at 4.

[21] Defendant's Motion for Summary Judgment, footnote 1 at 1.

[22] First Financial Insurance Company's Reply Brief in Support of its Motion for Summary Judgment, at 16.

[23] First Financial Insurance Company's Reply Brief in Support of its Motion for Summary Judgment, at

requests, Defendant objected to 151. Objections were often improper and not entered in good faith: i.e. "Vague and ambiguous as to meaning of "as a result of"" or as to the meaning of "determined" or the meaning of "date of loss"".   Even relatively innocuous requests were objected to.

For example:

> Please admit that David Buness of Northern Adjusters, in his letter of July 30, 2002 to First Financial Insurance, refers to the date of loss as: "Date of Loss: 10/30/1999".
>
> Response: Objection: (1) Irrelevant and not likely to lead to the discovery of admissible evidence; (2) the document speaks for itself.

Even after a joint teleconference seeking to resolve objections, Defendant withdrew its objection to only 3 requests for admission. Similarly, out of 7 requests for production, Defendant objected to 5.

Plaintiff contends that these objections were vexatious and intended to cause Plaintiff to incur expense and frustration in seeking to compel the Defendant to answer. As a strategic matter, Plaintiff believed that even with the limited information available the court could rule favorably on Plaintiff's Motion for Summary Judgment, thereby avoiding the expense of moving to compel on the many objected-to discovery requests. In the alternative, if the Plaintiff's Summary Judgment motion failed, a motion to compel could later be brought to help narrow issues for trial.

In short, the Defendant was attempting to increase the Plaintiff's workload and thus increase costs by objecting to valid discovery requests. Plaintiff was attempting to

---

[24] Defendant's <u>Motion for Summary Judgment</u> ,at 7.

minimize cost by deferring its motion to compel pending resolution of the Motion for
Summary Judgment.

Suspect Billing and Unreasonable Hours and Billing Rates

        Plaintiff began to question how the defendant's attorneys were able to rack up
$161,614.43 in fees for a relatively simple case. Simple back of the envelope math
showed that it would require 1000 hours at $161 per hour to incur these expenses.

        After review of the billing statements, significant irregularities are apparent.  The
most obvious of these irregularities is that Andrew Guidi avers that these attorney's fees
were "necessarily incurred by First Financial Insurance Company **in defense of this
lawsuit**."[25]  (emphasis added).   However, upon review of the time sheets, more than 20
hours are billed prior to September 7, 2004, the date the suit was filed.[26] Either the
timesheets are in error, or Andrew Guidi has misrepresented the amount of time spent "in
defense of this lawsuit." Either way it makes the entire claim for attorney's fees suspect.

        Also reviewed was whether a reasonable amount of time was expended for the
work performed.  It is difficult to ascertain what work was performed with the highly
excised timesheets presented. However, it is possible to discern that Andrew Guidi
expended 24 minutes reviewing the Court's orders vacating the pre-trial deadlines and

---

[25] Affidavit of Counsel in Support of Motion for Award of Attorney's Fees at p. 2.

[26] Defendant's Exhibit "A" pages 1- 5, Motion in Support of an Award of Attorney's Fees.

extending the deadline for an opposition (proposed orders that he submitted).[27]  This seems like a long time for such a routine matter.

As for the law firm of Morrison-Knox, Holden & Prough, it is even more difficult to determine what matters were worked on because of the highly redacted timesheets. This firm's first billing is on 10/6/2005. In the approximately 10 months since that date, they billed 404.9 hours of time.  This seems excessive given the relative simple nature of the proceedings.

There also seems to be a disparity between the billing statements for  telephone calls  between Jon Adams and Andrew Guidi. It is understandable that some calls might be logged on one time sheet and not on another. But when both calls are logged, and one timekeeper consistently logs the call longer than the other it raises questions. For instance on 1/3/05 Adams logs a call to Guidi as .6 hours. Guidi logs the call as .9 hours. On 1/9/05 Adams is .4, Guidi is .8;  On 2/9/06 Adams is .2, Guidi is .7 hours; On 2/27/06 .2 and .4;  3/7/06 .1 and .4 hours. [28]   One very interesting log is on 12/5/05 when Guidi logged .8 hours for reviewing a voice mail from Adams. That must have been some voice mail. Especially since there is no corresponding log from Adams.

Also in issue is the number of attorneys that FFIC utilized in the case. It appears that Andrew Guidi, Eric Ringold, Jon Adams, Michael Prough, and Betty Su all billed attorneys fees.  Five attorneys for what was a relatively simple case is over-kill.

---

[27] Defendant's Exhibit "A" pages 33, date 12/20/05, Motion in Support of an Award of Attorney's Fees.

[28]  Comparison of  Defendant's Exhibit "A" and Defendant's Exhibit "B" on specified dates.

Finally in issue is the hourly rate of Jon Adams, Michael Prough, Betty Su and John Compton.  This is an Alaska case. Attorney fees should be based on what is fair and equitable in this jurisdiction. Adam's and Prough's rates are "discounted" to $315.75 per hour.  This is well above the rates charged by comparable local counsel, witness Andrew Guidi's rate of $175.00 per hour. Adam's and Prough's rates should at most be the same as Andrew Guidi's. Rates for Su and Compton should be equally discounted.

Reasonableness of the Claims and Defenses

The Court can look to the reasonableness of the claims presented to vary an award of attorney's fees. Here an insured brought a claim against an insurer for failing to provide coverage or defense for what was believed to be an insured risk. There were several bases for that claim but among the most prominent was the belief that 1)  the claim occurred within the coverage period (since the report from FFIC's adjuster listed the date of injury 10/30/99 which was within the coverage period); 2)  that the Notice of Denial was inadequate (since the notice did not relate the exclusions to any facts of the claim and that notice cited to law that was in direct opposition to the law of Alaska); 3) that the contract terms were inherently ambiguous (sub-contractor's work covered, Independent Contractor work excluded); and 4) that the insured was owed a defense as a result of the complaint filed (FFIC failed to make any response to its insured after receiving notice that a complaint had been filed).

From the outset these claims were reasonable. For instance, FFIC's adjuster, in his reports and letters to the insured, utilized 10/30/99 (which was within the policy

period) as the date of loss. It was more than a year after the complaint was filed (and

three years after the letters and reports) that FFIC obtained an affidavit from its adjuster

stating that he "arbitrarily adopted" 10/30/99 as the date of loss. It seems a reasonable

claim that when an insurer's adjuster lists a date of loss as being within the coverage

period, that an insured can rely on that assertion.

It also is reasonable to claim that when an insurer cites case law to its insured that

the case law cited is applicable to that jurisdiction. In the instant case, FFIC cited case

law to its insured that was purported to support its disavowal of coverage. However, the

case law that was cited is in direct contravention of the law of Alaska. This issue was not

addressed by the FFIC nor by the court in its rulings.

It was also a reasonable claim that when an adhesion contract utilized two

different undefined terms, i.e. subcontractor and independent contractor, that any

ambiguity in interpretation of those terms should favor the insured.


Deter Voluntary Use of the Courts

In promulgating Rule 82, the Alaska Supreme Court is cognizant of the chilling

effect that an onerous award of attorney's fees may have on similarly situated litigants,

and makes this factor a basis for variance in attorney's fees awards. In this case, Eric

Lutz is a modestly paid teacher's aide and part-time trail maintenance worker. He has

limited income (approximately $33,000) and limited assets (approximately $30,000).[29]

He struggles to house, feed, and provide for his family.

_____

Lutz's home was a virtual total loss as a result of the defective construction. He faced a mortgage on a property that was in ruin. Through settlement he was able to persuade Bruington, the builder, to do certain repairs to the home. These repairs have improved the property, but have restored only a modicum of habitability. He faces a need for more repairs a home that has marginal value and a considerable mortgage. Any award will have a huge impact on Lutz.

The defendant may argue that Lutz was merely standing in for Bruington as his assignee. However Bruington is in virtually the same financial condition that Lutz is in. In order to complete the repairs agreed to in the settlement with Lutz, Bruington had to take out a loan on his own home.  Whether the measure of how onerous an award might be is vis-à-vis Lutz or Bruington, it is the same analysis: these are financially marginal individuals living a modest lifestyle, with few assets, and little disposable income.

An award of attorney's fees will be devastating and likely ruinous. Is this onerous? It seems so. Would similarly situated litigants be deterred from the voluntary use of the courts knowing that they faced financial devastation and possible ruin if their good faith claim is lost? It seems likely.[30]

Financially vulnerable litigants should not be deterred from voluntary use of the courts to bring good faith claims against their insurer out of fear of being held liable for

---

[29] Affidavit of Eric Lutz, Attachment at line 2, p. 4 - 5.

[30] The Alaska Judicial Council's 1995 study, *Alaska's English Rule*, states, at page 12 of its executive summary, that "The Rule Affected Parties of Moderate Means more Significantly than Others - The two factors that interact most decisively with Rule 82 to influence litigation strategy are the parties' financial resources and the strength of their cases. Generally, the rule affects parties of moderate means more than it does parties with more resources, and much more than parties with few financial resources ("judgment-proof" parties)."

onerous attorney's fees awards. This is the mandate of subparagraph (I) of Rule 82. An award of attorney's fees in this case would have just that sort of chilling effect.

Attempts at Settlement

Early into the litigation Lutz proffered a settlement to FFIC. This was conveyed to FFIC's counsel Andrew Guidi in a letter dated January 31, 2005. Lutz offered to settle the case for $800,000.  More than a month later, on March 8, 2005, FFIC responded with a telephone call declining the offer. Plaintiff's attorney reiterated its offer to settle in a letter date April 12, 2005. Again no response.

In both letters, plaintiff specifically asked FFIC to "provide any insights…that might cause us to rethink our position"[31] and " If you have any case law or legal theories that diminish our position, I would be gladly discuss their merits with you."[32]  Clearly this was an invitation to enter into discussions that might lead to settlement, FFIC did not respond.

To be fair, FFIC suggested mediation. However, their frequent implications that Lutz' suit had only nuisance value, as well as their failure to make any real offer as a starting point, made the possibility of a reasonable settlement seem unlikely.  Perhaps Plaintiff was mistaken in his view of the offer to meditate, but FFIC's assertion that Plaintiff was not interested in settlement is completely inaccurate. Plaintiff made actual offers to settle; FFIC did not.

---

[31] Letter dated April 12, 2005 from Tim Cook to Andrew Guidi, at p. 2.

**CONCLUSION**

It is well within the discretion of the court to determine that both sides of this litigation should bear their own costs. Given the good faith nature of the complaint, the financial hardship that would inure to the plaintiff,  the chilling effect it would have on others similarly situated, and the suspect nature of the billing of FFIC's attorney's, both in law and in equity this court should determine that each side should bear their own costs.

Respectfully submitted this    8th    day of September, 2006.

> By:_s/s *TIM COOK*_____
> Tim Cook
> Alaska Bar Card #9007048
> 3901 Taiga Dr., Anchorage, AK 99516
> (907)336-5291
> (907)336-5292 FAX
> Attorney For Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on September __8___, 2006, a true and correct copy of the Plaintiff's Opposition to Defendant's Fee Request  was filed via ECF and served electronically to the following:

Andrew Guidi, Esquire
Delaney, Wiles, Hayes, Gerety, Ellis, & Young, Inc.
1007 West 3rd Ave, Suite 400
Anchorage, Alaska

Michael D. Prough, Esquire
Jon K. Adams, Esquire
Morison-Knox Holden & Prough, LLP
500 Ygnacio Valley Road, Suite 400
Walnut Creek, CA 94596

s/s Tim Cook

---

[32] Letter dated January 31, 2005 from Tim Cook to Andrew Guidi, at p. 5.

Lutz v. First Financial Insurance Co.
Opposition to Defendant's Fee Request
Case No. A04 0229 CV