Tim Cook AKBN 9007048
Cook & Associates
3901 Taiga Drive
Anchorage, AK  99516
Phone: 907-336-5291
Fax: 907-336-5292
tcook@acsalaska.net
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

| | |
|---|---|
| ERIC LUTZ, as assignee of rights of Dean Bruington, Dba DB Enterprises, <br><br> Plaintiff, <br><br> v. <br><br> FIRST FINANCIAL INSURANCE CO. <br><br> Defendant. | **Civil Case**: A04 0229 CV (TMB) <br><br> **BRIEF ON MOTION FOR CLARIFICATION AND FOR PROTECTIVE ORDER** |

Eric Lutz, has moved the Court for an affirmative clarification of the law governing the two primary issues remaining in the case, and for a protective order regarding discovery based on that clarification.

Both Lutz and FFIC agree that there are only two primary issues that remain before the court: 1) prejudice, and 2) a reasonableness finding. However, Lutz and FFIC have fundamental difference of opinion as to what these issues mean. The parties' opinions diverge to such an extent, that it has a profound affect on discovery, trial preparation, theory of the case, and settlement posture. Lutz believes it is imperative that the court clarify the issues, and issue a protective order regarding discovery based on that clarification.

**DIFFERENT INTERPRETATION OF THE TWO ISSUES**

In its status conference statement FFIC suggests that the first primary issue is: "whether FFIC's insured, Mr. Bruington, suffered prejudice from FFIC's denial letter."[1] (emphasis added). Lutz's position is that because FFIC wrongfully failed to defend Bruington, any actual harm he suffered as a result of FFIC's wrongful failure to defend, is prejudice. Although the two positions sound similar, the difference is substantial.

The essential difference between the two positions is whether prejudice must be proved utilizing only the *action* that triggered the breach, i.e. the denial letter; or is prejudice proved by showing harm that is the *result* of the ongoing breach. A close analogy is: What is the appropriate criminal charge for an accused, when the victim dies of an infection from an otherwise non-fatal stab wound? Lutz maintains that FFIC is liable for any result that naturally flows from the wound.

With regard to the second issue, FFIC asserts that if prejudice is shown, the question becomes "whether the amount of the State court judgment that was awarded to Lutz is reasonable" (emphasis added).[2] Lutz asserts that FFIC has misread the case law, that the reasonableness inquiry is not as to the judgment, but rather as to whether the covenant settlement agreement is reasonable. In every similar case in Alaska, where a covenant settlement agreement has given rise to a judgment against an insurer, the courts have required "a reasonableness review [of the agreement] to be conducted by the trier of fact"[3] not an inquiry into the reasonableness of the underlying judgment.

---

[1] Exhibit 1, Conference Statement at p.2, First Financial Insurance Company, Inc.'s Status Conference Statement

[2] Exhibit 1, Conference Statement at p.2.

[3] *Brannon V. Continental Casualty Company,* 137 P.3d 280, 288 (AK 2006), citing *Theodore v. Zurich Gen. Accident & Liab. Ins. Co.,* 364 P.2d 51, 55 (Alaska 1961) and *Great Divide Ins. Co. v. Carpenter ex rel. Reed,* 79 P.3d 599, 608 (Alaska 2003); also see *United Airlines, Inc. v. State Farm Fire & Cas. Co*., 51 P.3d 928, 932 (Alaska 2002): *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 355 (Alaska 2001); *Cf. Grace v. Ins. Co. of N. Am.*, 944 P.2d 460, 468 & n.19 (Alaska

**FACTS APROPOS TO ISSUE**

FFIC's insured, Dean Bruington, constructed a home for Eric Lutz, the Plaintiff. When the home began to fail, Lutz contacted Bruington. Bruington in turn filed a claim with his insurer, FFIC. FFIC denied coverage and denied defense. Lutz sued Bruington for damages. Bruington tendered the defense to FFIC, who again refused to defend (actually FFIC never made any reply to the tender).

Bruington took up his defense *pro se*. Eventually Lutz and Bruington entered into a covenant settlement agreement whereby Bruington agreed to make extensive repairs to the home, and assigned any rights he had against his insurer to Lutz (the covenant settlement agreement). In turn Lutz agreed to not hold Bruington personally liable for any judgment rendered in the complaint, and to reimburse Bruington up to $65,000 for the repairs made to the home, if recovery was made.

Lutz informed FFIC of the covenant settlement agreement and that litigation would continue. Furthermore Lutz "invited" FFIC to participate in the litigation. FFIC refused. The court liability was determined, and a damage hearing was held. After hearing evidence of the damages, Judge Fuld set damages at approximately $5.6 million and rendered verdict in favor of Lutz.

Lutz then filed suit against FFIC. On appeal, the Ninth Circuit determined that FFIC had "wrongly failed" to defend Bruington. It further found that if Bruington suffered "any adverse effect" FFIC would be estopped from denying coverage.[4] The case was remanded.

---

1997); and *Washington Insurance Guaranty Ass'n v. Ramsey*, 922 P.2d 237, 247 (Alaska 1996).

[4] *Lutz Decision* at 3. For convenience, counsel will refer to the opinion provided to the court at docket 99, as the *Lutz* decision and refer to the page numbers of the decision. *Lutz v. First Financial Insurance Co., Inc.,* No. 06-35804 (9th Cir. 09/07/2007).

**PREJUDICE ISSUE**

The first issue: Was Bruington prejudiced- is likely to be settled via motion practice or an evidentiary hearing.[5] However, in order to reach a determination of whether Bruington was prejudiced, and to determine what discovery is appropriate to that issue, the parties need to resolve the central issue of whether it is only the harms that flow from the inadequate denial letter or whether it is the harms that result from the breach of wrongfully failing to defend that constitute prejudice.

FFIC asserts that only those harms that Bruington suffered as a result *of the denial letter* will trigger prejudice.[6] Lutz maintains that the harms that Bruington suffered as a result of *FFIC's wrongful failure to defend* prove prejudice.

The parties have widely divergent opinions on this issue. FFIC's position is that only those harms that emanate as a direct result of the *action* that triggered FFIC's breach, i.e. the denial letter, are apropos. FFIC clearly articulates this position in its Status Conference Statement wherein it states that one of the "two primary issues remain[ing] in the case [is]…. "whether FFIC's insured, Mr. Bruington, suffered prejudice from FFIC's denial letter."[7] (emphasis added).

Lutz's maintains that the correct application of the law is that any harm Bruington suffered as a result of FFIC's wrongful failure to defend, is prejudice.

---

[5] Lutz asserts that the standard for proving prejudice is very minimal. In the remand order in the instant case, the Ninth Circuit quoting the Alaska Supreme Court stated that it only requires a "slight showing" of "any adverse effect" or "some actual harm" to prove prejudice. Further, it appears the Ninth Circuit anticipated that the determination of prejudice could be accomplished through motion work or perhaps an evidentiary hearing when it stated that the court "should address the prejudice issue in light of our disposition, and, if necessary, hold trial on this issue." *Id*. 3-4.

[6] Exhibit 1, Conference Statement at p.2.

[7] *Id.*

**All Harms Constitute Prejudice**

Lutz maintains that any harm that flows as a natural consequence from FFIC's breach constitutes prejudice.[8] FFIC was found to have breached its duty to provide Bruington an adequate notice of denial.[9] "One 'aspect of the insurer's broader duty to defend its insured' is its obligation to provide 'prompt and adequate notice' of its intention to deny liability."[10] Therefore this was clearly a breach of the duty to defend Bruington. As a result, any harm that flows from not having provided a defense is harm that is the natural result of the breach and goes to prejudice.

Lutz does not contend that a superficial error in a denial of coverage / denial of defense letter is sufficient to trigger coverage by estoppel, or a blanket duty to defend.[11] Fortunately, that issue is not in controversy in the instant case. Here FFIC's breach was significant, material, and <u>ongoing</u>.

It was found that FFIC materially misrepresented the law to its insured; it raised defenses that were not asserted in the denial letter; and, it did not state the facts of the claim.[12] These breaches are significant and material. Moreover, FFIC's breach of the duty to defend was ongoing, and FFIC never attempted to remedy the breach.

Although the triggering event of the breach was the inadequate denial of coverage letter, FFIC never attempted to remedy the breach. It never clarified the denial; it did not respond to the tender; it did

---

[8] The Ninth Circuit has clearly said that to prove prejudice it requires "only a slight showing…[of ] *some* actual harm…[or] any "adverse effect.'" (internal citations omitted), *Lutz* decision at 3.

[9] *Lutz* decision at 2-4/

[10] *Lutz* decision at 2, quoting *Lloyd's* at 1204-05.

[11] It appears that even superficial deficiencies may trigger estoppel. In Llloyd's the Alaska Supreme Court stated: "that technical, procedural deficiencies…posits a distinction between serious and non-serious breaches that, in [the Supreme Court's] view, is somewhat artificial." *Lloyd's* at 1208.

[12] *Lutz* decision at 2-3.

not provide a defense, in fact FFIC never communicated in any manner subsequent to the inadequate denial letter. As a result, the breach of the failure to defend was ongoing.

Had FFIC remedied that breach and provided Bruington with an adequate notice of denial, this may have been a much different situation.[13]  Since the breach of FFIC's duty to defend was ongoing, the court does not have to parse out which harms are attributable to actions that occurred before or after the breach was remedied. All harms that resulted from the breach constitute prejudice.

**Denial Letter Is Not the Appropriate Measure of Prejudice**

FFIC posits that only those harms that flow from their wrongful failure to defend are those that result solely from provision of the inadequate denial letter.[14] This is similar to the analogy earlier mentioned, where a victim dies from an infection from an otherwise non-fatal stab wound. FFIC is liable for all consequences that naturally flow from action, i.e. the wrongful denial of defense. FFIC would have the court limit its inquiry as to only those harms that were a direct result of the provision of an inadequate denial of defense /denial of coverage letter. Constraining  the court to only view harms that result from the first act of an ongoing breach is not proper.

In tandem with this narrow view, FFIC also asserts that Bruington could not have suffered prejudice as a result of the denial letter because there was no potential for coverage.  This position has been reiterated by FFIC on several occasions. Specifically FFIC has said:

---

[13] If FFIC had provided Bruington with an adequate notice of denial, Bruington would have been put on notice of the reasons why FFIC was denying coverage and defense. As a result Bruington could have made reasoned arguments to FFIC to persuade them the decision was incorrect, or he could have looked for and preserved evidence supporting his position that FFIC should provide coverage and defense. Without adequate notice, Bruington (nor could any one reading the denial letter) ascertain the reasons why FFIC was denying defense and denying coverage and thus protect his interests.

[14] Exhibit 1, Conference Statement at p.2.

> There is simply no legally recognizable basis under which Mr. Bruington was prejudiced by FFIC's denial letter when there was <u>no potential for coverage under the policy</u> due to…exclusions" (emphasis added).[15]

FFIC continues to insist that coverage is in issue despite the finding of the Ninth Circuit that FFIC is estopped from denying coverage.[16] It attempts to bootstrap a coverage defense by suggesting that since there was no potential coverage it had no duty defend, and since there was no duty defend Bruington could not be prejudice. This flies in the face of the holding of the Ninth Circuit.

The Alaska Court has stated repeatedly an "insurer's obligation to defend and the obligation to indemnify are separate and distinct.[17] "[I]nsurers who … refuse to defend their insureds… do so at the risk of indemnifying any loss due to claims they should have defended."[18] Here, the Ninth Circuit has clearly stated that FFIC breached its duty to defend, so the question is not whether FFIC should have defended, but a question of whether Bruington suffered "any adverse effect".[19]

---

[15] Exhibit 2, FFIC Letter, Letter from Jon Adams faxed to Tim Cook on 2/20/2008.

[16] *Lutz Decision* at 2-4.

[17] *Brannon* at 289; *Lloyd's* at 1207; *Fejes v. Alaska Ins. Co.,* 984 P.2d 519, 522 (Alaska 1999); D.D. v. Ins. Co. of N. Am., 905 P.2d 1365, 1367 (Alaska 1995); *Afcan v. Mutual Fire, Marine & Inland Ins. Co.,* 595 P.2d 638, 645 (Alaska 1979);

[18] *Makarka V. Great American Insurance Co*., *14 P.3d 964, 970 n.29* (Alaska 2000), citing *Afcan* at 646-647.

[19] *Lutz Decision* at 3.

**REASONABLENESS DETERMINATION**

The second primary issue in the case falls under the broad heading of determining reasonableness. While Lutz and FFIC both agree there must be a reasonableness determination, there is a substantial divergence regarding what issue needs to be determined as being reasonable.

FFIC asserts that the issue is "whether the <u>amount of the State court judgment</u> that was awarded to Lutz is reasonable under the criteria set forth by the Alaska Supreme Court"[20] (emphasis added). Lutz contends that the proper matter for inquiry is: Whether the covenant settlement agreement was reasonable. Lutz bases his contention on the many holdings of the Alaska Supreme Court that find that an insurer is bound by settlement agreements subject to "a reasonableness review to be conducted by the trier of fact."[21]

**Covenant Settlement**

In the instant case, the proper inquiry is the reasonableness of the covenant settlement agreement that Lutz and Bruington entered into, not whether the underlying judgment was reasonable. As previously stated, in every similar case in Alaska, where a covenant settlement agreement has given rise to a judgment against an insurer, the courts have required that the covenant settlement agreement be examined to determine if the settlement was reasonable.[22]

The Alaska Supreme Court recently explained in Brannon:

> [W]hen an insurance company refuses to defend its insured, the insured can take reasonable steps to protect its interests…[In] *Great Divide Insurance Co. v. Carpenter*... We there observed that an insured whose insurer has committed a material breach of one of its defense obligations is permitted to enter into a settlement agreement

---

[20] Exhibit 1, Conference Statement at p.2.

[21] *Brannon* at 288, citing *Theodore v. Zurich Gen.* at 55 and *Great Divide* at 608; also see *United Airlines,* at 932; *Hoffman* at 355; *Grace* at 468 n.19; and. *Ramsey* at 247.

[22] *Id.*

> with the injured claimant. Even settlement agreements that contain a covenant not to enforce against the insured are allowed because "an insured that has been placed at economic risk by its insurer's breach should be allowed to protect itself by shifting the risk to the breaching insurer without first subjecting itself to potential financial ruin."
>
> But we also noted in *Great Divide* that "[c]ovenant settlements can be abused"; because of the potential for abuse, we stated that "we have been careful to hold that an insurance company that has materially breached its defense obligations whose insured has made such an agreement is not automatically bound by the agreement." The <u>check on this potential abuse is a reasonableness review to be conducted by the trier of fact</u>. (emphasis added)

The "reasonableness review" the court refers to is the reasonableness of the settlement, and it has carefully fashioned factors for "evaluating the reasonableness of a settlement combined with a covenant not to execute against the insure."[23]   In Great Divide the court stated: "In *Ramsey* and in *Grace* we indicated that a number of factors are relevant to the question of reasonableness:

> The releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults [sic]; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion or fraud; the extent of the releasing person's investigation and preparation of the case; and the interest of the parties not being released.[24]

Nowhere does the court state that the reasonableness of the judgment (whether it was obtained by a consent judgment or as here through an adversarial damage hearing) is to be evaluated.

In fact, the Court has held that "insurers who misinterpret their policies or who refuse to defend their insureds in the face of a reasonable expectation of coverage do so at the risk of indemnifying <u>any loss</u> due to claims they should have defended." [25] (emphasis added).

---

[23] *Ramsey* at 247; also see *Great Divide* at 613, *Grace* at 468 n.19;

[24] *Great Divide* at 613.

[25] *Makarka* at 970 n.29, citing *Afcan* at 646-647.

**FFIC Misstates the Issue In Order to Re-litigate Damages**

FFIC asserts that the issue is "whether the <u>amount of the State court judgment</u> that was awarded to Lutz is reasonable..."[26](emphasis added).  This position has no basis in law.  In effect, what FFIC is suggesting is that this court not give full faith and credit to the state court judgment.

Perhaps FFIC is confused because it has misread Great Divide. There the party injured and the insured entered into a covenant settlement agreement that provided for arbitration. The court noted that the arbitration may have "superficially resembled a contested trial…[but] the arbitration proceeding <u>was not truly adversarial</u> since Carpenter had already agreed not to execute against the Gowdys at the time that the proceeding took place… the arbitrator was chosen solely by Carpenter's counsel, and the parties agreed to exclude considerations of comparative fault.  These factors prevent the *Carpenter v. Gowdy* judgment from being accorded unquestioned acceptance."[27] (emphasis added).

In Great Divide it was not the judgment that was in issue, but rather the settlement and arbitration that lead to the judgment. Although the court has found that the use of covenant settlement agreements are proper, it is concerned that they may be abused, and therefore are subject to a reasonableness review.

> Covenant settlement agreements are enforceable against an insurance company if the agreements are reasonable.  If such agreements were not enforceable, claimants would not make them and insureds would often suffer financial ruin before they could vindicate their rights against their insurers. <u>Affording insurers the right to relitigate liability and damages issues resolved by agreement "would destroy the purpose</u> served by allowing insureds to enter into [covenant settlement] agreements because claimants would never settle with insureds if they never could receive any benefit."
>
> Covenant settlement agreements can be abused.  The insured who is

---

[26] Exhibit 1, Conference Statement at p.2.

[27] *Great Divide* at 614.

> fortunate enough to be able to make such an agreement has no incentive not to agree to very high damage awards. In recognition of this, we have been careful to hold that an insurance company that has materially breached its defense obligations whose insured has made such an agreement is not automatically bound by the agreement. Instead, <u>the agreement must be reviewed for reasonableness</u> by the trier of fact. (emphasis added, internal citations omitted). [28]

The issue then is not the reasonableness of the judgment, but the reasonableness of the settlement that leads to the judgment. This is confirmed in Great Divide where the court explicitly stated that had Carpenter sought a determination of the reasonableness of the settlement (on appeal) that this "could warrant setting aside the judgment for compensatory damages and remanding for a new trial on the issue of the reasonableness of the settlement."[29] If the case in Great Divide were remanded, based on whether the jury found the settlement reasonable or unreasonable there was the "possibility of increasing the award [if a jury found the settlement was reasonable] and the risk of reducing it if a future jury were to find the settlement to be unreasonable."[30] Implicit in this statement is that the judgment based on the arbitration would be affirmed <u>if the settlement agreement was found to be reasonable</u>.[31]

Clearly covenant settlement agreements can be abused. Parties to a covenant settlement agreement could consent to a million dollars in damages for a two dollar injury, or a covenant settlement agreement

---

[28] *Great Divide* at 609.

[29] *Id.* at 614.

[30] *Id.*

[31] The reasonableness of the settlement that included the amount awarded in arbitration was not determined at the trial court level. Instead, an independent award for compensatory damages was made. The Supreme Court opined that Carpenter may have made a tactical decision not to appeal the failure of the trail court to determine the reasonableness of the settlement agreement because in order to do so, he would have had to give up the compensatory damage award. By giving up the compensatory award, he could face the prospect of a jury finding the settlement reasonable (and increasing the damage award) or the possibility of a jury finding the settlement unreasonable and being left with no damage award. *Great Divide* at 614 and fn 38.

could, as in Great Divide, set up an one-sided, sham arbitration. Part of the reasonableness inquiry is to determine whether it has set up mechanism that would lead to an "unfair" assessment of damages. Clearly agreeing outrageous sum, or confessing judgment to a huge award, or agreeing to a one-sided sham arbitration could lead to a "unfair" assessment of damages.

In the instant case however, there was no agreement to a fixed or stated amount of damages, there was no agreement to a sham arbitration, nor was there a confession of judgment. In the covenant settlement agreement Lutz only agreed to not enforce against Bruington personally (and to reimburse him for costs to repair to the home) if a judgment were rendered.

A judgment was rendered, and it was rendered as the result of adversarial procedure. [32] Lutz will agree that had FFIC fulfilled its defense obligation to Bruington, the case may have been defended more vigorously. Nevertheless, it was the Court which determined that Bruington was liable, and it was the Court which determined the appropriate amount damages. The Court made this finding based on evidence presented at the damage hearing. Lutz could not force Bruington to appear, nor could he persuade FFIC to appear.[33]

For FFIC to assert that the damages are not reasonable, they must suggest that somehow Judge Fuld did not properly fulfill his duties in assessing damages.

---

[32] Although Bruington may not have defended as vigorously as FFIC may have preferred, it was and continued to be an adversarial proceeding. Even after Lutz had agreed to not execute against Bruington personally, there were ramifications to Bruington if a judgment were entered against him, i.e. impacts to credit, bondableity, etc. While Bruington may not have answered all discovery requests, nor appeared at the Damage Hearing, he did Answer the Complaint, respond to some discovery requests, and vigorously negotiate to obtain the best settlement agreement he could.

[33] Lutz kept FFIC fully informed that a covenant settlement agreement had been reached, that litigation would continue, and "invited" FFIC to participate in the proceedings. Moreover, FFIC had engaged local counsel, Andrew Guidi, as early as June 2004, to monitor the case. See Exhibit 3, Agreement and Release and Assignment of Claim and Right, collectively referred to as the covenant settlement agreement. See Exhibit 4, Billing Records of Andrew Guidi.

It is Lutz position that the proper inquiry is the reasonableness of the settlement agreement that is in issue. If the agreement is found to reasonable, then the underlying judgment should afforded full faith and credit.

**NEED FOR CLARIFICATION**

There is a need to clarify these two issues- reasonableness and prejudice- so that the parties can move forward in an orderly manner on discovery, trial preparation, theory of the case, and settlement posture.

In meetings with FFIC's attorney, it was agreed that discovery, trial preparation, theory of the case, and settlement posture will be greatly effected by how the court resolves these two issues. At present settlement negotiations are staled because of the parties widely divergent view. Discovery is also at an impasse. With resolution of these issues, it may be possible that the case can be quickly settled, or at least the issues narrowed so that the proceeding can move forward expeditiously.

Therefore, Lutz moves the court to find the following:

1)  That harms suffered by Bruington as a result of FFIC's wrongful failure to defend are the proper measure to determine prejudice, not just harms that are directly attributable to the FFIC's inadequate denial of defense letter.

2)  That the operative inquiry is whether the covenant settlement agreement that Lutz and Bruington entered into is reasonable, not whether the underlying judgment was reasonable.

**Protective Order**

Lutz also moves for protective orders, based on the above clarifications. FFIC has propounded discovery requests premised on its belief that it can re-litigate the theories under which the underlying judgment

found Bruington liable; re-litigate damages awarded to Lutz in the underlying judgment; and, revisit coverage issues. Lutz has objected to these requests, and anticipates FFIC will move to compel.

Rather than attempt to anticipate what discovery FFIC might seek to compel, Lutz believes that a clarification of the two issues and a protective order based on that clarification is appropriate.

1) Lutz moves for a protective order that would prohibit FFIC from propounding any discovery that inquires as to the basis for the damages that were awarded in the underlying suit. He premises the motion on the theory that FFIC can not make inquiry into the reasonableness of the underlying judgment, but only as to the reasonableness of the covenant settlement agreement. Furthermore he asserts that this court is required to give full faith and credit to the State Court judgment.

2) Lutz moves for a protective order that would prohibit FFIC from propounding any discovery that inquires as to the basis for liability in the underlying suit.. He premises the motion on the theory that FFIC is bound by the judgment since it had notice and opportunity to defend, and that it wrongfully failed to defend. Furthermore he asserts that this court is required to give full faith and credit to the State Court judgment.

3) Lutz moves for an order that clarifies that coverage is no longer in issue, and as such FFIC is prohibited from propounding any discovery that is intended to address coverage issues.

Respectfully presented on April 14, 2008 by,


s/ *Tim Cook*
Tim Cook
Alaska Bar Card #9007048
3901 Taiga Drive
Anchorage, Alaska
(907)336-5291
(907)336-5292 FAX
Attorney for Eric Lutz

**CERTIFICATE OF SERVICE**
I hereby certify that on  4/14, 2008, a true and correct copy of this document was served to the following:

Andrew Guidi, Esquire
Delaney, Wiles, Hayes, Gerety, Ellis, & Young, Inc.
1007 West 3rd Ave, Suite 400
Anchorage, Alaska

Jon K. Adams, Esquire
Morison-Knox Holden & Prough, LLP
500 Ygnacio Valley Road, Suite 400
Walnut Creek, CA 94596