ANDREW GUIDI
ag@delaneywiles.com
DELANEY WILES
1007 West Third Avenue, Suite 400
Anchorage, AK 99501
Telephone: (907) 279-3581
Facsimile: (907) 277-1331

MICHAEL D. PROUGH
Michael.Prough@morisonansa.com
JON K. ADAMS
Jon.Adams@morisonansa.com
MORISON ANSA HOLDEN ASSUNCAO &
    PROUGH, LLP
500 Ygnacio Valley Road, Suite 450
Walnut Creek, CA 94596-8068
Telephone: (925) 937-9990
Facsimile: (925) 937-3272

Attorneys for Defendant
FIRST FINANCIAL INSURANCE
COMPANY, INC.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ERIC LUTZ, as assignee of rights of Dean Bruington dba DB Enterprises,<br><br>                Plaintiff,<br><br>vs.<br><br>FIRST FINANCIAL INSURANCE COMPANY, INC.,<br><br>                Defendant. | No. A04-229-CV (TMB)<br><br>**FIRST FINANCIAL INSURANCE COMPANY, INC.'S OPPOSITION TO PLAINTIFF ERIC LUTZ'S MOTION FOR CLARIFICATION AND FOR PROTECTIVE ORDER** |

## TABLE OF CONTENTS

                                                                                          **Page**

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL SUMMARY ............................................................................................................1

PROCEDURAL HISTORY ........................................................................................................4

THE LUTZ MOTION FOR PROTECTIVE ORDER ................................................................7

ARGUMENT................................................................................................................................8

I.      BRUINGTON'S PURPORTED PREJUDICE ONLY CAN RESULT FROM
        FFIC'S DENIAL LETTER ..............................................................................................8

II.     THE *GREAT DIVIDE* FACTORS SUPPORT FFIC'S NEED FOR THE
        DISCOVERY IT SOUGHT ...........................................................................................10

III.    LUTZ'S MOTION FOR A PROTECTIVE ORDER SHOULD BE DENIED
        BECAUSE FFIC SEEKS RELEVANT DISCOVERY ................................................13

CONCLUSION ..........................................................................................................................15

## TABLE OF AUTHORITIES

**Page**

Cases

*Alexander v. F.B.I.*
  194 F.R.D. 316 (D.D.C. 2000) ........................................................................................14

*Contratto v. Ethicon, Inc.*
  225 F.R.D. 593 (N.D. Cal. 2004) ...................................................................................13

*Fejes v. Alaska Ins. Co., Inc*
  984 P.2d 519 (Alaska 1999) ..............................................................................................9

*Grace v. Insurance Co. of N. Am*
  944 P.2d at 460 (Alaska 1997). .......................................................................................12

*Great Divide Ins. Co. v. Carpenter*
  79 P.3d 599 (Alaska 2003) ..............................................................................................10

*Jamison v. Consol. Util, Inc.*
  576 P.2d 97 (Alaska 1978) ....................................................................................5, 8, 10

*Rubin v. Islamic Republic of Iran*
  349 F.Supp.2d 1108 (N.D. Ill. 2004) ..............................................................................14

*Schlagenhauf v. Holder*
  379 U.S. 104 (1964) ........................................................................................................13

*United Airlines, Inc. v. State Farm Fire & Cas. Co*
  51 P.3d 928 (Alaska 2002). ............................................................................................12

*United Oil Co. v. Parts Assoc., Inc.*
  227 F.R.D. 404 (D. Md. 2004) .......................................................................................14

**Statutes**
Federal Rules of Civil Procedure Rule 26(b)(1) ..............................................................7, 13

**Other Authorities**
*Blacks Law Dictionary* at 1198 (7th ed. 1999) .......................................................................9

## PRELIMINARY STATEMENT

Lutz seeks an advisory clarification of prior rulings of this Court and the Ninth Circuit, as well as a protective order to avoid discovery about his claims and FFIC's defenses, without even informing the court of the discovery he has refused to provide. Lutz is wrong on procedure, violates court rules by not setting forth the discovery in dispute, and is wrong on the law governing this case.

Lutz claims that he seeks clarification of this Court's August 2006 decision granting summary judgment and the Ninth Circuit's October 2007 decision partially reversing that decision. In so doing, Lutz asks this Court to change the Ninth Circuit's and this Court's decisions, and not follow Alaska law, in order to find an easier way for him to meet the element of estoppel that he must demonstrate that Bruington suffered actual prejudice resulting from the one assertion of FFIC found to be wrongful—the manner in which FFIC wrote its otherwise correct denial of Bruington's claim. Lutz also seeks a protective order to eliminate FFIC's right to discovery of facts, including those necessary to allow the analysis the Alaska Supreme Court requires when analyzing the propriety of saddling a liability insurer with an uncontested judgment. As discussed below, the "clarification" Lutz submits is wrong on the law. Further, as FFIC's discovery only seeks facts related to the claims and defenses of the parties, it falls well within the relevancy standards of Rule 26(b). Accordingly, the motion should be denied.

## FACTUAL SUMMARY

First Financial Insurance Company ("FFIC") insured Dean Bruington, dba DB Enterprises ("Bruington") under a general liability insurance contract. The policy was in effect for one year, December 1998 to December 1999, and had policy limits of $1 million per occurrence. The policy excluded coverage for any property damage to the work of Mr. Bruington that was caused by Bruington and also excluded any property damage "arising out of the actions of independent contractors for or on behalf of any insured."

In 1999, Bruington built a house for plaintiff Eric Lutz ("Lutz"). Bruington contracted with several independent contractors to perform portions of the work. Lutz has consistently

blamed the settlement damages on the independent subcontractor which excavated the ground, M. Shelton Services, Inc. Mr. Shelton has sworn that because there was permafrost in the area, he told both Bruington and Lutz that construction needed to wait at least a year after excavation, but that Lutz insisted the project not wait.[1] According to Bruington, Lutz chose the site on the property on which to build, insisted that construction proceed immediately, rejected an above-ground foundation, and rejected the more stable type of foundation he eventually got as a repair because it was too expensive.[2] Lutz's choice of foundation and his refusal to follow Shelton's advice seem to have led to settlement of the foundation.

In 2000 and again in 2001, Lutz complained to Bruington about minor settlement issues. Although Bruington came to the house and made repairs each time, he never informed FFIC about the property damage or Lutz' complaints. When Lutz complained again in mid-2002, Bruington determined that he could not make repairs and made an insurance claim. After an investigation, in September 2002, FFIC wrote to Bruington and denied the claim in its entirety.

The denial letter initially stated that FFIC had investigated the loss and determined that there was no coverage for the Lutz claim. It then quoted the language of several of the policy's business risks exclusions, including exclusion L (damage to your work) and the language of the independent contractor exclusionary endorsement. The letter then briefly stated that several courts have interpreted that newly constructed homes are the insured's product or work and that there also is no coverage for damages to them. The home was, of course, Bruington's work. The letter concluded with a reservation of FFIC's rights and an invitation for Bruington to please contact FFIC if he had any questions or had any information that might alter FFIC's decision. Bruington never asked any questions. He never complained. He never provided any new information. In short, he gave FFIC no reason to think that its decision was wrong.

---

[1] Exh. 1 at ¶8. Exhibits 1-9 are attached to the Declaration of Jon Adams, filed herewith. Exhibit 1 is on file with this court at ECF #44(3).

[2] Mr. Bruington's deposition was taken on April 25, 2008 and has not yet been transcribed.

In May 2003, Lutz filed a lawsuit against Bruington, setting forth claims for breach of warranties and misrepresentation.[3] It plainly alleged that damage was to the work product of Bruington (the Lutz house) and that it was caused by the work of Bruington and the excavation contractor, Shelton. It made no allegation of physical injury to the house during the policy period. To the contrary, it alleged that it was not until "the late spring of 2000, [that] some minor hairline cracks had appeared in the interior plaster finish."[4]

Under the policy, Bruington was obligated to "[i]mmediately send [FFIC] copies of any demands, notices, summonses or legal papers received in connection with the claim or suit." Bruington faxed FFIC a Jury Demand Lutz had filed and wrote a note on his fax cover sheet stating that he would send any further information he received. But he never did.[5]

After Bruington answered the Lutz complaint, Lutz's attorney, Mr. Cook, proposed a strategic settlement. He proposed that if Bruington would repair the Lutz home and assign his rights against FFIC to Lutz, Lutz would agree not to enforce any judgment against Bruington. In April 2004, Bruington and Lutz entered into an Agreement and Release and an Assignment. Under those contracts, Bruington agreed to repair the Lutz home by June 2004 and assigned to Lutz all of his rights against FFIC. Lutz agreed not to hold Bruington personally liable for any judgment he obtained against Bruington and agreed that if he secured an award or settlement from FFIC, to pay Bruington a portion of the recovery.

With nothing at stake in the state court lawsuit, Bruington did not defend himself. He did not respond to requests for admissions and they were deemed admitted. Then, with those admissions as Lutz's evidence, the court granted Lutz' unopposed motion for summary judgment.

---

[3]   Exh. 2.

[4]   *Id.* at ¶11.

[5]   At his recent deposition, Bruington testified that he never felt relieved of his duty to tender the complaint to FFIC, that his attorney told him to send it, and that he had meant to do so. That deposition has not yet been transcribed.

In October 2004, six months after the settlement, the state court held an uncontested hearing on the amount of Lutz's damages. No one appeared except Lutz and his counsel, Mr. Cook. Cook presented the court with an affidavit of Bruington stating that his total cost to repair the Lutz home, including all materials and his time, was $117,902.[6]

Lutz also submitted a document setting forth his purported damages. It included $121,216 for the cost of repairs, $27,000 for his cost of alternative housing, lost wages for 12 days of missed work, exactly $50,000 for harm to Lutz's credit rating, exactly $400,000 for loss of consortium (Lutz divorced in 2000), and exactly $1.2 million for emotional distress. All told, Lutz claimed $1,804,376.[7]

Bruington's liability was founded on misrepresentation. The court entered the full amount Lutz submitted even though it bore no relationship to any actual damages then, under the Alaska Deceptive Trade Practices Act, trebled the amount to $5,413,128. Although nothing adverse ever took place during the lawsuit, Lutz's attorneys claimed they had worked exactly 1,000 hours and their paralegal worked another 200. They were awarded $188,000 in attorneys' fees, bringing the total judgment to $5,601,128.

In short, by complying with Lutz's decision on the type of foundation and his refusal to delay construction as the excavation contractor recommended, Bruington (and/or independent contractors he hired) built a house that encountered settlement problems. By June 2004, it was repaired for less than $120,000 and given the type of foundation Lutz originally rejected due to cost. Lutz continues to live in the house to this day. Yet in an uncontested suit, Lutz got an uncontested judgment of nearly 50 times the cost of the completed repair/improvement (which he did not pay)—which he now seeks to convert into an award against FFIC.

## PROCEDURAL HISTORY

Lutz initiated this case in state court in September 2004 and FFIC removed it to federal court. In November 2005, without taking any discovery (other than the exchange of initial

---

[6] Exh. 3 at ¶13.
[7] Exh. 4.

disclosures), FFIC filed a motion for summary judgment to address certain pure questions of law and contract interpretation. The motion asserted that there was no duty to defend or indemnify Bruington under the policy because there was no evidence of damages during the policy period, and that any possible damages were excluded by either the "your work" or the "independent contractor" exclusions to the policy. Lutz later filed a cross-motion for summary judgment, claiming that FFIC was estopped from denying coverage.

In August 2006, in a 21-page decision, this court granted FFIC's motion for summary judgment, finding that there was no duty to defend or indemnify, and denied Lutz' cross-motion. The court found that there was no potential coverage because all property damage was a result of Bruington's own work or the work of an independent contractor. That conclusion—that the policy provided <u>no coverage</u> for the loss, was plainly correct and was not disturbed on appeal.

In addressing Lutz's motion, the court also specifically analyzed the potential of estoppel against FFIC due to the denial letter. Citing *Jamison*,[8] it set forth the elements of equitable estoppel as: "(1) an assertion of a position by word or conduct, (2) reasonable reliance on the assertion, and (3) resulting prejudice." In its consideration of whether Bruington was prejudiced, the district court block-quoted four paragraphs of a Bruington affidavit Lutz submitted to show Bruington's prejudice. In that affidavit, Bruington claimed that he could not understand the factual basis of FFIC's denial from the denial letter and that if it had been explained to him that the denial was due to the damages occurring after the policy period, he would have tendered a claim to his later insurers.[9] The district court considered this evidence and Lutz's arguments about it, and found there had been no prejudice. It explained that FFIC:

> did nothing to impede Bruington from investigating, requesting additional information, or taking other action to challenge denial of the claim. Bruington did nothing. Under Alaska law, this does not establish estoppel. If Bruington was harmed, it was as a result of his own inaction after he received notice his

---

[8] *Jamison v. Consol. Util, Inc.*, 576 P.2d 97, 102 (Alaska 1978).

[9] ECF #70 at 10. Bruington testified at his April 25, 2008 deposition that he had no role in drafting the affidavit. Rather, when the affidavit arrived from Mr. Cook, Mr. Cook told him to sign it so he did.

claim had been denied, not any perceived inadequacies in the denial notification.[10]

In September 2007, a divided Ninth Circuit panel reversed in a memorandum decision. The decision did not question the correctness of this Court's determination that FFIC owed no coverage, and owed no duty to defend or indemnify Bruington under the terms of the policy. That there was no duty to defend or indemnify remains the law of the case.

Rather, the panel found that FFIC's denial letter was inadequate and failed to meet Alaska standards as it did not set forth specific facts about the Lutz claim and failed to notify Bruington of FFIC's defense that damage to the Lutz home occurred outside the coverage period.[11] It held that FFIC will be estopped from denying a duty to indemnify <u>if Lutz can prove</u> that Bruington suffered actual prejudice. It specified that this court's error had been analyzing prejudice based on an erroneous assessment that the manner in which <u>the denial letter</u> denied Bruington's claim had satisfied Alaska requirements. It remanded for this court "to address the prejudice issue in light of our disposition, and, if necessary, to hold a trial on this issue."

The Ninth Circuit concluded that <u>if</u> Lutz can prove that Bruington was prejudiced, FFIC would be equitably estopped from denying coverage "regardless of whether it would ultimately have been liable <u>for the Lutz claim</u> if it had fulfilled its duties to Bruington."[12]

Neither this court nor the Ninth Circuit found any fault with FFIC not providing Bruington a legal defense in the suit Lutz filed. Not only was there no potential coverage for the suit due to the "your work" and "independent contractor" policy exclusions, but the Lutz complaint specifically alleged that the damage began in the spring of 2000, months after the policy's December 9, 1999 expiration date.

---

[10] *Id.* at 11-12.

[11] ECF #99 at 3. FFIC did not deny the claim due to lack of damage during the policy period and a declaration of the author of FFIC's denial letter, filed with this court at ECF #54(2), so stated. Exh. 5 at ¶6. That was because the facts relevant to that defense were not then known, and only came to light later.

[12] ECF #99 at 4.

## THE LUTZ MOTION FOR PROTECTIVE ORDER

Although Lutz seeks an order protecting him from discovery, he never even identifies the actual discovery that precipitated his motion. FFIC served interrogatories asking Lutz such things as to state facts that supported the damages he claimed at the uncontested hearing and to identify the representations Bruington made to him. Each falls well within the liberal standards of discovery of Rule 26(b)(1) of the Federal Rules of Civil Procedure, as they seek information concerning Lutz's claims and FFIC's defenses. Examples include:

2.   Please describe all representations BRUINGTON made to YOU, including the date it was made, the manner in which it was made, whether written or verbal, and all PERSONS who witnessed the representation.

6.   Please identify each of the 12 days you missed from work for repairs to THE LUTZ HOME, as set forth in the "Calculation of Damages" YOU submitted to the court in THE UNDERLYING LAWSUIT, and describe what YOU did on each day

7.   Please describe all "alternative housing" for which you spent $27,000, as set forth in the "Calculation of Damages" YOU submitted to the court in THE UNDERLYING LAWSUIT, including each address, and the dates you lived at each location.

9.   Please state every basis for YOUR claim that BRUINGTON harmed YOUR credit in the amount of $50,000, as set forth in the "Calculation of Damages" YOU submitted to the court in THE UNDERLYING LAWSUIT, and IDENTIFY EACH DOCUMENT that supports YOUR claim.[13]

Although Lutz sued Bruington for misrepresentation and Lutz seeks damages in this case for those purported misrepresentations, Lutz refused to answer interrogatory number 2, objecting that it was overbroad, burdensome, and irrelevant and "patently absurd." In response to numbers 6, 7, and 9, Lutz's only objection was that a document "speaks for itself."[14]

---

[13]   Exh. 6. These are not the only requests at issue. FFIC intends to file a motion to compel and will set forth all discovery in dispute in that motion.

[14]   Exh. 7.

## ARGUMENT

### I. Bruington's Purported Prejudice Only Can Result From FFIC's Denial Letter

In its ruling on the motions for summary judgment, this court explained that to establish prejudice, Lutz must prove FFIC's assertion, Bruington's reasonable reliance on the assertion, and <u>resulting</u> prejudice.[15]

Alaska law is clear that legal prejudice must result from the act held to be wrongful.[16] FFIC's denial of the claim itself was correct, but the Ninth Circuit held that the <u>manner</u> in which the denial was conveyed failed to meet Alaska standards. FFIC committed no other wrong. Thus, the poor conveyance of the denial (such as the lack of a discussion of facts) is the relevant assertion of FFIC on which Lutz must try to prove Bruington relied to his detriment.

To try to escape this burden, Lutz argues that Bruington may have been prejudiced by not being defended against the complaint Lutz filed eight months later, comparing this case to a person who stabs someone being responsible for all resulting harm to the victim. But this is not an intentional tort case—it is a contract action. The parties' motions for summary judgment only raised contract claims and "coverage" by estoppel is a judicially-imposed contractual remedy. Any showing of prejudice must result from Bruington's reliance on the poor quality of FFIC's otherwise correct denial.[17]

Lutz even goes so far as to argue that the Ninth Circuit determined that FFIC failed to defend Bruington in the suit filed eight months later. That decision did no such thing. And it never even hinted (and certainly did not find) that Bruington's prejudice could result from anything but the manner in which FFIC denied the claim in its September 2002 letter.

---

[15]   ECF #70 at 10, citing *Jamison v. Consol. Util, Inc.*, 576 P.2d 97, 102 (Alaska 1978).

[16]   *Jamison v. Consol. Util, Inc.*, 576 P.2d 97, 102 (Alaska 1978).

[17]   *Jamison*, 576 P.2d 102.

What Lutz ignores is that the July 2002 claim and the May 2003 suit were different policy events. A policy can have many claims made on it. A denial of one claim does not foreclose acceptance of any later claim or the defense of any later-filed suit.

Further, whether FFIC even owed a duty to defend was defined by the allegations in the May 2003 complaint Lutz filed against Bruington. But that complaint was never provided to FFIC. As this Court found, "[i]n May 2003 Bruington sent only a copy of the Notice of Jury Demand. He also indicated in his facsimile that he would 'send any further information we receive.' However nothing further was sent."[18] Bruington was obligated by the policy and his own promise to send FFIC "the complaint and any other information concerning the Lutz lawsuit against Bruington."[19] Thus, FFIC had no chance to consider whether the complaint alleged facts or raised legal theories that might have triggered a defense.

But even if Bruington had sent the complaint to FFIC, it introduced no new facts and raised no potential coverage so, as this Court found, FFIC would have owed no duty to defend. The duty to defend arises only when the face of the underlying complaint "alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy," or facts showing policy coverage "are known or reasonably ascertainable by the insurer."[20] But the Lutz complaint plainly alleged that damages were to the work product of Bruington and caused by Bruington and the independent excavation contractor with causes of action for breach of warranties (founded on Bruington's work) and for alleged misrepresentations that defects in the work would be cured. None was potentially covered under the policy. Prejudice is "damage or detriment to one's legal rights or claims."[21] Bruington could not be legally prejudiced by the lack

---

[18]   ECF #70 at 8.

[19]   ECF #70 at 9.

[20]   *Fejes v. Alaska Ins. Co., Inc.*, 984 P.2d 519, 522 (Alaska 1999).

[21]   *Blacks Law Dictionary* at 1198 (7th ed. 1999).

of a defense because he had no right to one. This Court has so determined and the Ninth Circuit never suggested otherwise.

So Lutz argues that FFIC never clarified its September 2002 denial. But FFIC's letter told Bruington that if he had any questions, to please ask, and then asked that if he had "any additional information that may impact [FFIC's] position" to please forward it to FFIC. Bruington did neither. How could FFIC know that Bruington needed any clarification?

Lutz falsely accuses FFIC of trying to "bootstrap a coverage defense" by arguing that Bruington was not prejudiced by the denial letter. It is Lutz who is trying to bootstrap. The Ninth Circuit only held that there would be coverage by estoppel **if** there was prejudice actually established by the evidence. Argument and speculation are not evidence. Further, any prejudice must "result" from FFIC's wrongful act–the manner in which it wrote the denial letter.

Indeed, if Lutz were correct that <u>any</u> harm to Bruington after FFIC's denial can constitute prejudice, then the Ninth Circuit would have simply ordered entry of judgment for Lutz. That Bruington spent $117,000 to repair his work and that judgment was entered against him were in the appellate record. That the Ninth Circuit remanded for this Court "to address the prejudice issue" makes clear that Lutz's theory of prejudice per se from those events is wrong.

Alaska law is clear that legal prejudice must result from the act held to be wrongful.[22] FFIC's claim denial itself was correct. It was only the manner in which the denial was conveyed that the Ninth Circuit held had failed to meet Alaska standards.

II. **The *Great Divide* Factors Support FFIC's Need For The Discovery It Sought**

If it is found that Bruington was prejudiced, the Alaska Supreme Court instructs that the amount Lutz seeks must be scrutinized. In *Great Divide*,[23] two months before trial was to begin in the underlying case, the plaintiff and the defendants (who were not defended by their insurer) settled. As here, the insureds assigned to the plaintiff any rights they had against their insurer

---

[22] *Jamison v. Consol. Util, Inc.*, 576 P.2d 97, 102 (Alaska 1978).

[23] *Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599 (Alaska 2003).

and the plaintiff agreed not to execute the judgment against them. And as here, instead of a reaching a settlement amount, they agreed to a procedure. While Lutz and Bruington agreed that Lutz could present any amount at an uncontested hearing, the *Great Divide* parties agreed to an arbitration, whereby the arbitrator would decide whether the insureds were legally responsible for the plaintiff's injuries and the amount of damages. The arbitrator found the insureds liable and that damages were $2,006,000. Judgment was then entered in that amount.

In the coverage case that followed, the jury returned a special verdict that concluded that Great Divide had not fulfilled duties it owed to its insureds and awarded compensatory damages of $1,540,000. The jury explained in an interrogatory that the amount consisted of the policy limits plus pre-judgment interest, and a return of premiums paid. On appeal, the Alaska Supreme Court found, contrary to the present action, that there was actual coverage under the policy and that the insurer had breached its defense duty. In analyzing the "covenant settlement agreement," it explained that such agreements "can be abused" and held that they are only useable against the insurer as evidence of the amount of an underlying liability if they are "reasonable."[24] It held that the factors to be considered for reasonableness include:

> The releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults [sic]; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion or fraud; the extent of the releasing person's investigation and preparation of the case; and the interest of the parties not being released.[25]

The *Great Divide* court found that the fact that the settlement agreement was combined with an arbitration preceding did not eliminate the independent reasonableness requirement. It pointed out that the arbitration preceding was not truly adversarial as the underlying plaintiff had already agreed not to execute against the insureds at the time the preceding took place.[26] The

---

[24]     *Id.* at 613.

[25]     *Id.*

[26]     *Id.* at 614.

same is true here, as Bruington settled the case with Lutz <u>six months before the damages hearing</u>. After that, he had no stake in the suit and thus, did not even attend the damages hearing.

Lutz tries to argue that his unopposed judgment is irrelevant to the *Great Divide* analysis and that the settlement agreement reached six months earlier should be examined in isolation. But the <u>amount</u> is a part and parcel of any settlement. Without the amount and evidence supporting the amount, how can the fact finder decide if the deal was reasonable? Courts well recognize that when any defendant is offered a deal with a covenant not to execute, he has no incentive not to settle for any amount, no matter how huge.[27] In fact, in *Great Divide*, after the coverage case jury was informed of the underlying judgment, it awarded a <u>smaller</u> amount. Clearly, the amount of the judgment in such circumstances in not binding.

Lutz argues that "settlements" were reviewed for reasonableness in *United Airlines* and *Grace*,[28] but those settlements included a dollar amount. And in *Grace*, the court in the coverage case permitted discovery into the claims of fraud and collusion and even held that the insurer only would be liable for the amount of a "reasonable settlement . . . <u>which falls within the coverage provided by the policy</u>.[29]

Finally, the very factors that *Great Divide* mandates be analyzed make no sense if <u>only</u> the bare settlement (with no amount) is analyzed as Lutz argues, or even if the bare judgment amount is also considered. The very first *Great Divide* factor is "the releasing person's damages." It is not the settlement/judgment amount, but the actual damages to which that amount is compared. A party may not obtain an unopposed judgment for 50 times its actual

---

[27] *Id.* at 609.

[28] *United Airlines, Inc. v. State Farm Fire & Cas. Co*, 51 P.3d 928, 931 (Alaska 2002); *Grace v. Insurance Co. of N. Am.*, 944 P.2d 460 (Alaska 1997).

[29] *Grace*, 944 P.2d at 463, 464 n.7.

damages, then convert it to money via liability insurance. FFIC and the fact finder have every right to examine Lutz's <u>actual</u> damages to determine if the underlying result was reasonable.[30]

### III. Lutz's Motion For A Protective Order Should be Denied Because FFIC Seeks Relevant Discovery

The posture of this case supports FFIC right to discovery. The Court of Appeals' decision was a review of a summary judgment, not a trial. FFIC had taken no discovery. FFIC was found not entitled to judgment as a matter of law on the theories presented, but it still gets to prove its defenses in further proceedings. Discovery is proper in those efforts. Under Rule 26(b) of the Federal Rules of Civil Procedure, a party is entitled to discovery regarding any non-privilege matter that is relevant to any party's claims or defenses. With good cause, it is entitled to discovery on any matter relevant to the subject matter to the action if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. And it is long established that "the discovery rules should be accorded a 'broad and liberal scope.'"[31] Each FFIC interrogatory easily meets this standard.

All of the discovery FFIC sought, and Lutz refused to provide, concerns the factors *Great Divide* instructs are to be used to determine if the amount Lutz claims here is reasonable. The factors included such things as <u>Lutz's actual damages</u> (sought in interrogatories 6, 7, and 9), the relative <u>merits of Lutz's liability theory</u> (sought in 2), and <u>any evidence of bad faith, collusion, or fraud</u> (sought in all four). Every request falls within Rule 26(b). And even if Lutz challenges

---

[30] Lutz tries to bolter his claim by arguing that he "kept FFIC fully informed" about his settlement with Bruington and the state court proceedings and that FFIC engaged Mr. Guidi "to monitor the case." Lutz Brief at 12, n.33. The truth is that the first FFIC heard of the case after Bruington's May 2003 fax was in May 2004, when Mr. Cook informed FFIC that Bruington and Lutz had settled and made a settlement demand. Exh. 8. FFIC then retained Mr. Guidi, who obtained copies of the court file. FFIC then responded to Cook with a letter that set forth in careful detail the facts and law, and explained why, under the allegations of the complaint never sent by Bruington, there was no duty to defend or indemnify Bruington. Exh. 9.

[31] *Contratto v. Ethicon, Inc.*, 225 F.R.D. 593, 595 (N.D. Cal. 2004), quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964).

FFIC's defense, that should not justify denial of discovery about it.[32]  The burden is on Lutz to show why any request is improper,[33] a burden he has not even come close to meeting.

In his complaint, Lutz sued Bruington for misrepresentation and in the uncontested hearing, Lutz obtained treble damages based on misrepresentation.  But here, when FFIC asked Lutz to identify the representations Bruington made, Lutz refused.

In the underlying case, Lutz claimed losses for missed work and recovered his alleged damages.  But when FFIC asked Lutz just to identify the days he missed, Lutz refused.

In the underlying case, Lutz claimed a loss of $50,000 for damage to his credit rating.  When FFIC asked him to state the basis of his claim, Lutz refused.

In the underlying case, Lutz submitted an attorney fee bill of $188,000 that claimed that counsel worked 1,200 hours on the case.  Yet an analysis of the very bills counsel for Lutz produced herein in response to a subpoena show that, even averaging high and giving Lutz's counsel every benefit of the doubt, they worked far fewer than 300 hours.[34]

These examples illustrate why the discovery FFIC seeks and Lutz refuses falls within the *Great Divide* factor for "any evidence of bad faith, collusion or fraud."

FFIC's interrogatories are directly relevant to Lutz's claims for damages, FFIC's defenses, and to the *Great Divide* factors which govern liability if it is determined that Bruington was prejudiced by the manner in which FFIC wrote its denial letter.  FFIC's discovery is targeted directly at evidence of the merits of Lutz's liability theory, Lutz's actual damages, and "any evidence of bad faith, collusion or fraud."  Bruington and Lutz settled six months before the hearing on damages.  Bruington never responded to discovery and did not oppose the motion for summary judgment.  He simply quit.  Why?  Because he and Lutz had already entered into an agreement where he had no risk.  The proceedings were designed strictly to enable Lutz to

---

[32]  *Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000).

[33]  *Rubin v. Islamic Republic of Iran*, 349 F.Supp.2d 1108, 1111 (N.D. Ill. 2004); *United Oil Co. v. Parts Assoc., Inc.*, 227 F.R.D. 404, 411 (D. Md. 2004).

[34]  Declaration of John Compton, ¶¶ 2-4.

- 15 -

attempt to recover nearly fifty times what it cost Bruington to repair the house.  Under Rule 26, FFIC is entitled to discovery on every one of the topics Lutz refuses to provide.

## CONCLUSION

For the reasons set forth above, Lutz's motion for a protective order and for clarification should be denied.

Dated: April 29, 2008

MORISON ANSA HOLDEN ASSUNCAO & PROUGH, LLP

By: /s/ Jon K. Adams
Jon K. Adams

Attorneys for Defendant
FIRST FINANCIAL INSURANCE COMPANY, INC.

CERTIFICATE OF SERVICE

I hereby certify that on
April 29, 2008,
First Financial Insurance Company, Inc.'s Opposition to Plaintiff Eric Lutz's Motion for Clarification and for Protective Order was served electronically on:

Tim Cook, Esq.
Tcook@acsalaska.net
Attorney at Law
3901 Tiaga Drive
Anchorage, AK 99516

/s/ Jon K. Adams
Jon K. Adams