**Exhibit 1**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

ERIC LUTZ, as assignee of )
rights of Dean Bruington d/b/a )
DB Enterprises, )
      )
     Plaintiffs, )
      )
v. ) No. A04-229-CV (JKS)
      )
FIRST FINANCIAL INSURANCE )
COMPANY, INC. )
      )
     Defendant. )
      )
      )
———————————————— )

STATE OF ALASKA )
      ) ss.
THIRD JUDICIAL DISTRICT )

### AFFIDAVIT OF MICHAEL SHELTON

MICHAEL SHELTON, being first duly sworn on oath, does hereby state and affirm:

1. I have personal knowledge of the facts stated in this affidavit and I am competent to testify concerning them.

2. Since about 1988 I have been the president of M. Shelton Services, Inc., which is located in Glennallen, Alaska. M. Shelton Services, Inc. (hereafter "Shelton Services") is an independent excavation contractor and certified septic system installer. My wife, Judy Shelton, is the vice president of the company. My wife and I also serve as the secretary and treasurer

Exhibit ___1___
Page ___1 of 4___

of the company, respectively.   Judy is the registered agent for
the company as well.   M. Shelton Services, Inc. is a corporation
in good standing with the State of Alaska.

3.   In 1999, on behalf Shelton Services I contracted with
Dean Bruington to perform excavation work on Eric Lutz's
property.   We had an oral agreement.   I had performed contract
jobs for Mr. Bruington on a few occasions in the past but I was
not working on one of his projects either immediately before I
began working on Mr. Lutz's property, or immediately afterwards.
Shelton Services has had an occasional project with Mr. Bruington
since the work on Mr. Lutz's property, but over the past five
years only about one percent of Shelton Services' business has
been for Mr. Bruington.

4.   Mr. Bruington hired Shelton Services because he was
aware of the high quality of the work it had performed in the
past.   In addition, Shelton Services owns its own heavy
equipment, which Mr. Bruington did not have.

5.   It is common for Shelton Services to contract on the
basis of either a bid price or time and materials.   In the case
of Mr. Lutz's property I recall Shelton Services agreed to
perform the work on a time and materials basis because the job
was indefinite.   Mr. Bruington provided only general directions
as to where he wanted the excavation work performed and the

AFFIDAVIT OF MICHAEL SHELTON                          Page 2 of 4
*Lutz, et al v. First Financial Insurance Company, Inc;*
Case No. A04-229-CV (JKS) Civil



Exhibit____1____
Page____2 of 4

depth.   Mr. Bruington provided a foundation plan but to the best of my recollection there was no particular design for the excavation itself.

6.   At Mr. Lutz's property, among other things, Shelton Services excavated the building footprint, prepared and filled the gravel pad, and installed the septic system.  I performed the work myself.  I did not punch a time clock or have to maintain specific hours, other than what was necessary to coordinate work with Mr. Bruington.

7.   Shelton Services carries its own liability insurance for its work and equipment, files its own tax returns, and has its own employees.  While performing work at the Lutz property I was an employee of Shelton Services, and not Mr. Bruington. Bruington was billed by Shelton Services (see attached bill, for example) and paid as an independent contractor with no W-2 and no deductions for social security, medicare or unemployment.

8.   I told both Mr. Bruington and Mr. Lutz that that they should wait at least a year after the property was stripped so that the frost could have a chance to get out of the ground and we could see what the ground was like before they constructed a foundation.  At one point Mr. Lutz asked me if the foundation would work and I said it would depend on the ground.   I made this recommendation because there is permafrost in the area.

AFFIDAVIT OF MICHAEL SHELTON                          Page 3 of 4
*Lutz, et al v. First Financial Insurance Company, Inc;*
Case No. A04-229-CV (JKS) Civil

Exhibit ___1___
Page ___3 of 4___

FURTHER SAYETH YOUR AFFIANT NAUGHT.

DATED at Anchorage, Alaska this _28_ day of

_October_, 2005.

_____
MICHAEL SHELTON


SUBSCRIBED AND SWORN to before me this _28th_ day of

_October_, 2005.

_Gary T. Bergen_ Postmaster Glennallen, AK 99588
Notary Public for Alaska
My Commission Expires: _n/a_

GLENNALLEN AK
OCT 28 2005
USPS

109727

AFFIDAVIT OF MICHAEL SHELTON
*Lutz, et al v. First Financial Insurance Company, Inc;*
Case No. A04-229-CV (JKS) Civil

Page 4 of 4

Exhibit ___1___
Page ___4 of 4___

# Exhibit 2

IN SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

Eric Lutz,                              )
                                        )
                Plaintiff,              )
                                        )
        vs.                             )
                                        )
Dean Bruington,                         )
dba DB Enterprises,                     )
                                        )
                Defendant.              )
_____)
Case No. 3AN- 03-07096    CI

COMPLAINT FOR DAMAGES

(BREACH OF WARRANTY OF HABITABILITY;

BREACH OF WARRANTY OF WORKMANSHIP; MISREPRESENTATION)

## Jurisdiction, Venue, and Parties

1. The Superior Court of Alaska has jurisdiction pursuant to AS 22.10.020 and venue is proper as the cause of action arose within the Third Judicial District.

2. Eric Lutz is a natural person who resides on Memory Lane in the Spruceview Subdivision near Glennallen, Alaska.

3. Dean Bruington is a natural person who operates a contracting business, under Alaska Contractor License

*Tim Cook*
*Attorney at Law*
*3901 Taiga Drive, Anchorage, Alaska 99516*
*tele. (907) 336-LAW1 (5291)   fax(907) 336-5292*

Lutz v. Bruington
Complaint

1

000454

Exhibit    2
Page    10611



Number 26008, in the Glennallen area and does business as DB
Enterprises with a mailing address at P.O. Box 158, Gakona,
Alaska 99586.

## Statement of Facts

4. During the spring of 1999, Eric Lutz contracted
with Dean Bruington, dba DB Enterprises, to have a dwelling
constructed on Lot 1, Block 2, Spruceview Subdivision, near
Glennallen, Alaska.

5. Eric and Marsha Lutz obtained a construction
loan from National Bank of Alaska in the amount of
$129,360.00.          During the course of the building
project, checks drawn on the account containing the
construction loan receipts were disbursed to Bruington.

6. By invoice number 1, dated April 16, 1999,
Bruington  charged Eric Lutz $1,000.00 for "Architecture/
Design" work and blueprints.

7. Bruington failed to perform adequate testing of
soil and subsurface conditions prior to design and
construction, despite the fact that the Glennallen area is
known to contain discontinuous permafrost.

8. Bruington not only failed to ascertain whether
or not permafrost was present before the dwelling was
constructed, but then failed to design and construct a
dwelling that would be compatible with the presence of

Tim Cook
Attorney at Law
3901 Talga Drive, Anchorage, Alaska 99516
tele. (907) 336-LAW1 (5291)    fax(907) 336-5292

Lutz v. Bruington
Complaint                              2

**000455**

Exhibit____2
Page___2 of 11

permafrost.

9. During the excavation of the building footprint and preparation of the gravel pad, excavation subcontractor Mike Shelton was given certain specifications for excavation and fill from Bruington. The subcontractor's work was not performed according to contractor's instructions and specifications.

10. The dwelling was completed and ready for occupancy by November of 1999. The Lutzs moved in and spent their first winter residing in the new home.

11. In the late spring of 2000, some minor, hairline cracks had appeared in the interior plaster finish. When contacted about this, Bruington assured Lutz that plaster cracks are normal and expected. Lutz noticed no evidence of any problems with the foundation, structure of the building or its habitability.

12. In the fall of 2000, Eric Lutz noticed that cracks were occurring in the drywall itself. Lutz expressed his concerns about this condition to Bruington and Bruington visited and inspected the dwelling. However Bruington reassured Lutz that these occurrences were normal and should not cause concern.

13. During the period from late 2000 to the fall of 2001, Eric Lutz noted evidence of stresses in the structure. These included gaps appearing between the bottom

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
tele. (907) 336-LAW1 (5291)    fax(907) 336-5292

Lutz v. Bruington
Complaint

3

Exhibit ___2___
Page ___3 of 11___

plate under the floor and the studded stem wall that supported the structure on the concrete footer. In addition doors and windows began to stick.

14. Lutz contacted Bruington about these developing conditions. Bruington came to the dwelling in the fall of 2001 and made repairs by moving the original supports under the structure and installing adjustable jacks to support the middle of the structure.

15. At this time, fall 2001, Bruington reassured Lutz yet again. Bruington represented that he would make a complete repair once the structure had stabilized, which, Bruington stated, would take at least several months.

16. Over the winter of 2001/2002 the structure not only failed to stabilize, but deteriorated further despite regular readjustment of the screw jacks by Lutz. When water supply pipes froze in the garage that December, a spill of up to several hundred gallons of water occurred.

17. In the summer of 2002, Bruington inspected the premises. At this point, the egress doors and windows were sticking and/or nonfunctional. Significant cracks, up to 1 1/2 inches wide had opened in the drywall at numerous places throughout the structure. The poured slab concrete floor in the attached garage had slumped and a gaping space of more than a foot had opened up between the bottom of the garage walls and the poured slab.

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
tele. (907) 336-LAW1 (5291)    fax(907) 336-5292

Lutz v. Bruington
Complaint                              4

000457

Exhibit    2
Page    4 of 11

18. At this point Bruington told Lutz that he was no longer either willing or able to effect repair of the deteriorating structure. Bruington then delivered to Lutz the name of his insurance agent, Alaska Business Insurance, and the insurance company, First Financial Insurance, and a policy number for his contractor's Commercial General Liability policy. Bruington put a claim in on this contractor's CGL insurance.

19. An adjuster from Northern Adjusters, David Buness, inspected the premises on July 22, 2002. Lutz assisted with making measurements and provided a copy of the building plans. Before leaving, the adjuster told Lutz that Lutz would be contacted about the disposition of the claim.

20. Despite Lutz's repeated calls and attempts to make contact over the next several months, neither Buness, Northern Adjusters, nor First Financial contacted Lutz to inform him about First Financial's decision to deny coverage of Bruington's claim.

21. On November 22, 2002, Lutz arranged for Stan Peters of Wolf Point Construction and William Wilcox of Keystone Engineering LLC to inspect the dwelling and its foundation.

22. In December, Lutz retained legal counsel. Attorney Tim Cook of Valdez mailed a final repair demand to Bruington, dated January 8, 2003. However Bruington has

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
tele. (907) 336-LAW1 (5291)   fax(907) 336-5292

Lutz v. Bruington
Complaint

5

000456

Exhibit____2____
Page___5_of_11

neither attempted nor promised to repair the serious and unsafe defects in the Lutz dwelling.

## FIRST CAUSE OF ACTION

### Breach of Warranty of Workmanship

23. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

24. Prior to construction of the Lutz dwelling, Bruington failed to perform adequate soil testing, including, but not limited to, boring holes of sufficient depth to determine the extent of permafrost or other unstable subsurface conditions.

25. In the face of the fact that discontinuous permafrost is known to exist in the area and the failure to obtain actual knowledge concerning the subsurface conditions at the building site itself, Bruington failed to design and construct the dwelling in such a manner that it would be compatible with the existence of permafrost and other unstable subsurface conditions.

26. Bruington failed in his duty to warn Lutz that the failure to design the dwelling for permafrost conditions and the failure to ascertain subsurface conditions prior to building posed a significant risk of damages and structural failure should permafrost or other unstable subsurface conditions exist at the building site.

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
tele. (907) 336-LAW1 (5291)   fax(907) 336-5292

Lutz v. Bruington
Complaint

6

000459

Exhibit   Z
Page  6 of 11

27. These failures, along with other acts and omissions, have resulted in a structure whose foundation has fallen away from beneath the floors. Gaps of up to 20 inches have developed at some locations. Only continual adjustment of a series of screw jacks placed in the crawlspace by Bruington has maintained any structural integrity and prevented collapse.

28. Bruington's acts and omissions have breached the implied warranty of good and workmanlike construction in that Bruington failed to build the dwelling as an ordinarily prudent person engaged in similar work would have done under similar circumstances.

29. In addition, Bruington's acts and omissions have breached the builder's duty to warn Lutz of defects in the design and construction of the dwelling which were likely to cause the building to fail, which defects Bruington either knew of or reasonably should have known of.

30. As a direct and proximate result of these breaches, Lutz has suffered damages that include the cost of repair or replacement of the dwelling, the cost of replacement housing while repair or replacement occurs, the cost of moving into alternative housing and back into the repaired or replaced residence, the additional transportation costs if alternative housing cannot be located within a comparable distance to work, loss of work,

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
tele. (907) 336-LAW1 (5291)    fax(907) 336-5292

Lutz v. Bruington
Complaint                7

**000460**

Exhibit ___ 2
Page ___ 7 of 11

and mental anguish .

## SECOND CAUSE OF ACTION

### Breach of Warranty of Habitability

31. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

32. Egress doors and windows are nonfunctional. If closed they are liable to jam and be inoperable for ordinary use or in an emergency. If left partially open to assure egress, no effective barrier exists to exclude cold, snow, insects, and animal or human intruders.

33. Garage floor is slumped so severely that gaps have formed at bottom of wall wide enough for Lutz's infant son to crawl or fall through into the under floor crawlspace.

34. Collapse of part or the whole two-story structure is a real and present danger as only a series of jury-rigged screw jacks now preserves the integrity of the dwelling.

35. These and other conditions constitute a breach of the implied warranty of habitability which requires the builder to provide a dwelling that is safe and fit for human habitation residence.

36. As a direct and proximate result of Defendant's breach of the warranty of habitability,

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
tele. (907) 336-LAW1 (5291)    fax(907) 336-5292

Lutz v. Bruington
Complaint                    8                    **000461**

Exhibit ___2___
Page ___8 of 11___

Plaintiff has suffered the damages set forth in the first count above.

**THIRD CAUSE OF ACTION**

**Misrepresentation**

37. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

38. At all times relevant hereto, Bruington had a duty to build, and to perform those repairs necessary to satisfy the warranties of workmanship and habitability, in a careful, workmanlike manner within a reasonable time, and had a further duty to disclose to Plaintiff any defects or nonconformities which could not be cured within a reasonable time.

39. At all times relevant hereto, Bruington breached the aforesaid duty of disclosure by representing, either affirmatively or by omission, that the aforedescribed defects could and would be seasonably cured, when he knew, or in the exercise of reasonable care, should have known the same to be untrue. Among the specific facts that establish misrepresentations are:

a. To induce Plaintiff to hire Bruington to construct the dwelling, Bruington represented that he would construct a good and habitable dwelling on the Lutz lot at Melody Lane in the Spruceview Subdivision;

Tim Cook
Attorney at Law
3901 Taiga Drive, Anchorage, Alaska 99516
tele. (907) 336-LAW1 (5291)  fax(907) 336-5292

Lutz v. Bruington
Complaint

9

**000462**

Exhibit ___2___
Page ___9 of 11___

b. During construction, on at least one occasion, Bruington made oral representations that the dwelling was being constructed in such a manner to be compatible with any permafrost that might exist on the site;

c. From the completion of the dwelling through at least the fall of 2001, Bruington continually and repeatedly reassured Lutz that gaps, cracks, and other occurrences were normal and expected occurrences in a newly constructed house and were readily repairable, and that Bruington would repair; and,

d. When extensive repairs were being made to the dwelling's foundation supports in the fall of 2001, Bruington assured Lutz that once the dwelling had stabilized, Bruington would return and effect permanent repair.

40. Bruington made the aforesaid representations, knowing the same to be false or with reckless disregard as to whether they were true or false or, alternatively, innocently but with the intent that Plaintiff Lutz would rely on same.

41. Plaintiff reasonably relied on Bruington's representations to his detriment, as herein before alleged.

42. Bruington benefited from Plaintiff's reliance and aforesaid representations.

43. As a direct and proximate result of

Tim Cook
Attorney at Law
3001 Talga Drive, Anchorage, Alaska 99516
tele. (907) 336-LAW1 (5291)    fax(907) 336-5292

Lutz v. Bruington
Complaint                            10

Exhibit ___2___
Page ___10 of 11___

Bruington's aforedescribed negligence and misrepresentation, Lutz has suffered the damages set forth in the first Count above.

**WHEREFORE Plaintiff prays for judgment as follows:**

(1) For actual damages, including incidental and consequential damages, in excess of $50,000.00 (fifty thousand dollars) according to proof at trial;

(2) For punitive damages, in an amount to be determined at trial, for misrepresentations and willful, wanton, and malicious disregard for the rights of the Plaintiff;

(3) For equitable relief including, but not limited to repair of the Lutz dwelling;

(4) For attorney's fees and costs of suit incurred herein; and

(5) For such other and further relief as the court deems just and proper under the circumstances.

Dated this _5_ day of _May_ , 2003.

Tim Cook
Alaska Bar Card No. 9007048

Lutz v. Bruington
Complaint                    11

000464

Exhibit ___2___
Page ___1 of 11___

**Exhibit 3**

# IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
## THIRD JUDICIAL DISTRICT AT ANCHORAGE

Eric Lutz,                                    )
                                              )
                    Plaintiff,                )
                                              )
          vs.                                 )
                                              )
Dean Bruington,                               )
dba DB Enterprises,                           )
                                              )
                    Defendant.                )
                                              )

Case No. 3AN-03- 07096     CIV

## AFFIDAVIT
## OF
## DEAN BRUINGTON

1. My name is Dean Bruington.

2. I am the contractor that constructed a home for Eric Lutz, located at 000 Memory Lane, Glennallen, Alaska.

3. After completion, the home began to have serious structural problems.

4. Some portions of the home were displaced as much as 18 to 24 inches.

5. I contacted my insurer, First Financial Insurance Inc., to obtain coverage for the repair to the home.

6. First Financial sent me a letter stating that they would not cover the loss nor defend me in a legal action.

7. As a result of the First Financial Insurance declining to cover the repair, I was forced to repair the home at my own expense.

*Tim Cook*
*Attorney at Law*
*3901 Talga Drive, Anchorage, Alaska 99516*
*Tele. (907) 336-LAW1 (5291)  fax (907) 336-5292*

8. I was able to reach an agreement with Eric Lutz regarding the repair, where in I performed repairs, and assigned my rights to him regarding liability of First Financial for failing to indemnify me and failing to defend me.

9. The repairs I performed were quite extensive, including contracting with a firm to instal a specialized foundation, excavation of the site, and significant interior repairs.

10. My direct out of pocket expenses for the repair of the home were $74,902.43. As shown on the attached spread sheet.

11. I estimate my personal labor in this repair at 800 hours at $35.00 per hour for $28,000.00.

12. I also contributed significant materials to the project that are not accounted for on the spread sheet. My contributed materials are approximately $15,000.00

13. My total cost of repair including direct out of pocket expenses, personal labor, and contributed material is approximately $ 117,902.43.

14. Even with repairs, I believe that the home's value has been significantly affected. As a building contractor in this area, it is my opinion that if the home had not suffered any damage (other than normal wear and tear since completion) I believe the value of the home would be approximately $215,000. In its present state, considering the structural problems the home has suffered, the value of the home is probably in the $135,000 to $150,000 range.

The above statements are true and correct to the best of my knowledge and belief. Further the affiant sayeth naught.

_Dean Bruington_ 10/25/2004
Dena Bruington

Tim Cook
Attorney at Law
3901 Talga Drive, Anchorage, Alaska 99516
Tele. (907) 336-LiAW1 (5291)  fax (907) 336-5292

Exhibit ___3___
Page ___2 of 3___

Subscribed and sworn before me on 0/25/2004.

GAKONA AK
OCT 25 2004
USPS - 99586

Notary Public in and for the state of Alaska,

in _____

My Commission Expires: ____/____/2004

Lutz v. Bruington
3AN-03- 07096    000408

JULIE SIME
POSTMASTER / NOTARY PUBLIC
PER U.S. LAWS 112.44
GAKONA, AK  99586

2 of 2

# D.B. ENTERPRISES

PO Box 158 ~ Gakona, AK 99586
Phone 907-822-3981 ~ Fax (907) 822-3071

October 09, 2004

## LUTZ COST BREAKDOWN

| REF NO. | DATE | DESCRIPTION | AMOUNT | | | CHARGES |
|---------|------|-------------|--------|--|--|---------|
| 1 | 10/9/2004 | GBS materials | ###### | 17748.95 | | |
| 2 | 10/9/2004 | Gary Bowden | $1,732.50 | | | |
| 3 | 10/9/2004 | Mike Shelton | $4,790.50 | | | |
| 4 | 10/9/2004 | Backwoods Enterprises | $285.00 | | | |
| 5 | 10/9/2004 | O & S Construction | $2,167.00 | | | |
| 6 | 10/9/2004 | Alaska Foundation | ###### | 82 450.00 | | |
| 7 | 10/9/2004 | Sheek Rock & Repair | $3,000.00 | | | |
| 8 | | Crown Molding | $2,200.00 | | | |
| 9 | | Door Adjustment | $500.00 | | | |
| 10 | | Porch Removal & Replace | $1,500.00 | | | |
| 11 | | Plumbing Repairs | $500.00 | | | |
| 12 | | Fuel Tank | $300.00 | | | |
| 13 | | Labor | $7,959.00 | | | |
| 14 | | D.B. Enterprises Expense | $9,769.80 | | | |
| | | | | | Total now due: | $74,902.43 |

Exhibit___3___
Page___3 of 3

DB 50594
Lutz v FFIC

**Exhibit 4**

## PLAINTIFF ERIC LUTZ'S CALCULATIONS OF DAMAGES

**Cost of Repair Method**

| | | | | | |
|---|---|---|---|---|---|
| Bruington Cost of Repairs ( per affidavit) | | | | | $117,902 |
| Lutz Itemized Costs | | | | | |
| | Engineer's Report | | | $300 | |
| | Professional Fees | | | $600 | |
| | Walkway Repairs | | | $1,000 | |
| | Moving Costs | | | $420 | |
| | Frozen Pipes Repair | | | $844 | |
| | Toyo Stove Repair | | | $150 | |
| | Other | | | $0 | |
| | Subtotal | | | $3,314 | |
| Other | | | | | $0 |
| **Subtotal Repairs** | | | | | **$121,216** |

**Direct Expense Due Lutz**

| | | | | | |
|---|---|---|---|---|---|
| Value of Alternate Housing | 18 | months @ | $1,500 | $27,000 | |
| Forced Insurance | | | | $3,000 | |
| Increased Utility Bills | | | | $1,000 | |
| Days missed from work for repairs | 12 | days @ | $180 | $2,160 | |
| Other | | | | $0 | |
| **Subtotal** | | | | | **$33,160** |

**Financial Damages**

| | | | |
|---|---|---|---|
| Harm to Credit | | $50,000 | |
| Other | | 0 | |
| **Subtotal** | | | **$50,000** |

**Other Damages**

| | | | |
|---|---|---|---|
| Loss of Consortium (Divorce from Marsha Lutz) | | | $400,000 |
| Emotional Distress Damages | | | |
| | Fear for Safety of Family | $300,000 | |
| | Fear for Security of Family | $300,000 | |
| | Anxiety over Deterioration of Home | $300,000 | |
| | Depression from Impact to Family | $300,000 | |
| **Subtotal** | | | **$1,200,000** |

| | |
|---|---|
| **Total Damages** | **$1,804,376** |

**DECEPTIVE TRADE PRACTICE ACT ENHANCEMENT**

| | | | | | |
|---|---|---|---|---|---|
| Damages trebled under the Act | $1,804,376 | x | 3 | | $5,413,128 |
| Full Attorneys Fees | | | | | |
| | Tim Cook | 600 | hours @ | $195 | $117,000 |
| | P. Bratton | 400 | hours @ | $150 | $60,000 |
| | Paralegal | 200 | hours @ | $55 | $11,000 |
| | | | | | $188,000 |

| | |
|---|---|
| **TOTAL AWARD** | **$5,601,128** |

Hard Copy Documents  518

Exhibit____4____
Page___1 of 1

**Exhibit 5**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

ERIC LUTZ, as assignee of )
rights of Dean Bruington d/b/a )
DB Enterprises, )
                )
        Plaintiffs, )    No. A04-229-CV (TMB)
                )
v. )
                )
FIRST FINANCIAL INSURANCE )
COMPANY, INC. )
                )
        Defendant. )
                )

## DECLARATION OF ROBERT LAFRANCE

I, Robert LaFrance, declare:

    1.    This declaration is based on my personal knowledge and, if called as a witness, I could and would testify competently thereto.

    2.    I am a Senior Claims Examiner for defendant First Financial Insurance Company ("FFIC"). I reside and work in the Burlington, North Carolina area.

    3.    In July 2002, FFIC received notification of a claim made against its former insured, Dean Bruington, dba Bruington Construction "Bruington," for alleged defects in a house Bruington had constructed for Eric Lutz. Bruington had been insured by FFIC under a general liability insurance policy which had expired on December 8, 1999. Bruington's claim was assigned to me.

    4.    Upon notice of Bruington's claim, I promptly contacted Northern Adjusters, Inc. of Anchorage, Alaska and retained it to investigate the claim. David Buness of Northern Adjusters did so and provided me with reports of its investigation. Based on those reports, on

- 1 -

Exhibit____5____
Page___106____

September 11, 2002, I wrote to Bruington and informed him that there was no coverage for the claim made against him. A true and correct copy of my September 11, 2002 letter is attached hereto as Exhibit A.

5.    My September 11, 2002 letter to Bruington denying coverage specifically relied on the "damage to your work" policy exclusion which precludes any potential coverage for property damage to Bruington's work or operations arising out of any part of Bruington's work or operations. My letter also specifically relied on the policy endorsement titled "Exclusion – Independent Contractors," which precluded any potential coverage for property damage "arising out of the actions of independent contractors for or on behalf of any insured." Based on the facts conveyed to me by Northern Adjusters, these exclusions precluded any potential coverage of Bruington for any property damage to Mr. Lutz house.

6.    My September 11, 2002 denial letter to Bruington denying coverage did not rely on the lack of any "physical injury to tangible property" during the policy period of the insurance policy.

7.    I have never visited Mr. Lutz' house and have no personal knowledge of any of facts underlying Mr. Lutz' claim against Bruington. I have no personal knowledge of when any physical injury to Mr. Lutz' house occurred. The factual basis for my denial of coverage was fully based on the facts conveyed to me by David Buness of Northern Adjusters.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February $\underline{14}$, 2006 in Burlington, NC.

Robert LaFrance

-2-

Exhibit___5___
Page___2 of 2___

Feb-13- 2003  5:27PM                                    No.2117  - P. 3

September 11, 2002

## CERTIFIED RECEIPT (70020860000875158999)AND RETURN RECEIPT REQUESTED AND US REGULAR MAIL

Dean Bruington DBA:
D.B. Enterprises
P.O. Box 211
Gakona, AK  99586

Policyholder: DB Enterprises
Claim #:        112459
Claimant:      Eric Lutz

First Financial
Insurance Company

258 International Road

Burlington,

NC 27216

Dear Mr Bruington:

I acknowledge receipt of the above mentioned claim.

First Financial Insurance Company issued a policy, number F0117G412046 effective 12/08/98 through 12/08/99 which contained a Commercial General Liability Coverage part.

We have investigated this loss and have determined that your policy with FFIC does not afford coverage for the Lutz claim. The reasons are as follows:

## THIS INSURANCE DOES NOT APPLY TO:

*j. Damage to Property*

*"Property damage" to:*

*(1)Property you own, rent, or occupy;*

*(2)Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;*

*(3)Property loaned to you;*

*(4)Personal property in the care, custody or control of the insured;*

*(5)That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*

*(6)That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

Robert LaFrance SCLA
Claims Manager

336-586-2644
Fax 336-586-2808
relafrance@lgcompanies.com

EXHIBIT ___A___
Page ___1___ of ___4___

Exhibit ___5___
Page ___3 of 6___

*Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.*

*Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.*

*Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".*

*k.Damage to Your Product*

*"Property damage" to "your product" arising out of it or any part of it.*

*l.Damage to Your Work*

*"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*

*This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*

*m.Damage to Impaired Property or Property Not Physically Injured*

*"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*

*(1)A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*

*(2)A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*

*This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

*n.Recall of Products, Work or Impaired Property*

*Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:*

*(1)"Your product";*

*(2)"Your work"; or*

*(3)"Impaired property";*

*if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.*

*Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).*

CG 00 01 01 96

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION

### INDEPENDENT CONTRACTORS

*This endorsement modifies insurance provided under the following:*

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

*This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the actions of independent contractors for or on behalf of any insured.*

BG-G070 492

### A NEW HOUSE AS THE "PRODUCT or "WORK" OF AN INSURED UNDER GENERAL LIABILITY POLICY.

Several courts have interpreted newly-constructed homes to constitute the insured's product or "work" under the general exclusion for claims arising from damage to an insured's product. Commerce Insurance Company v. Betty Caplett Builders, Inc., 647 N.E. 2d 1211 (Mass 1995); Gary L. Shaw Builders, Inc. v. State Automobile Mutual Insurance Company, 355 S.E. 2d 130 (GA App. 1987); Indiana Insurance Company v. Dezutti, 408 N.E. 2d 1275 (Ind. 1980; Owings v. Gifford, 697 P. 2d 865 (Kan. 1985); Allen v. Lawton & Moore Builders, Inc., 535 So. 2d 779 (La.Ct. App. 1988); Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturing Association Insurance Company, 517 A. 2d 1910 (Pa. 1986.)

EXHIBIT ___A___
Page ____3____ of ____4____

Exhibit ____5____
Page ____5 of 6____

Therefore, for the reasons set forth above, First Financial Insurance Company has no duty to defend Dean Bruington, DBA: DB Enterprises and will not indemnify it for any settlement or judgment rendered in this matter.

This communication should not be deemed or construed as a waiver of any of the rights of First Financial, including those rights provided in the contract of insurance. First Financial reserves the right to assert any other policy provisions or legal principles that would further preclude any defense or indemnity obligation should additional facts, not currently alleged, become known.

Should you have any questions or have any additional information that may impact our position in this matter, please forward such information to my attention.

Very truly yours,

Robert LaFrance, SCLA
Special Claim Manager