ANDREW GUIDI
ag@delaneywiles.com
DELANEY WILES
1007 West Third Avenue, Suite 400
Anchorage, AK 99501
Telephone: (907) 279-3581
Facsimile: (907) 277-1331

MICHAEL D. PROUGH
Michael.Prough@morisonansa.com
JON K. ADAMS
Jon.Adams@morisonansa.com
MORISON ANSA HOLDEN ASSUNCAO &
    PROUGH, LLP
500 Ygnacio Valley Road, Suite 450
Walnut Creek, CA 94596-8068
Telephone: (925) 937-9990
Facsimile: (925) 937-3272

Attorneys for Defendant
FIRST FINANCIAL INSURANCE
COMPANY, INC.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ERIC LUTZ, as assignee of rights of Dean Bruington dba DB Enterprises, <br><br> Plaintiff, <br><br> vs. <br><br> FIRST FINANCIAL INSURANCE COMPANY, INC., <br><br> Defendant. | No. A04-229-CV (TMB) <br><br> **FIRST FINANCIAL INSURANCE COMPANY, INC.'S MOTION TO COMPEL ERIC LUTZ TO ANSWER INTERROGATORIES** |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL SUMMARY ................................................................................... 1

PROCEDURAL HISTORY ............................................................................... 3

THE DISCOVERY IN DISPUTE ....................................................................... 5

ARGUMENT.................................................................................................. 7

I.      ALL DISCOVERY SOUGHT IS RELEVANT AND PROPER ..................................... 7

CONCLUSION ............................................................................................12

## TABLE OF AUTHORITIES

Page

**Cases**

*Alexander v. F.B.I.*
194 F.R.D. 316 (D.D.C. 2000) .................................................................................................10

*Contratto v. Ethicon, Inc.*
225 F.R.D. 593 (N.D. Cal. 2004) ..............................................................................................8

*Great Divide Ins. Co. v. Carpenter*
79 P.3d 599 (Alaska 2003) ...............................................................................................passim

*Rubin v. Islamic Republic of Iran,*
349 F.Supp.2d 1108 (N.D. Ill. 2004) ......................................................................................10

*United Oil Co. v. Parts Assoc., Inc.,*
227 F.R.D. 404 (D. Md. 2004) ................................................................................................10


**Statutes**
Federal Rules of Civil Procedure Rule 26(b)(1) .................................................................1, 7, 9

## PRELIMINARY STATEMENT

Lutz has refused to provide discovery directly relevant to one of the key issues in this case. As both parties have informed the Court, if it is found that Bruington was prejudiced by how FFIC denied his claim, the Alaska Supreme Court instructs that the amount Lutz seeks must be scrutinized for reasonableness under factors the court set forth. Although FFIC is confident that Bruington suffered no prejudice and the finder of fact will so find, FFIC propounded discovery specifically to learn facts relevant to those reasonableness factors. Thus, FFIC's discovery seeks facts directly related to the claims and defenses of the parties herein and thus, falls directly within the relevancy standards of Rule 26(b).

But Lutz has refused to comply, claiming FFIC's requests are irrelevant. Lutz is wrong. The request are directly relevant to the claims and defenses of the parties. Accordingly, FFIC's motion should be granted and Lutz should be compelled to provide the discovery sought.

## FACTUAL SUMMARY

First Financial Insurance Company ("FFIC") insured Dean Bruington under a general liability insurance contract in effect for one year, December 1998 to December 1999, with policy limits of $1 million per occurrence. The policy excluded coverage for any property damage to the work of Mr. Bruington that was caused by Bruington and also excluded any property damage "arising out of the actions of independent contractors for or on behalf of any insured."

In 1999, Bruington built a house for plaintiff Eric Lutz. Bruington contracted with several independent contractors to perform portions of the work, including M. Shelton Services, Inc., which excavated the ground. Mr. Shelton has sworn that because there was permafrost in the area, he told both Bruington and Lutz that construction needed to wait at least a year after excavation, but that Lutz insisted the project not wait.[1] According to Bruington, Lutz chose the site on the property on which to build, insisted that construction proceed immediately, rejected

---

[1]    Exh. 1 at ¶8. Exhibits 1-8 are attached to the Declaration of Jon Adams, filed herewith. Exhibit 1 is on file with this court at ECF #44(3).

an above-ground foundation, and rejected the more stable type of foundation he eventually got as a repair because it was too expensive.[2] Lutz's choice of foundation and his refusal to follow Shelton's advice seem to have led to settlement of the foundation.

In 2000 and 2001, Lutz complained to Bruington about minor settlement issues. Then in 2002, after Lutz complained again, Bruington made an insurance claim. In September 2002, FFIC denied the claim. Its denial letter stated that FFIC had investigated the loss and determined that there was no coverage for the Lutz claim. It quoted the language of several of the policy's business risks exclusions, including the "your work" exclusion and the independent contractor exclusionary endorsement. It then invited Bruington to please contact FFIC if he had any questions or had any information that might alter FFIC's decision. Bruington never contacted FFIC. In his deposition, he testified that he understood that the letter was a complete denial, accepted it, and moved on.

In May 2003, Lutz filed a lawsuit against Bruington. Bruington never provided the complaint to FFIC. After Bruington answered the complaint, Lutz's attorney, Mr. Cook, proposed a strategic settlement. He proposed that if Bruington would repair the Lutz home and assign his rights against FFIC to Lutz, Lutz would agree not to enforce any judgment against Bruington. In April 2004, the deal was consummated. Bruington agreed to complete repairs to the Lutz home by June 2004 and assigned to Lutz all of his rights against FFIC. Lutz agreed not to hold Bruington personally liable for any judgment he obtained against Bruington and agreed that if he secured an award or settlement from FFIC, to pay Bruington a portion of the recovery.

With nothing at stake in the lawsuit, Bruington did not defend himself. He did not respond to requests for admissions and they were deemed admitted. Then, with those admissions as Lutz's evidence, the court granted Lutz's unopposed motion for summary judgment.

In October 2004, six months after the settlement, the state court held an uncontested hearing on the amount of Lutz's damages. No one appeared except Lutz and his counsel, Mr.

---

[2]     Mr. Bruington's deposition was taken on April 25, 2008 and has not yet been transcribed.

- 2 -

Cook. Cook presented the court with an affidavit of Bruington stating that his total cost to repair the Lutz home, including all materials and his time, was $117,902.[3]

Lutz also submitted a document setting forth his purported damages. It included $121,216 for the cost of repairs (which he did not pay Bruington), $27,000 for his cost of alternative housing, lost wages for 12 days of missed work, exactly $50,000 for harm to Lutz's credit rating, exactly $400,000 for loss of consortium (Lutz divorced in 2000), and exactly $1.2 million for emotional distress. All told, Lutz claimed $1,804,376.[4]

Bruington's liability was founded on misrepresentation. The court entered the full amount Lutz submitted even though it bore no relationship to any actual damages then, under the Alaska Deceptive Trade Practices Act, trebled the amount to $5,413,128. It then awarded $188,000 in attorneys' fees Cook claimed, based on 1,200 hours of work, bringing the total judgment to $5,601,128.

In short, by complying with Lutz's decision on the type of foundation and his refusal to delay construction as the excavation contractor recommended, Bruington (and/or independent contractors he hired) built a house that encountered settlement problems. By June 2004, it was repaired for less than $120,000 and given the type of foundation Lutz originally rejected due to cost. Lutz continues to live in the house to this day. Yet in an uncontested suit, Lutz got an uncontested judgment of nearly 50 times the cost of the completed repair/improvement (which he did not pay)—which he now seeks to convert into an award against FFIC.

## PROCEDURAL HISTORY

Lutz initiated this case in state court in September 2004 and FFIC removed it to federal court. In November 2005, without taking any discovery (other than the exchange of initial disclosures), FFIC filed a motion for summary judgment to address certain pure questions of law and contract interpretation. The motion asserted that there was no duty to defend or indemnify

---

[3]    Exh. 2 at ¶13.

[4]    Exh. 3.

- 3 -

Bruington under the policy because there was no evidence of damages during the policy period, and that any possible damages were excluded by either the "your work" or the "independent contractor" exclusions to the policy. Lutz filed a cross-motion for summary judgment, claiming that FFIC was estopped from denying coverage.

In August 2006, in a 21-page decision, this court granted FFIC's motion for summary judgment, finding that there was no duty to defend or indemnify, and denied Lutz' cross-motion. The court found that there was no potential coverage because all property damage was a result of Bruington's own work or the work of an independent contractor. That conclusion—that the policy provided no coverage for the loss—was plainly correct and was not disturbed on appeal.

In September 2007, a divided Ninth Circuit panel reversed in a memorandum decision. The decision did not question the correctness of this Court's determination that FFIC owed no duty to defend or indemnify Bruington under the terms of the policy. That determination remains the law of the case. Rather, the panel found that FFIC's denial letter was inadequate and that FFIC will be estopped from denying a duty to indemnify if Lutz can prove that Bruington suffered actual prejudice. It remanded for this court "to address the prejudice issue in light of our disposition, and, if necessary, to hold a trial on this issue."

In their respective January 2008 status conference statements, the parties agreed that if FFIC is found to be estopped, there will need to be a trial on the factors the Alaska Supreme Court set forth in *Great Divide*[5] to determine whether the amount Lutz claims based on his settlement with Bruington and the resulting unopposed state court judgment was reasonable.[6] The relevant *Great Divide* factors include:

> "The releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any

---

[5]     *Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 613 (Alaska 2003).

[6]     ECF #104 at p.3; ECF #105 at p. 4-5.

-4-

evidence of bad faith, collusion or fraud; the extent of the releasing
person's investigation and preparation of the case; and the interest
of the parties not being released."

## THE DISCOVERY IN DISPUTE

In February 2008, FFIC propounded requests for admissions and interrogatories seeking

evidence directly relevant to the *Great Divide* factors. The discovery sought evidence specially

set forth in the *Great Divide* factors, including facts about the merits of Lutz's liability theory,

the relative faults of the parties, and facts that supported the damages Lutz claimed at the

uncontested hearing. In Requests for Admissions, FFIC asked Lutz to admit:

2.    That YOU primarily have blamed one or more PERSONS other
than BRUINGTON for the damages to THE LUTZ HOME.

5.    That BRUINGTON complied with all aspects of YOUR contract
with him.

8.    That YOUR former wife Marsha Lutz divorced YOU for reasons
other than physical defects with THE LUTZ HOME.[7]


FFIC also served the following interrogatories that are in dispute:

2.    Please describe all representations BRUINGTON made to YOU,
including the date it was made, the manner in which it was made,
whether written or verbal, and all PERSONS who witnessed the
representation.

6.    Please identify each of the 12 days you missed from work for
repairs to THE LUTZ HOME, as set forth in the "Calculation of
Damages" YOU submitted to the court in THE UNDERLYING
LAWSUIT, and describe what YOU did on each day.

7.    Please describe all "alternative housing" for which you spent
$27,000, as set forth in the "Calculation of Damages" YOU submitted to
the court in THE UNDERLYING LAWSUIT, including each address,
and the dates you lived at each location.

9.    Please state every basis for YOUR claim that BRUINGTON
harmed YOUR credit in the amount of $50,000, as set forth in the
"Calculation of Damages" YOU submitted to the court in THE

---

[7]    Exh. 4.

-5-

UNDERLYING LAWSUIT, and IDENTIFY EACH DOCUMENT that supports YOUR claim.

10.    For each Request for Admission served herewith that you do not admit unconditionally, please state all facts that support YOUR denial or inability to admit, and IDENTIFY EACH PERSON with knowledge of those facts. [8]

Although Lutz sued Bruington for misrepresentation and Lutz seeks damages in this case for those purported misrepresentations, Lutz refused to answer interrogatory number 2, objecting that it was overbroad, burdensome, and irrelevant and "patently absurd." In response to interrogatory numbers 6, 7, and 9, Lutz's only objection was that a document "speaks for itself."[9]

Lutz denied each of the Requests for Admissions set forth above, but FFIC does not move to compel as to them. But after denying each RFA, Lutz dodged answering interrogatory number 10, which asked him to identify facts and witnesses with evidence to support his denials, as follows:

Request for admission number 2 asked Lutz to admit that he primarily has blamed person(s) other than Bruington for the damage to the Lutz home. After denying the RFA, in response to interrogatory 10, Lutz objected that the interrogatory was "vague, irrelevant, and calls for a legal conclusion." In particular, Lutz claimed that the word "primarily" is vague. Although the objection seemed evasive, in meet and confer talks, FFIC clarified that "primarily" means "more than" and explained that FFIC asked for an admission that Lutz blamed one or more persons more than he blamed Bruington.[10] Lutz still refused to answer.

Request for admission number 5 asked Lutz to admit that Bruington had complied with his contract with Lutz. Lutz denied the RFA, but in response to interrogatory 10, claimed that the interrogatory was "vague," and that he did not know which contract was referred to.

---

[8]    Exh. 5.

[9]    Exh. 6.

[10]    Exh. 7.

Although the objection seemed evasive, FFIC clarified that the contract was for Bruington to build the Lutz home.[11]  Lutz still would not answer.

Request for admission number 8 asked Lutz to admit that Marsha Lutz (who moved from the house in 2000 before the house had any damage other than minor cracks in some plaster) divorced Lutz for reasons other than physical defects with the house.  Lutz claimed to lack the ability to answer.  His response to interrogatory 10 refused to respond further and said that FFIC should ask his former wife.

Counsel for FFIC initiated meet and confer efforts with counsel for Lutz by way of a four-page letter dated April 4 2008, which set forth the discovery at issue and explained why FFIC contends that Lutz's responses did not comply with the Rules of Civil Procedure.   The parties then conferred by telephone for over an hour on Thursday, April 10, 2008 regarding their differences.  During the call, counsel for Lutz stressed that his objection to everything was relevancy.  At the end of the call, counsel for FFIC confirmed that the two parties had discussed every request, respectfully disagreed, and had reached an impasse.  Counsel for Lutz agreed.[12] FFIC mailed a confirming letter on April 14, 2008 stating how the parties had conferred and confirming that Lutz's only objection was on grounds of relevancy.[13]  Counsel for Lutz responded, stating that the letter was correct except that Lutz still asserted non-relevancy objections set forth in his responses.

## ARGUMENT

### I.   All Discovery Sought Is Relevant and Proper

Under Rule 26(b) of the Federal Rules of Civil Procedure, a party is entitled to discovery regarding any non-privilege matter that is relevant to any party's claims or defenses.  With good cause, it is entitled to discovery on any matter relevant to the subject matter to the action if the

---

[11]     *Id.*

[12]     Declaration of Jon Adams at ¶9.

[13]     Exh. 8.

discovery appears reasonably calculated to lead to the discovery of admissible evidence. And it is long established that "the discovery rules should be accorded a 'broad and liberal scope.'"[14] Each of FFIC's RFA's and interrogatories easily meets this standard.

If it is found that Bruington was prejudiced by how FFIC denied Bruington's claim, the Alaska Supreme Court instructs that the amount Lutz seeks must be scrutinized. In *Great Divide*,[15] two months before trial was to begin in the underlying case, the plaintiff and the defendants (who were not defended by their insurer) settled. As here, the insureds assigned to the plaintiff any rights they had against their insurer and the plaintiff agreed not to execute the judgment against them. And as here, instead of reaching a settlement amount, they agreed to a procedure. While Lutz and Bruington agreed that Lutz could present any amount at an uncontested hearing, the *Great Divide* parties agreed to an arbitration, whereby the arbitrator would decide whether the insureds were legally responsible for the plaintiff's injuries and the amount of damages. The arbitrator found the insureds liable and that damages were $2,006,000. Judgment was then entered in that amount.

In the coverage case that followed, the jury returned a special verdict that concluded that Great Divide had not fulfilled duties it owed to its insureds and awarded compensatory damages of $1,540,000. The jury explained in an interrogatory that the amount consisted of the policy limits, pre-judgment interest, and a return of premiums paid. On appeal, the Alaska Supreme Court found, contrary to the present action, that there was actual coverage under the policy and that the insurer had breached duty to defend its insured. In analyzing the "covenant settlement agreement," it explained that such agreements "can be abused" and held that they are only useable against the insurer as evidence of the amount of an underlying liability if they are "reasonable."[16] It held that the factors to be considered for reasonableness include:

---

[14]    *Contratto v. Ethicon, Inc.*, 225 F.R.D. 593, 595 (N.D. Cal. 2004), quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964).

[15]    *Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599 (Alaska 2003).

[16]    *Id.* at 613.

- 8 -

> The releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults [sic]; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion or fraud; the extent of the releasing person's investigation and preparation of the case; and the interest of the parties not being released.[17]

The *Great Divide* court found that the fact that the settlement agreement was combined with an arbitration preceding did not eliminate the independent reasonableness requirement. It pointed out that the arbitration preceding was not truly adversarial as the underlying plaintiff had already agreed not to execute against the insureds at the time the preceding took place.[18] The same is true here, as Bruington settled the case with Lutz <u>six months before the damages hearing</u>. After that, he had no stake in the suit and thus, did not even attend the damages hearing.

Each of FFIC's discovery falls well within the liberal standards of Rule 26(b)(1) of the Federal Rules of Civil Procedure, as they seek information concerning Lutz's claims and FFIC's defenses. Indeed, all of the discovery FFIC sought and that Lutz refused to provide concerns the specific factors that *Great Divide* instructs are to be used to determine if the amount Lutz claims here is reasonable. Indeed, even if Lutz disputes FFIC's defenses under *Great Divide*, Lutz's argument should not justify denial of discovery about FFIC's theory.[19] As the party avoiding discovery, the burden is on Lutz to show why any request is improper,[20] a burden he has not even come close to meeting.

In his complaint against Bruington, Lutz sued for misrepresentation. In the uncontested damages hearing, Lutz obtained treble damages based on misrepresentation. But here, when FFIC asked Lutz to identify the representations Bruington made to him, Lutz refused.

---

[17]    *Id.*

[18]    *Id.* at 614.

[19]    *Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000)

[20]    *Rubin v. Islamic Republic of Iran*, 349 F.Supp.2d 1108, 1111 (N.D. Ill. 2004); *United Oil Co. v. Parts Assoc., Inc.*, 227 F.R.D. 404, 411 (D. Md. 2004).

In the underlying suit, Lutz told the court that he had suffered $400,000 in damages for loss of consortium because of the acts or omissions of Bruington and he seeks those damages here from FFIC. In response to interrogatory 8, Lutz stated that his former wife moved out of the house around July 2000, at which time the only damage observed in the house was very minor cracks in some plaster. So in RFA number 8, FFIC asked Lutz to admit that Marsha Lutz divorced him for reasons other than physical defects with the house. This is directly relevant under the first *Great Divide* factor ("the releasing person's damages") and to the damages Lutz's claims here. Lutz claimed to lack the ability to answer. Under Rule 33, Lutz is obligated to provide the evidence that he knows.

Throughout this case, Lutz has argued to this Court that the settlement of his house was primarily the fault of the excavation contractor. Thus, RFA number 2 asked Lutz to admit that he primarily has blamed person(s) other than Bruington for the damage to the Lutz home. Lutz denied the RFA, but in response to interrogatory 10, objected that the interrogatory is vague as to the meaning of "primarily," was irrelevant, and called for a legal conclusion. FFIC clarified that "primarily" means "more than" and asked Lutz to either admit the RFA or answer the interrogatory, but Lutz refused.

In the underlying suit, Lutz made claims against Bruington for misrepresentation and breach of warranties. In RFA number 5, FFIC asked Lutz to admit that Bruington complied with Lutz's contract with him. Lutz denied the RFA, but in response to interrogatory 10, claimed the interrogatory was too vague to answer because he did not know which contract was referred to. Although FFIC clarified that the contract was for Bruington to build the Lutz home, Lutz refused to answer.

In the underlying case, Lutz claimed losses for missed work and recovered his alleged damages. In interrogatory 6, FFIC asked Lutz just to identify the days he missed work. This is directly relevant under the first *Great Divide* factor ("the releasing person's damages") and to the damages Lutz's claims here. Lutz refused, objecting that "the document speaks for itself."

- 10 -

In the underlying case, Lutz claimed a loss of $50,000 for damage to his credit rating. In interrogatory 6, FFIC asked Lutz to state the basis of his claim. This is directly relevant under the first *Great Divide* factor ("the releasing person's damages") and to the damages Lutz's claims here. Lutz refused, objecting that "the document speaks for itself."

FFIC's RFA's and interrogatories are directly relevant to Lutz's claims for damages, FFIC's defenses, and to the *Great Divide* factors which govern liability if it is determined that Bruington was prejudiced by the manner in which FFIC wrote its denial letter. FFIC's discovery is targeted directly at evidence of the merits of Lutz's liability theory, Lutz's actual damages, and "any evidence of bad faith, collusion or fraud." Bruington and Lutz settled six months before the hearing on damages. Bruington never responded to discovery and did not oppose the motion for summary judgment. Why? Because he and Lutz had already entered into an agreement where he had no risk. Indeed, Bruington stands to recover up to $65,000 of any sum Lutz recovers here, so he had an incentive for Lutz to inflate (not minimize) Lutz's damages award. Under Rule 26, FFIC is entitled to discovery on every one of the topics Lutz refuses to provide.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

For the reasons set forth above, this Court should grant FFIC's motion, overrule Lutz's objections to FFIC's discovery, and compel Lutz to provide full and complete answers to each request.

Dated:  April 30, 2008

MORISON ANSA HOLDEN ASSUNCAO & PROUGH, LLP


By:_____/s/ Jon K. Adams_____
              Jon K. Adams

Attorneys for Defendant
FIRST FINANCIAL INSURANCE
COMPANY, INC.

CERTIFICATE OF SERVICE

I hereby certify that on
April 30, 2008,
First Financial Insurance Company, Inc.'s
Motion to Compel Eric Lutz to Answer
Interrogatories was served electronically
on:

Tim Cook, Esq.
Tcook@acsalaska.net
Attorney at Law
3901 Tiaga Drive
Anchorage, AK 99516

/s/ Jon K. Adams_____
    Jon K. Adams