Tim Cook AKBN 9007048
Cook & Associates
3901 Taiga Drive
Anchorage, AK  99516
Phone: 907-336-5291
Fax: 907-336-5292
tcook@acsalaska.net
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

ERIC LUTZ, as assignee of rights of Dean Bruington, Dba DB Enterprises,

　　　　　　　Plaintiff,

　　v.

FIRST FINANCIAL INSURANCE CO.

　　　　　　　Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**Civil Case**: A04 0229 CV (TMB)

**PLAINTIFF 'S OPPOSITION TO FFIC'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Table Of Contents

**SUMMARY**                                                                 **1**

I.      **FACTS**                                                           **3**

II.     **FFIC MISREPRESENTS THE FACTS IN ITS SUMMARY**                     **5**

II.     **FFIC MISREPRESENTS THE LAW IN IT PROCEDURAL HISTORY**            **8**

IV.     **THE DISCOVERY SOUGHT**                                          **10**

        **A. Interrogatory 2**                                           **11**
        **B. Interrogatories 6, 7, & 9**                                 **12**
        **C. Interrogatory 10**                                          **13**

**V. DISCUSSION OF ARGUMENT**                                            **16**

        **A. FULL FAITH AND CREDIT**                                     **16**
          **1. Issue is Reasonableness of the Covenant Settlement Agreement**   **17**
          **2. FULL FAITH and CREDIT Relates to Reasonableness**         **22**

        **B.  FRAUD ON THE COURT**                                       **23**

        **CONCLUSION**                                                   **25**

1
2

Table of Cases Cited

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984)……………………………………...12, 16

*Durfee V. Duke*, 375 U.S. 106 (1963)……………………………………………………………………22

*Riley v. New York Trust Co.*, 315 U.S. 343………………………………………………………………22

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, (1944)……………………………………..24

*Voorhees v. Jackson*, 35 U.S. 449, 472, 9 L. Ed. 490 (1836) …………………………………………..3, 12, 13

*S.E.C. v. Worthen*, 98 F.3d 480 (9th Cir. 1996)……………………………………………….....….3, 12

*Underwriters Nat'l Assur. v. N.C. Life & Acc.*, 455 U.S. 691…………………………………………3, 12

*Baker Et Al. V. General Motors Corp.*, 523 U.S. 222 (1997)……………………………………………16

*Kremer v. Chemical Constr. Corp.*, 456 U. S. 461, 466 (1982)……………………………………………16

*Parsons Steel, Inc. v. First Alabama Bank*, 474 U. S. 518, 525 (1986)……………………………………16

*Marrese v. American Academy of Orthopaedic Surgeons*, 470 U. S. 373 (1985)…………………………16

*Haring v. Prosise*, 462 U. S. 306, 313 (1983)………………………………………………………...16

*Allen v. McCurry*, 449 U. S. 90, 96 (1980)…………………………………………………………16

*Ross v. State of Alaska*, 189 F.3d 1107  (9th Cir. 1999)………………………………………………12

*Rashtabadi v. INS*, 23 F.3d 1562  (9th Cir. 1994)……………………………………………………3, 12, 13

*Avila-Murrieta v. INS*, 762 F.2d 733, 736 (9th Cir. 1985) …………………………………………3, 12

*Lutz v. First Financial Insurance Co., Inc.*, No. 06-35804 (9th Cir. 09/07/2007) …………………….passim

*Murray V. Ledbetter*, 144 P.3d 492 (Alaska 2006)……………………………………………………24

*Great Divide Ins. Co. v. Carpenter ex rel. Reed*, 79 P.3d 599, 613 (Alaska 2003)……………………… passim

*Lloyd's & Inst. of London Underwriting Cos. v. Fulton*, 2 P.3d 1199, (Alaska 2000)………………2,6,9,13

*Grace v. Ins. Co. of N. America*, 944 P.2d 460 (Alaska 1997)………………………………………17, 18, 19

*Washington Ins. Guar. Ass'n v. Ramsey*, 922 P.2d 237, 247-248 (Alaska 1996)…………………...17, 18, 19

*Sauer v. Home Indem. Co.*, 841 P.2d 176, 184 (Alaska 1992)…………………………………...……17

*Continental Ins. Co. v. Bayless & Roberts*, 608 P.2d 281, 293 n.20 (Alaska 1980)……………………17, 19

*Chaussee v. Maryland Casualty Co.*, 60 Wn. App. 504, 803 P.2d 1339, 1343 (1991)…………..………17, 18

*Old Republic Insurance Company v. Ross*, No. 06SC257,  Slip Opinion lw080325053, (Colorado 2008)…19

**SUMMARY**

First Financial Insurance Company Inc. (FFIC) seeks to compel certain discovery from Eric Lutz. Lutz properly lodged objections to the discovery. Lutz has also moved the court for clarification and a protective order.[1] Lutz explains below why each of FFIC's discovery requests is improper. However Lutz asserts there are overriding issues:

First the court should make clear that FFIC will not be allowed to "re-litigate" the issue of coverage. FFIC continues to assert that it has coverage defenses even in the face of the Ninth Circuit decision to the contrary.  FFIC has claimed:  "There is simply no legally recognizable basis under which Mr. Bruington was prejudiced by FFIC's denial letter when there was <u>no potential for coverage under the policy</u> …"[2] (emphasis added); and "Bruington could not be legally prejudiced by the lack of a defense <u>because he had no right to one.</u>"[3]  Clearly FFIC is attempting to argue coverage issues using "prejudice" as a pretext.

Much of the discovery that FFIC seeks is geared toward disproving coverage.  The Ninth Circuit has found that FFIC will be estopped from denying coverage if Bruington was prejudiced. The Alaska court's have held that an insured need not prove coverage in

---

[1] <u>Motion For Clarification And For Protective Order</u>, (hereafter <u>Motion for Clarification</u>), Docket 116.

[2] Letter from Jon Adams faxed to Tim Cook on 2/20/2008.

[3] <u>First Financial Insurance Company Inc.'s Opposition to Plaintiff Eric Lutz's Motion for Clarification and for Protective Order</u>, (hereafter: <u>FFIC's Opposition to Clarification</u>) Docket 118 at 9-10.

order to be afforded the protection of the "coverage by estoppel."[4]  Therefore FFIC's

discovery requests that are geared toward disproving coverage are without merit.

Second,  prior to any decision regarding the <u>Motion to Compel</u> the court should rule on

the pending <u>Motion for Clarification</u>.[5] With each filing it becomes increasingly clear that

there are fundamental differences of interpretation of the law that governs what both

parties have agreed are the two primary issues in the case: Bruington's prejudice and the

"reasonableness" inquiry.  With the law governing these issues in controversy, discovery

has been unfocused, burdensome, and overbroad. Lutz has attempted to comply with

FFIC's discovery requests- even going so far as to provide every document including all

privileged documents, all work product, and all attorney client communications that relate

to the underlying suit.[6]

Under Lutz's interpretation of the governing law,  FFIC discovery requests are not

appropriate.  Conversely, FFIC asserts that under its interpretation of the governing law,

the requests are appropriate. By clarifying the law governing the two primary issues, it will

greatly help both parties to understand what discovery is appropriate.

A final matter, and perhaps most important is Full Faith and Credit. Under the laws of

both Alaska and the United States "every act of a court of competent jurisdiction shall be

---

[4] *Lloyd's & Inst. of London Underwriting Cos. v. Fulton*, <u>2 P.3d 1199,</u> 1208 (Alaska 2000)

[5] <u>Motion For Clarification and for Protective Order</u>, Docket 116, (hereafter <u>Motion for Clarification</u>).

[6] The only document that was not provided was he representation agreement. In conversations with FFIC's attorney that document was offered if FFIC's attorney so requested.

presumed to have been rightly done…without referring to the evidence on which it has been adJudged."[7] FFIC seeks to attack the judgment of the Superior Court through this proceeding. Much of the discovery it seeks is expressly targeted at challenging the evidence and the judgment of the Superior Court. This is improper and should not be allowed.

## I.  FACTS

Eric Lutz contracted with Dean Bruington (the insured builder) to construct a residence in Glennallen. When the residence began to fail,[8] Lutz contacted Bruington, and in June 2002 Bruington filed a claim with his insurer First Financial Insurance Co. Inc. (FFIC).  In a letter dated 9/11/2002 FFIC provided Bruington with a legally insufficient notice of denial of coverage and denial of defense.[9]  Approximately 10 months later Lutz filed suit against Bruington.  Bruington tendered the defense to FFIC. FFIC did not respond, or

---

[7] *Voorhees v. Jackson*, 35 U.S. 449, 472, 9 L. Ed. 490 (1836); *S.E.C. v. Worthen*, 98 F.3d 480 (9th Cir. 1996); *Rashtabadi v. INS*, 23 F.3d 1562  (9th Cir. 1994), see also *Avila-Murrieta v. INS*, 762 F.2d 733, 736 (9th Cir. 1985); See, e.g., 28 U.S.C. § 1738 (state court decisions are to be given full faith and credit); Id. § 2254.

[8] The foundation of the home failed. Settlement caused the structure to sag, twist, and fail. Gaps of 18 -23 inches between the floor and walls were reported.

[9] *Lutz Decision*, Docket 99 at 2-3.

make any acknowledgement to the tender. However FFIC has since admitted that the tender was sufficient under the policy.[10]

In the course of the litigation, Lutz and Bruington entered into a covenant settlement agreement (the Agreement) that assigned Bruington's rights against FFIC to Lutz.[11]  Upon execution of the Agreement, FFIC was informed of the Agreement, advised that litigation would continue, and was "invited" to participate.[12]  FFIC engaged local counsel and was aware of the litigation, but nonetheless chose not to participate.[13]

Ultimately Bruington was found to be liable to Lutz in Alaska Superior Court. The Superior Court made findings of fact and findings of law. A damage hearing was had, and after hearing the evidence, Judge Fuld set damages at approximately $5.6 million.[14]

Lutz brought suit against FFIC (based on the assignment of rights) concurrent with the continuing litigation against Bruington. FFIC removed to federal court.  After the District Court dismissed the case, the Ninth Circuit Court, on appeal from the dismissal, found that

---

[10] FFIC has admitted that Bruington meet the tender requirement of the policy.  FFIC's Supplemental Answer to Request for Admission, # 144.

[11] The Covenant Settlement Agreement was comprised of two documents: Agreement and Release and Assignment of Claim and Right. Among the provisions were:  Bruington would perform substantial repairs to the home; that Bruington would assign his rights to Lutz;  that Lutz would not execute against Bruington personally; and, that if Lutz was able to enforce the insurance provision then Bruington would be reimbursed up to $65,000 for repairs to the home.

[12] Exhibit 2, May 24,2004  Letter to Robert LaFrance First Financial Insurance Co.

[13] FFIC engaged the law firm of Delaney Wiles in June 2004, based billing verified Billing Statements.

[14] *Lutz v. Bruington* , 3 AN 03-07096 Civil Judgment entered December 21, 2004.

FFIC had wrongfully breached its duty to defend.[15] The court found that the notice of denial materially misrepresented the law to its insured;  raised defenses that were not asserted in the denial letter; and, did not state the facts of the claim.[16]

The Circuit Court further found that FFIC would be estopped from denying coverage if there is a "slight showing" of "any adverse effect" or "some actual harm" to Bruington as a result of FFIC's breach.[17]   The case was remanded to District Court on this basis.[18]

## II.        FFIC MISREPRESENTS THE FACTS IN ITS SUMMARY

With each filing, FFIC continues to misrepresent the facts in an attempt to convince the court through repetition and hyperbole that FFIC's version is correct. Lutz feels compelled to correct some of the misrepresentations that FFIC makes.

FFIC asserts that M. Shelton Services is an independent contractor. No such finding has been made.  FFIC makes this assertion to attempt to argue a coverage defense under its

---

[15] *Lutz Decision*, Docket 99 at 2-3.

[16] *Id.* at 3.

[17] It is Lutz's reading of the law that in Alaska the correct standard is that there is a presumption of prejudice for a breach of the duty to defend that can be rebutted by a showing of "no adverse effect".  The court in Fulton specifically stated that the trial court's finding of actual harm, "effectively establishes Lloyd's <u>failure to rebut the presumption of prejudice.</u>". Fulton at 1206. It seems clear that the court was indicating that Lloyd's breach of the duty to defend triggered presumed prejudice, and Lloyds failed to rebut that presumption because of the showing of actual prejudice. However, Lutz acknowledges that this was not the holding of the Circuit Court.

[18] *Lutz Decision*, Docket 99 at 4.

exclusion for "any property damage 'arising out of the actions of independent contractors'…"[19]

FFIC asserts that " according to Bruington, Lutz…rejected an above foundation, and rejected the more stable type foundation he eventually got…" [20] Bruington did not state that Lutz "rejected an aboveground foundation".  Bruington stated that Lutz desired a "conditioned crawl space" foundation.  As regards the "more stable type foundation" this is a complete misguidance.  In an attempt to save the home from complete collapse a specialized helical foundation was installed.[21] This type foundation was never discussed at construction and it is likely that the neither Bruington nor Lutz were even aware that such a foundation existed.[22]

FFIC asserts that in "2000 and 2001 Lutz complained of minor settlement issues."[23] FFIC attempts to minimize the home's settlement. The home experienced serious settlement issues, with settlement in some areas reported to be 18 -23 inches. In his deposition Bruington affirmed that there was significant settlement and that by 2001 the garage floor had sagged to such an extent that it was beyond repair.[24]

---

[19] FFIC Motion to Compel Docket 120 at 1.

[20] FFIC Motion to Compel, Docket 120 at 2.

[21] Bruington Deposition of April 25, 2008 at 55 (not yet corrected) hereafter Bruington Deposition.

[22] Bruington's Deposition.

[23] Motion to Compel, Docket 120 at 2.

[24] Bruington Deposition at 104.

FFIC states that "Lutz's attorney, Mr. Cook, proposed a <u>strategic settlement</u>…" and then FFIC outlines the settlement.[25] This implies that the settlement was fraudulently "cooked up" by Lutz's counsel and that Bruington either colluded with or was bamboozled into agreeing. However, FFIC fails to disclose that Bruington was represented by his own counsel during the negotiation, William Sherman. Sherman negotiated on Bruington's behalf and the covenant settlement agreement was a product of those negotiations. The term "strategic settlement" is not defined. The proper term is covenant settlement agreement.

FFIC states " With nothing at stake in the lawsuit, Bruington did not defend himself."[26] Bruington may not have been personally liable for the judgment that ensued, but he certainly had something at stake. Every financial statement, most insurance applications, bank loans, bonding companies, etc. require disclosure of judgments. As a result, there were significant implications for Bruington if a judgment against him were obtained.

FFIC asserts that "Bruington's liability was founded on misrepresentation."[27]  The Superior Court made findings of fact and findings of law. One finding was that "A misrepresentation by a General Contractor…is a violation of Alaska's Unfair Trade

---

[25] <u>Motion to Compel</u>, Docket 120 at 2.

[26] *Id.*

[27] *Id.* at 3.

Practices, AS 45.50.471."[28]  The Superior Court used this to apply a statutory multiplier to the damages. The Superior Court made other findings including that that Dean Bruington was a General Contractor, that General Contractors are liable for defects in construction that render a home not habitable or fit, and that the Lutz home was not habitable or fit.[29]

## III.    FFIC MISREPRESENTS THE LAW IN ITS PROCEDURAL HISTORY

In what appears to be an attempt to curry favor with the court, FFIC asserts that this court's prior "conclusion- that the policy provided no coverage for the loss-  was plainly correct and was not disturbed on appeal."[30]  This court's ruling well might be correct, however, the Ninth Circuit's ruling that FFIC would be estopped from denying coverage if there was even a "slight showing" that Bruington suffered "any adverse effect" mooted the inquiry as to coverage. However, FFIC continues to assert coverage is in issue.

FFIC's assertion "that FFIC owed no duty to defend or indemnify Bruington…"[31] is clearly at odds with the finding of the Circuit Court and the law of Alaska.  "One 'aspect of the insurer's broader duty to defend its insured' is its obligation to provide "prompt and

---

[28] <u>Order Granting Motion for Summary Judgment and Scheduling Damage Hearing</u>, *Lutz v. Bruington* 3 AN 03-07096, dated 8/29/2004

[29] *Id.*

[30] <u>Motion to Compel</u>, Docket 120 at 4.

[31] <u>Motion to Compel</u>, Docket 120 at 4.

adequate notice" of its intention to deny liability."[32]  The Circuit Court found the 9/11/2002 letter was not adequate. Therefore FFIC breached its duty to defend.[33] This breach applies both to the claim Bruington made in 2002 and to the claim made in 2003 (the suit by Lutz).  This is clear, since FFIC never responded to Bruington's tender of the suit, and the only denial letter it ever provided has been found to be inadequate.

FFIC misleadingly proclaims "the parties agreed that if  FFIC is found to be estopped there will need to be a trial on the [Great Divide factors] to determine whether the amount Lutz claims based on his settlement with Bruington and the resulting unopposed state court judgment was reasonable."[34]  Lutz has never agreed to any such determination. The appropriate determination is the "reasonableness of the covenant settlement agreement". This is the primary focus of the subject of the pending <u>Motion for Clarification</u>.[35]  For FFIC's  to assert that the parties are in agreement is deceitful. Its position on the reasonableness of the state court judgment is a misstatement of the law.

---

[32] *Lutz v. First Financial Insurance Co., Inc.*, No. 06-35804 (9th Cir. 09/07/2007), quoting *Lloyd's & Institute of London Underwriting Cos. v. Fulton*, 2 P.3d 1199, 1204-05 (Alaska 2000);  (hereafter *Lutz Decision*) Docket 99 at 2.

[33] *Lutz Decision*, Docket 99 at 2-3.

[34] <u>Motion to Compel</u>, Docket 120 at 4.

[35] <u>Motion for Clarification</u>, Docket 116.

## IV.    THE DISCOVERY SOUGHT

Lutz answered all requests for admission, provided FFIC with every document (including privileged and work-product) that related in any way to the underlying suit,[36] and responded to every interrogatory filed by FFIC.  With regard to the  Interrogatories filed, FFIC propounded more than those allowed under the rules (if discrete subparts are aggregated).[37] Nevertheless, Lutz responded to all interrogatories.

FFIC exhibits a remarkable lack of understanding of the rules of discovery. In its brief, FFIC states "Lutz denied each of the Requests for Admissions set forth above, <u>but FFIC does not move to compel as to them</u>."[38] (emphasis added). If a Request for Admission is answered, whether admitted or denied,  there is nothing to compel. It is unclear what FFIC means by "FFIC does not move to compel as them" statement. They have nothing to compel. However, it is indicative of the lack of understanding and "double speak" that FFIC has engaged in.

---

[36] The only document that was not provided was the representation agreement, and in conversations with FFIC's attorney that document was offered if FFIC's attorney so requested.

[37] Lutz and FFIC disagree regarding whether the interrogatories propounded by FFIC contain discrete subparts that count against the number of interrogatories allowed. For instance, Interrogatory No. 10 stated: "For each request for admission served herewith that you do not admit unconditionally, please state all facts that support your denial or inability to admit, and identify each person with knowledge of those facts." (emphasis added).  Since each Request for Admission is discrete, the interrogatory regarding the Requested Admission is discrete.

[38] <u>Motion to Compel</u>, Docket 120 at 6.

With regard to Interrogatories 2, 6, 7, 9, and 10. Many of the interrogatories were constructed with such sloppy and vague terms that they are susceptible to various interpretations. Some interrogatories called for legal conclusions. Most were overbroad and burdensome. Many requested information that is irrelevant.

## A.     Interrogatory 2

In Interrogatory 2, FFIC asked Lutz to "describe <u>all representations</u> Bruington made to you"[39] (emphasis added).  Black's defines a representation as: "Any conduct capable of being turned into a statement of fact."[40]  In Lutz's response and in the meet and confer, Lutz attempted to convey to FFIC the absurd nature of the interrogatory. "Every representation" that Bruington made to Lutz would include such non-germane things as representations as to the weather or the state of politics. Perhaps Lutz was a bit flippant in his response that "Bruington may have represented in 1999 that the sky is blue and the grass green, that rivers flow and grass grow", but the gist was that the request was vague and absurd.

Lutz objected that the request was over-broad, burdensome, irrelevant, and not intended to lead to discoverable evidence. Further Lutz stated that the interrogatory was intended to harass, frustrate, and over burden plaintiff. Finally Lutz expressed that he would gladly respond to appropriate discovery.

---

[39] <u>First Financial Insurance Company, Inc.'s First Set Of Interrogatories</u>, (hereafter <u>FFIC Rogs</u>) # 2,

[40] Black's Law Dictionary, 5th Edition.

FFIC could easily narrow the request so that Lutz could answer by simply stating what type representations they are seeking.  FFIC chose not to narrow the interrogatory. Truthfully, Lutz would not know how to respond to an interrogatory that, in essence, asks for him to describe "every type of act that is capable of being turned into a statement of fact" that Bruington made.

### B.    Interrogatories 6, 7, & 9

In interrogatories 6, 7, & 9  FFIC requested that Lutz either "identify, " "describe"  or state every basis for your claim"  in the "'Calculation of Damages' you <u>submitted to the court in the underlying lawsuit</u>…"[41] (emphasis added).  Judge Fuld determined damages based on the evidence educed at a damage hearing and the Superior Court rendered final judgment.  "There is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done…without referring to the evidence on which it has been adJudged."[42]  Here, FFIC seeks to attack both the judgment and the evidence the court relied on to make the judgment. This would be antithetical to Full Faith and Credit.  "It is now settled that a federal court must give to a

---

[41] <u>FFIC Rogs</u> #6, #7, #9.

[42] *Voorhees v. Jackson*, 35 U.S. 449, 472, 9 L. Ed. 490 (1836); *S.E.C. v. Worthen*, 98 F.3d 480 (9th Cir. 1996); *Rashtabadi v. INS*, 23 F.3d 1562  (9th Cir. 1994), see also *Avila-Murrieta v. INS*, <u>762 F.2d 733</u>, 736 (9th Cir. 1985); See, e.g., 28 U.S.C. § 1738 (state court decisions are to be given full faith and credit); Id. § 2254.

state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered."[43] This is basic Full Faith and Credit.

As a result, Lutz believes that FFIC is barred from attacking the judgment or the evidence relied upon in making the judgment except in the extraordinary circumstance of a Rule 60(b) claim that the judgment was the result of fraud upon the court. A claim of fraud upon the court is exceedingly difficult. (see discussion below).

The Superior Court's judgment must "presumed to have been rightly done…without referring to the evidence on which it has been adjudged."[44]  The evidence the court relied upon is not available for attack, and FFIC's interrogatories 6, 7, and 9 are directly attacking the "evidence on which [the judgment] has been adjudged." (See discussion below on Full Faith and Credit)

## C.    Interrogatory 10

In interrogatory 10, FFIC presented a multi-part request that required Lutz, for each Request for Admission that he did not unconditionally admit, to provide the factual basis for the unconditional failure to admit (as well as persons that know the facts supporting the failure to unconditionally admitted).[45] Lutz filed a general objection that the Interrogatory

---

[43] *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984);*Ross v. State of Alaska*, 189 F.3d 1107  (9th Cir. 1999).

[44] *Voorhees* at 472; *Rashtabadi.*

[45] FFIC Rogs #10

was multipart and over-broad, burdensome, irrelevant, vague, and not intended to lead to discoverable evidence.[46]

In its brief FFIC appears to only seek to compel as to what Lutz identified as "Answer: 10 subpart b. Denial of Request for Admission No. 2"; "Answer: 10 subpart d. Denial of Request for Admission No. 5"; and, "Answer: 10 subpart g. Denial of Request for Admission No. 8."[47]

FFIC in Request for Admission 2 asked Lutz to admit that he "primarily blamed one or more persons other than Bruington for the damages".[48] FFIC either misunderstood or misrepresents Lutz's objections as to this interrogatory/admission when it suggests that Lutz did not understand the term "primarily". The vagueness objection related to "primarily blamed" (emphasis added). In his response Lutz specifically asked: "What does "primarily blamed" mean? If "primarily blamed" means blamed in a legal sense then it calls for a legal conclusion, if "primarily blamed" means in a moral sense it is irrelevant."[49]

FFIC distorts this response to try to assert that Lutz was "evasive" because he did not understand the word "primarily". The response clearly articulated the issue was not on the

---

[46] <u>Plaintiff's Answers To FFIC's First Set Of Interrogatories</u> at 5, (hereafter <u>Plaintiff's Answers to Rogs</u>)

[47] <u>Plaintiff's Answers to Rogs</u> at 6-8.

[48] <u>First Financial Insurance Company Inc.'s First Set of Requests for Admission</u>, # 2, (hereafter <u>FFIC's First RFAs</u>).

[49] <u>Plaintiff's Answers to Rogs</u> at 6.

meaning of the word "primarily", but on the term "primarily blamed." FFIC is disingenuous in accusing Lutz of being evasive.

Lutz continues to stand by the objection lodged: if "primarily blamed" means who does Lutz blame for the damage in a legal sense, then it calls for a legal conclusion. If it relates to "moral blame" then it is irrelevant.

FFIC in Request for Admission 5 asked Lutz to admit that "Bruington complied with all aspects of your contract with him."[50] FFIC did not define which contract it was referring to: the contract to build the home, the contract assigning Bruington's rights to Lutz, or the contract to repair the home. This sloppy drafting on the part of FFIC has lead to much confusion and increased work load. For FFIC to assert that Lutz was evasive because he can not understand FFIC's garbled requests is weak.[51]

Even assuming, *arguendo,* that the request was for the contract to build the home, FFIC's request would fail because first it would require a legal conclusion, and second because the Superior Court has already determined Bruington's liability under the contract. As such, the Superior Court's judgment and the evidence upon which it relied are not available for attack  (see discussion "Interrogatories 6, 7, & 9" above, and Full Faith and Credit below).

---

[50] First RFAs #5.

[51] As an example, FFIC made multiple requests regarding a $17,500 settlement Lutz received from his homeowner's insurance. However, FFIC asserted that the amount was $175,000 and continued to do so even after Lutz informed FFIC of the correct amount. FFIC claimed it was a "typo". However, a "typo" is an error in typing, multiple request asserting the same incorrect amount is not a typo.

1
2
3
4
5
6
7
8
9
10
11
12
13

The last sub-part complained of under Interrogatory 10 is FFIC's Request for Admission that Marsha Lutz divorced Eric Lutz for reasons other than physical defects to the home. As a practical matter, Eric Lutz can only speculate as to the motives that led Marsha to divorce. As a result, Lutz advised FFIC that the inquiry as to her motivations should be directed to her. From a legal perspective, perhaps FFIC inquiry was intended to attack the award of the damages by the Superior Court, since one element of those damages was premised on emotional harm to Lutz. However as discussed above the Superior Court judgment and the evidence upon which it relied are not available for attack (see discussion "Interrogatories 6, 7, & 9" above, and Full Faith and Credit below).

14
15

## V.                         DISCUSSION OF ARGUMENT

16
17

### A.    FULL FAITH AND CREDIT

18
19
20
21
22
23

"Full faith and credit requires courts to do more than provide for direct enforcement of the judgments issued by other States. It also 'requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'"[52] In the instant case the Superior

24
25
26
27
28

---

[52] Concurring Opinion, *Baker Et Al. V. General Motors Corp.*, 523 U.S. 222, ? (1997); citing *Kremer v. Chemical Constr. Corp.*, 456 U. S. 461, 466 (1982); accord, *Parsons Steel, Inc. v. First Alabama Bank*, 474 U. S. 518, 525 (1986); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U. S. 373, 380-381, 384 (1985); *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U. S. 75, 81 (1984); *Haring v. Prosise*, 462 U. S. 306, 313 (1983); *Allen v. McCurry*, 449 U. S. 90, 96 (1980).

Court was a court of competent jurisdiction, it rendered a valid judgment, and full faith and credit should be accorded. The only avenue to attack a judgment of a court of competent jurisdiction is through a rule 60(b) claim of fraud upon the court. As discussed below that is a difficult task.

As for the judgment itself, it is clear that "an insurance company which wrongfully refuses to defend is liable for the judgment which ensues…"[53] Lutz does not assert that this means that there is no inquiry- however the inquiry is solely as to the reasonableness of the covenant settlement agreement that lead to the judgment.[54] If the covenant settlement agreement is reasonable then the judgment stands.

### 1. Issue is Reasonableness of the Covenant Settlement Agreement

Alaska court's have recognized that covenant settlement agreements can be abused. For instance, an insured defendant who's insurer is in breach could settle for an inflated amount with an agreement not to execute. This potential for abuse led the Alaska Supreme

---

[53] *Sauer v. Home Indem. Co.*, 841 P.2d 176, 184 (Alaska 1992); quoted by the Ninth Circuit in the *Lutz Decision* docket 99 at 4; cited with approval in Horace Man at 1365, and Fulton at 1071.

[54] *Great Divide Ins. Co. v. Carpenter ex rel. Reed,* 79 P.3d 599, 613 (Alaska 2003*); Grace v. Ins. Co. of N. America*, 944 P.2d 460, 467-68 n.19 (Alaska 1997); *Washington Ins. Guar. Ass'n v. Ramsey*, 922 P.2d 237, 247-248 (Alaska 1996); *Continental Ins. Co. v. Bayless & Roberts*, 608 P.2d 281, 293 n.20 (Alaska 1980); *Chaussee v. Maryland Casualty Co.*, 60 Wn. App. 504, 803 P.2d 1339, 1343 (1991).

Court to adopt in Ramsey, a requirement that covenant settlement agreements be determined to be reasonable.[55]

The Ramsey Court specifically adopted the model used by Washington State in its decision in Chaussee.[56] In Chaussee the Washington Court adopted the Glover factors.[57] By extension then, the Alaska Court adopted the Glover factors to evaluate the reasonableness of covenant settlement agreements (FFIC mistakenly refers to these as the Great Divide factors).

However it is clear that the issue is the reasonableness of the settlement. As the Chaussee court stated: " an insured may settle for an inflated amount to escape exposure and thus call into question the reasonableness of the settlement."[58] Therefore the factors are intended to measure the reasonableness of the settlement agreement not the resulting judgment.

As to the factors, "no one factor controls and the trial court has the discretion to weigh each case individually."[59] One of the factors that is to be considered is "the releasing person's damages"[60].

---

[55] *Id.*

[56] *Ramsey* at 247, referring to *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 658 P.2d 1230 (1983) where the factors were first articulated.

[57] *Chaussee* at 511- 12 adopting Glover v. Tacoma Gen. Hosp., 98 Wn.2d 708, 717, 658 P.2d 1230 (1983).

[58] *Id.* at 510.

[59] *Id.* at 513.

The crux of the dispute is that FFIC desires to re-litigate the Superior Court's damage award under the guise of determining whether the covenant settlement agreement was reasonable. FFIC specifically seeks evidence to contest the award.

FFIC failed to defend or participate in the underlying suit. Now FFIC attempts to question the judgment of Superior Court Judge William H. Fuld when he set damages. It does this by suggesting that Judge Fuld's opinion on damages should be subject to a "reasonableness determination" utilizing the factors set out in Great Divide.[61]

Those factors are intended to address the reasonableness of covenant settlement agreements.[62]  This is because covenant settlement agreements have a potential for fraud, collusion, or other abuse.[63]  The reasonableness determination is not intended to be applied to damages determined by a court of competent jurisdiction.

A recent Colorado case that utilized Great Divide as a model is exactly on point:

We acknowledge the risk of fraud and collusion between the plaintiff and the defendant-insured when the only judgment ever obtained against the defendant is

---

[60] *Great Divide* at 613 citing *Grace* and *Ramsey*.

[61] FFIC suggests that "the Alaska Supreme Court instructs that the amount Lutz seeks must be scrutinized." FFIC Opposition at 10.  A closer reading of the cases shows that the reasonableness of the covenant settlement agreement must be made, not the amount that Lutz seeks.  *Great Divide* at 613- 614, citing *Grace* 467-68; *Ramsey*, 247; *Bayless & Roberts*, 293 n. 20.

[62] *Great Divide* at 613-14.

[63] *Id.*

stipulated, and the existence and amount of the defendant's liability is determined by the parties rather than by a neutral factfinder.[64]

That is exactly the situation here. Judge Fuld, a neutral fact finder determined the damages based on evidence adduced at a damage hearing. There was no stipulated damages nor a "sham" arbitration.

In Great Divide the parties had agreed to a one-sided, perhaps sham, arbitration. The trial court did not conduct an independent damage hearing but instead affirmed the arbitration award. Because the parties in the covenant settlement agreement had agreed to this dubious arbitration, the Supreme Court stated that it could not give unconditional acceptance to what only "superficially" appeared to be an adversarial proceeding. [65]

However, even in that dubious situation, the court stated that had Carpenter appealed the trial court's failure to make a reasonableness determination of the covenant settlement agreement, it "could warrant setting aside the judgment …and remanding for a new trial on the issue of the reasonableness of the settlement."[66]  Moreover, the court held that had Carpenter appealed the trial court's error for failing to determine the reasonableness of the covenant settlement agreement, and the jury had found the covenant settlement

---

[64] *Old Republic Insurance Company v. Ross*, No. 06SC257,  Slip Opinion lw080325053, (Colorado 2008). At 19-20.

[65] *Great Divide* at 614.

[66] *Id.*

agreement to be reasonable, then Great Divide would have been bound by the
judgment.[67]

Here, the parties did not make any agreements as to how damages would be
determined. A damage determination was left to the court. There was no agreement to a
sum certain.  There was no agreement to a dubious arbitration. There was no confession
of judgment.

When Bruington and Lutz executed the covenant settlement agreement, Lutz
notified FFIC of the agreement, advised FFIC that litigation would continue, and
"invited" FFIC to participate.[68]  Lutz then proceeded with the suit. Lutz properly noticed
Bruington on every filing, motion, discovery request, and hearing.

Lutz performed every requirement so that a proper judicial determination of the
damages could be had and a final award be made. Lutz could not force Bruington to
answer Requests for Admission, oppose motions, or, attend hearings. Neither could Lutz
force FFIC to attend, participate, or defend Bruington. Nevertheless he tried.

---

[67] In footnote 38 the court stated: "We do not imply that counsel's failure in this regard was a mistake.
Giving up the current award of compensatory damages carries both the possibility of increasing the award
and the risk of reducing it if a future jury were to find the settlement to be unreasonable." (emphasis added).
In other words, if Carpenter gave up the compensatory award in favor of the arbitrated award, he might
increase or decrease the award based on the jury's determination of the reasonableness of the covenant
settlement agreement. *Great Divide* at 614 and n 38.

[68] May 24, 2004  Letter to Robert LaFrance First Financial Insurance Co.

Ultimately Judge Fuld set damages based on the evidence adduced at a damage hearing.[69] Bruington had been properly noticed of the hearing but did not appear. Even though FFIC had retained a local attorney, and been invited to participate in the continuing proceedings, it did not appear.[70] In truth, what more could Lutz have done to have either Bruington or FFIC attend?  Now because FFIC snubbed its nose at the legal proceedings in the underlying case, it asserts that it should be allowed to dispense with full faith and credit and challenge the evidence and the judgment of the Superior Court.

### 2. **Full Faith and Credit Relates to Reasonableness**

There is an interplay between the reasonableness inquiry and the judgment rendered by the Superior Court. **"**Under the Full Faith and Credit Clause, a judgment of a court in one State is conclusive…"[71]  Thus, the findings of fact and conclusions of law made the Superior Court must be given full dignity and respect. Since the "constitutional command of full faith and credit…requires that 'judicial proceedings . . . have the same full faith and credit in every court within the United States"[72]  the determination of damages by the Superior Court must be given effect.

---

[69] The Damage Hearing was held on October 29, 2004.

[70]  FFIC retained local attorney Andrew Guidi in early June 2004, shortly after receipt of this letter. This was well ahead of the grant of Summary Judgment and well ahead the Damage Hearing. See Exhibit 3.

[71] *Underwriters Nat'l Assur. v. N.C. Life & Acc.*, 455 U.S. 691, ? ;  citing *Durfee v. Duke*, 375 U.S. 106 (1963)

[72] *Durfee V. Duke*, 375 U.S. 106,      (1963) quoting *Riley v. New York Trust Co.*, 315 U.S. 343, 349.

Among the findings made in Superior Court were that a General Contractor on a building project is liable for defects in construction of a home that renders it not habitable or not fit for its intended purpose; that Eric Lutz engaged Bruington as a General Contractor; that the home was render not habitable and not fit because of construction defects; and that as a result, Dean Bruington was liable to Eric Lutz.[73] The court also determined damages based on evidence educed at a damage hearing.[74]

The "reasonableness" of the covenant settlement agreement analysis can utilize the "releasing person's damages" as a factor. In the instant case, the Superior Court made a factual determination of the damages. Those were the "releasing person's damages."[75] As a result the Superior Court made a factual determination of the "releasing persons damages" are.  No inquiry further inquiry is required (or allowed) to ascertain what the "releasing persons damages" are.  Otherwise the Superior Court judgment would not be given full faith and credit.

All discovery that is geared toward disproving the judgment rendered by Superior Court are without merit. The judgment as to damages and liability must stand. The only

---

[73] Order Granting Motion for Summary Judgment and Scheduling Damage Hearing, *Lutz v. Bruington* 3 AN 03-07096, dated 8/24/2004

[74] Final Judgment and Order, *Lutz v. Bruington* 3 AN 03-07096, dated 12/22/2004

[75] Bruington was the releasing person. In the typical consent settlement, the releasing person and the plaintiff agree to a sum certain. In that situation the fact finder must evaluate the "releasing person's damages" in contrast to the agreed to settlement amount. The "releasing person's damages" are those damages that he might incur in litigation.

inquiry and thus the only discovery that is appropriate goes to the reasonableness of the

covenant settlement agreement and to whether Bruington was prejudiced.


**B.    Fraud on the Court**

"[F]raud on the court entails more than 'simply a case of a judgment obtained with the

aid of a witness who, on the basis of after-discovered evidence, is believed possibly to

have been guilty of per-jury,' the [U.S. Supreme] Court suggested that a finding of fraud

on the court required something like the case then before it: "a deliberately planned and

carefully executed scheme to defraud not only the Patent Office but the Circuit Court of

Appeals."[76] Further, the U.S. Supreme Court emphasized that the fraud not merely impact

a single litigant, but that the fraud was  "tampering with the administration of justice…

involve[ing] far more than an injury to a single litigant. It is a wrong against the

institutions set up to protect and safeguard the public [i.e. the patent office]."[77]

---

[76] *Murray V. Ledbetter*, 144 P.3d 492 (Alaska 2006) at 497 quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed. 1250 (1944).

[77] *Id.*

Lutz v. First Financial Insur.
04:229 Civ. (TMB)                                                                           Page 24 of 26

# CONCLUSION

The Law is clear. "Covenant settlement agreements are enforceable against an insurance company if the agreements are reasonable."[78]  (emphasis added).  The Ninth Circuit quoting Sauer stated:

> "[A]n insurance company which wrongfully refuses to defend [a duty, which, as explained, includes the obligation to provide an adequate denial of coverage,] is liable for the judgment which ensues..." (emphasis added).[79]

FFIC seeks discovery on issues that are not before the court. It wrongly believes that the "reasonableness of the judgment" is in issue. This is incorrect because Full Faith and Credit requires the Superior Court's judgment be given effect. If the judgment of the Superior Court is not before this court, then discovery on that issues is not appropriate.

None of the discovery that FFIC seeks goes to the issues of: 1) Was Bruington prejudiced, and 2) Whether the covenant settlement agreement was reasonable.

By: _____ *s/ Tim Cook    5/9/2008*
Tim Cook
Alaska Bar Card #9007048
3901 Taiga Drive
Anchorage, Alaska
(907)336-5291
(907)336-5292 FAX
Attorney for Eric Lutz

---

[78] *Great Divide* at 609

[79] *Lutz Decision*, Docket 99 at 4.

1

2  **CERTIFICATE OF SERVICE**
I hereby certify that on   5 / 9 / 2008, a true and correct copy of this document was served to the following:
3

4  Andrew Guidi, Esquire
Delaney, Wiles, Hayes, Gerety, Ellis, & Young, Inc.
1007 West 3rd Ave, Suite 400
5  Anchorage, Alaska

6
Jon K. Adams, Esquire
7  Morison-Knox Holden & Prough, LLP
500 Ygnacio Valley Road, Suite 400
8  Walnut Creek, CA 94596

9  _____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28